# Exhibit A

## Declaration of Robert J. Mueller

I, Robert J. Mueller, pursuant to 28 U.S.C. § 1746, do state under penalty of perjury as follows:

1.     My name is Robert J. Mueller.  I am over twenty-one (21) years of age, am of sound mind, and suffer no legal or mental disabilities.  I have never been convicted of a felony or a crime involving moral turpitude.  I am fully competent to make this declaration concerning the matters stated herein, which are within my personal knowledge and are true and correct.

2.     I have reviewed the Court's Order Freezing Assets, Ordering an Accounting, and Preliminary Injunction.  There are no bank accounts opened in my name other than those listed in the Order, other than a juvenile account used by my daughter.

3.     I am the founder and have been the principal of the entities named as Defendants and Relief Defendants in the litigation filed against me.  Other than my role with those entities, I am not currently employed.

4.     My wife receives a limited salary from her employment.  Our first child together is due at the end of October.  My wife intends to take leave from her employment after she gives birth and return to work in March of 2022.  She will not receive her full salary during the time that she will be on leave.

5.     I estimate that I can pay for the monthly living expenses faced by me and my family with approximately $8,500 per month.  Among our current monthly expenses are the following: (1) child support payments of $1,810.00; (2) rent payments sufficient to cover the mortgage on the house in which my wife and I are living of $1,912.70; (3) health insurance payments of $1,521.46; (4) other insurance payments of approximately $400.00; (5) credit card minimum payments and/or

interest payments of approximately $500.00 per month; and (6) other living expenses, including groceries, phone bills, utility payments, internet, a car payment, and gas.

6.      Attached hereto as Exhibit A-1 are true and correct versions of bank records from the USAA checking account ending in -7059, which have been partially redacted.

7.      Attached hereto as Exhibit A-2 and Exhibit A-3 are a true and correct copy of private placement memoranda that were provided to investors.

8.      Pursuant to 28 U.S. § 1746, I declare under penalty of perjury that the forgoing is true and correct.

Executed in San Antonio, Texas on the 29th day of September, 2021.

_____

Robert J. Mueller

# Exhibit A-1



USAA
FEDERAL
SAVINGS
BANK

PAGE    1

ROBERT J MUELLER

                                                                    0
                                                                   03

| ACCOUNT NUMBER | ACCOUNT TYPE | STATEMENT PERIOD |
|---|---|---|
| 705-9 | USAA CLASSIC CHECKING | 01/03/19 - 02/04/19 |



       DEPOSITS AND OTHER CREDITS
DATE..........AMOUNT.TRANSACTION DESCRIPTION
01/16      2,000.00 ACH CREDIT              011619
                    POLICY SERVICES   PAYROLL    ***********156X
01/29      5,000.00 WIRE IN
                    001190129926231
02/01     10,500.00 ACH CREDIT              020119
                    POLICY SERVICES   PAYROLL    ***********355X
02/04          0.07 INTEREST PAID

       OTHER DEBITS
DATE..........AMOUNT.TRANSACTION DESCRIPTION
01/04      5,000.00 USAA FUNDS TRANSFER DB
                    TO Mb Hale Ohana Rev Tr
                    CHECKING    #3621, CONF# 1835862557

FDIC
INSURED

93526-0814_05
BM1FRT

# USAA FEDERAL SAVINGS BANK

10750 McDermott Freeway
San Antonio, TX 78288-0544
800-531-8722

**PLEASE EXAMINE THIS STATEMENT AT ONCE. IF NO ERROR IS REPORTED IN 60 DAYS, THIS STATEMENT WILL BE CONSIDERED CORRECT. ALL ITEMS ARE CREDITED SUBJECT TO PAYMENT.**

In Case of Errors or Questions About Your Electronic Transfers, Telephone us or Write us at the address and number listed at the top of this page as soon as you can, if you think your statement or receipt is wrong or if you need more information about a transfer on the statement or receipt. We must hear from you no later than 60 days after we sent you the FIRST statement on which the error or problem appeared.

- Tell us your name and account number (if any).
- Describe the error or the transfer you are unsure about, and explain as clearly as you can why you believe it is an error or why you need more information.
- Tell us the dollar amount of the suspected error.

We will investigate your complaint and will correct any error promptly. If we take more than 10 business days to do this, we will credit your account for the amount you think is in error, so that you will have the use of the money during the time it takes us to complete our investigation.

**THIS FORM IS PROVIDED TO HELP YOU RECONCILE THIS STATEMENT BALANCE TO YOUR CHECKBOOK BALANCE.**

## CHECKS OUTSTANDING
(Those written which have not been charged to your account)

| CHECK# | AMOUNT |
|--------|--------|
|        |        |
|        |        |
|        |        |
|        |        |
|        |        |
|        |        |
|        |        |
|        |        |
|        |        |
|        |        |
|        |        |
|        |        |
|        |        |
|        |        |
|        |        |
|        |        |
|        |        |
|        |        |
|        |        |
|        |        |
|        |        |
|        |        |
| **TOTAL** | $ |

## BANK BALANCE

(1) **BALANCE THIS STATEMENT**
   **(SHOWN ON FRONT PAGE)**          $ _____

(2) **ADD DEPOSITS NOT SHOWN ON**
   **THIS STATEMENT (IF ANY)**        + _____

(3) **SUBTOTAL**                       $ _____

(4) **SUBTRACT TOTAL OF CHECKS**
   **OUTSTANDING (IF ANY)**           - _____

(5) **ADJUSTED BANK BALANCE**          $ _____

## YOUR BALANCE

(6) **CHECK REGISTER BALANCE**         $ _____

(7) **ADD CREDITS WHICH APPEAR**
   **ON THIS STATEMENT THAT HAVE**
   **NOT BEEN RECORDED IN YOUR**
   **REGISTER (IF ANY)**              + _____ *

(8) **ADD INTEREST CREDITED TO**
   **YOUR ACCOUNT (IF ANY)**          + _____ *

(9) **SUBTRACT OTHER CHARGES**
   **(IF ANY)**                       - _____ *

(10) **ADJUSTED CHECK REGISTER**
   **BALANCE**                        $ _____
   * Be sure to record in your check register.

Line 5 and Line 10 should now agree. If not, check the following items in your register:

-Are all deposits accounted for?
-Are all amounts entered correctly?
-Are all automatic transactions accounted for?
-Are all additions and subtractions accurate?

**TERMS AND CONDITIONS:  All transactions are subject to the USAA Federal Savings Bank Depository Agreement.**



126405-0714
BM1BCK



USAA
FEDERAL
SAVINGS
BANK

PAGE   2

ROBERT J MUELLER

0
03

| ACCOUNT NUMBER | ACCOUNT TYPE | STATEMENT PERIOD |
|---|---|---|
| ███705-9 | USAA CLASSIC CHECKING | 01/03/19 - 02/04/19 |

OTHER DEBITS
DATE.........AMOUNT.TRANSACTION DESCRIPTION



      * * * * * * * *   INTEREST PAID INFORMATION   * * * * * * * *
   YOUR INTEREST PAID WAS CALCULATED USING YOUR DAILY BALANCE FOR
   32 DAYS FOR AN ANNUAL PERCENTAGE YIELD EARNED OF 0.01%.  THIS
   BRINGS YOUR YTD INTEREST PAID TO       0.17.

FDIC
INSURED

105846-0814_06
BMFR1A



USAA
FEDERAL
SAVINGS
BANK

                                                                    PAGE    1

ROBERT J MUELLER

                                                                    0
                                                                   03

| ACCOUNT NUMBER | ACCOUNT TYPE | STATEMENT PERIOD |
|---|---|---|
| 705-9 | USAA CLASSIC CHECKING | 04/02/19 - 05/02/19 |



       DEPOSITS AND OTHER CREDITS
DATE..........AMOUNT.TRANSACTION DESCRIPTION
04/08      2,000.00 ACH CREDIT              040819
                    WELLS FARGO IFI  DDA TO DDA ***********CB3K
04/16        100.00 USAA FUNDS TRANSFER CR
                    FROM Robert Mueller
                    CHECKING     #6407, CONF# 1986774621
04/16        160.00 USAA FUNDS TRANSFER CR
                    FROM Robert Mueller
                    CHECKING     #6407, CONF# 1986741041
04/19        600.00 ACH CREDIT              041919
                    WELLS FARGO IFI  DDA TO DDA ***********BKM6
04/25      2,000.00 ACH CREDIT              042519
                    WELLS FARGO IFI  DDA TO DDA ***********5Y82
04/30     10,000.00 ACH CREDIT              043019
                    WELLS FARGO IFI  DDA TO DDA ***********M2WQ
05/01      3,000.00 ACH CREDIT              050119
                    WELLS FARGO IFI  DDA TO DDA ***********M47C

       OTHER DEBITS
DATE..........AMOUNT.TRANSACTION DESCRIPTION



FDIC
INSURED

# USAA FEDERAL SAVINGS BANK

10750 McDermott Freeway
San Antonio, TX 78288-0544
800-531-8722

**PLEASE EXAMINE THIS STATEMENT AT ONCE. IF NO ERROR IS REPORTED IN 60 DAYS, THIS STATEMENT WILL BE CONSIDERED CORRECT. ALL ITEMS ARE CREDITED SUBJECT TO PAYMENT.**

In Case of Errors or Questions About Your Electronic Transfers, Telephone us or Write us at the address and number listed at the top of this page as soon as you can, if you think your statement or receipt is wrong or if you need more information about a transfer on the statement or receipt. We must hear from you no later than 60 days after we sent you the FIRST statement on which the error or problem appeared.

- Tell us your name and account number (if any).
- Describe the error or the transfer you are unsure about, and explain as clearly as you can why you believe it is an error or why you need more information.
- Tell us the dollar amount of the suspected error.

We will investigate your complaint and will correct any error promptly. If we take more than 10 business days to do this, we will credit your account for the amount you think is in error, so that you will have the use of the money during the time it takes us to complete our investigation.

**THIS FORM IS PROVIDED TO HELP YOU RECONCILE THIS STATEMENT BALANCE TO YOUR CHECKBOOK BALANCE.**

## CHECKS OUTSTANDING
(Those written which have not been charged to your account)

| CHECK# | AMOUNT |
|--------|--------|
|        |        |
|        |        |
|        |        |
|        |        |
|        |        |
|        |        |
|        |        |
|        |        |
|        |        |
|        |        |
|        |        |
|        |        |
|        |        |
|        |        |
|        |        |
|        |        |
|        |        |
|        |        |
|        |        |
|        |        |
|        |        |
|        |        |
| **TOTAL** | $ |

### BANK BALANCE

(1) BALANCE THIS STATEMENT
(SHOWN ON FRONT PAGE)   $ _____

(2) ADD DEPOSITS NOT SHOWN ON
THIS STATEMENT (IF ANY)   + _____

(3) SUBTOTAL   $ _____

(4) SUBTRACT TOTAL OF CHECKS
OUTSTANDING (IF ANY)   - _____

(5) ADJUSTED BANK BALANCE   $ _____

### YOUR BALANCE

(6) CHECK REGISTER BALANCE   $ _____

(7) ADD CREDITS WHICH APPEAR
ON THIS STATEMENT THAT HAVE
NOT BEEN RECORDED IN YOUR
REGISTER (IF ANY)   + _____ *

(8) ADD INTEREST CREDITED TO
YOUR ACCOUNT (IF ANY)   + _____ *

(9) SUBTRACT OTHER CHARGES
(IF ANY)   - _____ *

(10) ADJUSTED CHECK REGISTER
BALANCE   $ _____
* Be sure to record in your check register.

Line 5 and Line 10 should now agree. If not, check the following items in your register:

-Are all deposits accounted for?
-Are all amounts entered correctly?
-Are all automatic transactions accounted for?
-Are all additions and subtractions accurate?



**TERMS AND CONDITIONS: All transactions are subject to the USAA Federal Savings Bank Depository Agreement.**

126405-0714
BM1BCK



USAA
FEDERAL
SAVINGS
BANK

PAGE   2

ROBERT J MUELLER

0
03

| ACCOUNT NUMBER | ACCOUNT TYPE | STATEMENT PERIOD |
|---|---|---|
| ███705-9 | USAA CLASSIC CHECKING | 04/02/19 - 05/02/19 |

    OTHER DEBITS
DATE..........AMOUNT.TRANSACTION DESCRIPTION



05/01      12,000.00 WIRE OUT
                 001190501261808



FDIC
INSURED



USAA
FEDERAL
SAVINGS
BANK

PAGE    1

ROBERT J MUELLER

0
03

| ACCOUNT NUMBER | ACCOUNT TYPE | STATEMENT PERIOD |
|---|---|---|
| ███705-9 | USAA CLASSIC CHECKING | 05/02/19 - 06/04/19 |



```
     DEPOSITS AND OTHER CREDITS
DATE.........AMOUNT.TRANSACTION DESCRIPTION
05/13      2,400.00 ACH CREDIT           051319
                    WELLS FARGO IFI  DDA TO DDA **********FSWK
05/14      7,000.00 ACH CREDIT           051419
                    POLICY SERVICES  PAYROLL   **********699X
05/14     15,000.00 ACH CREDIT           051419
                    WELLS FARGO IFI  DDA TO DDA **********G3JQ
05/23     15,000.00 WIRE IN
                    001190523345944
05/28     10,000.00 WIRE IN
                    001190528359404
06/04          0.05 INTEREST PAID

     OTHER DEBITS
DATE.........AMOUNT.TRANSACTION DESCRIPTION
```



FDIC
INSURED

93526-0814_05
BM1FRT

# USAA FEDERAL SAVINGS BANK

10750 McDermott Freeway
San Antonio, TX 78288-0544
800-531-8722

**PLEASE EXAMINE THIS STATEMENT AT ONCE. IF NO ERROR IS REPORTED IN 60 DAYS, THIS STATEMENT WILL BE CONSIDERED CORRECT. ALL ITEMS ARE CREDITED SUBJECT TO PAYMENT.**

In Case of Errors or Questions About Your Electronic Transfers, Telephone us or Write us at the address and number listed at the top of this page as soon as you can, if you think your statement or receipt is wrong or if you need more information about a transfer on the statement or receipt. We must hear from you no later than 60 days after we sent you the FIRST statement on which the error or problem appeared.

- Tell us your name and account number (if any).
- Describe the error or the transfer you are unsure about, and explain as clearly as you can why you believe it is an error or why you need more information.
- Tell us the dollar amount of the suspected error.

We will investigate your complaint and will correct any error promptly. If we take more than 10 business days to do this, we will credit your account for the amount you think is in error, so that you will have the use of the money during the time it takes us to complete our investigation.

### THIS FORM IS PROVIDED TO HELP YOU RECONCILE THIS STATEMENT BALANCE TO YOUR CHECKBOOK BALANCE.

## CHECKS OUTSTANDING
(Those written which have not
been charged to your account)

| CHECK# | AMOUNT |
|--------|--------|
|        |        |
|        |        |
|        |        |
|        |        |
|        |        |
|        |        |
|        |        |
|        |        |
|        |        |
|        |        |
|        |        |
|        |        |
|        |        |
|        |        |
|        |        |
|        |        |
|        |        |
|        |        |
|        |        |
|        |        |
|        |        |
|        |        |
| **TOTAL** | $ |

## BANK BALANCE

(1) BALANCE THIS STATEMENT
(SHOWN ON FRONT PAGE)            $ _____

(2) ADD DEPOSITS NOT SHOWN ON
THIS STATEMENT (IF ANY)          + _____

(3) SUBTOTAL                     $ _____

(4) SUBTRACT TOTAL OF CHECKS
OUTSTANDING (IF ANY)             - _____

(5) ADJUSTED BANK BALANCE        $ _____

## YOUR BALANCE

(6) CHECK REGISTER BALANCE       $ _____

(7) ADD CREDITS WHICH APPEAR
ON THIS STATEMENT THAT HAVE
NOT BEEN RECORDED IN YOUR
REGISTER (IF ANY)                + _____ *

(8) ADD INTEREST CREDITED TO
YOUR ACCOUNT (IF ANY)            + _____ *

(9) SUBTRACT OTHER CHARGES
(IF ANY)                         - _____ *

(10) ADJUSTED CHECK REGISTER
BALANCE                          $ _____
* Be sure to record in your check register.

Line 5 and Line 10 should now agree. If not, check the following items in your register:

-Are all deposits accounted for?
-Are all amounts entered correctly?
-Are all automatic transactions accounted for?
-Are all additions and subtractions accurate?



**TERMS AND CONDITIONS: All transactions are subject to the USAA Federal Savings Bank Depository Agreement.**

126405-0714
BM1BCK



USAA
FEDERAL
SAVINGS
BANK

PAGE   2

ROBERT J MUELLER

0
03

| ACCOUNT NUMBER | ACCOUNT TYPE | STATEMENT PERIOD |
|---|---|---|
| 705-9 | USAA CLASSIC CHECKING | 05/02/19 - 06/04/19 |

```
     OTHER DEBITS
   DATE.........AMOUNT.TRANSACTION DESCRIPTION
```



```
   05/24      18,000.00 WIRE OUT
                        001190524349839
   05/24          20.00 WIRE FEE
                        0011905243498
```



FDIC
INSURED


USAA
FEDERAL
SAVINGS
BANK

PAGE   3

ROBERT J MUELLER

0
03

| ACCOUNT NUMBER | ACCOUNT TYPE | STATEMENT PERIOD |
|---|---|---|
| ███705-9 | USAA CLASSIC CHECKING | 05/02/19 - 06/04/19 |



```
* * * * * * * *   INTEREST PAID INFORMATION   * * * * * * * *
YOUR INTEREST PAID WAS CALCULATED USING YOUR DAILY BALANCE FOR
33 DAYS FOR AN ANNUAL PERCENTAGE YIELD EARNED OF 0.01%.  THIS
BRINGS YOUR YTD INTEREST PAID TO        0.24.
```

FDIC
INSURED



USAA
FEDERAL
SAVINGS
BANK

PAGE    1

ROBERT J MUELLER

0
03

| ACCOUNT NUMBER | ACCOUNT TYPE | STATEMENT PERIOD |
|---|---|---|
| ▮▮▮705-9 | USAA CLASSIC CHECKING | 06/04/19 - 07/02/19 |

     DEPOSITS AND OTHER CREDITS
DATE.........AMOUNT.TRANSACTION DESCRIPTION
06/26      15,000.00 WIRE IN
                     001190626478643
06/28       5,000.00 ACH CREDIT            062819
                     POLICY SERVICES  PAYROLL     ***********167X
07/02           0.02 INTEREST PAID

     OTHER DEBITS
DATE.........AMOUNT.TRANSACTION DESCRIPTION



FDIC
INSURED

93526-0814_05
BM1FRT

# USAA FEDERAL SAVINGS BANK

10750 McDermott Freeway
San Antonio, TX 78288-0544
800-531-8722

**PLEASE EXAMINE THIS STATEMENT AT ONCE. IF NO ERROR IS REPORTED IN 60 DAYS, THIS STATEMENT WILL BE CONSIDERED CORRECT. ALL ITEMS ARE CREDITED SUBJECT TO PAYMENT.**

In Case of Errors or Questions About Your Electronic Transfers, Telephone us or Write us at the address and number listed at the top of this page as soon as you can, if you think your statement or receipt is wrong or if you need more information about a transfer on the statement or receipt. We must hear from you no later than 60 days after we sent you the FIRST statement on which the error or problem appeared.

- • Tell us your name and account number (if any).
- • Describe the error or the transfer you are unsure about, and explain as clearly as you can why you believe it is an error or why you need more information.
- • Tell us the dollar amount of the suspected error.

We will investigate your complaint and will correct any error promptly. If we take more than 10 business days to do this, we will credit your account for the amount you think is in error, so that you will have the use of the money during the time it takes us to complete our investigation.

**THIS FORM IS PROVIDED TO HELP YOU RECONCILE THIS STATEMENT BALANCE TO YOUR CHECKBOOK BALANCE.**

## CHECKS OUTSTANDING
(Those written which have not
been charged to your account)

| CHECK# | AMOUNT |
|--------|--------|
|        |        |
|        |        |
|        |        |
|        |        |
|        |        |
|        |        |
|        |        |
|        |        |
|        |        |
|        |        |
|        |        |
|        |        |
|        |        |
|        |        |
|        |        |
|        |        |
|        |        |
|        |        |
|        |        |
|        |        |
|        |        |
| **TOTAL** | $ |

## BANK BALANCE

(1) **BALANCE THIS STATEMENT**
    **(SHOWN ON FRONT PAGE)**            $ _____

(2) **ADD DEPOSITS NOT SHOWN ON**
    **THIS STATEMENT (IF ANY)**          + _____

(3) **SUBTOTAL**                         $ _____

(4) **SUBTRACT TOTAL OF CHECKS**
    **OUTSTANDING (IF ANY)**             - _____

(5) **ADJUSTED BANK BALANCE**            $ _____

## YOUR BALANCE

(6) **CHECK REGISTER BALANCE**           $ _____

(7) **ADD CREDITS WHICH APPEAR**
    **ON THIS STATEMENT THAT HAVE**
    **NOT BEEN RECORDED IN YOUR**
    **REGISTER (IF ANY)**                + _____ *

(8) **ADD INTEREST CREDITED TO**
    **YOUR ACCOUNT (IF ANY)**            + _____ *

(9) **SUBTRACT OTHER CHARGES**
    **(IF ANY)**                         - _____ *

(10) **ADJUSTED CHECK REGISTER**
     **BALANCE**                         $ _____
     * Be sure to record in your check register.

Line 5 and Line 10 should now agree. If not, check the following items in your register:

-Are all deposits accounted for?
-Are all amounts entered correctly?
-Are all automatic transactions accounted for?
-Are all additions and subtractions accurate?



**TERMS AND CONDITIONS:  All transactions are subject to the USAA Federal Savings Bank Depository Agreement.**

126405-0714
BM1BCK



USAA
FEDERAL
SAVINGS
BANK

PAGE    2

ROBERT J MUELLER

0
03

| ACCOUNT NUMBER | ACCOUNT TYPE | STATEMENT PERIOD |
|---|---|---|
| ████705-9 | USAA CLASSIC CHECKING | 06/04/19 - 07/02/19 |

OTHER DEBITS
DATE..........AMOUNT.TRANSACTION DESCRIPTION
06/26       4,000.00 USAA FUNDS TRANSFER DB
              TO Mb Hale Ohana Rev Tr
              CHECKING    #3621, CONF# 2086137033



    * * * * * * * *   INTEREST PAID INFORMATION   * * * * * * * *
   YOUR INTEREST PAID WAS CALCULATED USING YOUR DAILY BALANCE FOR
  28 DAYS FOR AN ANNUAL PERCENTAGE YIELD EARNED OF 0.01%.  THIS
   BRINGS YOUR YTD INTEREST PAID TO       0.26.

FDIC
INSURED

105846-0814_06
BMFR1A



USAA
FEDERAL
SAVINGS
BANK

PAGE    1

ROBERT J MUELLER

0
03

| ACCOUNT NUMBER | ACCOUNT TYPE | STATEMENT PERIOD |
|---|---|---|
| ████705-9 | USAA CLASSIC CHECKING | 07/02/19 - 08/02/19 |



```
     DEPOSITS AND OTHER CREDITS
DATE.........AMOUNT.TRANSACTION DESCRIPTION
07/03     15,000.00 ACH CREDIT            070319
                    WELLS FARGO IFI  DDA TO DDA ***********4MKY
07/03     31,150.00 WIRE IN
                    001190703514058
07/25     25,000.00 ACH CREDIT            072519
                    POLICY SERVICES  PAYROLL    ***********183X
08/02          0.10 INTEREST PAID

     OTHER DEBITS
DATE.........AMOUNT.TRANSACTION DESCRIPTION
```



```
07/03      1,800.00 USAA FUNDS TRANSFER DB
                    TO Mb Hale Ohana Rev Tr
                    CHECKING    #3621, CONF# 2098477931
```



FDIC
INSURED

93526-0814_05
BM1FRT

# USAA FEDERAL SAVINGS BANK

10750 McDermott Freeway
San Antonio, TX 78288-0544
800-531-8722

**PLEASE EXAMINE THIS STATEMENT AT ONCE. IF NO ERROR IS REPORTED IN 60 DAYS, THIS STATEMENT WILL BE CONSIDERED CORRECT. ALL ITEMS ARE CREDITED SUBJECT TO PAYMENT.**

In Case of Errors or Questions About Your Electronic Transfers, Telephone us or Write us at the address and number listed at the top of this page as soon as you can, if you think your statement or receipt is wrong or if you need more information about a transfer on the statement or receipt. We must hear from you no later than 60 days after we sent you the FIRST statement on which the error or problem appeared.

- Tell us your name and account number (if any).
- Describe the error or the transfer you are unsure about, and explain as clearly as you can why you believe it is an error or why you need more information.
- Tell us the dollar amount of the suspected error.

We will investigate your complaint and will correct any error promptly. If we take more than 10 business days to do this, we will credit your account for the amount you think is in error, so that you will have the use of the money during the time it takes us to complete our investigation.

### THIS FORM IS PROVIDED TO HELP YOU RECONCILE THIS STATEMENT BALANCE TO YOUR CHECKBOOK BALANCE.

## CHECKS OUTSTANDING
(Those written which have not
been charged to your account)

| CHECK# | AMOUNT |
|--------|--------|
|        |        |
|        |        |
|        |        |
|        |        |
|        |        |
|        |        |
|        |        |
|        |        |
|        |        |
|        |        |
|        |        |
|        |        |
|        |        |
|        |        |
|        |        |
|        |        |
|        |        |
|        |        |
|        |        |
|        |        |
|        |        |
|        |        |
| **TOTAL** | $ |

## BANK BALANCE

**(1) BALANCE THIS STATEMENT
(SHOWN ON FRONT PAGE)**          $ _____

**(2) ADD DEPOSITS NOT SHOWN ON
THIS STATEMENT (IF ANY)**          + _____

**(3) SUBTOTAL**          $ _____

**(4) SUBTRACT TOTAL OF CHECKS
OUTSTANDING (IF ANY)**          - _____

**(5) ADJUSTED BANK BALANCE**          $ _____

## YOUR BALANCE

**(6) CHECK REGISTER BALANCE**          $ _____

**(7) ADD CREDITS WHICH APPEAR
ON THIS STATEMENT THAT HAVE
NOT BEEN RECORDED IN YOUR
REGISTER (IF ANY)**          + _____  *

**(8) ADD INTEREST CREDITED TO
YOUR ACCOUNT (IF ANY)**          + _____  *

**(9) SUBTRACT OTHER CHARGES
(IF ANY)**          - _____  *

**(10) ADJUSTED CHECK REGISTER
BALANCE**          $ _____
   * Be sure to record in your check register.

### Line 5 and Line 10 should now agree. If not, check the following items in your register:

-Are all deposits accounted for?
-Are all amounts entered correctly?
-Are all automatic transactions accounted for?
-Are all additions and subtractions accurate?



**TERMS AND CONDITIONS:  All transactions are subject to the USAA Federal Savings Bank Depository Agreement.**

126405-0714
BM1BCK



USAA
FEDERAL
SAVINGS
BANK

PAGE    2

ROBERT J MUELLER

0
03

| ACCOUNT NUMBER | ACCOUNT TYPE | STATEMENT PERIOD |
|---|---|---|
| ████705-9 | USAA CLASSIC CHECKING | 07/02/19 - 08/02/19 |

OTHER DEBITS
DATE.........AMOUNT.TRANSACTION DESCRIPTION



```
07/25     3,000.00  USAA FUNDS TRANSFER DB
                    TO Mb Hale Ohana Rev Tr
                    CHECKING     #3621, CONF# 2128142815
```

```
07/29     5,000.00  USAA FUNDS TRANSFER DB
                    TO Mb Hale Ohana Rev Tr
                    CHECKING     #3621, CONF# 2131355383
```



FDIC
INSURED



USAA
FEDERAL
SAVINGS
BANK

PAGE    3

ROBERT J MUELLER

0
03

| ACCOUNT NUMBER | ACCOUNT TYPE | STATEMENT PERIOD |
|---|---|---|
| ████705-9 | USAA CLASSIC CHECKING | 07/02/19 - 08/02/19 |



```
* * * * * * * *   INTEREST PAID INFORMATION   * * * * * * * *
 YOUR INTEREST PAID WAS CALCULATED USING YOUR DAILY BALANCE FOR
31 DAYS FOR AN ANNUAL PERCENTAGE YIELD EARNED OF 0.01%.  THIS
 BRINGS YOUR YTD INTEREST PAID TO        0.36.
```

FDIC
INSURED



USAA
FEDERAL
SAVINGS
BANK

PAGE    1

ROBERT J MUELLER

0
03

| ACCOUNT NUMBER | ACCOUNT TYPE | STATEMENT PERIOD |
|---|---|---|
| ███705-9 | USAA CLASSIC CHECKING | 08/02/19 - 09/04/19 |



        DEPOSITS AND OTHER CREDITS
DATE.........AMOUNT.TRANSACTION DESCRIPTION
08/22      50,234.92 ACH CREDIT          082219
                     POLICY SERVICES   PAYROLL    ***********173X
09/04      25,000.00 ACH CREDIT          090519
                     POLICY SERVICES   PAYROLL    ***********063X
09/04          0.06 INTEREST PAID

        OTHER DEBITS
DATE.........AMOUNT.TRANSACTION DESCRIPTION





FDIC
INSURED

93526-0814_05
BM1FRT

# USAA FEDERAL SAVINGS BANK

10750 McDermott Freeway
San Antonio, TX 78288-0544
800-531-8722

**PLEASE EXAMINE THIS STATEMENT AT ONCE. IF NO ERROR IS REPORTED IN 60 DAYS, THIS STATEMENT WILL BE CONSIDERED CORRECT. ALL ITEMS ARE CREDITED SUBJECT TO PAYMENT.**

In Case of Errors or Questions About Your Electronic Transfers, Telephone us or Write us at the address and number listed at the top of this page as soon as you can, if you think your statement or receipt is wrong or if you need more information about a transfer on the statement or receipt. We must hear from you no later than 60 days after we sent you the FIRST statement on which the error or problem appeared.

- Tell us your name and account number (if any).
- Describe the error or the transfer you are unsure about, and explain as clearly as you can why you believe it is an error or why you need more information.
- Tell us the dollar amount of the suspected error.

We will investigate your complaint and will correct any error promptly. If we take more than 10 business days to do this, we will credit your account for the amount you think is in error, so that you will have the use of the money during the time it takes us to complete our investigation.

**THIS FORM IS PROVIDED TO HELP YOU RECONCILE THIS STATEMENT BALANCE TO YOUR CHECKBOOK BALANCE.**

## CHECKS OUTSTANDING
(Those written which have not been charged to your account)

| CHECK# | AMOUNT |
|--------|--------|
|        |        |
|        |        |
|        |        |
|        |        |
|        |        |
|        |        |
|        |        |
|        |        |
|        |        |
|        |        |
|        |        |
|        |        |
|        |        |
|        |        |
|        |        |
|        |        |
|        |        |
|        |        |
|        |        |
|        |        |
|        |        |
|        |        |
| **TOTAL** | $ |

### BANK BALANCE

(1) BALANCE THIS STATEMENT
(SHOWN ON FRONT PAGE)                    $ _____

(2) ADD DEPOSITS NOT SHOWN ON
THIS STATEMENT (IF ANY)                  + _____

(3) SUBTOTAL                              $ _____

(4) SUBTRACT TOTAL OF CHECKS
OUTSTANDING (IF ANY)                     - _____

(5) ADJUSTED BANK BALANCE                 $ _____

### YOUR BALANCE

(6) CHECK REGISTER BALANCE                $ _____

(7) ADD CREDITS WHICH APPEAR
ON THIS STATEMENT THAT HAVE
NOT BEEN RECORDED IN YOUR
REGISTER (IF ANY)                        + _____ *

(8) ADD INTEREST CREDITED TO
YOUR ACCOUNT (IF ANY)                    + _____ *

(9) SUBTRACT OTHER CHARGES
(IF ANY)                                 - _____ *

(10) ADJUSTED CHECK REGISTER
BALANCE                                  $ _____
* Be sure to record in your check register.

Line 5 and Line 10 should now agree. If not, check the following items in your register:

-Are all deposits accounted for?
-Are all amounts entered correctly?
-Are all automatic transactions accounted for?
-Are all additions and subtractions accurate?



**TERMS AND CONDITIONS:  All transactions are subject to the USAA Federal Savings Bank Depository Agreement.**

126405-0714
BM1BCK



USAA
FEDERAL
SAVINGS
BANK

PAGE    2

ROBERT J MUELLER

███████████     ████████

0
03

| ACCOUNT NUMBER | ACCOUNT TYPE | STATEMENT PERIOD |
|---|---|---|
| ███705-9 | USAA CLASSIC CHECKING | 08/02/19 - 09/04/19 |

    OTHER DEBITS
DATE.........AMOUNT.TRANSACTION DESCRIPTION
08/27    4,000.00 USAA FUNDS TRANSFER DB
                  TO Mb Hale Ohana Rev Tr
                  CHECKING    #3621, CONF# 2174431989





    * * * * * * *   INTEREST PAID INFORMATION   * * * * * * * *
    YOUR INTEREST PAID WAS CALCULATED USING YOUR DAILY BALANCE FOR
    33 DAYS FOR AN ANNUAL PERCENTAGE YIELD EARNED OF 0.01%.  THIS
    BRINGS YOUR YTD INTEREST PAID TO      0.42.

**FDIC**
INSURED



USAA
FEDERAL
SAVINGS
BANK

ROBERT MUELLER

PAGE    1

0
03



| ACCOUNT NUMBER | ACCOUNT TYPE | STATEMENT PERIOD |
|---|---|---|
| 705-9 | USAA CLASSIC CHECKING | 09/04/19 - 10/02/19 |

```
        DEPOSITS AND OTHER CREDITS
DATE.........AMOUNT.TRANSACTION DESCRIPTION
09/18      7,960.81 ACH CREDIT           091919
                    POLICY SERVICES   PAYROLL    ***********532X
10/02          0.06 INTEREST PAID

        OTHER DEBITS
DATE.........AMOUNT.TRANSACTION DESCRIPTION
```





FDIC
INSURED

93526-0814_05
BM1FRT

# USAA FEDERAL SAVINGS BANK

10750 McDermott Freeway
San Antonio, TX 78288-0544
800-531-8722

**PLEASE EXAMINE THIS STATEMENT AT ONCE. IF NO ERROR IS REPORTED IN 60 DAYS, THIS STATEMENT WILL BE CONSIDERED CORRECT. ALL ITEMS ARE CREDITED SUBJECT TO PAYMENT.**

In Case of Errors or Questions About Your Electronic Transfers, Telephone us or Write us at the address and number listed at the top of this page as soon as you can, if you think your statement or receipt is wrong or if you need more information about a transfer on the statement or receipt. We must hear from you no later than 60 days after we sent you the FIRST statement on which the error or problem appeared.

- Tell us your name and account number (if any).
- Describe the error or the transfer you are unsure about, and explain as clearly as you can why you believe it is an error or why you need more information.
- Tell us the dollar amount of the suspected error.

We will investigate your complaint and will correct any error promptly. If we take more than 10 business days to do this, we will credit your account for the amount you think is in error, so that you will have the use of the money during the time it takes us to complete our investigation.

**THIS FORM IS PROVIDED TO HELP YOU RECONCILE THIS STATEMENT BALANCE TO YOUR CHECKBOOK BALANCE.**

## CHECKS OUTSTANDING
(Those written which have not been charged to your account)

| CHECK# | AMOUNT |
|--------|--------|
|        |        |
|        |        |
|        |        |
|        |        |
|        |        |
|        |        |
|        |        |
|        |        |
|        |        |
|        |        |
|        |        |
|        |        |
|        |        |
|        |        |
|        |        |
|        |        |
|        |        |
|        |        |
|        |        |
|        |        |
|        |        |
|        |        |
| **TOTAL** | $ |

## BANK BALANCE

**(1) BALANCE THIS STATEMENT
(SHOWN ON FRONT PAGE)**          $ _____

**(2) ADD DEPOSITS NOT SHOWN ON
THIS STATEMENT (IF ANY)**          + _____

**(3) SUBTOTAL**          $ _____

**(4) SUBTRACT TOTAL OF CHECKS
OUTSTANDING (IF ANY)**          - _____

**(5) ADJUSTED BANK BALANCE**          $ _____

## YOUR BALANCE

**(6) CHECK REGISTER BALANCE**          $ _____

**(7) ADD CREDITS WHICH APPEAR
ON THIS STATEMENT THAT HAVE
NOT BEEN RECORDED IN YOUR
REGISTER (IF ANY)**          + _____ *

**(8) ADD INTEREST CREDITED TO
YOUR ACCOUNT (IF ANY)**          + _____ *

**(9) SUBTRACT OTHER CHARGES
(IF ANY)**          - _____ *

**(10) ADJUSTED CHECK REGISTER
BALANCE**          $ _____
   * Be sure to record in your check register.

Line 5 and Line 10 should now agree. If not, check the following items in your register:

-Are all deposits accounted for?
-Are all amounts entered correctly?
-Are all automatic transactions accounted for?
-Are all additions and subtractions accurate?

**TERMS AND CONDITIONS:** All transactions are subject to the USAA Federal Savings Bank Depository Agreement.



126405-0714
BM1BCK



USAA
FEDERAL
SAVINGS
BANK

ROBERT MUELLER

PAGE    2

0
03

| ACCOUNT NUMBER | ACCOUNT TYPE | STATEMENT PERIOD |
|---|---|---|
| ███705-9 | USAA CLASSIC CHECKING | 09/04/19 - 10/02/19 |

```
    OTHER DEBITS
DATE.........AMOUNT.TRANSACTION DESCRIPTION
09/30      4,000.00 USAA FUNDS TRANSFER DB
                    TO Mb Hale Ohana Rev Tr
                    CHECKING    #3621, CONF# 2223841363
```



```
    * * * * * * * *   INTEREST PAID INFORMATION   * * * * * * * *
    YOUR INTEREST PAID WAS CALCULATED USING YOUR DAILY BALANCE FOR
    28 DAYS FOR AN ANNUAL PERCENTAGE YIELD EARNED OF 0.01%.  THIS
    BRINGS YOUR YTD INTEREST PAID TO        0.48.
```

FDIC
INSURED



USAA
FEDERAL
SAVINGS
BANK

ROBERT MUELLER

PAGE    1



0
03

| ACCOUNT NUMBER | ACCOUNT TYPE | STATEMENT PERIOD |
|---|---|---|
| ███705-9 | USAA CLASSIC CHECKING | 10/02/19 - 11/04/19 |



         DEPOSITS AND OTHER CREDITS
DATE.........AMOUNT.TRANSACTION DESCRIPTION
10/04      1,669.96 ACH CREDIT            100419
                    POLICY SERVICES  PAYROLL    ***********930X
10/21      2,460.94 ACH CREDIT            102119
                    POLICY SERVICES  PAYROLL    ***********850X
10/30      7,436.00 DEPOSIT @ MOBILE
11/04          0.02 INTEREST PAID

         OTHER DEBITS
DATE.........AMOUNT.TRANSACTION DESCRIPTION



10/21        170.00 USAA FUNDS TRANSFER DB
                    TO Mb Hale Ohana Rev Tr
                    CHECKING     #3621, CONF# 2255038375



FDIC
INSURED

93526-0814_05
BM1FRT

# USAA FEDERAL SAVINGS BANK

10750 McDermott Freeway
San Antonio, TX 78288-0544
800-531-8722

**PLEASE EXAMINE THIS STATEMENT AT ONCE. IF NO ERROR IS REPORTED IN 60 DAYS, THIS STATEMENT WILL BE CONSIDERED CORRECT. ALL ITEMS ARE CREDITED SUBJECT TO PAYMENT.**

In Case of Errors or Questions About Your Electronic Transfers, Telephone us or Write us at the address and number listed at the top of this page as soon as you can, if you think your statement or receipt is wrong or if you need more information about a transfer on the statement or receipt. We must hear from you no later than 60 days after we sent you the FIRST statement on which the error or problem appeared.

  • Tell us your name and account number (if any).
  • Describe the error or the transfer you are unsure about, and explain as clearly as you can why you believe it is an error or why you need more information.
  • Tell us the dollar amount of the suspected error.

We will investigate your complaint and will correct any error promptly. If we take more than 10 business days to do this, we will credit your account for the amount you think is in error, so that you will have the use of the money during the time it takes us to complete our investigation.

**THIS FORM IS PROVIDED TO HELP YOU RECONCILE THIS STATEMENT BALANCE TO YOUR CHECKBOOK BALANCE.**

## CHECKS OUTSTANDING
(Those written which have not been charged to your account)

| CHECK# | AMOUNT |
|--------|--------|
|        |        |
|        |        |
|        |        |
|        |        |
|        |        |
|        |        |
|        |        |
|        |        |
|        |        |
|        |        |
|        |        |
|        |        |
|        |        |
|        |        |
|        |        |
|        |        |
|        |        |
|        |        |
|        |        |
|        |        |
|        |        |
| **TOTAL** | $ |

## BANK BALANCE

(1) **BALANCE THIS STATEMENT**
   **(SHOWN ON FRONT PAGE)**                $ _____

(2) **ADD DEPOSITS NOT SHOWN ON**
   **THIS STATEMENT (IF ANY)**              + _____

(3) **SUBTOTAL**                            $ _____

(4) **SUBTRACT TOTAL OF CHECKS**
   **OUTSTANDING (IF ANY)**                 - _____

(5) **ADJUSTED BANK BALANCE**               $ _____

## YOUR BALANCE

(6) **CHECK REGISTER BALANCE**              $ _____

(7) **ADD CREDITS WHICH APPEAR**
   **ON THIS STATEMENT THAT HAVE**
   **NOT BEEN RECORDED IN YOUR**
   **REGISTER (IF ANY)**                    + _____ *

(8) **ADD INTEREST CREDITED TO**
   **YOUR ACCOUNT (IF ANY)**                + _____ *

(9) **SUBTRACT OTHER CHARGES**
   **(IF ANY)**                             - _____ *

(10) **ADJUSTED CHECK REGISTER**
    **BALANCE**                             $ _____
   * Be sure to record in your check register.

Line 5 and Line 10 should now agree. If not, check the following items in your register:

-Are all deposits accounted for?
-Are all amounts entered correctly?
-Are all automatic transactions accounted for?
-Are all additions and subtractions accurate?



**TERMS AND CONDITIONS:  All transactions are subject to the USAA Federal Savings Bank Depository Agreement.**

126405-0714
BM1BCK



USAA
FEDERAL
SAVINGS
BANK

PAGE   2

ROBERT MUELLER

███████████████████
████████      ██████████

0
03

| ACCOUNT NUMBER | ACCOUNT TYPE | STATEMENT PERIOD |
|---|---|---|
| ███705-9 | USAA CLASSIC CHECKING | 10/02/19 - 11/04/19 |

```
      OTHER DEBITS
   DATE..........AMOUNT.TRANSACTION DESCRIPTION
```

███████████████████████████████████████████████████████

```
   10/31     4,000.00 USAA FUNDS TRANSFER DB
                      TO Mb Hale Ohana Rev Tr
                      CHECKING    #3621, CONF# 2269227293
```

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

```
   * * * * * * *  INTEREST PAID INFORMATION  * * * * * * * *
   YOUR INTEREST PAID WAS CALCULATED USING YOUR DAILY BALANCE FOR
   33 DAYS FOR AN ANNUAL PERCENTAGE YIELD EARNED OF 0.01%.  THIS
   BRINGS YOUR YTD INTEREST PAID TO        0.50.
```

**FDIC INSURED**



USAA
FEDERAL
SAVINGS
BANK

ROBERT MUELLER

PAGE    1

0
03

| ACCOUNT NUMBER | ACCOUNT TYPE | STATEMENT PERIOD |
|---|---|---|
| ███705-9 | USAA CLASSIC CHECKING | 11/04/19 - 12/03/19 |



```
    DEPOSITS AND OTHER CREDITS
DATE.........AMOUNT.TRANSACTION DESCRIPTION
12/02      6,017.25 ACH CREDIT           120219
                    POLICY SERVICES  PAYROLL    ***********860X
12/03          0.03 INTEREST PAID

    OTHER DEBITS
DATE.........AMOUNT.TRANSACTION DESCRIPTION
```



```
12/02      4,000.00 USAA FUNDS TRANSFER DB
                    TO Mb Hale Ohana Rev Tr
                    CHECKING    #3621, CONF# 2315388385
```



FDIC
INSURED

# USAA FEDERAL SAVINGS BANK

10750 McDermott Freeway
San Antonio, TX 78288-0544
800-531-8722

**PLEASE EXAMINE THIS STATEMENT AT ONCE. IF NO ERROR IS REPORTED IN 60 DAYS, THIS STATEMENT WILL BE CONSIDERED CORRECT. ALL ITEMS ARE CREDITED SUBJECT TO PAYMENT.**

In Case of Errors or Questions About Your Electronic Transfers, Telephone us or Write us at the address and number listed at the top of this page as soon as you can, if you think your statement or receipt is wrong or if you need more information about a transfer on the statement or receipt. We must hear from you no later than 60 days after we sent you the FIRST statement on which the error or problem appeared.

- Tell us your name and account number (if any).
- Describe the error or the transfer you are unsure about, and explain as clearly as you can why you believe it is an error or why you need more information.
- Tell us the dollar amount of the suspected error.

We will investigate your complaint and will correct any error promptly. If we take more than 10 business days to do this, we will credit your account for the amount you think is in error, so that you will have the use of the money during the time it takes us to complete our investigation.

### THIS FORM IS PROVIDED TO HELP YOU RECONCILE THIS STATEMENT BALANCE TO YOUR CHECKBOOK BALANCE.

## CHECKS OUTSTANDING
(Those written which have not
been charged to your account)

| CHECK# | AMOUNT |
|--------|--------|
|        |        |
|        |        |
|        |        |
|        |        |
|        |        |
|        |        |
|        |        |
|        |        |
|        |        |
|        |        |
|        |        |
|        |        |
|        |        |
|        |        |
|        |        |
|        |        |
|        |        |
|        |        |
|        |        |
|        |        |
|        |        |
|        |        |
| **TOTAL** | $ |

## BANK BALANCE

(1) BALANCE THIS STATEMENT
(SHOWN ON FRONT PAGE)                    $ _____

(2) ADD DEPOSITS NOT SHOWN ON
THIS STATEMENT (IF ANY)              + _____

(3) SUBTOTAL                                        $ _____

(4) SUBTRACT TOTAL OF CHECKS
OUTSTANDING (IF ANY)                 - _____

(5) ADJUSTED BANK BALANCE                $ _____

## YOUR BALANCE

(6) CHECK REGISTER BALANCE               $ _____

(7) ADD CREDITS WHICH APPEAR
ON THIS STATEMENT THAT HAVE
NOT BEEN RECORDED IN YOUR
REGISTER (IF ANY)                    + _____ *

(8) ADD INTEREST CREDITED TO
YOUR ACCOUNT (IF ANY)                + _____ *

(9) SUBTRACT OTHER CHARGES
(IF ANY)                             - _____ *

(10) ADJUSTED CHECK REGISTER
BALANCE                              $ _____
* Be sure to record in your check register.

Line 5 and Line 10 should now agree. If not, check the following items in your register:

-Are all deposits accounted for?
-Are all amounts entered correctly?
-Are all automatic transactions accounted for?
-Are all additions and subtractions accurate?



**TERMS AND CONDITIONS:** All transactions are subject to the USAA Federal Savings Bank Depository Agreement.

126405-0714
BM1BCK



USAA
FEDERAL
SAVINGS
BANK

ROBERT MUELLER

PAGE    2

0
03

| ACCOUNT NUMBER | ACCOUNT TYPE | STATEMENT PERIOD |
|---|---|---|
| 0███████705-9 | USAA CLASSIC CHECKING | 11/04/19 - 12/03/19 |



* * * * * * * *   INTEREST PAID INFORMATION   * * * * * * * *
YOUR INTEREST PAID WAS CALCULATED USING YOUR DAILY BALANCE FOR
29 DAYS FOR AN ANNUAL PERCENTAGE YIELD EARNED OF 0.01%.  THIS
BRINGS YOUR YTD INTEREST PAID TO        0.53.

FDIC
INSURED



USAA
FEDERAL
SAVINGS
BANK

PAGE    1

ROBERT MUELLER

0
03

| ACCOUNT NUMBER | ACCOUNT TYPE | STATEMENT PERIOD |
|---|---|---|
| 705-9 | USAA CLASSIC CHECKING | 01/03/20 - 02/04/20 |



```
       DEPOSITS AND OTHER CREDITS
DATE.........AMOUNT.TRANSACTION DESCRIPTION
01/09       9,235.00 ACH CREDIT      010920
                     POLICY SERVICES   PAYROLL    ***********893X
01/31       3,730.00 ACH CREDIT           013120
                     WELLS FARGO IFI  DDA TO DDA **********X3LD
02/04           0.03 INTEREST PAID

       OTHER DEBITS
DATE.........AMOUNT.TRANSACTION DESCRIPTION
```



```
01/09       4,000.00 USAA FUNDS TRANSFER DB
                     TO Mb Hale Ohana Rev Tr
                     CHECKING      #3621, CONF# 2371702419
```

FDIC
INSURED

93526-0814_05
BM1FRT

# USAA FEDERAL SAVINGS BANK

10750 McDermott Freeway
San Antonio, TX 78288-0544
800-531-8722

**PLEASE EXAMINE THIS STATEMENT AT ONCE. IF NO ERROR IS REPORTED IN 60 DAYS, THIS STATEMENT WILL BE CONSIDERED CORRECT. ALL ITEMS ARE CREDITED SUBJECT TO PAYMENT.**

In Case of Errors or Questions About Your Electronic Transfers, Telephone us or Write us at the address and number listed at the top of this page as soon as you can, if you think your statement or receipt is wrong or if you need more information about a transfer on the statement or receipt. We must hear from you no later than 60 days after we sent you the FIRST statement on which the error or problem appeared.

- Tell us your name and account number (if any).
- Describe the error or the transfer you are unsure about, and explain as clearly as you can why you believe it is an error or why you need more information.
- Tell us the dollar amount of the suspected error.

We will investigate your complaint and will correct any error promptly. If we take more than 10 business days to do this, we will credit your account for the amount you think is in error, so that you will have the use of the money during the time it takes us to complete our investigation.

**THIS FORM IS PROVIDED TO HELP YOU RECONCILE THIS STATEMENT BALANCE TO YOUR CHECKBOOK BALANCE.**

## CHECKS OUTSTANDING
(Those written which have not been charged to your account)

| CHECK# | AMOUNT |
|--------|--------|
|        |        |
|        |        |
|        |        |
|        |        |
|        |        |
|        |        |
|        |        |
|        |        |
|        |        |
|        |        |
|        |        |
|        |        |
|        |        |
|        |        |
|        |        |
|        |        |
|        |        |
|        |        |
|        |        |
|        |        |
| **TOTAL** | $ |

### BANK BALANCE

(1) **BALANCE THIS STATEMENT**
   **(SHOWN ON FRONT PAGE)**   $ _____

(2) **ADD DEPOSITS NOT SHOWN ON THIS STATEMENT (IF ANY)**   + _____

(3) **SUBTOTAL**   $ _____

(4) **SUBTRACT TOTAL OF CHECKS OUTSTANDING (IF ANY)**   - _____

(5) **ADJUSTED BANK BALANCE**   $ _____

### YOUR BALANCE

(6) **CHECK REGISTER BALANCE**   $ _____

(7) **ADD CREDITS WHICH APPEAR ON THIS STATEMENT THAT HAVE NOT BEEN RECORDED IN YOUR REGISTER (IF ANY)**   + _____ *

(8) **ADD INTEREST CREDITED TO YOUR ACCOUNT (IF ANY)**   + _____ *

(9) **SUBTRACT OTHER CHARGES (IF ANY)**   - _____ *

(10) **ADJUSTED CHECK REGISTER BALANCE**   $ _____

\* Be sure to record in your check register.

Line 5 and Line 10 should now agree. If not, check the following items in your register:

-Are all deposits accounted for?
-Are all amounts entered correctly?
-Are all automatic transactions accounted for?
-Are all additions and subtractions accurate?



**TERMS AND CONDITIONS: All transactions are subject to the USAA Federal Savings Bank Depository Agreement.**

126405-0714
BM1BCK



USAA
FEDERAL
SAVINGS
BANK

PAGE    2

ROBERT MUELLER

0
03

| ACCOUNT NUMBER | ACCOUNT TYPE | STATEMENT PERIOD |
|---|---|---|
| ████705-9 | USAA CLASSIC CHECKING | 01/03/20 - 02/04/20 |

OTHER DEBITS
DATE.........AMOUNT.TRANSACTION DESCRIPTION



01/31       3,200.00 USAA FUNDS TRANSFER DB
            TO Mb Hale Ohana Rev Tr
            CHECKING      #3621, CONF# 2403018263



  * * * * * * *   INTEREST PAID INFORMATION   * * * * * * * *
 YOUR INTEREST PAID WAS CALCULATED USING YOUR DAILY BALANCE FOR
32 DAYS FOR AN ANNUAL PERCENTAGE YIELD EARNED OF 0.01%.  THIS
 BRINGS YOUR YTD INTEREST PAID TO        0.05.



FDIC
INSURED



USAA
FEDERAL
SAVINGS
BANK

ROBERT MUELLER

PAGE    1



0
03

| ACCOUNT NUMBER | ACCOUNT TYPE | STATEMENT PERIOD |
|---|---|---|
| ███705-9 | USAA CLASSIC CHECKING | 02/04/20 - 03/03/20 |



      TRANSACTIONS OCCURRING ON THE FIRST DATE OF THE STATEMENT
    PERIOD WERE INCLUDED ON THE PREVIOUS STATEMENT.


      DEPOSITS AND OTHER CREDITS
    DATE.........AMOUNT.TRANSACTION DESCRIPTION
    02/18      6,013.25 ACH CREDIT     021820
                        POLICY SERVICES  PAYROLL    ***********428X
    02/27      5,000.00 ACH CREDIT           022720
                        WELLS FARGO IFI  DDA TO DDA ***********SLS6
    03/03          0.02 INTEREST PAID

      OTHER DEBITS
    DATE.........AMOUNT.TRANSACTION DESCRIPTION



FDIC
INSURED

93526-0814_05
BM1FRT

# USAA FEDERAL SAVINGS BANK

10750 McDermott Freeway
San Antonio, TX 78288-0544
800-531-8722

**PLEASE EXAMINE THIS STATEMENT AT ONCE. IF NO ERROR IS REPORTED IN 60 DAYS, THIS STATEMENT WILL BE CONSIDERED CORRECT. ALL ITEMS ARE CREDITED SUBJECT TO PAYMENT.**

In Case of Errors or Questions About Your Electronic Transfers, Telephone us or Write us at the address and number listed at the top of this page as soon as you can, if you think your statement or receipt is wrong or if you need more information about a transfer on the statement or receipt. We must hear from you no later than 60 days after we sent you the FIRST statement on which the error or problem appeared.

- Tell us your name and account number (if any).
- Describe the error or the transfer you are unsure about, and explain as clearly as you can why you believe it is an error or why you need more information.
- Tell us the dollar amount of the suspected error.

We will investigate your complaint and will correct any error promptly. If we take more than 10 business days to do this, we will credit your account for the amount you think is in error, so that you will have the use of the money during the time it takes us to complete our investigation.

**THIS FORM IS PROVIDED TO HELP YOU RECONCILE THIS STATEMENT BALANCE TO YOUR CHECKBOOK BALANCE.**

## CHECKS OUTSTANDING
(Those written which have not been charged to your account)

| CHECK# | AMOUNT |
|--------|--------|
|        |        |
|        |        |
|        |        |
|        |        |
|        |        |
|        |        |
|        |        |
|        |        |
|        |        |
|        |        |
|        |        |
|        |        |
|        |        |
|        |        |
|        |        |
|        |        |
|        |        |
|        |        |
|        |        |
|        |        |
|        |        |
| **TOTAL** | $ |

## BANK BALANCE

(1) **BALANCE THIS STATEMENT
(SHOWN ON FRONT PAGE)**      $ _____

(2) **ADD DEPOSITS NOT SHOWN ON
THIS STATEMENT (IF ANY)**      + _____

(3) **SUBTOTAL**      $ _____

(4) **SUBTRACT TOTAL OF CHECKS
OUTSTANDING (IF ANY)**      - _____

(5) **ADJUSTED BANK BALANCE**      $ _____

## YOUR BALANCE

(6) **CHECK REGISTER BALANCE**      $ _____

(7) **ADD CREDITS WHICH APPEAR
ON THIS STATEMENT THAT HAVE
NOT BEEN RECORDED IN YOUR
REGISTER (IF ANY)**      + _____ *

(8) **ADD INTEREST CREDITED TO
YOUR ACCOUNT (IF ANY)**      + _____ *

(9) **SUBTRACT OTHER CHARGES
(IF ANY)**      - _____ *

(10) **ADJUSTED CHECK REGISTER
BALANCE**      $ _____
    * Be sure to record in your check register.

Line 5 and Line 10 should now agree. If not, check the following items in your register:

**-Are all deposits accounted for?**
**-Are all amounts entered correctly?**
**-Are all automatic transactions accounted for?**
**-Are all additions and subtractions accurate?**



**TERMS AND CONDITIONS: All transactions are subject to the USAA Federal Savings Bank Depository Agreement.**

126405-0714
BM1BCK



USAA
FEDERAL
SAVINGS
BANK
USAA®

PAGE   2

ROBERT MUELLER

██████████████████
██████████████████

0
03

| ACCOUNT NUMBER | ACCOUNT TYPE | STATEMENT PERIOD |
|---|---|---|
| ███705-9 | USAA CLASSIC CHECKING | 02/04/20 - 03/03/20 |

```
   OTHER DEBITS
DATE.........AMOUNT.TRANSACTION DESCRIPTION
02/28     4,000.00 USAA FUNDS TRANSFER DB
          TO Mb Hale Ohana Rev Tr
          CHECKING    #3621, CONF# 2445842739
```



```
 * * * * * * *   INTEREST PAID INFORMATION  * * * * * * *
 YOUR INTEREST PAID WAS CALCULATED USING YOUR DAILY BALANCE FOR
28 DAYS FOR AN ANNUAL PERCENTAGE YIELD EARNED OF 0.01%.  THIS
 BRINGS YOUR YTD INTEREST PAID TO       0.07.
```

FDIC
INSURED



USAA
FEDERAL
SAVINGS
BANK

PAGE     1

ROBERT MUELLER

0
03

| ACCOUNT NUMBER | ACCOUNT TYPE | STATEMENT PERIOD |
|---|---|---|
| ███705-9 | USAA CLASSIC CHECKING | 03/03/20 - 04/02/20 |



DEPOSITS AND OTHER CREDITS
DATE.........AMOUNT.TRANSACTION DESCRIPTION
```
03/25      5,000.00 ACH CREDIT               032520
                    WELLS FARGO IFI  DDA TO DDA **********G3DG
03/27     31,510.00 ACH CREDIT               032720
                    POLICY SERVICES  PAYROLL     **********173X
04/02          0.05 INTEREST PAID
```

OTHER DEBITS
DATE.........AMOUNT.TRANSACTION DESCRIPTION



```
03/25      3,000.00 USAA FUNDS TRANSFER DB
                    TO Mb Hale Ohana Rev Tr
                    CHECKING    #3621, CONF# 2484219505
03/27      5,000.00 USAA FUNDS TRANSFER DB
                    TO Mb Hale Ohana Rev Tr
                    CHECKING    #3621, CONF# 2486743509
```



FDIC
INSURED

93526-0814_05
BM1FRT

# USAA FEDERAL SAVINGS BANK

10750 McDermott Freeway
San Antonio, TX 78288-0544
800-531-8722

**PLEASE EXAMINE THIS STATEMENT AT ONCE. IF NO ERROR IS REPORTED IN 60 DAYS, THIS STATEMENT WILL BE CONSIDERED CORRECT. ALL ITEMS ARE CREDITED SUBJECT TO PAYMENT.**

In Case of Errors or Questions About Your Electronic Transfers, Telephone us or Write us at the address and number listed at the top of this page as soon as you can, if you think your statement or receipt is wrong or if you need more information about a transfer on the statement or receipt. We must hear from you no later than 60 days after we sent you the FIRST statement on which the error or problem appeared.

- Tell us your name and account number (if any).
- Describe the error or the transfer you are unsure about, and explain as clearly as you can why you believe it is an error or why you need more information.
- Tell us the dollar amount of the suspected error.

We will investigate your complaint and will correct any error promptly. If we take more than 10 business days to do this, we will credit your account for the amount you think is in error, so that you will have the use of the money during the time it takes us to complete our investigation.

### THIS FORM IS PROVIDED TO HELP YOU RECONCILE THIS STATEMENT BALANCE TO YOUR CHECKBOOK BALANCE.

## CHECKS OUTSTANDING
(Those written which have not been charged to your account)

| CHECK# | AMOUNT |
|--------|--------|
|        |        |
|        |        |
|        |        |
|        |        |
|        |        |
|        |        |
|        |        |
|        |        |
|        |        |
|        |        |
|        |        |
|        |        |
|        |        |
|        |        |
|        |        |
|        |        |
|        |        |
|        |        |
|        |        |
|        |        |
|        |        |
|        |        |
|        |        |
| **TOTAL** | $ |

## BANK BALANCE

(1) BALANCE THIS STATEMENT
    (SHOWN ON FRONT PAGE)          $ _____

(2) ADD DEPOSITS NOT SHOWN ON
    THIS STATEMENT (IF ANY)        + _____

(3) SUBTOTAL                       $ _____

(4) SUBTRACT TOTAL OF CHECKS
    OUTSTANDING (IF ANY)           - _____

(5) ADJUSTED BANK BALANCE          $ _____

## YOUR BALANCE

(6) CHECK REGISTER BALANCE         $ _____

(7) ADD CREDITS WHICH APPEAR
    ON THIS STATEMENT THAT HAVE
    NOT BEEN RECORDED IN YOUR
    REGISTER (IF ANY)              + _____ *

(8) ADD INTEREST CREDITED TO
    YOUR ACCOUNT (IF ANY)          + _____ *

(9) SUBTRACT OTHER CHARGES
    (IF ANY)                       - _____ *

(10) ADJUSTED CHECK REGISTER
     BALANCE                       $ _____
     * Be sure to record in your check register.

Line 5 and Line 10 should now agree. If not, check the following items in your register:

-Are all deposits accounted for?
-Are all amounts entered correctly?
-Are all automatic transactions accounted for?
-Are all additions and subtractions accurate?

**TERMS AND CONDITIONS:** All transactions are subject to the USAA Federal Savings Bank Depository Agreement.



126405-0714
BM1BCK



USAA
FEDERAL
SAVINGS
BANK

ROBERT MUELLER                                        PAGE   2



                                                        0
                                                       03

| ACCOUNT NUMBER | ACCOUNT TYPE | STATEMENT PERIOD |
|---|---|---|
| ███705-9 | USAA CLASSIC CHECKING | 03/03/20 - 04/02/20 |

    OTHER DEBITS
  DATE.........AMOUNT.TRANSACTION DESCRIPTION



    * * * * * * * *   INTEREST PAID INFORMATION   * * * * * * * *
   YOUR INTEREST PAID WAS CALCULATED USING YOUR DAILY BALANCE FOR
  30 DAYS FOR AN ANNUAL PERCENTAGE YIELD EARNED OF 0.01%.  THIS
   BRINGS YOUR YTD INTEREST PAID TO        0.12.

FDIC
INSURED

105846-0814_06
BMFR1A

 USAA
FEDERAL
SAVINGS
BANK

ROBERT MUELLER



PAGE    1

0
03

| ACCOUNT NUMBER | ACCOUNT TYPE | STATEMENT PERIOD |
|---|---|---|
| ████705-9 | USAA CLASSIC CHECKING | 04/02/20 - 05/04/20 |



TRANSACTIONS OCCURRING ON THE FIRST DATE OF THE STATEMENT
PERIOD WERE INCLUDED ON THE PREVIOUS STATEMENT.


    DEPOSITS AND OTHER CREDITS
DATE.........AMOUNT.TRANSACTION DESCRIPTION
04/03     1,750.00 ACH CREDIT              040320
                   WELLS FARGO IFI  DDA TO DDA ***********9PPS
04/30     9,000.00 ACH CREDIT              043020
                   WELLS FARGO IFI  DDA TO DDA ***********S24N
05/01     1,186.79 ACH CREDIT              050120
                   POLICY SERVICES  PAYROLL    ***********636X
05/04         0.01 INTEREST PAID


    OTHER DEBITS
DATE.........AMOUNT.TRANSACTION DESCRIPTION



04/30     5,000.00 USAA FUNDS TRANSFER DB
                   TO Mb Hale Ohana Rev Tr
                   CHECKING    #3621, CONF# 2537065365

 FDIC
INSURED

# USAA FEDERAL SAVINGS BANK

10750 McDermott Freeway
San Antonio, TX 78288-0544
800-531-8722

**PLEASE EXAMINE THIS STATEMENT AT ONCE. IF NO ERROR IS REPORTED IN 60 DAYS, THIS STATEMENT WILL BE CONSIDERED CORRECT. ALL ITEMS ARE CREDITED SUBJECT TO PAYMENT.**

In Case of Errors or Questions About Your Electronic Transfers, Telephone us or Write us at the address and number listed at the top of this page as soon as you can, if you think your statement or receipt is wrong or if you need more information about a transfer on the statement or receipt. We must hear from you no later than 60 days after we sent you the FIRST statement on which the error or problem appeared.

- Tell us your name and account number (if any).
- Describe the error or the transfer you are unsure about, and explain as clearly as you can why you believe it is an error or why you need more information.
- Tell us the dollar amount of the suspected error.

We will investigate your complaint and will correct any error promptly. If we take more than 10 business days to do this, we will credit your account for the amount you think is in error, so that you will have the use of the money during the time it takes us to complete our investigation.

### THIS FORM IS PROVIDED TO HELP YOU RECONCILE THIS STATEMENT BALANCE TO YOUR CHECKBOOK BALANCE.

## CHECKS OUTSTANDING
(Those written which have not been charged to your account)

| CHECK# | AMOUNT |
|--------|--------|
|        |        |
|        |        |
|        |        |
|        |        |
|        |        |
|        |        |
|        |        |
|        |        |
|        |        |
|        |        |
|        |        |
|        |        |
|        |        |
|        |        |
|        |        |
|        |        |
|        |        |
|        |        |
|        |        |
|        |        |
|        |        |
|        |        |
| **TOTAL** | $ |

### BANK BALANCE

(1) BALANCE THIS STATEMENT
    (SHOWN ON FRONT PAGE)                $ _____

(2) ADD DEPOSITS NOT SHOWN ON
    THIS STATEMENT (IF ANY)             + _____

(3) SUBTOTAL                            $ _____

(4) SUBTRACT TOTAL OF CHECKS
    OUTSTANDING (IF ANY)                - _____

(5) ADJUSTED BANK BALANCE              $ _____

### YOUR BALANCE

(6) CHECK REGISTER BALANCE             $ _____

(7) ADD CREDITS WHICH APPEAR
    ON THIS STATEMENT THAT HAVE
    NOT BEEN RECORDED IN YOUR
    REGISTER (IF ANY)                  + _____ *

(8) ADD INTEREST CREDITED TO
    YOUR ACCOUNT (IF ANY)              + _____ *

(9) SUBTRACT OTHER CHARGES
    (IF ANY)                           - _____ *

(10) ADJUSTED CHECK REGISTER          $ _____
     BALANCE
     * Be sure to record in your check register.

Line 5 and Line 10 should now agree. If not, check the following items in your register:

-Are all deposits accounted for?
-Are all amounts entered correctly?
-Are all automatic transactions accounted for?
-Are all additions and subtractions accurate?



**TERMS AND CONDITIONS:  All transactions are subject to the USAA Federal Savings Bank Depository Agreement.**

126405-0714
BM1BCK



USAA
FEDERAL
SAVINGS
BANK

ROBERT MUELLER

PAGE    2



0
03

| ACCOUNT NUMBER | ACCOUNT TYPE | STATEMENT PERIOD |
|---|---|---|
| ▉705-9 | USAA CLASSIC CHECKING | 04/02/20 - 05/04/20 |



```
* * * * * * * *   INTEREST PAID INFORMATION   * * * * * * * *
 YOUR INTEREST PAID WAS CALCULATED USING YOUR DAILY BALANCE FOR
32 DAYS FOR AN ANNUAL PERCENTAGE YIELD EARNED OF 0.01%.  THIS
 BRINGS YOUR YTD INTEREST PAID TO        0.13.
```

**FDIC**
INSURED



USAA
FEDERAL
SAVINGS
BANK

PAGE    1

ROBERT MUELLER



0
03

| ACCOUNT NUMBER | ACCOUNT TYPE | STATEMENT PERIOD |
|---|---|---|
| ▮▮▮705-9 | USAA CLASSIC CHECKING | 05/04/20 - 06/02/20 |



Note  Fee reversals/refunds made by USAA will not reduce the totals on this chart.

TRANSACTIONS OCCURRING ON THE FIRST DATE OF THE STATEMENT
PERIOD WERE INCLUDED ON THE PREVIOUS STATEMENT.


    DEPOSITS AND OTHER CREDITS
DATE.........AMOUNT.TRANSACTION DESCRIPTION
05/05        250.00 USAA FUNDS TRANSFER CR
                    FROM Robert Mueller
                    CHECKING    #6407, CONF# 2546517357
05/05        500.00 USAA FUNDS TRANSFER CR
                    FROM Robert Mueller
                    CHECKING    #6407, CONF# 2546513217
05/12      5,000.00 ACH CREDIT          051220
                    WELLS FARGO IFI  DDA TO DDA ***********4HSS
05/28      4,725.00 ACH CREDIT          052820
                    POLICY SERVICES   PAYROLL    ***********361X
05/28      6,534.98 ACH CREDIT          052820
                    POLICY SERVICES   PAYROLL    ***********362X
06/02          0.02 INTEREST PAID

    OTHER DEBITS
DATE.........AMOUNT.TRANSACTION DESCRIPTION



05/12      2,000.00 USAA FUNDS TRANSFER DB
                    TO Mb Hale Ohana Rev Tr
                    CHECKING    #3621, CONF# 2555369671



FDIC
INSURED

93526-0814_05
BM1FRT

# USAA FEDERAL SAVINGS BANK

10750 McDermott Freeway
San Antonio, TX 78288-0544
800-531-8722

**PLEASE EXAMINE THIS STATEMENT AT ONCE. IF NO ERROR IS REPORTED IN 60 DAYS, THIS STATEMENT WILL BE CONSIDERED CORRECT. ALL ITEMS ARE CREDITED SUBJECT TO PAYMENT.**

In Case of Errors or Questions About Your Electronic Transfers, Telephone us or Write us at the address and number listed at the top of this page as soon as you can, if you think your statement or receipt is wrong or if you need more information about a transfer on the statement or receipt. We must hear from you no later than 60 days after we sent you the FIRST statement on which the error or problem appeared.

- • Tell us your name and account number (if any).
- • Describe the error or the transfer you are unsure about, and explain as clearly as you can why you believe it is an error or why you need more information.
- • Tell us the dollar amount of the suspected error.

We will investigate your complaint and will correct any error promptly. If we take more than 10 business days to do this, we will credit your account for the amount you think is in error, so that you will have the use of the money during the time it takes us to complete our investigation.

### THIS FORM IS PROVIDED TO HELP YOU RECONCILE THIS STATEMENT BALANCE TO YOUR CHECKBOOK BALANCE.

## CHECKS OUTSTANDING
(Those written which have not been charged to your account)

| CHECK# | AMOUNT |
|--------|--------|
|        |        |
|        |        |
|        |        |
|        |        |
|        |        |
|        |        |
|        |        |
|        |        |
|        |        |
|        |        |
|        |        |
|        |        |
|        |        |
|        |        |
|        |        |
|        |        |
|        |        |
|        |        |
|        |        |
|        |        |
|        |        |
| **TOTAL** | $ |

## BANK BALANCE

**(1) BALANCE THIS STATEMENT
(SHOWN ON FRONT PAGE)**          $ _____

**(2) ADD DEPOSITS NOT SHOWN ON
THIS STATEMENT (IF ANY)**          + _____

**(3) SUBTOTAL**          $ _____

**(4) SUBTRACT TOTAL OF CHECKS
OUTSTANDING (IF ANY)**          - _____

**(5) ADJUSTED BANK BALANCE**          $ _____

## YOUR BALANCE

**(6) CHECK REGISTER BALANCE**          $ _____

**(7) ADD CREDITS WHICH APPEAR
ON THIS STATEMENT THAT HAVE
NOT BEEN RECORDED IN YOUR
REGISTER (IF ANY)**          + _____ *

**(8) ADD INTEREST CREDITED TO
YOUR ACCOUNT (IF ANY)**          + _____ *

**(9) SUBTRACT OTHER CHARGES
(IF ANY)**          - _____ *

**(10) ADJUSTED CHECK REGISTER
BALANCE**          $ _____
* Be sure to record in your check register.

Line 5 and Line 10 should now agree. If not, check the following items in your register:

-Are all deposits accounted for?
-Are all amounts entered correctly?
-Are all automatic transactions accounted for?
-Are all additions and subtractions accurate?



**TERMS AND CONDITIONS:  All transactions are subject to the USAA Federal Savings Bank Depository Agreement.**

126405-0714
BM1BCK



USAA
FEDERAL
SAVINGS
BANK

ROBERT MUELLER

PAGE    2



0
03

| ACCOUNT NUMBER | ACCOUNT TYPE | STATEMENT PERIOD |
|---|---|---|
| ███705-9 | USAA CLASSIC CHECKING | 05/04/20 - 06/02/20 |

```
    OTHER DEBITS
DATE.........AMOUNT.TRANSACTION DESCRIPTION
```



```
05/29      4,000.00 USAA FUNDS TRANSFER DB
                    TO Mb Hale Ohana Rev Tr
                    CHECKING     #3621, CONF# 2579744765
```



FDIC
INSURED



USAA
FEDERAL
SAVINGS
BANK

ROBERT MUELLER

PAGE    3

0
03

| ACCOUNT NUMBER | ACCOUNT TYPE | STATEMENT PERIOD |
|---|---|---|
| ███ 705-9 | USAA CLASSIC CHECKING | 05/04/20 - 06/02/20 |

```
 *  *  *  *  *  *  *  *   INTEREST PAID INFORMATION   *  *  *  *  *  *  *  *
 YOUR INTEREST PAID WAS CALCULATED USING YOUR DAILY BALANCE FOR
29 DAYS FOR AN ANNUAL PERCENTAGE YIELD EARNED OF 0.01%.  THIS
 BRINGS YOUR YTD INTEREST PAID TO          0.15.
```

**FDIC**
INSURED



USAA
FEDERAL
SAVINGS
BANK

ROBERT MUELLER

PAGE    1

0
03

| ACCOUNT NUMBER | ACCOUNT TYPE | STATEMENT PERIOD |
|---|---|---|
| ██████705-9 | USAA CLASSIC CHECKING | 06/02/20 - 07/02/20 |



```
     DEPOSITS AND OTHER CREDITS
DATE.........AMOUNT.TRANSACTION DESCRIPTION
06/11      845.04 ACH CREDIT          061120
                  POLICY SERVICES  PAYROLL   ***********594X
06/24    9,342.50 ACH CREDIT          062520
                  POLICY SERVICES  PAYROLL   ***********608X
07/02        0.03 INTEREST PAID

     OTHER DEBITS
DATE.........AMOUNT.TRANSACTION DESCRIPTION
```



```
06/30    4,000.00 USAA FUNDS TRANSFER DB
                  TO Mb Hale Ohana Rev Tr
                  CHECKING    #3621, CONF# 2626360269
```



FDIC
INSURED

93526-0814_05
BM1FRT

# USAA FEDERAL SAVINGS BANK

10750 McDermott Freeway
San Antonio, TX 78288-0544
800-531-8722

**PLEASE EXAMINE THIS STATEMENT AT ONCE. IF NO ERROR IS REPORTED IN 60 DAYS, THIS STATEMENT WILL BE CONSIDERED CORRECT. ALL ITEMS ARE CREDITED SUBJECT TO PAYMENT.**

In Case of Errors or Questions About Your Electronic Transfers, Telephone us or Write us at the address and number listed at the top of this page as soon as you can, if you think your statement or receipt is wrong or if you need more information about a transfer on the statement or receipt. We must hear from you no later than 60 days after we sent you the FIRST statement on which the error or problem appeared.

- • Tell us your name and account number (if any).
- • Describe the error or the transfer you are unsure about, and explain as clearly as you can why you believe it is an error or why you need more information.
- • Tell us the dollar amount of the suspected error.

We will investigate your complaint and will correct any error promptly. If we take more than 10 business days to do this, we will credit your account for the amount you think is in error, so that you will have the use of the money during the time it takes us to complete our investigation.

**THIS FORM IS PROVIDED TO HELP YOU RECONCILE THIS STATEMENT BALANCE TO YOUR CHECKBOOK BALANCE.**

## CHECKS OUTSTANDING
(Those written which have not been charged to your account)

| CHECK# | AMOUNT |
|--------|--------|
|        |        |
|        |        |
|        |        |
|        |        |
|        |        |
|        |        |
|        |        |
|        |        |
|        |        |
|        |        |
|        |        |
|        |        |
|        |        |
|        |        |
|        |        |
|        |        |
|        |        |
|        |        |
|        |        |
|        |        |
|        |        |
| **TOTAL** | $ |

## BANK BALANCE

**(1) BALANCE THIS STATEMENT
     (SHOWN ON FRONT PAGE)**            $ _____

**(2) ADD DEPOSITS NOT SHOWN ON
     THIS STATEMENT (IF ANY)**          + _____

**(3) SUBTOTAL**                        $ _____

**(4) SUBTRACT TOTAL OF CHECKS
     OUTSTANDING (IF ANY)**             - _____

**(5) ADJUSTED BANK BALANCE**           $ _____

## YOUR BALANCE

**(6) CHECK REGISTER BALANCE**          $ _____

**(7) ADD CREDITS WHICH APPEAR
     ON THIS STATEMENT THAT HAVE
     NOT BEEN RECORDED IN YOUR
     REGISTER (IF ANY)**                + _____ *

**(8) ADD INTEREST CREDITED TO
     YOUR ACCOUNT (IF ANY)**            + _____ *

**(9) SUBTRACT OTHER CHARGES
     (IF ANY)**                         - _____ *

**(10) ADJUSTED CHECK REGISTER
      BALANCE**                         $ _____
      * Be sure to record in your check register.

Line 5 and Line 10 should now agree. If not, check the following items in your register:

-Are all deposits accounted for?
-Are all amounts entered correctly?
-Are all automatic transactions accounted for?
-Are all additions and subtractions accurate?



**TERMS AND CONDITIONS:** All transactions are subject to the USAA Federal Savings Bank Depository Agreement.

126405-0714
BM1BCK



USAA
FEDERAL
SAVINGS
BANK

ROBERT MUELLER

PAGE    2



0
03

| ACCOUNT NUMBER | ACCOUNT TYPE | STATEMENT PERIOD |
|---|---|---|
| ███705-9 | USAA CLASSIC CHECKING | 06/02/20 - 07/02/20 |



   * * * * * * * *   INTEREST PAID INFORMATION   * * * * * * * *
   YOUR INTEREST PAID WAS CALCULATED USING YOUR DAILY BALANCE FOR
  30 DAYS FOR AN ANNUAL PERCENTAGE YIELD EARNED OF 0.01%.  THIS
   BRINGS YOUR YTD INTEREST PAID TO       0.18.

**FDIC INSURED**

105846-0814_06
BMFR1A



USAA
FEDERAL
SAVINGS
BANK

ROBERT MUELLER

PAGE    1

0
03

| ACCOUNT NUMBER | ACCOUNT TYPE | STATEMENT PERIOD |
|---|---|---|
| ███705-9 | USAA CLASSIC CHECKING | 08/04/20 - 09/02/20 |

TRANSACTIONS OCCURRING ON THE FIRST DATE OF THE STATEMENT
PERIOD WERE INCLUDED ON THE PREVIOUS STATEMENT.


    DEPOSITS AND OTHER CREDITS
DATE.........AMOUNT.TRANSACTION DESCRIPTION
08/13          1.52 OD ADVANCE TSFR IN
                    OVERDRAFT PROTECTION FROM 0002254336
08/05      4,000.00 ACH CREDIT              080520
                    WELLS FARGO IFI  DDA TO DDA ***********46QB
08/10        360.00 USAA FUNDS TRANSFER CR
                    FROM Robert Mueller
                    CHECKING     #6407, CONF# 2689608401
08/18     35,000.00 WIRE IN
                    001200818101931
09/02          0.02 INTEREST PAID

    CHECKS
DATE..CHECK NO.........AMOUNT   DATE..CHECK NO..........AMOUNT

    OTHER DEBITS
DATE.........AMOUNT.TRANSACTION DESCRIPTION
08/05      5,000.00 USAA FUNDS TRANSFER DB
                    TO Mb Hale Ohana Rev Tr
                    CHECKING     #3621, CONF# 2683162781



FDIC
INSURED

93526-0814_05
BM1FRT

# USAA FEDERAL SAVINGS BANK

10750 McDermott Freeway
San Antonio, TX 78288-0544
800-531-8722

**PLEASE EXAMINE THIS STATEMENT AT ONCE. IF NO ERROR IS REPORTED IN 60 DAYS, THIS STATEMENT WILL BE CONSIDERED CORRECT. ALL ITEMS ARE CREDITED SUBJECT TO PAYMENT.**

In Case of Errors or Questions About Your Electronic Transfers, Telephone us or Write us at the address and number listed at the top of this page as soon as you can, if you think your statement or receipt is wrong or if you need more information about a transfer on the statement or receipt. We must hear from you no later than 60 days after we sent you the FIRST statement on which the error or problem appeared.

- Tell us your name and account number (if any).
- Describe the error or the transfer you are unsure about, and explain as clearly as you can why you believe it is an error or why you need more information.
- Tell us the dollar amount of the suspected error.

We will investigate your complaint and will correct any error promptly. If we take more than 10 business days to do this, we will credit your account for the amount you think is in error, so that you will have the use of the money during the time it takes us to complete our investigation.

**THIS FORM IS PROVIDED TO HELP YOU RECONCILE THIS STATEMENT BALANCE TO YOUR CHECKBOOK BALANCE.**

## CHECKS OUTSTANDING
(Those written which have not
been charged to your account)

| CHECK# | AMOUNT |
|--------|--------|
|        |        |
|        |        |
|        |        |
|        |        |
|        |        |
|        |        |
|        |        |
|        |        |
|        |        |
|        |        |
|        |        |
|        |        |
|        |        |
|        |        |
|        |        |
|        |        |
|        |        |
|        |        |
|        |        |
|        |        |
|        |        |
| **TOTAL** | $   |

### BANK BALANCE

(1) BALANCE THIS STATEMENT
     (SHOWN ON FRONT PAGE)          $ _____

(2) ADD DEPOSITS NOT SHOWN ON
     THIS STATEMENT (IF ANY)        + _____

(3) SUBTOTAL                        $ _____

(4) SUBTRACT TOTAL OF CHECKS
     OUTSTANDING (IF ANY)           - _____

(5) ADJUSTED BANK BALANCE           $ _____

### YOUR BALANCE

(6) CHECK REGISTER BALANCE          $ _____

(7) ADD CREDITS WHICH APPEAR
     ON THIS STATEMENT THAT HAVE
     NOT BEEN RECORDED IN YOUR
     REGISTER (IF ANY)              + _____ *

(8) ADD INTEREST CREDITED TO
     YOUR ACCOUNT (IF ANY)          + _____ *

(9) SUBTRACT OTHER CHARGES
     (IF ANY)                       - _____ *

(10) ADJUSTED CHECK REGISTER
      BALANCE                       $ _____
      * Be sure to record in your check register.

Line 5 and Line 10 should now agree. If not, check the following items in your register:

-Are all deposits accounted for?
-Are all amounts entered correctly?
-Are all automatic transactions accounted for?
-Are all additions and subtractions accurate?



**TERMS AND CONDITIONS:** All transactions are subject to the USAA Federal Savings Bank Depository Agreement.

126405-0714
BM1BCK



USAA
FEDERAL
SAVINGS
BANK

ROBERT MUELLER

PAGE    2

0
03

| ACCOUNT NUMBER | ACCOUNT TYPE | STATEMENT PERIOD |
|---|---|---|
| ███705-9 | USAA CLASSIC CHECKING | 08/04/20 - 09/02/20 |

OTHER DEBITS
DATE.........AMOUNT.TRANSACTION DESCRIPTION



* * * * * * * *   INTEREST PAID INFORMATION   * * * * * * * *
YOUR INTEREST PAID WAS CALCULATED USING YOUR DAILY BALANCE FOR
29 DAYS FOR AN ANNUAL PERCENTAGE YIELD EARNED OF 0.01%.  THIS
BRINGS YOUR YTD INTEREST PAID TO        0.23.



FDIC
INSURED





USAA
FEDERAL
SAVINGS
BANK

ROBERT MUELLER

PAGE    1



0
03

| ACCOUNT NUMBER | ACCOUNT TYPE | STATEMENT PERIOD |
|---|---|---|
| ████705-9 | USAA CLASSIC CHECKING | 09/02/20 - 10/02/20 |



TRANSACTIONS OCCURRING ON THE FIRST DATE OF THE STATEMENT
PERIOD WERE INCLUDED ON THE PREVIOUS STATEMENT.


     DEPOSITS AND OTHER CREDITS
DATE.........AMOUNT.TRANSACTION DESCRIPTION
09/03       7,425.00 ACH CREDIT             090320
                     POLICY SERVICES   PAYROLL   ***********576X
09/16       5,001.44 ACH CREDIT             091720
                     POLICY SERVICES   PAYROLL   ***********230X
09/29         350.00 USAA FUNDS TRANSFER CR
                     FROM Robert Mueller
                     CHECKING     #6407, CONF# 2765478587
09/30           0.43 ACH CREDIT             093020
                     WELLS FARGO IFI   TRIAL DEP  ***********DY5G
09/30           0.47 ACH CREDIT             093020
                     WELLS FARGO IFI   TRIAL DEP  ***********DY59
09/30         850.00 DEPOSIT @ MOBILE
10/01          50.00 USAA FUNDS TRANSFER CR
                     FROM Robert Mueller
                     CHECKING     #6407, CONF# 2770263239
10/02           0.02 INTEREST PAID

     OTHER DEBITS
DATE.........AMOUNT.TRANSACTION DESCRIPTION



09/03       5,000.00 USAA FUNDS TRANSFER DB
                     TO Mb Hale Ohana Rev Tr
                     CHECKING     #3621, CONF# 2728321179



FDIC
INSURED

93526-0814_05
BM1FRT

# USAA FEDERAL SAVINGS BANK

10750 McDermott Freeway
San Antonio, TX 78288-0544
800-531-8722

**PLEASE EXAMINE THIS STATEMENT AT ONCE. IF NO ERROR IS REPORTED IN 60 DAYS, THIS STATEMENT WILL BE CONSIDERED CORRECT. ALL ITEMS ARE CREDITED SUBJECT TO PAYMENT.**

In Case of Errors or Questions About Your Electronic Transfers, Telephone us or Write us at the address and number listed at the top of this page as soon as you can, if you think your statement or receipt is wrong or if you need more information about a transfer on the statement or receipt. We must hear from you no later than 60 days after we sent you the FIRST statement on which the error or problem appeared.

- Tell us your name and account number (if any).
- Describe the error or the transfer you are unsure about, and explain as clearly as you can why you believe it is an error or why you need more information.
- Tell us the dollar amount of the suspected error.

We will investigate your complaint and will correct any error promptly. If we take more than 10 business days to do this, we will credit your account for the amount you think is in error, so that you will have the use of the money during the time it takes us to complete our investigation.

### THIS FORM IS PROVIDED TO HELP YOU RECONCILE THIS STATEMENT BALANCE TO YOUR CHECKBOOK BALANCE.

## CHECKS OUTSTANDING
(Those written which have not been charged to your account)

| CHECK# | AMOUNT |
|--------|--------|
|        |        |
|        |        |
|        |        |
|        |        |
|        |        |
|        |        |
|        |        |
|        |        |
|        |        |
|        |        |
|        |        |
|        |        |
|        |        |
|        |        |
|        |        |
|        |        |
|        |        |
|        |        |
|        |        |
|        |        |
|        |        |
| **TOTAL** | $ |

## BANK BALANCE

(1) BALANCE THIS STATEMENT
(SHOWN ON FRONT PAGE)  $ _____

(2) ADD DEPOSITS NOT SHOWN ON
THIS STATEMENT (IF ANY)  + _____

(3) SUBTOTAL  $ _____

(4) SUBTRACT TOTAL OF CHECKS
OUTSTANDING (IF ANY)  - _____

(5) ADJUSTED BANK BALANCE  $ _____

## YOUR BALANCE

(6) CHECK REGISTER BALANCE  $ _____

(7) ADD CREDITS WHICH APPEAR
ON THIS STATEMENT THAT HAVE
NOT BEEN RECORDED IN YOUR
REGISTER (IF ANY)  + _____ *

(8) ADD INTEREST CREDITED TO
YOUR ACCOUNT (IF ANY)  + _____ *

(9) SUBTRACT OTHER CHARGES
(IF ANY)  - _____ *

(10) ADJUSTED CHECK REGISTER
BALANCE  $ _____
* Be sure to record in your check register.

Line 5 and Line 10 should now agree. If not, check the following items in your register:

-Are all deposits accounted for?
-Are all amounts entered correctly?
-Are all automatic transactions accounted for?
-Are all additions and subtractions accurate?



**TERMS AND CONDITIONS:  All transactions are subject to the USAA Federal Savings Bank Depository Agreement.**

126405-0714
BM1BCK



USAA
FEDERAL
SAVINGS
BANK

ROBERT MUELLER



PAGE    2

0
03

| ACCOUNT NUMBER | ACCOUNT TYPE | STATEMENT PERIOD |
|---|---|---|
| ███705-9 | USAA CLASSIC CHECKING | 09/02/20 - 10/02/20 |

OTHER DEBITS
DATE.........AMOUNT.TRANSACTION DESCRIPTION

```
09/09       1,100.00  USAA FUNDS TRANSFER DB
                      TO Mb Hale Ohana Rev Tr
                      CHECKING    #3621, CONF# 2735433013
```

**FDIC**
**INSURED**



USAA
FEDERAL
SAVINGS
BANK

ROBERT MUELLER

PAGE    3

0
03

| ACCOUNT NUMBER | ACCOUNT TYPE | STATEMENT PERIOD |
|---|---|---|
| ███ 705-9 | USAA CLASSIC CHECKING | 09/02/20 - 10/02/20 |



```
 * * * * * * * *   INTEREST PAID INFORMATION   * * * * * * * *
 YOUR INTEREST PAID WAS CALCULATED USING YOUR DAILY BALANCE FOR
30 DAYS FOR AN ANNUAL PERCENTAGE YIELD EARNED OF 0.01%.  THIS
 BRINGS YOUR YTD INTEREST PAID TO        0.25.
```

**FDIC**
INSURED



USAA
FEDERAL
SAVINGS
BANK

ROBERT MUELLER

PAGE    1



0
03

| ACCOUNT NUMBER | ACCOUNT TYPE | STATEMENT PERIOD |
|---|---|---|
| █████705-9 | USAA CLASSIC CHECKING | 11/03/20 - 12/02/20 |



    TRANSACTIONS OCCURRING ON THE FIRST DATE OF THE STATEMENT
    PERIOD WERE INCLUDED ON THE PREVIOUS STATEMENT.


    DEPOSITS AND OTHER CREDITS
DATE.........AMOUNT.TRANSACTION DESCRIPTION
12/01     10,000.00 ACH CREDIT          120120
                    WELLS FARGO IFI  DDA TO DDA **********QV5Y
12/02         0.02 INTEREST PAID

    OTHER DEBITS
DATE.........AMOUNT.TRANSACTION DESCRIPTION



**FDIC**
INSURED

# USAA FEDERAL SAVINGS BANK

10750 McDermott Freeway
San Antonio, TX 78288-0544
800-531-8722

**PLEASE EXAMINE THIS STATEMENT AT ONCE. IF NO ERROR IS REPORTED IN 60 DAYS, THIS STATEMENT WILL BE CONSIDERED CORRECT. ALL ITEMS ARE CREDITED SUBJECT TO PAYMENT.**

In Case of Errors or Questions About Your Electronic Transfers, Telephone us or Write us at the address and number listed at the top of this page as soon as you can, if you think your statement or receipt is wrong or if you need more information about a transfer on the statement or receipt. We must hear from you no later than 60 days after we sent you the FIRST statement on which the error or problem appeared.

- Tell us your name and account number (if any).
- Describe the error or the transfer you are unsure about, and explain as clearly as you can why you believe it is an error or why you need more information.
- Tell us the dollar amount of the suspected error.

We will investigate your complaint and will correct any error promptly. If we take more than 10 business days to do this, we will credit your account for the amount you think is in error, so that you will have the use of the money during the time it takes us to complete our investigation.

**THIS FORM IS PROVIDED TO HELP YOU RECONCILE THIS STATEMENT BALANCE TO YOUR CHECKBOOK BALANCE.**

## CHECKS OUTSTANDING
(Those written which have not
been charged to your account)

| CHECK# | AMOUNT |
|--------|--------|
|        |        |
|        |        |
|        |        |
|        |        |
|        |        |
|        |        |
|        |        |
|        |        |
|        |        |
|        |        |
|        |        |
|        |        |
|        |        |
|        |        |
|        |        |
|        |        |
|        |        |
|        |        |
|        |        |
|        |        |
|        |        |
|        |        |
| **TOTAL** | $ |

### BANK BALANCE

(1) BALANCE THIS STATEMENT
    (SHOWN ON FRONT PAGE)                $ _____

(2) ADD DEPOSITS NOT SHOWN ON
    THIS STATEMENT (IF ANY)             + _____

(3) SUBTOTAL                            $ _____

(4) SUBTRACT TOTAL OF CHECKS
    OUTSTANDING (IF ANY)                - _____

(5) ADJUSTED BANK BALANCE              $ _____

### YOUR BALANCE

(6) CHECK REGISTER BALANCE             $ _____

(7) ADD CREDITS WHICH APPEAR
    ON THIS STATEMENT THAT HAVE
    NOT BEEN RECORDED IN YOUR
    REGISTER (IF ANY)                   + _____ *

(8) ADD INTEREST CREDITED TO
    YOUR ACCOUNT (IF ANY)               + _____ *

(9) SUBTRACT OTHER CHARGES
    (IF ANY)                            - _____ *

(10) ADJUSTED CHECK REGISTER
     BALANCE                            $ _____
     * Be sure to record in your check register.

Line 5 and Line 10 should now agree. If not, check the following items in your register:

-Are all deposits accounted for?
-Are all amounts entered correctly?
-Are all automatic transactions accounted for?
-Are all additions and subtractions accurate?

**TERMS AND CONDITIONS:  All transactions are subject to the USAA Federal Savings Bank Depository Agreement.**



126405-0714
BM1BCK



USAA
FEDERAL
SAVINGS
BANK

PAGE    2

ROBERT MUELLER

0
03

| ACCOUNT NUMBER | ACCOUNT TYPE | STATEMENT PERIOD |
|---|---|---|
| 705-9 | USAA CLASSIC CHECKING | 11/03/20 - 12/02/20 |

OTHER DEBITS
DATE.........AMOUNT.TRANSACTION DESCRIPTION



```
12/01      4,000.00 USAA FUNDS TRANSFER DB
                    TO Mb Hale Ohana Rev Tr
                    CHECKING     #3621, CONF# 2871180359
```



```
   * * * * * * *   INTEREST PAID INFORMATION   * * * * * * * *
   YOUR INTEREST PAID WAS CALCULATED USING YOUR DAILY BALANCE FOR
   29 DAYS FOR AN ANNUAL PERCENTAGE YIELD EARNED OF 0.01%.  THIS
   BRINGS YOUR YTD INTEREST PAID TO        0.29.
```

FDIC
INSURED

105846-0814_06
BMFR1A



USAA Federal Savings Bank
10750 McDermott Freeway
San Antonio, TX 78288-0544

# USAA CLASSIC CHECKING

for Account Number: ████7059
Statement Period: 01/05/2021 to 02/02/2021

ROBERT MUELLER

## Activity Summary



## Transactions

| Date | Description | Debits | Credits | Balance |
|------|-------------|--------|---------|---------|
| 01/05 | **Beginning Balance** | | | **$65.40** |
| 01/06 | ACH DEP 010721 POLICY SERVICES PAYROLL ***********260X | | $1,190.42 | $1,255.82 |
| 01/06 | ACH DEP 010721 POLICY SERVICES PAYROLL ***********261X | | $1,190.42 | $2,446.24 |

*continued on next page>>>*

133293-0121



**USAA CLASSIC CHECKING**
for Account Number: ███7059
Statement Period: 01/05/2021 to 02/02/2021

## Transactions (continued)

| Date | Description | Debits | Credits | Balance |
|------|-------------|--------|---------|---------|
| 01/06 | ACH DEP 010721<br>POLICY SERVICES PAYROLL<br>***********262X | | $1,190.42 | $3,636.66 |
| ██ | ████████ | ██ | | ██ |
| ██ | ████████<br>█████████<br>████ | ██ | | ██ |
| ██ | ████████<br>█████ | ██ | | ██ |
| 01/08 | WIRE IN<br>001210108704908 | | $48,500.00 | $49,886.66 |
| 01/08 | USAA FUNDS TRANSFER DB<br>TO Mb Hale Ohana Rev Tr<br>CHECKING #3621, CONF# 2941498553 | $5,000.00 | | $44,886.66 |



*continued on next page>>>*

**USAA CLASSIC CHECKING**
for Account Number: ▆▆▆▆ 7059
Statement Period: 01/05/2021 to 02/02/2021

## *Transactions* *(continued)*

| Date | Description | Debits | Credits | Balance |
|------|-------------|--------|---------|---------|



## Interest Paid Information

Your interest paid was calculated using your daily balance for 29 days for an annual percentage yield earned of 0.01%.

*continued on next page>>>*

133293-0121

**FDIC**
INSURED

## IMPORTANT INFORMATION

The ending balance includes items that have posted to your account. You may have been charged fees if your account did not have enough available funds to pay for an item. Please see the available balance section in the USAA Federal Savings Bank Depository Agreement and Disclosures for details.

You can review and obtain copies of your recent checks at no cost through usaa.com or mobile. Two no fee check photocopies per statement cycle can be obtained by contacting Customer Service.

Please examine this statement at once. If no error is reported in 60 days, this statement will be considered correct. All items credited are subject to verification.

In case of errors or questions about your electronic transfers, telephone us at 210-531-USAA (8722) or 800-531-8722, or write us at USAA Federal Savings Bank, 10750 McDermott Freeway, San Antonio, TX 78288-0544 or email us through the "Contact Us" link on usaa.com, as soon as you can, if you think your statement or receipt is wrong or if you need more information about a transfer on the statement or receipt. We must hear from you no later than 60 days after we sent you the FIRST statement on which the error or problem appeared.

- Tell us your name and account number.
- Describe the error or the transfer you are unsure about and explain as clearly as you can why you believe it is an error or why you need more information.
- Tell us the dollar amount of the suspected error.

We will investigate your complaint and will correct any error promptly. If we take more than 10 business days to do this, we will credit your account for the amount you think is in error so that you will have the use of the money during the time it takes us to complete our investigation.

## TERMS AND CONDITIONS

All transactions are subject to the Depository Agreement and Disclosures.

Online: usaa.com          Phone: 210-531-USAA (8722) • 800-531-8722          Mobile: #8722





USAA Federal Savings Bank
10750 McDermott Freeway
San Antonio, TX 78288-0544

# USAA CLASSIC CHECKING

for Account Number: ██████7059
Statement Period: 02/03/2021 to 03/02/2021

0000.0000.0000.0000

ROBERT MUELLER



## Activity Summary



## Transactions

| Date | Description | Debits | Credits | Balance |
|------|-------------|--------|---------|---------|
| 02/03 | **Beginning Balance** | | | ████ |
| 02/04 | ACH DEP 020421 | | $8,850.28 | $18,189.85 |
| | Policy Services, PayrollDD | | | |
| | ***********1902 | | | |

*continued on next page>>>*

133293-0121




FDIC
INSURED

**USAA CLASSIC CHECKING**
for Account Number: ▆▆▆7059
Statement Period: 02/03/2021 to 03/02/2021

## Transactions *(continued)*

| Date | Description | Debits | Credits | Balance |
|------|-------------|--------|---------|---------|
| 02/09 | USAA FUNDS TRANSFER DB | $5,000.00 | | $12,204.85 |
| | TO Mb Hale Ohana Rev Tr | | | |
| | CHECKING #3621, CONF# 2997713841 | | | |



## Interest Paid Information
Your interest paid was calculated using your daily balance for 28 days for an annual percentage yield earned of 0.01%.

*continued on next page>>>*

133293-0121

**FDIC**
**INSURED**

## IMPORTANT INFORMATION

The ending balance includes items that have posted to your account. You may have been charged fees if your account did not have enough available funds to pay for an item. Please see the available balance section in the USAA Federal Savings Bank Depository Agreement and Disclosures for details.

You can review and obtain copies of your recent checks at no cost through usaa.com or mobile. Two no fee check photocopies per statement cycle can be obtained by contacting Customer Service.

Please examine this statement at once. If no error is reported in 60 days, this statement will be considered correct. All items credited are subject to verification.

In case of errors or questions about your electronic transfers, telephone us at 210-531-USAA (8722) or 800-531-8722, or write us at USAA Federal Savings Bank, 10750 McDermott Freeway, San Antonio, TX 78288-0544 or email us through the "Contact Us" link on usaa.com, as soon as you can, if you think your statement or receipt is wrong or if you need more information about a transfer on the statement or receipt. We must hear from you no later than 60 days after we sent you the FIRST statement on which the error or problem appeared.

- Tell us your name and account number.
- Describe the error or the transfer you are unsure about and explain as clearly as you can why you believe it is an error or why you need more information.
- Tell us the dollar amount of the suspected error.

We will investigate your complaint and will correct any error promptly. If we take more than 10 business days to do this, we will credit your account for the amount you think is in error so that you will have the use of the money during the time it takes us to complete our investigation.

## TERMS AND CONDITIONS

All transactions are subject to the Depository Agreement and Disclosures.

Online: usaa.com          Phone: 210-531-USAA (8722) • 800-531-8722          Mobile: #8722





USAA Federal Savings Bank
10750 McDermott Freeway
San Antonio, TX 78288-0544

# USAA CLASSIC CHECKING

for Account Number: ■■■■7059
Statement Period: 03/03/2021 to 04/05/2021

0000.0000.0000.0000

ROBERT MUELLER





## Transactions

| Date | Description | Debits | Credits | Balance |
|------|-------------|--------|---------|---------|
| 03/03 | **Beginning Balance** | | | ■■■■ |
| 03/08 | USAA FUNDS TRANSFER DB<br>TO Mb Hale Ohana Rev Tr<br>CHECKING #3621, CONF# 3047170977 | $4,500.00 | | $2,077.04 |

*continued on next page>>>*

133293-0121




**FDIC**
INSURED

Page 1 of 4

**USAA CLASSIC CHECKING**
for Account Number: ████ 7059
Statement Period: 03/03/2021 to 04/05/2021

## Transactions *(continued)*

| Date | Description | Debits | Credits | Balance |
|------|-------------|--------|---------|---------|
| 03/18 | ACH DEP 031821<br>Policy Services, PayrollDD<br>***********1902 | | $8,850.28 | $9,712.22 |
| 04/02 | USAA FUNDS TRANSFER DB<br>TO Mb Hale Ohana Rev Tr<br>CHECKING #3621, CONF# 3099590839 | $4,400.00 | | $42.56 |

## Interest Paid Information

Your interest paid was calculated using your daily balance for 34 days for an annual percentage yield earned of 0.01%.

*continued on next page>>>*

133293-0121



**USAA CLASSIC CHECKING**
for Account Number: ████ 7059
Statement Period: 03/03/2021 to 04/05/2021

*continued on next page>>>*

133293-0121

**FDIC**
INSURED

## IMPORTANT INFORMATION

The ending balance includes items that have posted to your account. You may have been charged fees if your account did not have enough available funds to pay for an item. Please see the available balance section in the USAA Federal Savings Bank Depository Agreement and Disclosures for details.

You can review and obtain copies of your recent checks at no cost through usaa.com or mobile. Two no fee check photocopies per statement cycle can be obtained by contacting Customer Service.

Please examine this statement at once. If no error is reported in 60 days, this statement will be considered correct. All items credited are subject to verification.

In case of errors or questions about your electronic transfers, telephone us at 210-531-USAA (8722) or 800-531-8722, or write us at USAA Federal Savings Bank, 10750 McDermott Freeway, San Antonio, TX 78288-0544 or email us through the "Contact Us" link on usaa.com, as soon as you can, if you think your statement or receipt is wrong or if you need more information about a transfer on the statement or receipt. We must hear from you no later than 60 days after we sent you the FIRST statement on which the error or problem appeared.

- Tell us your name and account number.
- Describe the error or the transfer you are unsure about and explain as clearly as you can why you believe it is an error or why you need more information.
- Tell us the dollar amount of the suspected error.

We will investigate your complaint and will correct any error promptly. If we take more than 10 business days to do this, we will credit your account for the amount you think is in error so that you will have the use of the money during the time it takes us to complete our investigation.

## TERMS AND CONDITIONS

All transactions are subject to the Depository Agreement and Disclosures.

Online: usaa.com          Phone: 210-531-USAA (8722) • 800-531-8722          Mobile: #8722

133293-0121





USAA Federal Savings Bank
10750 McDermott Freeway
San Antonio, TX 78288-0544

# USAA CLASSIC CHECKING

for Account Number: ████7059
Statement Period: 04/06/2021 to 05/04/2021

ROBERT MUELLER



## Activity Summary



## Transactions

| Date | Description | Debits | Credits | Balance |
|------|-------------|--------|---------|---------|
| 04/06 | **Beginning Balance** | | | **$33.95** |
| 04/07 | WIRE IN | | $23,000.00 | $23,033.95 |
| | 001210407089693 | | | |

*continued on next page>>>*

133293-0121



**USAA CLASSIC CHECKING**
for Account Number: ▮▮▮7059
Statement Period: 04/06/2021 to 05/04/2021

## Transactions *(continued)*

| Date | Description | Debits | Credits | Balance |
|------|-------------|--------|---------|---------|
| 04/15 | ACH DEP 041521<br>Policy Services, PayrollDD<br>***********1902 | | $11,085.58 | $29,314.08 |

*continued on next page>>>*

133293-0121

**FDIC**
INSURED

**USAA CLASSIC CHECKING**
for Account Number: ████ 7059
Statement Period: 04/06/2021 to 05/04/2021

## Transactions *(continued)*

| Date | Description | Debits | Credits | Balance |
|------|-------------|--------|---------|---------|
| | ██████████████████████████████ | | | |
| 05/04 | USAA FUNDS TRANSFER DB<br>TO Mb Hale Ohana Rev Tr<br>CHECKING #3621, CONF# 3159570241 | $5,000.00 | | $5,782.75 |
| | ██████████████████████████████ | | | |

## Interest Paid Information

Your interest paid was calculated using your daily balance for 29 days for an annual percentage yield earned of 0.01%.

*continued on next page>>>*

133293-0121

**FDIC**
INSURED

## IMPORTANT INFORMATION

The ending balance includes items that have posted to your account. You may have been charged fees if your account did not have enough available funds to pay for an item. Please see the available balance section in the USAA Federal Savings Bank Depository Agreement and Disclosures for details.

You can review and obtain copies of your recent checks at no cost through usaa.com or mobile. Two no fee check photocopies per statement cycle can be obtained by contacting Customer Service.

Please examine this statement at once. If no error is reported in 60 days, this statement will be considered correct. All items credited are subject to verification.

In case of errors or questions about your electronic transfers, telephone us at 210-531-USAA (8722) or 800-531-8722, or write us at USAA Federal Savings Bank, 10750 McDermott Freeway, San Antonio, TX 78288-0544 or email us through the "Contact Us" link on usaa.com, as soon as you can, if you think your statement or receipt is wrong or if you need more information about a transfer on the statement or receipt. We must hear from you no later than 60 days after we sent you the FIRST statement on which the error or problem appeared.

- Tell us your name and account number.
- Describe the error or the transfer you are unsure about and explain as clearly as you can why you believe it is an error or why you need more information.
- Tell us the dollar amount of the suspected error.

We will investigate your complaint and will correct any error promptly. If we take more than 10 business days to do this, we will credit your account for the amount you think is in error so that you will have the use of the money during the time it takes us to complete our investigation.

## TERMS AND CONDITIONS

All transactions are subject to the Depository Agreement and Disclosures.

Online: usaa.com          Phone: 210-531-USAA (8722) • 800-531-8722          Mobile: #8722

133293-0121



# Exhibit A-2



| **Mailing** | **Overnight/Physical** |
|---|---|
| PO Box 691610 | 12621 Silicon Dr |
| San Antonio, TX 78269-1610 | San Antonio, Texas 78249-3447 |

Toll Free (888) 316-2935

# CLASS C MEMBERSHIP SHARES

**deeproot 575 Fund, LLC** (the "Company", "us", "we", or "**the575**TM") is a private equity investment offering that will invest in a number of asset classes including life settlements or ownership of life insurance policies insuring the lives of persons not employed or affiliated with the Company; capital investments in deeproot affiliates; and cash or cash equivalents. To capitalize the Company, we are offering a series of preferred membership interests ("shares" or "Offering") designed to meet the needs of Investors.

The Shares will be offered only to persons whom we reasonably believe are Accredited Investors as defined in Securities and Exchange Commission ("SEC") Regulation D, 17 CFR 501(a), and to the maximum legally allowable non-accredited or non-institutional investors; all of whom are known as "prospective investors." Prospective investors will be asked to complete an Application and Subscription Agreement and provide photo identification. We intend to claim an issuer's exemption from the requirement to register this offering under SEC Regulation D, Rule 506.

THE UNITED STATES SECURITIES AND EXCHANGE COMMISSION DOES NOT PASS UPON THE MERITS OF OR GIVE ITS APPROVAL TO ANY SECURITIES OFFERED OR THE TERMS OF THE OFFERING, NOR DOES IT PASS UPON THE ACCURACY OR COMPLETENESS OF ANY OFFERING DOCUMENT OR OTHER SELLING LITERATURE. THESE SECURITIES ARE OFFERED PURSUANT TO AN EXEMPTION FROM REGISTRATION WITH THE COMMISSION; HOWEVER, THE COMMISSION HAS NOT MADE AN INDEPENDENT DETERMINATION THAT THE SECURITIES OFFERED HEREUNDER ARE EXEMPT FROM REGISTRATION.

THIS OFFERING INVOLVES A HIGH DEGREE OF RISK TO INVESTORS. See "Risk Factors."

| | Principal Amount[1] | Underwriting discount and commissions[2] | Proceeds to issuer or other persons |
|---|---|---|---|
| Per unit Total | $25,000.00 | $1,500.00 | $23,500.00 |
| | | | |
| Total Minimum[3] | $100,000.00 | $6,000.00 | $94,000.00 |
| Total Maximum | $75,000,000.00 | $4,500,000.00 | $70,500,000.00 |

[1] This is the aggregate principal amount of the Offering offered through this offering document.
[2] This offering is made primarily by us. However, we may engage third parties to help us sell Shares under this offering. Any persons who may receive compensation will be registered as a broker, or an otherwise lawful finder. Compensation to such persons, if any, will vary and may be paid out of the Investors principal.
[3] Proceeds will not be held in a separate account and will be immediately employed to purchase assets. Certain amounts may be retained for administration or management purposes.

## DATED FEBRUARY 26, 2018, LAST AMENDED SEPTEMBER 25, 2020

**THIS PPM AND ENTIRE CONFIDENTIAL PACKET MUST BE RETURNED TO DEEPROOT IF YOU DO NOT INVEST.**

<u>NOTICES TO INVESTORS</u>

THE LIMITED LIABILITY COMPANY SHARES HEREIN HAVE NOT BEEN REGISTERED UNDER THE SECURITIES ACT OF 1933, AS AMENDED, OR UNDER ANY SECURITIES LAWS OF ANY STATE. THE SHARES CANNOT BE RESOLD UNLESS THEY ARE SUBSEQUENTLY REGISTERED OR EXEMPTIONS FROM REGISTRATION ARE AVAILABLE. NEITHER THE SECURITIES AND EXCHANGE COMMISSION NOR ANY OTHER FEDERAL OR STATE AUTHORITY OR AGENCY HAS PASSED ON OR ENDORSED THE MERITS OF THIS OFFERING OR THE COMPLETENESS OF THIS PRIVATE PLACEMENT MEMORANDUM. ANY REPRESENTATION TO THE CONTRARY IS UNLAWFUL. THERE IS NO PUBLIC MARKET FOR THE SHARES.

NO OFFERING LITERATURE, OTHER THAN THIS PRIVATE PLACEMENT MEMORANDUM, OR ADVERTISING, IN ANY FORM, WILL BE EMPLOYED IN THE OFFERING OF THESE SECURITIES. NO PERSON HAS BEEN AUTHORIZED TO MAKE ANY REPRESENTATION OTHER THAN THOSE CONTAINED IN THIS PRIVATE PLACEMENT MEMORANDUM, AND, IF MADE, SUCH REPRESENTATIONS MUST NOT BE RELIED UPON. THIS PRIVATE PLACEMENT MEMORANDUM IS SUBMITTED IN CONNECTION WITH THE PRIVATE PLACEMENT OF THESE SHARES AND MAY NOT BE REPRODUCED OR USED FOR ANY OTHER PURPOSE. ANY DISTRIBUTION OF THIS PRIVATE PLACEMENT MEMORANDUM, IN WHOLE OR IN PART, OR THE DIVULGENCE OF ANY OF ITS CONTENTS, IS UNAUTHORIZED.

PROSPECTIVE INVESTORS ARE NOT TO CONSTRUE THE CONTENTS OF THIS PRIVATE PLACEMENT MEMORANDUM AS LEGAL OR TAX ADVICE. EACH INVESTOR SHOULD SEEK HIS OWN LEGAL AND TAX ADVICE AS TO LEGAL, TAX AND RELATED MATTERS CONCERNING THIS INVESTMENT.

THE OFFEREE, BY ACCEPTANCE OF THIS PRIVATE PLACEMENT MEMORANDUM, AGREES TO RETURN THIS DOCUMENT AND ALL RELATED DOCUMENTS TO THE COMPANY IF THE OFFEREE DOES NOT DECIDE TO PURCHASE ANY OF THE SHARES OFFERED HEREBY.

THIS OFFERING IS PRELIMINARY AND MADE SUBJECT TO WITHDRAWAL, TERMINATION OR MATERIAL MODIFICATION BY THE COMPANY WITHOUT NOTICE. WHETHER OR NOT WITHDRAWN OR TERMINATED, THE COMPANY RESERVES THE RIGHT TO OFFER SHARES IN THE FUTURE AT A PRICE LESS THAN, EQUAL TO OR GREATER THAN THE PRICE OF SHARES OFFERED HEREBY. THESE SECURITIES INVOLVE A HIGH DEGREE OF RISK AND ARE SUITABLE ONLY FOR PERSONS OF SUBSTANTIAL MEANS WHO HAVE NO NEED FOR LIQUIDITY IN THIS INVESTMENT.

deeproot 575 Fund, LLC
(a Texas Limited Liability Company)

# CONFIDENTIAL PRIVATE PLACEMENT MEMORANDUM

## CLASS C SHARES OFFERING

The information in this Private Placement Memorandum ("PPM") is furnished on a confidential basis exclusively for the use of the person named below, who, by accepting this PPM, **agrees to return it promptly to the Company**, upon request or if no investment occurs, and agrees not to reproduce or disclose to any persons (other than such person's legal, tax, accounting and other advisors) all or any part off this PPM without the express written permission of the Company.

_____

Name

☐☐☐☐☐☐

Copy No.



**deeproot 575 Fund, LLC**
("**the575™**")
$75,000,000
Class C Membership Shares

# CONFIDENTIAL PRIVATE PLACEMENT MEMORANDUM

**deeproot 575 Fund, LLC** (the "Company", "us, "we", "our", or "**the575™**") is a Texas limited liability company of which deeproot Funds, LLC ("dF") is the sole member.  **dF** owns all of the Class A Membership Shares ("Class A Shares") and Robert J. Mueller, the sole principal of the deeproot® family of companies is the current Manager of the Company.

**the575™** is a fixed-rate, fixed-term investment fund. **the575™** provides a securitized investment in a pool of life settlement policies and capital acquisition in deeproot affiliates, which offers investors either a growth or income option in five year terms.  The Operating Agreement of the Company is attached hereto as Appendix I.

The Company's principal business offices are located at 12621 Silicon Dr, San Antonio, Texas 78249-3447.

## I
## THE OFFERING

**Structure**

1.       The Company is initially offering up to $75,000,000, or 3,000 Class C Membership Shares ("Class C Shares") at a price of $25,000 per Class C Share, or a fraction thereof.  The minimum investment per transaction is $50,000, or 2 Class C Shares.  Fractional shares up to five decimal places are permitted. The Company reserves the right to increase the outstanding, issued, and/or authorized amount of Class C Shares, without notice or permission, to accommodate renewals by existing Class C Shareholders.

2.       The Company will have a board of Managers who will be responsible for the management of the Company.  Robert J. Mueller has been designated as the initial Manager.  Biographies of the management team are contained herein.

3.       Any commissions or discounts paid (if any) with respect to the offering of the Class C Shares shall be at the expense of the Company.  Advisory fees shall be at the expense of the Class C Shareholder.

**Offering Basics**

4.       **the575™** is an equity investment with a Mandatory Call five years, less one day ("subscription term"), from the Start Date. The Start Date is the date when all of the following conditions are satisfied: i) the Class C Shareholder's Application and Subscription Agreement is approved by the Company; ii) the Class C Shareholder makes the irrevocable Priority Return Election; and iii) all subscribed funds/monies ("Invested Capital" or "Principal" herein) are received by the Company, and are available for use.

5.       On or before the Start Date, a Class C Shareholder must make an irrevocable *election* as to how to receive the Priority Return.  The "Priority Return" may either be: i) **deferred** (i.e. growth) – a simple fixed rate, lump-sum return of the Invested Capital; or ii) **periodic** (i.e. income) – a fixed rate per annum of the Invested Capital paid in either monthly or quarterly payments.  The irrevocable *election* defined in this paragraph will herein be referred to as the "Priority Return Election.". The Priority Return per Class C Shareholder shall be set at the Start Date, based on the total capital invested in the575 at the firm (BD or RIA) level in the preceding calendar quarter (the "Threshold").

6.       If the Threshold is less than $500,000, then the Deferred Priority Return shall be 45% of the Invested Capital or the Periodic Priority Return shall be seven percent (7%) per annum. If the Threshold is $500,000 or greater,

then the Deferred Priority Return shall be 55% of the Invested Capital or the Periodic Priority Return shall be eight percent (8%) per annum. If the Threshold is greater than $1MM, then the Periodic Priority Return shall be ten percent (10%) per annum.

7.      The Company is permitted to issue a "Premature Call" before the full five year Mandatory Call term is satisfied.  However, the Company must satisfy the full Priority Return due any prematurely called Class C Shareholder(s), as if the full five year term had been satisfied by a *normal* Mandatory Call. All calls are made in the sole discretion of the Company and are absolute, and without recourse.  Any normal, or adverse, income tax implications arising from a Premature Call are the sole responsibility of the Class C Shareholder.

8.      **the575™** does not permit any Class C Shareholder to request any Invested Capital or Principal outside of a Mandatory or Premature Call.  As such, Class C Shares (even in a periodic Priority Return Election) are not suitable for emergency, living expenses, other income requirements, or Required Minimum Distributions (RMDs).

9.      The Company is responsible for all premiums or outlays to maintain the assets in return for an advance of principal, and a share of any assets that mature.

10.      There are no costs, fees, or expenses that will be assessed against a Class C Shareholder's account, other than those disclosed in Articles VI or VII herein.

**Other Offering Details**

11.      Class A Shareholders retain all standard voting rights.  The Fund Advisor or Manager(s) retain sole and absolute discretion over due diligence, purchase, and maintenance of the assets.

12.      Class C Shareholders have a right to receive certain information, as further described herein; and retain limited voting rights, such as the right to consent to: i) any substantial changes to this Offering; ii) substantial changes to the ownership or management of the Company; iii) the sale, lease, exchange or disposal of all or substantially all of the Company's property and assets; iv) any requirement that forces the majority of Class C Shareholders to make additional capital contributions; or v) any amendment or restatement of the Articles of the Company that would adversely impact the rights, privileges, or benefits of any Class C Shareholder.

13.      If a Class C Shareholder dies, such Class C Shareholder's custodian(s), beneficiary(ies), legal representative(s), and/or assign(s) are subject to the same registration and terms upon which the Class C Shareholder would have been, had the Shareholder remained alive.  The Company retains the sole and absolute right to require adequate documentation or authentication determinative of the legal right of the requesting custodian, beneficiary, legal representative, or assign to request or receive the deceased Class C Shareholder's principal and/or return.  The Company also retains the absolute and sole discretion to reject any such request without a written order (to do so) issued by a court of proper jurisdiction.

**II**
**SUITABILITY STANDARDS FOR INVESTORS**

Investment in the Class C Shares of the Company offered hereby involves a high degree of risk.  The Class C Shares offered hereby are suitable only for those investors whose business and investment experience, either alone or together with their financial advisors, makes them capable of evaluating the merits or risks of their prospective investments in the Company and who can afford to bear the economic risk of their investment for an indefinite period and have no need for liquidity in this investment.  There will not be any public market for the Class C Shares.  The Class C Shares have not been registered with the Securities and Exchange Commission, nor with any state securities agency.  This is an offering made only to a limited number of investors for investment only.  Each investor will be required to execute the Subscription Agreement.  Under the Subscription Agreement, each investor will be required to represent, among other things, that he is acquiring the units for his own account, for investment, and not with any intention of making a distribution or resale thereof, either in whole or in part.  Furthermore, no resale or transfer will be permitted except in accordance with the provisions of the Federal Securities Act of 1933, as amended, the rules and regulations thereunder, the applicable state securities laws, and the terms of the Operating Agreement.

No Class C Shares will be sold to any person unless he executes and delivers to the Company a copy of the Subscription Agreement and accompanying documents, which contain representations regarding the prospective investor's net worth and certain other matters.  The Company will not accept subscriptions from any prospective investor unless such investor certifies that (1) his net income before taxes for each of the two immediately preceding years was at least $200,000 and there is a reasonable expectation of reaching the same income level in the current year, or (2) his net worth (exclusive of primary residence, furnishings and automobiles) is at least $1,000,000, or (3) his financial position is otherwise suitable for the degree of risk associated with this investment.  In addition, a prospective investor must have sufficient knowledge and experience in financial and business matters to enable such prospective investor to evaluate the merits and risks of an investment in the Company or must have the assistance of a person other than the Company or its affiliates, who possesses such knowledge and expertise.  The Company will have the sole discretion regarding admittance of any investor into the Company.

### III
### RISK FACTORS

Participation in the Company requires a minimum investment of 2 Class C Shares ($50,000), and the ability and willingness of the investor to accept substantial investment risks and lack of liquidity.

In addition to the factors set forth elsewhere in this PPM, prospective investors in the Company should carefully consider the following.

INFORMATION CONTAINED HEREIN, INCLUDING FINANCIAL FORECASTS, HAS BEEN OBTAINED FROM THE COMPANY AND THE MANAGERS AND FROM OTHER SOURCES DEEMED RELIABLE.  THIS INFORMATION HAS BEEN PREPARED BASED UPON CURRENTLY AVAILABLE DATA AND NECESSARILY INCORPORATES SIGNIFICANT ASSUMPTIONS AS TO FACTUAL MATTERS.  THERE IS NO ASSURANCE THAT THESE ASSUMPTIONS ARE, OR WILL PROVE, ACCURATE IN ALL MATERIAL RESPECTS, SO THAT, AMONG OTHER THINGS, THE FINANCIAL FORECASTS CONTAINED HEREIN CAN, OR WILL, BE ATTAINED.

EACH PROSPECTIVE INVESTOR IS URGED TO CONSULT HIS OWN TAX COUNSEL, ACCOUNTANT AND OTHER PERSONAL ADVISORS CONCERNING THE LEGAL, FINANCIAL AND TAX ASPECTS OF THIS INVESTMENT.  PROSPECTIVE INVESTORS ARE NOT TO CONSTRUE ANY PART OF THE CONTENTS OF THIS SUMMARY AS LEGAL OR TAX ADVICE.

FURTHERMORE, INVESTORS CAN RECEIVE NO GUARANTEE WHATSOEVER THAT THEY WILL RECEIVE ANY RETURN ON THEIR CONTRIBUTIONS TO THE VENTURE.  THE MANAGERS SHALL NOT HAVE ANY LIABILITY TO THE INVESTORS FOR ANY ACT OR OMISSION NOT AMOUNTING TO FRAUD, GROSS NEGLIGENCE, OR WILLFUL MISCONDUCT.

A.     Lack of Operating History.
The Company has recently commenced operations and has no evidence other than that presented herein to predict future earnings.  As such, the Company will be subject to all the risks of a new business enterprise.

B.     Investors will not be able to evaluate our portfolio of Investments prior to purchasing Class C Shares.
Our Advisor or Manager(s) have broad authority and discretion to identify and invest in life policies, private placements, and cash or cash-equivalents.  Consequently, Class C Shareholders must rely exclusively on our Advisor or Manager(s) to make sound investment decisions for them.

C.     Investment in the Class C Shares involves an enhanced degree of risk.
We will only be able to meet our obligations to the Class C Shareholders and achieve our own internal objectives by obtaining enhanced returns from our investment portfolio.  Although our Advisor or Manager(s) will apply governing criteria and reasonable business judgment to their investment decisions, each investment will generally imply an enhanced risk than other traditional investments offered in the open market.  There is the potential risk of losing part or all of any given underlying investment or of not achieving its expected return thereon.

    D.      It is possible Class C Shareholders may have to contribute additional money.

As more fully described below, when we acquire a life policy, we may be required to pay policy premiums. While it is anticipated that Class C Shareholders will never have to satisfy a future premium obligation, or other asset obligations, the Company reserves the right to request Class C Shareholders to advance additional principal if: i) the Class C Shareholders are given reasonable notice; and ii) by doing so is in the financial best interest of the Class C Shareholders.

    E.      Dependence on Managers.

The success of the Company will depend, to a significant extent, on the quality of the management provided by the Managers. In the event Robert J. Mueller is incapacitated or dies, or is removed or resigns, there can be no assurance that a satisfactory replacement could be obtained or would be available on the same terms. Furthermore, the Managers will not be obligated, and are not expected, to devote full time and attention to the affairs of the Company. The Class C Shareholders will have limited right to participate in the management of the Company.

    F.      Some Agreements, Including Those Involving Compensation, Not at Arms-Length.

As described herein, we and our parent entity(ies), as Class A Shareholders, will receive any returns from the pool of investments over the returns due and payable to Class C Shareholders. Our return may be potentially large and the magnitude of this return has been determined without the benefit of arms-length bargaining. However, in our opinion, the risk of loss to us and the fees and charges paid by us in connection with the investments, justifies the division of the total potential return.

deeproot Funds, LLC operates other investment funds. Those funds may, from time to time, purchase Class C Shares in the Company to hold as assets in those other funds. Should dF purchase Class C Shares, they are subject to the same identical terms as any other Class C Shareholder.

    G.      Lack of Liquidity.

The Class C Shareholders should be fully aware of the long-term nature of this investment. There is no market for resale of Class C Shares, nor is one likely to develop. The Shares are intended to be held indefinitely and are therefore, illiquid. As such, they are not suitable for emergency, living expenses, other income requirements, or required minimum distributions (RMD's). There are a number of restrictions on the transferability of the Class C Shares offered hereunder. In addition, Class C Shares may only be assigned subject to limitations imposed by federal and state securities laws and the necessity of avoiding adverse tax consequences. Additionally, an assignee may only become a substitute member with the consent of the Managers and upon satisfaction of the other conditions set forth in the Operating Agreement. Accordingly, Class C Shareholders may not be able to liquidate this investment, even in the event of an emergency. Additionally, the Company may decline to declare or distribute net maturity proceeds for reasons that may or may not be agreeable to Shareholders.

    H.      Not Suitable for Required Minimum Distributions.

The Shares are not intended to satisfy Required Minimum Distributions (RMDs), even though a Class C Shareholder's elected periodic Priority Return might be greater than the annual RMD requirement. RMD's generally are minimum amounts that a retirement plan account owner must withdraw annually starting with the year that he or she reaches 70 ½ years of age or, if later, the year in which he or she retires. As such, any RMD amount that would have been withdrawn from this Offering, must instead be withdrawn out of Shareholder's other qualified accounts.

    I.      Our Ability or Inability to Employ High Quality Underwriting Standards and Adhere to them in Building the Portfolio.

Our ability to find and obtain quality investments for our portfolio is a mission-critical endeavor. While we have current readily available sources of high quality investments, there is an inherent risk that such sources could be frustrated by external forces, yield lower quality investments, or dry up entirely.

    J.      Determination of Company's Profit and Loss.

Profit and loss shall be considered to have been earned over the period of the Company's fiscal year, except that profits and losses arising from the disposition of properties shall be taken into account as of the date thereof and except that if additional capital is contributed during the course of the Company's fiscal year, a separate determination of profit and loss shall be made as of the last day of the month preceding the month in which such additional capital

is contributed, and the profit and loss of the Company for the period before such date shall be apportioned among the members in accordance with their respective interests on such date.

      K.      <u>Determination of Class C Shareholder's Share of Profit</u>.

In all cases, a Class C Shareholder's maximum share, over the duration of fiscal years held, of any profit is limited to the principal invested, plus any unpaid elected Priority Return.

      L.      <u>No Guarantee of Fixed Returns</u>.

Consistent and predictable growth is ideal in the Company's effort to provide the respective return. In the short-term, if overall growth in the value of our portfolio falls below our obligations to the Class C Shareholders, our excess reserves would be expected to cover the deficit.  However, there is a risk that a longer term deficit will exceed our reserves, potentially lowering the return.  As the actual death of an insured, maturity of any life policy, or return of capital from a capital acquisition are unknown at the time of investment, we may not be able to pay a periodic Priority Return or Liquidation Amount when due.

      M.      <u>Inadequate Valuations and Their Effect on the Accounting of the Company and Class C Shares</u>.

Low or inadequate valuations of our investment portfolio may lead to the appearance of an accounting deficit on a portion or all of the investment portfolio.  Based upon the overwhelming intended allocation of investment funds to life policies and the fact that the face value of all life policies purchased for the portfolio will eventually be realized, we believe that Class C Shareholders will actually earn the amount owed upon each maturity.  However, in the event of low valuations, the accounting of the investment portfolio may actually be less than when realized.

      N.      <u>Possible Classification as an Investment Company</u>.

Because we will invest in items which may be deemed to be securities, we could be classified as an investment company under the Investment Company Act of 1940, as amended (the "Investment Company Act").  Classification as an investment company under the Investment Company Act would have a substantial adverse impact on our operations as it would require registration with the SEC and various state securities agencies.  We intend to restrict investment in our securities to the maximum number of Class C Shareholders permitted under then-current federal law, in order to meet an exemption from registration under the Investment Company Act.  Since we do not intend to register as an investment company, Class C Shareholders will not have any of the protections that may be afforded by the Investment Company Act.

      O.      <u>Some Information may not be Provided</u>.

Notwithstanding compliance with Section 101.502 of the Texas Business Organizations Code, Class C Shareholders may not be permitted to request or receive sensitive, non-public, privileged or confidential information about the Company, including, but not limited to: details of underlying assets, sensitive accounting or transactions, trade secrets, identifiable payroll or personnel information, non-public (internal) marketing or sales information, etc.

      P.      <u>Federal Income Tax Risks</u>.

WE HAVE NOT OBTAINED A LEGAL OPINION CONCERNING THE TAX IMPLICATIONS OF AN INVESTMENT IN THE OFFERING.  IT IS EACH PROSPECTIVE INVESTOR'S RESPONSIBILITY TO OBTAIN AN INDEPENDENT TAX OPINION CONCERNING THE TAX STATUS OR IMPLICATIONS OF INVESTING IN THE OFFERING. Investors are presumed to have access to needed legal and tax advice. Prospective investors are expected to consult their own tax advisors as to their own tax situation prior to investment in the Class C Shares.  The cost of such consultation could, depending on the amount thereof, materially increase the cost of purchasing an interest in this Offering and may decrease any anticipated yield on the investment.  A number of changes in the tax laws have been made and/or are under consideration, and such professional consultation is essential.

      Q.      <u>Risk of Audit</u>.

Our federal tax returns may be audited by the IRS. Such audit may result in the challenge and disallowance of some of the deductions or increase in the taxable income described in such returns. No assurance or warranty of any kind can be made with respect to the deductibility or taxability of any such items on our tax return in the event of either an audit or any litigation resulting from an audit.  While an audit may decrease our ability to perform, such an audit should not affect the tax treatment afforded Investors with respect to the Offering.

IV
UNDERLYING ASSETS

**Life Policies**

We will invest in Life Insurance Policies ("Life Policies", "Policies", "Contracts") as the simple majority of our Fund Assets. We anticipate that all Life Policies purchased by this Fund will be purchased as a turn-key package through an affiliate offering with the deeproot Growth Runs Deep Fund, LLC. As disclosed in that fund, the following disclosures would ultimately apply to any purchase made hereunder.

Life Policies are sales to third parties, of existing life insurance contracts held on insureds who are typically within 15 years of life expectancy, or 65 years of age or older. Policies are purchased at a discount; for more than their cash surrender value but less than the net death benefit to be paid under the policies. When we acquire such a contract, we may be required to pay the policy premiums in return for the receipt of the net death benefit as the new owner and beneficiary under the policy. These policies are considered illiquid in that they are bought and sold in a secondary market through policy brokers and not on any exchange where settlement of a transaction is required in a timely manner.

The Manager intend to diversify a portfolio of Life Policies amongst multiple types, amounts, and underwriting classes. Utilizing a diversified portfolio minimizes: overall risk, premium expenses, cost of insurance fluctuations, mortality expenses, carrier default, and hold times to maturity.

The Life Policies we buy should not be confused with (retail) life settlements or viaticals, both of which have negative connotations, substantial added risks, and are different than the institutional policies we source. A viatical is a policy that is bought to gamble on the potentially short life span of a terminally ill insured, usually under the age of 65. We do not buy viaticals. Retail life settlements refer to life policies that are bought and resold on the primary and secondary markets directly to investors (as opposed to being pooled in a fund). Since the investors tend to take on additional risk (such as premium and life expectancy risks), these policies tend to have attributes less favorable to our stricter underwriting guidelines.

Types of Policies

There are several types of insurance contracts that we might purchase. Some of these types of contracts might include whole life, universal life, or convertible term. Some of these types might have multiple subtypes. For example, universal life contracts can further be distinguished by indexed universal life, variable universal life, or fixed universal life. Each of these types of life policies have pros and cons. The Manager intend to use multiple types of contracts to diversify the portfolio.

Whole life insurance constitutes permanent cash-value life insurance policies that typically earn a fixed rate of internal interest above the cost of insurance. On the other hand, universal life insurance is a type of permanent life insurance in which premium payments above the cost of insurance are credited to cash value of the policy utilizing an investment-style under-lying mechanism. The investment-style crediting of a universal policy varies depending on if the allocation is fixed, indexed, or variable.

Whereas whole and universal life insurance policies are considered 'owned' policies; term life insurance are considered 'rented' or 'leased' policies. This is because term policies are only available for certain underwriting and age classes, only last for specific terms of time, and do not carry any cash value. Convertible Term policies are a variation in that you can 'lease to own'. In other words, the 'leased' term policy can be converted to an 'owned' whole or universal life policy under certain conditions.

Target Life Settlement Portfolio Summary

In sourcing life policies for a diversified portfolio, there are a number of attributes we look at before purchasing a contract. First and foremost is the reliability of the underwriting or life expectancy report. These reports are provided to us by our middle source provider, having been conducted by a well-known and reputable underwriter. In addition, we assess the following attributes and how the potential policy purchase would impact, and hopefully further diversify, the existing portfolio.

| | |
|---|---|
| Minimum Age of Insureds | 65 |
| Target Min Age for Male Insureds | 74 |
| Target Min Age for Female Insureds | 76 |
| Min Face-to-Acquisition Cost Ratio @ LE+1 | 0.70 |
| Policy Types | Whole, UL, IUL, VUL, Convertible Term |
| Target Life Expectancy Range | 3 - 12 years |
| Target Life Expectancy | 4 - 6 years |
| Internal Life Expectancy/Premium Expense | Life Expectancy + 1 or higher |
| Carrier [AM Best] permissible ratings | B+, B++, A-, A, A+, A++ |
| <65 Age policies | < 5% of aggregate investments |
| Second to Die policies | < 5% of aggregate investments |

<u>Sourcing</u>

There are two main markets to source policies from. The primary market constitutes sales directly from the insured to us. We have never bought directly from the primary market for many reasons; chief amongst them the expertise required to properly vet a policy before purchase. The secondary market constitutes sales where the policy has already been sold out of the primary market, and a third party, middle source provider, or broker holds and is selling the policy.

In the past, our Manager have purchased Life Policies through secondary market transactions directly from a middle source provider (ie. Broker). The middle source provider purchased the policy directly from an owner/insured that purchased the life insurance in the primary market. Ongoing, we will continue to use brokers to purchase secondary market policies.

Each policy we consider will be reviewed by an independent third party medical actuarial firm who will issue a report providing a life expectancy estimate on each insured. We rely on the medical/actuarial life expectancy assumptions provided to us by the third party medical actuarial firm to estimate the expected mortality of the insured. We will base our life expectancy estimates on the estimates provided by the actuarial firm plus one year (ie. LE+1). It is management's experience that on average LE+1 is a responsible and conservative approach to estimating the life expectancy of the policies that we plan to purchase, due to the fact that LE is an actuarial based estimate for an insured's life expectancy.

The policies we will purchase are whole, universal, or convertible term life insurance policies issued by well-rated life insurance companies. Some of the insurance carriers our Manager have purchased policies in the past from, are: AIG, Transamerica, Met Life, VOYA, Lincoln Financial, Protective Life, AXA Financial, Midland National, etc.

The price we are willing to pay for a policy (the "Acquisition Cost") in the secondary market is primarily a function of: (1) the policy's face value; (2) the expected actuarial mortality of the insured; (3) the premiums expected to be paid over the life of the insured; and (4) market competition from other competitors. We seek to earn profits by purchasing policies at discounts to the face value of the insurance benefit. The discounts at which we purchase are expected to not only exceed the costs necessary to pay premiums and the costs to cover our operating expenses, but also to return the liquidation amount to all investors.

<u>Investment Allocation Policy</u>

It is our policy to avoid conflicts of interest in allocation of funds to life policies. We segregate assets between classes of shares. Since life policies available for purchase are always in flux (being time and money dependent at any given time), we will allocate capital from a specific Fund for purchase of the life policy for that Fund. This allocation policy prevents the Manager from favoring one Fund over another. If money is readily available from multiple Funds at the same time, the Manager may use discretion to choose appropriate policies for each Fund given the capital available with the then available policies at the time.

<u>Risk Management</u>

We will seek to minimize risk by investing in policies issued by a diverse range of highly-rated insurance carriers; and in policies that vary: by life expectancy, by net death benefits, and by annual premium payments. We intend to reduce the life expectancy risk by investing only in contracts where the life expectancy was reviewed by an experienced independent medical professional and/or actuary, as well as by diversifying the investments across insured individuals' varying ages and medical profiles. Some risks apply to this asset, which are discussed as follows.

Risks - Sourcing

The United States is one of only a few financial markets in the world where quality life insurance can be obtained at low cost with a dynamic range of underwriting profiles. While historical trends indicate that most life policies are sold to overseas institutions and investors, domestic purchases have dwindled for various reasons. Sourcing is not amongst those reasons. Retention of our sourcing providers are a key element to our success. Our sourcing providers are able to tap the vibrant supply currently being sought after by foreign institutions and investors. While we do not expect any changes to the quality or quantity of life polices over the next decade, if this trend changes, we are prepared to adjust with other traditional or alternative capital appreciation assets.

Risks - Illiquidity

A life policy matures when the underwritten insured dies, an authenticated claim is filed with the insurance company, and the death benefits are paid. Until that time, the policy is practically illiquid. Future premium payments beyond normal reserves poses potential liquidity risks. Withdrawals of cash value will usually significantly alter the underlying accounting of policy, and even result in a potential lapse of the policy. As a result, it is our corporate policy to not withdraw cash value outright unless doing so will not affect the underlying accounting of the policy. We differentiate 'withdrawal' of cash from a life policy (for our retention or other use) from 'spending the cash down' for purposes of internal cash leverage to reduce premium outlay at the expense of the insurance carrier. In addition, by using our ultimate parent company, Policy Services, Inc., as our sole affiliated policy administration provider between us and the insurance carrier, we are unable to 'raid the piggy bank'. While we reserve the right to resell a policy held by us in secondary market to one or more third parties, in return for fair market value (i.e. usually calculated as the face amount of the policy, less a discount for marketability and life expectancy), the inability to sell a policy that has become economically toxic could be an issue.

Risks - Unknown Maturities

There is no guaranteed method of predicting the death of an insured. The closest we can come to predicting a range of life expectancy is with a medical review, underwriting analysis, and governmental or industry mortality tables. While we intend to purchase life policies in the secondary market with life expectancy terms that average between four and six years, there could be maturities both sooner or later. Maturity directly affects two key aspects of our fund: the annualized return of the investment, and the pace of queue position advancement. Both of these aspects are equally important to fulfilling the expectations of investors.

Risks - Out of Control Premium Costs

Life policies usually require premiums to be paid periodically until maturity. The timely and accurate payment of premium is the most essential and critical component of holding a life policy portfolio. We, on the other hand, have arranged for our portfolio to be administered by Policy Services, Inc. While some policies will require additional premium as billed, normally there is some semblance of reserves capable of funding the underwritten life expectancy of the insured, plus one year (LE+1). As a result, we do not anticipate having to dip into reserves or face exigencies until after such time as the insured has lived beyond LE+1. This significantly reduces the short and long term financial expenditures or costs of the Offering and increases internal liquidity.

Risks - Life Policy Forfeiture or Lapse

When premium is not timely paid, or not enough premium is paid, an insurance carrier might *lapse* the policy (i.e. terminate the policy for less than fair market value). This could happen due to oversight on our part, and/or by illicit behavior by carrier. In either circumstance, we might have to pay additional sums to reinstate the policy, or in the worst case scenario, litigate the matter. Litigation is extremely expensive and time consuming. Trends indicate that the risk of litigating a lapsed policy (whether occurring by our own fault, or that of the carrier) is only getting higher, as many carriers have adopted a 'come and take it' attitude. With that said, we do not anticipate that for most of our policies this will be an issue.

Risks - Carrier Rehabilitation or Liquidation

In the worst case scenario wherein a life insurance company enters rehabilitation by order of a state insurance official, files for bankruptcy, or is liquidated, we might not receive the full face value of the life policy. While one or more state guaranty funds might cover some or all of the losses, it is a historically-potential risk. While a risk, we do not anticipate that this will occur given the financial strength of the carriers our life policies are underwritten by. In addition, if this ever occurs it will likely only be with one or two carriers. A systemic failure of life insurance market

would arguably only occur in conjunction with a substantial or major economic disaster that would also affect every other industry and everyone, everywhere.

**Capital Acquisition in deeproot Affiliates**

A capital acquisition is a purchase of an internal, affiliated investment position in another enterprise, wherein such enterprise is intended to enhance Company's reputability, safety, or financials through joint venture, partnership or collaboration, or minimize pool risk, lower administrative overhead or expenses, or to develop additional product lines. There is a high risk in this type of investment, which may yield higher gains or higher losses. We minimize this risk by limiting the capital acquisition component of the Company to less than fifty percent (50%) of the asset portfolio.

The purpose of this investment type is: i) to provide short term liquidity; ii) to provide liquid revenue or distributions to pay off positions sooner and more frequently than waiting on life policy maturities; and iii) the safer diversification of underlying assets away from just life policies.

Currently, deeproot Tech's current affiliate disclosure are available on our secure website.

**Other Asset Classes**

The Company reserves the right to include other assets or asset classes, with reasonable notice to Class C Shareholders.

**V**
**REPORTING**

Class C Shareholders have certain rights to receive ongoing information about the Company, the Company's financial status, and the Class C Shareholder's position(s). Notwithstanding compliance with Section 101.502 of the Texas Business Organizations Code, some information may be exempt from reporting.

Secure online access is available at https://secure.deeprootfunds.com. For purposes of this Offering/PPM, all references to Company's duty (whether mandatory or permissive) to report, notify, convey, or deliver any information or document(s) shall be deemed to be reported, notified, conveyed, or delivered by online access to your secure account; whether or not you have requested such access. For shareholders that wish to have printed, postal mail notifications, you must contact us in writing.

We have an affirmative duty to provide some ongoing information without need for any Class C Shareholders' prior requests. These include:

» notice of any default of any underlying asset
» notice of a failure to pay a Liquidation Amount to any Class C Shareholder
» a statement of account at least once annually, or digital access to the same
» a statement of Company's unaudited financial condition and internal valuation of our portfolio, or digital access to the same
» notice of any adverse regulatory or legal notice, proceeding or decision regarding us that directly and significantly affects the Class C Shareholders' rights or values
» notice of any other event that has a significant potential to negatively affect our ability to return principal and interest to the Class C Shareholders

We also have a duty to release certain information only upon request by a Class C Shareholder. These include:

» a statement of account value at the time of request
» a statement of Company's current financial condition at the time of request

We retain the right to not release certain information to any Class C Shareholder. This information includes but is not limited to:

» copies of any confidential, privileged or proprietary information that does not directly involve any Class C Shareholder's interest
» any information concerning another Class C Shareholder's interest
» specific positions, investments, assets, or transactions underlying in our portfolio
» private or non-public information regarding us, any of our officers, any of our employees, or any of our strategic partners, assigns, or third party administrators

## VI
## COSTS AND APPLICATION OF PROCEEDS

The proceeds from the sale of Class C Shares will be used to begin purchasing assets identified above. The proceeds of sales of additional Class C Shares will be used as the sales are closed. The following are the minimum amounts that will be utilized for the indicated purposes per $25,000 of principal received (or pro rata thereof), but may be less if no compensation is earned or paid.

| Cost of Services | Minimum Per $25,000 |
|---|---|
| Principal | $23,500.00 |
| Expenditures (~6%) *Initial Compensation (if any)* | $ 1,500.00 |

**Agent Compensation**

If a Class C Shareholder is represented by a broker or other professional who may legally receive commissions or other compensation for referring, advising, or providing this Offering to Class C Shareholder, then the Company may pay to the order of such professional an amount of compensation that has been disclosed to the Class C Shareholder.

There are some types of compensation that must be paid by the Class C Shareholder, such as advisory fees. In that case, the Class C Shareholder fully indemnifies Company from being responsible for those payments. In addition, we will not pay any selling commissions, but will pay Manager fees, in connection with the sale of Class C Shares to investors whose contracts for investment advisory and related brokerage services include a fixed or "wrap" fee feature. Investors may agree with their broker-dealers to reduce the amount of selling commissions payable with respect to the purchase of their preferred shares down to zero: (i) if the investor has engaged the services of a registered investment advisor, or RIA, or other financial advisor who will be paid compensation for investment advisory services or other financial or investment advice, or (ii) if the investor is investing through a bank trust account with respect to which the investor has delegated the decision-making authority for investments made through the account to a bank trust department. The net proceeds to us will not be affected by reducing commissions payable in connection with such sales. Neither our Manager nor its affiliates will directly or indirectly compensate any person engaged as an investment advisor or a bank trust department by a potential investor as an inducement for such investment advisor or bank trust department to advise favorably for an investment in the Class C Shares offered hereby.

**Company Advance**

In lieu of a management fee, the Company shall receive an advance of no less than two percent (2%) and no more than ten percent (10%) of the Invested Capital of any Class C Shareholder. This is not a fee. Rather this is an advance out of Invested Capital. This amount covers agent compensation (if any), nominal administration expenses, IRA fees, other compensation, marketing costs, and the Fund Advisor fees. Despite an advance, one hundred percent (100%) of the Class C Shareholder's Principal shall be returned at the Pay Date.

# VII
## ADMINISTRATION STRUCTURE & FEES

The Company is managed by a Board of Managers.  However, the sole current Manager is Robert J. Mueller, Esq.  All fees are subject to reasonable changes at any time, in Company's sole discretion, without prior notice.

| | |
|---|---|
| Annual Account Fee | $0.00 |
| Annual IRA/Qualified Fee | *As billed by the Custodian* |
| Call Notice and Payment | $0.00 |
| Check Fee | $0.00 |
| Overnight Fee | *As billed by the Custodian* |
| Wire Fee | *As billed by the Custodian* |
| Investor Advisory Fees | *See below \** |

\*  For Investor Advisory Fees: If Company is billed for and pays any investment advisory fees from an advisor or advisory firm that represents the Class C Shareholder, then such advisory fees, plus three percent (3%) compounded interest, shall be deducted from the respective Class C Shareholder's Liquidation Amount at the Pay Date.

# VIII
## PRINCIPALS & ADVISORS

**Robert J. Mueller, Esq.**
**Manager, the575™**

There is only one director and executive officer of the Company: Robert J. Mueller.  He is an executive, attorney, and financial advisor with over fifteen years of experience in the legal and financial industries. Robert earned a B.B.A. in Finance from the University of Texas at San Antonio, while concurrently learning about the financial markets with USAA Investment Management Company. After completing his undergraduate studies, Robert attended St. Mary's Law School in San Antonio, where he graduated a semester early in December 2000, and was admitted to the Texas Bar in May 2001.

Robert is age 45 as of the date of this Prospectus, and has been the principal officer, director, or manager of Policy Services, Inc., and all of the deeproot® family of companies since 2012.  Prior to creating Policy Services, Inc, and the deeproot® family of companies in 2012, Robert practiced full time estate planning law, sold insurance products, and operated two companies in the insurance services industry, creating a book of business with over 750 clients.

Mr. Mueller is responsible for deeproot's product design, marketing, and strategic planning areas, as well as operation and management of multiple entities.  Robert is the architect and implementer of all products, services, or designs Policy Services, Inc. or the deeproot® family of companies have marketed or sold.  He has also personally managed all aspects of the administrative functions of the enterprises, supervised all investor or client care, handled most of the clerical and processing of investor or client paperwork, designed the IT systems and client portal, and is chiefly responsible for the growth and success of all the enterprises.  Robert also has backgrounds in accounting, valuation, information technology, graphic design, marketing, programming, and other technical areas.

Robert J. Mueller is the only executive of the Company. He receives no direct compensation from the575 Fund. Robert is paid a salary from an affiliate for all services provided across all the entities.  Neither he, nor any other executive or personnel serving or employed may earn a commission on any Class C Shares sold.  Any marketing or travel expenses on behalf of the575 will be expensed by invoice.

**Security Ownership of Beneficial Owners**

| (1) Title of Class | (2) Name and Address of Beneficial Owner | (3) Amount and Nature of Beneficial Ownership | (4) Percent of class |
|---|---|---|---|
| Membership Interests / Shares | Robert J. Mueller 12621 Silicon Dr San Antonio, TX 78249 | 100% *By and through Parent Entities of the Company* | 100% |

**Security Ownership of Management**

| (1) Title of Class | (2) Name and Title of Manager | (3) Amount and Nature of Beneficial Ownership | (4) Percent of class |
|---|---|---|---|
| Membership Interests / Shares | Robert J. Mueller | 100% *By and through Parent Entities of the Company* | 100% |

## IX
## SUBSCRIPTION PROCEDURE

In order to subscribe for Class C Shares, a Class C Shareholder must deliver to the Company, at its offices:

1. One completed and executed copy of the dGRD Application & Subscription Agreement, per registration type;
2. A bank or certified check, or Wire, in the amount of Twenty-Five Thousand Dollars (or $23,500.00 if through an RIA) for each full Class C Share subscribed for, or fractional part thereof, or if an payable to the order of: **deeproot Funds**; or deeproot Fund's designated custodian.

Executed copies of the documents to be completed by the Class C Shareholders are being delivered with this Confidential PPM. EACH CLASS C SHAREHOLDER IS URGED TO READ THE SUBSCRIPTION AGREEMENT AND THE ACCOMPANYING DOCUMENTS IN THEIR ENTIRETY BEFORE EXECUTING THEM.

In the event the Company rejects or revokes acceptance of a subscription, funds delivered by the subscriber to the Company in connection with the subscription will be returned without interest.  Each Class C Shareholder who is solely and affirmatively responsible for keeping their contact information (and bank information for EFT payments) current with the Company.  The Company will not be responsible for any delayed, missing, or incorrect notices or payments due to Shareholder's inaction to affirmatively update such information.

Share certificates shall not be issued for any shares subscribed to herein. Depending on the custodian: i) a certificate of ownership, in lieu of a share certificate, shall be issued to each Class C Shareholder in a closing packet, along with copies of the application and subscription agreement; or ii) a certificate will be held in street form with the custodian.

deeproot Funds, LLC handles the administrative operations for the Company. Any subscription to this Offering constitutes a perpetual acknowledgment and consent to such.

## X
## AVAILABLE INFORMATION

The statements in this PPM as to the contents of any contract or other document are of necessity brief descriptions thereof and are not necessarily complete; each such statement is qualified in its entirety by reference to such contract or document.

Any Class C Shareholder desiring additional information about the Company should contact deeproot Funds, LLC, 12621 Silicon Dr, San Antonio, Texas 78249, telephone: (888) 316-2935.  All reasonable, permissible requests for books, records, and financial information regarding the Company shall be made available in reasonable amounts of time to the Class C Shareholder.

## XI
## FREQUENTLY ASKED QUESTIONS (FAQ)

**Why are there Class A and Class C shares?**

deeproot 575 Fund, LLC ("**the575**™") is organized as a Limited Liability Company (LLC), and not as a For-Profit Corporation.  This was done for ease of organization, lower filing and maintenance costs, tax options, etc.  In order for an LLC to mirror a For-Profit Corporation's issuance of Common and Preferred Stock, we use 'classes' of membership interests ('shares').  Each class is comprised of shareholders who enjoy the same rights and privileges.

**What are Class A shares?**

Class A Shares in **the575**™ are the equivalent to common stock in a For-Profit Corporation.  They have voting rights and the ability to receive dividends or distributions of capital from the business, subject to Class C's preferential rights.

**What are Class C shares?**

Class C Shares in **the575**™ are the equivalent to preferred stock in a For-Profit Corporation that includes a Mandatory or Premature Call feature.  While they do have limited voting rights, they have preferential rights to receive dividends or distributions of capital from the Company, over any other class' shares.

**Are Class C shares 'cumulative'?**

Yes. A cumulative Priority Return is the equivalent of cumulative preferred stock.  That is, if any Priority Return payments have been omitted in the past, all omitted Priority Return payments must first be paid out in-full to Class C Shareholders, before any other class' shareholders may receive net distributions.

**Are Class C shares 'participating'?**

No.  Participating preferred shareholders would be entitled to receive profits or incur losses outside of the preferred return.  In this Offering, the Company accepts the risk of participation interests or losses.

**What is my Priority Return and When will I receive it?**

The Priority Return you receive will be based on the Priority Return Election you make for the subscription term.  Class C Shareholders with a periodic Priority Return Election will receive monthly or quarterly Priority Return payments equal to the monthly pro rata share of the fixed annualized return.  Class C Shareholders with a deferred Priority Return Election will receive a lump sum capital gain on or about the Pay Date.

**What does it mean that the Company can 'call' my shares?**

A **call** is a right retained by the Company to buy-back Class C Shares.  The Company's right to call is absolute and without recourse.  Upon any call, all rights and privileges as to a Class C Shareholder's called position(s) will be terminated, and the Company will convey the Class C Shareholder's Liquidation Amount on the Pay Date.  The Mandatory Call under the **the575**™ is pre-determined at five years, less one day, from the Start Date.  A Premature Call can happen at any time before, and supersedes, the Mandatory Call.

**How do Class C Shareholders get notified when a 'call' occurs?**

For a Mandatory Call, the Company will notify you in writing shortly before the Mandatory Call to provide you details about the Liquidation Amount, the Pay Date, and any renewal rights or benefits (if any).  For a Premature Call, the Company will notify you at least sixty days before the premature call date, to provide you details about the Liquidation Amount, the Pay Date, and any renewal rights or benefits (if any).

**How can I get my Principal back?**

Unless renewed in full, or part, your Principal will be returned at the Pay Date.  All requests for Invested Capital or Principal outside of a call (and subsequent Pay Date), will be rejected.

**Can I change my Priority Return election?**

No.  Once a Priority Return Election is chosen on or before the Start Date, it may not be changed or altered until a call occurs.

**Is my principal or liquidation amount protected?**

Each Class C Shareholder's principal is backed up by the assets of the Company in a contingent security agreement, based on the performance of the assets, subject to the liabilities of the Company.  That does not guarantee that there will always be enough assets that can be disposed of to cover all sums owed to the Class C shareholders. Class C shares have a preferential right to assets over any other shareholders (including Class A Shareholders) should the unfortunate occur and the Company is forced to wind-up due to insolvency.  The return is not backed up or guaranteed by the Company, and may only be payable, in whole or part, if enough assets exist at some future time, to pay them.

**Do I get to have a say in the Company?**

Pursuant to the Operating Agreement, Class C shares have limited voting rights, or say, in the affairs of the Company.

## THIS PPM AND ENTIRE CONFIDENTIAL PACKET MUST BE RETURNED TO DEEPROOT IF YOU DO NOT INVEST.

*The area below the following line is intentionally left blank.*

# Exhibit A-3



<table>
<tr><td>**Mailing**</td><td>**Overnight/Physical**</td></tr>
</table>

|  |  |
|---|---|
| **Mailing** | **Overnight/Physical** |
| PO Box 691610 | 12621 Silicon Dr |
| San Antonio, TX 78269-1610 | San Antonio, TX 78249 |

Toll Free (888) 316-2935

**deeproot Growth Runs Deep Fund, LLC** (the "Company", "us", "we", or "dGRD") is a new private equity investment offering that will invest in a number of asset classes including life settlements or ownership of life insurance policies insuring the lives of persons not employed or affiliated with the Company; capital investments in other deeproot® entities; and cash or cash equivalents.  To capitalize the Company, we are offering a series of preferred membership interests ("shares" or "Offering") designed to meet the needs of Investors.

The Shares will be offered only to persons whom we reasonably believe are Accredited Investors as defined in Securities and Exchange Commission ("SEC") Regulation D, 17 CFR 501(a), and to the maximum legally allowable non-accredited or non-institutional investors; all of whom are known as "prospective investors."  Prospective investors will be asked to complete an Application and Subscription Agreement, a Form W-9 and provide photo identification.  We intend to claim an issuer's exemption from the requirement to register this offering under SEC Regulation D, Rule 506.

THE UNITED STATES SECURITIES AND EXCHANGE COMMISSION DOES NOT PASS UPON THE MERITS OF OR GIVE ITS APPROVAL TO ANY SECURITIES OFFERED OR THE TERMS OF THE OFFERING, NOR DOES IT PASS UPON THE ACCURACY OR COMPLETENESS OF ANY OFFERING DOCUMENT OR OTHER SELLING LITERATURE. THESE SECURITIES ARE OFFERED PURSUANT TO AN EXEMPTION FROM REGISTRATION WITH THE COMMISSION; HOWEVER, THE COMMISSION HAS NOT MADE AN INDEPENDENT DETERMINATION THAT THE SECURITIES OFFERED HEREUNDER ARE EXEMPT FROM REGISTRATION.

THIS OFFERING INVOLVES A HIGH DEGREE OF RISK TO INVESTORS.  See "Risk Factors."

|  | Principal Amount[1] | Underwriting discount and commissions[2] | Proceeds to issuer or other persons |
|---|---|---|---|
| Per unit Total | $25,000.00 | $2,000.00 | $23,000.00 |
|  |  |  |  |
| Total Minimum[3] | $100,000.00 | $8,000.00 | $92,000.00 |
| Total Maximum | $25,000,000.00 | $2,000,000.00 | $23,000,000.00 |

[1]This is the aggregate principal amount of the Offering offered through this offering document.
[2] This offering is made primarily by us.  However, we may engage third parties to help us sell Shares under this offering.  Any persons who may receive compensation will be registered as a broker, or an otherwise lawful finder.  Compensation to such persons, if any, will vary and will be paid out of the Investors principal.
[3] All proceeds will be held in a separate account until we have received the minimum amount of $100,000 in order to start the enterprise. Thereafter, we will not place prospective investors' monies in escrow or a separate account.  Certain amounts may be retained for administration or management purposes.

### DATED AUGUST 3, 2015

**THIS PPM AND ENTIRE CONFIDENTIAL PACKET MUST BE RETURNED TO DEEPROOT IF YOU DO NOT INVEST.**

<u>NOTICES TO INVESTORS</u>

THE LIMITED LIABILITY COMPANY SHARES HEREIN HAVE NOT BEEN REGISTERED UNDER THE SECURITIES ACT OF 1933, AS AMENDED, OR UNDER ANY SECURITIES LAWS OF ANY STATE.  THE SHARES CANNOT BE RESOLD UNLESS THEY ARE SUBSEQUENTLY REGISTERED OR EXEMPTIONS FROM REGISTRATION ARE AVAILABLE.  NEITHER THE SECURITIES AND EXCHANGE COMMISSION NOR ANY OTHER FEDERAL OR STATE AUTHORITY OR AGENCY HAS PASSED ON OR ENDORSED THE MERITS OF THIS OFFERING OR THE COMPLETENESS OF THIS PRIVATE PLACEMENT MEMORANDUM.   ANY REPRESENTATION TO THE CONTRARY IS UNLAWFUL.  THERE IS NO PUBLIC MARKET FOR THE SHARES.

NO OFFERING LITERATURE, OTHER THAN THIS PRIVATE PLACEMENT MEMORANDUM, OR ADVERTISING, IN ANY FORM, WILL BE EMPLOYED IN THE OFFERING OF THESE SECURITIES.  NO PERSON HAS BEEN AUTHORIZED TO MAKE ANY REPRESENTATION OTHER THAN THOSE CONTAINED IN THIS PRIVATE PLACEMENT MEMORANDUM, AND, IF MADE, SUCH REPRESENTATIONS MUST NOT BE RELIED UPON.  THIS PRIVATE PLACEMENT MEMORANDUM IS SUBMITTED IN CONNECTION WITH THE PRIVATE PLACEMENT OF THESE SHARES AND MAY NOT BE REPRODUCED OR USED FOR ANY OTHER PURPOSE.  ANY DISTRIBUTION OF THIS PRIVATE PLACEMENT MEMORANDUM, IN WHOLE OR IN PART, OR THE DIVULGENCE OF ANY OF ITS CONTENTS, IS UNAUTHORIZED.

PROSPECTIVE INVESTORS ARE NOT TO CONSTRUE THE CONTENTS OF THIS PRIVATE PLACEMENT MEMORANDUM AS LEGAL OR TAX ADVICE.  EACH INVESTOR SHOULD SEEK HIS OWN LEGAL AND TAX ADVICE AS TO LEGAL, TAX AND RELATED MATTERS CONCERNING THIS INVESTMENT.

THE OFFEREE, BY ACCEPTANCE OF THIS PRIVATE PLACEMENT MEMORANDUM, AGREES TO RETURN THIS DOCUMENT AND ALL RELATED DOCUMENTS TO THE COMPANY IF THE OFFEREE DOES NOT DECIDE TO PURCHASE ANY OF THE SHARES OFFERED HEREBY.

THIS OFFERING IS PRELIMINARY AND MADE SUBJECT TO WITHDRAWAL, TERMINATION OR MATERIAL MODIFICATION BY THE COMPANY WITHOUT NOTICE.  WHETHER OR NOT WITHDRAWN OR TERMINATED, THE COMPANY RESERVES THE RIGHT TO OFFER SHARES IN THE FUTURE AT A PRICE LESS THAN, EQUAL TO OR GREATER THAN THE PRICE OF SHARES OFFERED HEREBY. THESE SECURITIES INVOLVE A HIGH DEGREE OF RISK AND ARE SUITABLE ONLY FOR PERSONS OF SUBSTANTIAL MEANS WHO HAVE NO NEED FOR LIQUIDITY IN THIS INVESTMENT.

deeproot Growth Runs Deep Fund, LLC
(a Texas Limited Liability Company)

# CONFIDENTIAL PRIVATE PLACEMENT MEMORANDUM

### OFFERING DATED AUGUST 3, 2015

The information in this Private Placement Memorandum ("PPM") is furnished on a confidential basis exclusively for the use of the person named below, who, by accepting this PPM, **agrees to return it promptly to the Company**, upon request or if no investment occurs, and agrees not to reproduce or disclose to any persons (other than such person's legal, tax, accounting and other advisors) all or any part off this PPM without the express written permission of the Company.

_____

Name

Copy No.



**Growth Runs Deep Fund** ("dGRD")
$25,000,000
Class B Membership Shares

# CONFIDENTIAL PRIVATE PLACEMENT MEMORANDUM

**deeproot Growth Runs Deep Fund, LLC** (the "Company", "us", "we", "our", or "dGRD") is a Texas limited liability company of which deeproot Funds, LLC ("dF") is the sole member. **dF** owns all of the Class A Membership Shares ("Class A Shares") and Robert J. Mueller, the sole principal of the deeproot® family of companies is the current Manager of the Company.

The dGRD is a significant step forward in the evolution of the life settlement transaction. The Fund provides a securitized investment in a pool of life settlement policies that removes the inherent risks in relying on the maturity of a single policy, or the unknown wait for an entire pool to mature. By utilizing a First-In First-Out ("FIFO") Queue, investors are put on an equal, fair footing with each other: secured and profiting off of a 'pool' of policies, and not just a singular 'luck-of-the-draw'. Other features include: renewal bonuses, above average pre-determined returns (38% to 60%), and no anticipated future premium obligations. The Operating Agreement of the Company is attached hereto as Appendix I. The Company's principal business office is located at 12621 Silicon Dr, San Antonio, Texas 78249. While ground-breaking, there is no assurance that the Company's business plan will be successful.

## I
## SUMMARY OF THE OFFERING

**Structure**

1.      The Company is initially offering up to $25,000,000, or 1,000 Class B Membership Shares ("Class B Shares") at a price of $25,000 per Class B Share. The minimum investment per transaction is $25,000, or 1 Class B Share. Fractional shares up to four decimal places are permitted. The Company reserves the right to increase the outstanding, issued, and/or authorized amount of Class B Shares, without notice or permission, to accommodate renewals by existing Class B Shareholders.

2.      Subscription payments will be held in an interest-bearing account until at least $100,000 of Class B Shares (4 Class B Shares) are sold. Once the Company attains that level of sales, the Company will commence business by purchasing the first assets. If subscriptions to purchase at least 4 Class B Shares have not been accepted by December 31, 2015, and by unanimous vote of all Class B Shareholders, all payments received will be returned *pro rata*, together with interest earned thereon (if any). ** UPDATE: Subscriptions to purchase Class B Shares exceeded 4 shares by 12/31/2015 and the Company commenced business. **

3.      The Company will have a board of Managers who will be responsible for the management of the Company. Robert J. Mueller has been designated as the initial Manager. Biographies of the management team are contained herein.

4.      Any commissions or discounts paid (if any) to a broker or finder, referring, representing or assisting a Class B Shareholder with respect to the offering of the Class B Shares, shall be paid at the expense of the Company.

**Offering Basics**

5.      The offering is made up of a chronological 'Queue' of segmented 1 share ($25,000) investment positions (the "position", or "positions"). A position may be fractional (ie. less than $25,000 or 1 share).

6.      Each investment position is assigned a predetermined rate (the "Liquidation Multiplier"). This is the equivalent of a lump-sum priority or preferred return ("Priority Return").

7.  The Class B Shares are subject to Mandatory Calls, and as assets mature, the Company calls and pays off the positions based on their respective order in the FIFO Queue, as further described in this PPM.

8.  Each Class B Shareholder has two options upon a Mandatory Call: i) to renew (ie. reinvest) the position(s) in return for an increased Liquidation Multiplier (ie. bonus); or ii) receive a sum equal to the position(s)' initial principal, multiplied by the Liquidation Multiplier, paid 30 days after the Call Date.  All calls are made in the sole discretion of the Company and are absolute, and without recourse.

9.  The Company is responsible for all premiums or outlays to maintain the assets in return for an advance of principal, and a share of any assets that mature.

10.  There are no costs, fees, or expenses that will be assessed against a Class B Shareholder's account, other than those disclosed in Articles VII or VIII herein.

**Other Offering Details**

11.  Class A Shareholders retain all voting rights.  The Fund Advisor or Manager(s) retain sole discretion over due diligence, purchase, and maintenance of the assets.

12.  Class B Shareholders have a right to receive certain information, as further described herein; and retain a right to consent to any substantial changes to the Offering, or to the ownership or management of the Company.

13.  Class B Shareholders are granted a contingent security interest in and to the underlying assets, pro rata, as a pool.  As such, the Company agrees to not accept future principal, if doing so would result in non-securitization of a majority of Class B Shareholder positions.

14.  If a Class B Shareholder dies, such Class B Shareholder's custodian(s), beneficiary(ies), legal representative(s), and/or assign(s) are subject to the same registration and terms upon which the Class B Shareholder would have been, had the Shareholder remained alive.  The Company retains the sole and absolute right to require adequate documentation or authentication determinative of the legal right of the requesting custodian, beneficiary, legal representative, or assign to request or receive the deceased Class B Shareholder's principal and/or return.  The Company also retains the absolute and sole discretion to reject any such request without a written order (to do so) issued by a court of proper jurisdiction.

**II**
**SUITABILITY STANDARDS FOR INVESTORS**

Investment in the Class B Shares of the Company offered hereby involves a high degree of risk.  The Class B Shares offered hereby are suitable only for those investors whose business and investment experience, either alone or together with their financial advisors, makes them capable of evaluating the merits or risks of their prospective investments in the Company and who can afford to bear the economic risk of their investment for an indefinite period and have no need for liquidity in this investment.  There will not be any public market for the Class B Shares.  The Class B Shares have not been registered with the Securities and Exchange Commission, nor with any state securities agency.  This is an offering made only to a limited number of investors for investment only.  Each investor will be required to execute the Subscription Agreement.  Under the Subscription Agreement, each investor will be required to represent, among other things, that he is acquiring the units for his own account, for investment, and not with any intention of making a distribution or resale thereof, either in whole or in part.  Furthermore, no resale or transfer will be permitted except in accordance with the provisions of the Federal Securities Act of 1933, as amended, the rules and regulations thereunder, the applicable state securities laws, and the terms of the Operating Agreement.

No Class B Shares will be sold to any person unless he executes and delivers to the Company a copy of the Subscription Agreement and accompanying documents, which contain representations regarding the prospective investor's net worth and certain other matters.  The Company will not accept subscriptions from any prospective investor unless such investor certifies that (1) his net income before taxes for each of the two immediately preceding years was at least $200,000 and there is a reasonable expectation of reaching the same income level in the current year, or (2) his net worth (exclusive of primary residence, furnishings and automobiles) is at least $1,000,000, or (3)

his financial position is otherwise suitable for the degree of risk associated with this investment. In addition, a prospective investor must have sufficient knowledge and experience in financial and business matters to enable such prospective investor to evaluate the merits and risks of an investment in the Company or must have the assistance of a person other than the Company or its affiliates, who possesses such knowledge and expertise. The Company will have the sole discretion regarding admittance of any investor into the Company.

## III
## RISK FACTORS

Participation in the Company requires a minimum investment of 1 Class B Share ($25,000), and the ability and willingness of the investor to accept substantial investment risks and lack of liquidity.

In addition to the factors set forth elsewhere in this PPM, prospective investors in the Company should carefully consider the following.

INFORMATION CONTAINED HEREIN, INCLUDING FINANCIAL FORECASTS, HAS BEEN OBTAINED FROM THE COMPANY AND THE MANAGERS AND FROM OTHER SOURCES DEEMED RELIABLE. THIS INFORMATION HAS BEEN PREPARED BASED UPON CURRENTLY AVAILABLE DATA AND NECESSARILY INCORPORATES SIGNIFICANT ASSUMPTIONS AS TO FACTUAL MATTERS. THERE IS NO ASSURANCE THAT THESE ASSUMPTIONS ARE, OR WILL PROVE, ACCURATE IN ALL MATERIAL RESPECTS, SO THAT, AMONG OTHER THINGS, THE FINANCIAL FORECASTS CONTAINED HEREIN CAN, OR WILL, BE ATTAINED.

EACH PROSPECTIVE INVESTOR IS URGED TO CONSULT HIS OWN TAX COUNSEL, ACCOUNTANT AND OTHER PERSONAL ADVISORS CONCERNING THE LEGAL, FINANCIAL AND TAX ASPECTS OF THIS INVESTMENT. PROSPECTIVE INVESTORS ARE NOT TO CONSTRUE ANY PART OF THE CONTENTS OF THIS SUMMARY AS LEGAL OR TAX ADVICE.

FURTHERMORE, INVESTORS CAN RECEIVE NO GUARANTEE WHATSOEVER THAT THEY WILL RECEIVE ANY RETURN ON THEIR CONTRIBUTIONS TO THE VENTURE. THE MANAGERS SHALL NOT HAVE ANY LIABILITY TO THE INVESTORS FOR ANY ACT OR OMISSION NOT AMOUNTING TO FRAUD, GROSS NEGLIGENCE, OR WILLFUL MISCONDUCT.

A.      Lack of Operating History.
The Company has recently commenced operations and has no evidence other than that presented herein to predict future earnings. As such, the Company will be subject to all the risks of a new business enterprise.

B.      Investors will not be able to evaluate our portfolio of Investments prior to purchasing Class B Shares.
Our Advisor or Manager(s) have broad authority and discretion to identify and invest in life policies, private placements, and cash or cash-equivalents. Consequently, Class B Shareholders must rely exclusively on our Advisor or Manager(s) to make sound investment decisions for them.

C.      Investment in the Class B Shares involves an enhanced degree of risk.
We will only be able to meet our obligations to the Class B Shareholders and achieve our own internal objectives by obtaining enhanced returns from our investment portfolio. Although our Advisor or Manager(s) will apply governing criteria and reasonable business judgment to their investment decisions, each investment will generally imply an enhanced risk than other traditional investments offered in the open market. There is the potential risk of losing part or all of any given underlying investment or of not achieving its expected return thereon.

D.      Term, duration, or length of investment is unknown.
While the advantage of the FIFO Queue feature of the dGRD is to put Class B Shareholders on an equal footing and a better chance to achieve the average anticipated hold time of the investment, the Company cannot make any guarantee or guess as to the term, duration, or length of the investment.

E.      It is possible Class B Shareholders may have to contribute additional money.

As more fully described below, when we acquire a life policy, we may be required to pay policy premiums. While it is anticipated that Class B Shareholders will never have to satisfy a future premium obligation, or other asset obligations, the Company reserves the right to request Class B Shareholders to advance additional principal if: i) the Class B Shareholders are given reasonable notice; and ii) by doing so is in the financial best interest of the Class B Shareholders.

F.     Dependence on Managers.

The success of the Company will depend, to a significant extent, on the quality of the management provided by the Managers.  In the event Robert J. Mueller is incapacitated or dies, or is removed or resigns, there can be no assurance that a satisfactory replacement could be obtained or would be available on the same terms.  Furthermore, the Managers will not be obligated, and are not expected, to devote full time and attention to the affairs of the Company.  The Class B Shareholders will have limited right to participate in the management of the Company.

G.     Some Agreements, Including Those Involving Compensation, Not at Arms-Length.

As described herein, we and our parent entity(ies), as Class A Shareholders, will receive any returns from the pool of investments over the returns due and payable to Class B Shareholders.  Our return may be potentially large and the magnitude of this return has been determined without the benefit of arms-length bargaining.  However, in our opinion, the risk of loss to us and the fees and charges paid by us in connection with the investments, justifies the division of the total potential return.

deeproot Funds, LLC operates other investment funds.  Those funds may, from time to time, purchase Class B Shares in the Company to hold as assets in those other funds.  Should dF purchase Class B Shares, they are subject to the same identical terms as any other Class B Shareholder, and take no preference in the FIFO Queue.

H.     Lack of Liquidity.

The Class B Shareholders should be fully aware of the long-term nature of this investment.  There is no market for resale of Class B Shares, nor is one likely to develop. The Shares are intended to be held indefinitely and are therefore, illiquid.  As such, they are not suitable for emergency, living expenses, other income requirements, or required minimum distributions (RMD's).  There are a number of restrictions on the transferability of the Class B Shares offered hereunder.  In addition, Class B Shares may only be assigned subject to limitations imposed by federal and state securities laws and the necessity of avoiding adverse tax consequences.  Additionally, an assignee may only become a substitute member with the consent of the Managers and upon satisfaction of the other conditions set forth in the Operating Agreement.  Accordingly, Class B Shareholders may not be able to liquidate this investment, even in the event of an emergency.  Additionally, the Company may decline to declare or distribute net maturity proceeds for reasons that may or may not be agreeable to Shareholders.  Finally, when the Company decides to call one or more Class B Members' position(s), the specific Class B Shares to be called will be decided by such's order in the FIFO Queue.  Queue jumping is not permitted.

I.     Not Suitable for Required Minimum Distributions.

The Shares are not intended to satisfy Required Minimum Distributions (RMDs), even though a Class B Shareholder's Priority Return might be greater than the annual RMD requirement.  RMD's generally are minimum amounts that a retirement plan account owner must withdraw annually starting with the year that he or she reaches 70 ½ years of age or, if later, the year in which he or she retires.  As such, any RMD amount that would have been withdrawn from this Offering, must instead be withdrawn out of Shareholder's other qualified accounts.

J.     Our Ability or Inability to Employ High Quality Underwriting Standards and Adhere to them in Building the Portfolio.

Our ability to find and obtain quality investments for our portfolio is a mission-critical endeavor.  While we have current readily available sources of high quality investments, there is an inherent risk that such sources could be frustrated by external forces, yield lower quality investments, or dry up entirely.

K.     Determination of Company's Profit and Loss.

Profit and loss shall be considered to have been earned over the period of the Company's fiscal year, except that profits and losses arising from the disposition of properties shall be taken into account as of the date thereof and except that if additional capital is contributed during the course of the Company's fiscal year, a separate determination of profit and loss shall be made as of the last day of the month preceding the month in which such additional capital

is contributed, and the profit and loss of the Company for the period before such date shall be apportioned among the members in accordance with their respective interests on such date.

L.      Determination of Class B Shareholder's Share of Profit.

In all cases, a Class B Shareholder's maximum share, over the duration of fiscal years held, of any profit is limited to the principal invested, multiplied by the percentage equivalent of such's position(s)' Liquidation Multiplier(s), that remains unpaid by Company.

M.      No Guarantee of Fixed or Annualized Returns.

Consistent and predictable growth is ideal in Company's effort to provide the respective return. In the short-term, if overall growth in the value of our portfolio falls below our obligations to the Class B Shareholders, our excess reserves would be expected to cover the deficit. However, there is a risk that a longer term deficit will exceed our reserves, potentially lowering the return. As the actual death of an insured, maturity of any life policy, or return of capital from a private placement are unknown at the time of investment, we cannot provide in advance a fixed or annualized rate of return. Annualized return on investment calculations can only be made at a Mandatory Call.

N.      Inadequate Valuations and Their Effect on the Accounting of the Company and Class B Shares.

Low or inadequate valuations of our investment portfolio may lead to the appearance of an accounting deficit on a portion or all of the investment portfolio. Based upon the overwhelming intended allocation of investment funds to life policies and the fact that the face value of all life policies purchased for the portfolio will eventually be realized, we believe that Class B Shareholders will actually earn the amount owed upon each maturity. However, in the event of low valuations, the accounting of the investment portfolio may actually be less than when realized.

O.      Possible Classification as an Investment Company.

Because we will invest in items which may be deemed to be securities, we could be classified as an investment company under the Investment Company Act of 1940, as amended (the "Investment Company Act"). Classification as an investment company under the Investment Company Act would have a substantial adverse impact on our operations as it would require registration with the SEC and various state securities agencies. We intend to restrict investment in our securities (including the Debentures) to a maximum of 100 Class B Shareholders in order to meet an exemption from registration under the Investment Company Act. Since we do not intend to register as an investment company, Class B Shareholders will not have any of the protections that may be afforded by the Investment Company Act.

P.      Some Information may not be Provided.

Notwithstanding compliance with Section 101.502 of the Texas Business Organizations Code, Class B Shareholders may not be permitted to request or receive sensitive, non-public, privileged or confidential information about the Company, including, but not limited to: details of underlying assets, sensitive accounting or transactions, trade secrets, identifiable payroll or personnel information, non-public (internal) marketing or sales information, etc.

Q.      Federal Income Tax Risks.

WE HAVE NOT OBTAINED A LEGAL OPINION CONCERNING THE TAX IMPLICATIONS OF AN INVESTMENT IN THE OFFERING. IT IS EACH PROSPECTIVE INVESTOR'S RESPONSIBILITY TO OBTAIN AN INDEPENDENT TAX OPINION CONCERNING THE TAX STATUS OR IMPLICATIONS OF INVESTING IN THE OFFERING. Investors are presumed to have access to needed legal and tax advice. Prospective investors are expected to consult their own tax advisors as to their own tax situation prior to investment in the Class B Shares. The cost of such consultation could, depending on the amount thereof, materially increase the cost of purchasing an interest in this Offering and may decrease any anticipated yield on the investment. A number of changes in the tax laws have been made and/or are under consideration, and such professional consultation is essential.

R.      Risk of Audit.

Our federal tax returns may be audited by the IRS. Such audit may result in the challenge and disallowance of some of the deductions or increase in the taxable income described in such returns. No assurance or warranty of any kind can be made with respect to the deductibility or taxability of any such items on our tax return in the event of either an audit or any litigation resulting from an audit. While an audit may decrease our ability to perform, such an audit should not affect the tax treatment afforded Investors with respect to the Offering.

## IV
## UNDERLYING ASSETS

**Life Policies**

We will invest in Life Policies (aka Life Settlements), which are sales to third parties, of existing life insurance contracts held on insureds who are 65 years of age or older. Policies are purchased for more than their cash surrender value but less than the net death benefits to be paid under the policies. These Life Settlements may, but are unlikely to, include policies on the lives of terminally ill patients under the age of 65 as long as such's combined Face Value is less than five percent (5%) of the aggregate Face Value of the pool of life policies. When we acquire such a contract, we may be required to pay the policy premiums in return for the receipt of the net death benefit as the new owner and beneficiary under the policy. Investments in these contracts involve certain risks, including liquidity risk, risk of excessive premium payments beyond the insured individual's life expectancy, credit risk of the insurance company, and inaccurate estimations of life expectancy of the insured individuals. These policies are considered illiquid in that they are bought and sold in a secondary market through life settlement agencies and not on any exchange where settlement of a transaction is required in a timely manner. In the event of a bankruptcy of the insurance carrier for a policy, we may receive reduced or no benefits under the contract. Although unlikely, the Company may internally encounter losses on the investments if there is an inaccurate estimation of the life expectancies by having to pay higher-than-anticipated premium obligations.

We will seek to minimize risk by investing in policies issued by a diverse range of highly-rated insurance carriers; and in policies that vary: by life expectancy, by net death benefits, and by annual premium payments. We intend to reduce the life expectancy risk by investing only in contracts where the life expectancy was reviewed by an experienced independent medical professional and/or actuary, as well as by diversifying the investments across insured individuals' varying ages and medical profiles.

**Target Life Settlement Portfolio Summary**

| | |
|---|---|
| Minimum target age of insured individuals | 65 |
| % of Face Value <65 years of age | < 5% of aggregate investments |
| Policy Types | Whole, UL, IUL, VUL, Convertible Term |
| Life Expectancy Range | 3 - 12 years |
| Targeted Life Expectancy | 4 - 6 years |
| Internal Life Expectancy/Premium Reserves | Life Expectancy + 1 |
| Insurance carrier [AM Best] rating | B++ or higher |
| Second to Die policies | < 5% of aggregate investments |

In the past, our principals have purchased life insurance policies through secondary market transactions directly from a middle source provider. The middle source provider purchased the policy directly from an owner/insured that purchased the life insurance in the primary market. Each policy considered by us will be underwritten by an independent third party medical actuarial firm who will issue a report providing a life expectancy estimate on each insured. We will base our life expectancy estimates on the estimates provided by the actuarial firm plus one year. The policies we will purchase are whole or universal life insurance policies issued by rated life insurance companies. Universal life insurance is a type of permanent life insurance in which premium payments above the cost of insurance are credited to the "cash value" of the policy. The cash value is credited each month with interest based on the terms of the insurance policy agreement. If a universal life insurance policy were to lapse, the insured or other owner of the policy would nonetheless have a right to receive the cash value of the policy. Universal life insurance is different from "term" life insurance in that "term" life insurance does not have a cash value associated with it. We may purchase convertible Term policies. Convertible term means that the term policy can be converted to a Universal Life policy under certain conditions.

The price we will be willing to pay for a policy in the secondary market is primarily a function of: (1) the policy's face value; (2) the expected actuarial mortality of the insured; (3) the premiums expected to be paid over the life of the insured; and (4) market competition from other competitors. We seek to earn profits by purchasing policies at discounts to the face value of the insurance benefit. The discounts at which we purchase are expected to exceed the costs necessary to pay premiums, financing and servicing costs through the date of the insured's mortality. We rely

on the medical/actuarial life expectancy assumptions provided to us by third-party medical actuary underwriters to estimate the expected mortality of the insured.

**Capital Acquisition in deeproot Tech**

A capital acquisition is a purchase of an internal, affiliated investment position in another enterprise, wherein such enterprise is intended to enhance Company's reputability, safety, or financials through joint venture, partnership or collaboration, or minimize pool risk, lower administrative overhead or expenses, or to develop additional product lines. There is a high risk in this type of investment, which may yield higher gains or higher losses. We minimize this risk by limiting the capital acquisition component of the Company to thirty percent (30%) of the asset portfolio.

The Company reserves the right to include other future assets or asset classes, with reasonable notice to Class B Shareholders.

**V**
**TERMS OF THE OFFERING**

**The FIFO Queue**

Investments by Class B Shareholders are queued in 1 share ($25,000.00) increments ("position"), or a part thereof if less, by the chronological order in which investments are initially received (or renewed) on a first-in, first-out ('FIFO') basis. Queue positions are numbered in sequential order based on a *timestamp* of when the i) Class B Shareholder's Application and Subscription Agreement was approved, and ii) the minimum qualifying principal was actually received. For example: Principal received at different times or dates may receive non-sequential positions in the FIFO Queue, if other shareholder(s) *timestamp(s)* intercede.

As assets mature and positions are called: i) Class B Shareholders are paid each's Liquidation Amount on the Pay Date, in order of Mandatory Calls on each's ordered position in the FIFO queue; and ii) the uncalled or remaining positions in the FIFO Queue *advance* in the same order to *fill* the called position(s), and are re-numbered respectively. As the position in the FIFO Queue is based on the 'investment' (or a part thereof), and not the 'Class B Shareholder', a single Class B Shareholder who has made multiple, separate, non-sequential investments of principal, will, as a result, hold multiple positions in the FIFO Queue. Queue jumping is not permitted, in any form.

*For Example*: See below a *magnified* subset of positions, as well as the sequential/non-sequential nature of the Queue.



**Mandatory Call**

A Class B Shareholder's position is subject to a Mandatory Call when all of the following events have occurred: i) an asset matures, or life policy matures due to the death of the insured(s); ii) the Company receives the maturity amount, or for life policies, the death benefit(s) or Face Value of the life policy from an insurance carrier; iii) the Class B Shareholder owns the next position in the FIFO queue; iv) enough net proceeds exist from the maturity, to pay the Liquidation Amount of the next Class B Shareholder's position in the FIFO queue; and v) the Company conveys written notification of a Mandatory Call, the Liquidation Amount, Pay Date, and a right to Renew to the Class

B Shareholder.  The "Call Date" is the date such written notification is conveyed. It is possible for a Class B Shareholder to have multiple sequential or non-sequential positions that *mature* on or about the same call date.

**Pay Date**

The Pay Date is 30 days following the Call Date. On the Pay Date, the Company will mail the Liquidation Amount to the Class B Shareholder by first class mail, unless the Class B Shareholder requests a premium service (*e.g.* overnight, Wire, etc.), or renews, in writing, which must be received by the Company at least three (3) business days before the Pay Date.



**Renewals**

In lieu of accepting the Liquidation Amount for any matured position, a Class B Shareholder may reinvest (or "renew", "renewal", "renewed") part or all of the Liquidation Amount.  If a renewal investment is elected, having been received by the Company in writing at least three business days <u>before</u> the Pay Date, of at least ninety percent (90%) of the Liquidation Amount, then the Class B Shareholder shall receive a bonus of 0.05 added to their Base Liquidation Multiplier on the renewed position.  A renewal bonus (or renewal bonuses) is/are not cumulative.  In all cases, a Class B Shareholder's renewed investment is placed at the end of the FIFO queue, as of the Pay Date.

*For example*: A policy comes due in which the first four positions mature and are paid.  All remaining positions in the queue move forward.  Class B Shareholder A, reinvests $100,000 and is placed at the end of the queue.



**Liquidation Multiplier**

The Liquidation Multiplier determines the future value of the Class B Shareholder's position at the Mandatory Call.  It is based on the Class B Shareholder's <u>registration</u> type (ie. Individual, JTWROS, JT-in-Common, IRA, ROTH, Entity, Trust, etc.), and is pre-determined by the amount of aggregate/cumulative principal then invested in such Class B Shareholder's registration, at the time of investment.  Non-sequential positions by the same Class B Shareholder registration can therefore have different Liquidation Multipliers.  Once set by the Company at investment, the Liquidation Multiplier for each position will not change until called.  The Base Liquidation Multiplier will increase by 0.05 for a qualifying renewal. The Liquidation Multiplier may never exceed 1.65 without prior written Company approval, signed by the Company's Manager(s) and the Company's Fund Advisor.

| Initial/Renewed Cumulative Principal | Base Liquidation Multiplier | Base Percentage Equivalent |
|---|---|---|
| **Under $100,000.00** | 1.38 | 38% |
| **$100,000.00 - $199,999.99** | 1.43 | 43% |
| **$200,000.00 - $399,999.99** | 1.46 | 46% |
| **$400,000.00 - $699,999.99** | 1.50 | 50% |
| **$700,000.00 - $999,999.99** | 1.55 | 55% |
| **$1,000,000.000 +** | 1.60 | 60% |

**Percentage Equivalent:**

The *percentage equivalent* is calculated by reducing the Liquidation Multiplier by '1', and then dividing by 100.

**Liquidation Amount**

Each respective Class B Shareholder will receive an amount equal to the initial (or renewed) principal in a matured position, multiplied by the Liquidation Multiplier set at the time of initial or renewed investment.

**No Liquidity**

Outside of the Pay Date following a Mandatory Call, Class B Shareholders are not permitted to request amounts of principal, Priority Return, or otherwise.

**Premiums**

The Company is responsible for paying all premiums for the life policies out of: i) an amount set aside at the purchase of each life policy that covers anticipated premium obligations through life expectancy plus one year; and ii) the Company's compensation, if any insured lives past the life expectancy plus one year guideline.  While it is anticipated that Class B Shareholders will never have to satisfy a future premium obligation, the Company reserves the right to satisfy premiums out of future Class B Shareholder proceeds if: i) the Class B Shareholders are given reasonable notice; and ii) doing so is in the financial best interest of the Class B Shareholders.

**Voting rights**

Class B Shareholders do not receive voting rights, as to the ownership, management, or administration of the Company.

**VI**
**REPORTING**

Class B Shareholders have certain rights to receive ongoing information about the Company, the Company's financial status, and the Class B Shareholder's position(s).  Notwithstanding compliance with Section 101.502 of the Texas Business Organizations Code, some information may be exempt from reporting.

Secure online access is available at https://secure.deeprootfunds.com.  For purposes of this Offering/PPM, all references to Company's duty (whether mandatory or permissive) to report, notify, convey, or deliver any information or document(s) shall be deemed to be reported, notified, conveyed, or delivered by online access to your secure account; whether or not you have requested such access.  For shareholders that wish to have printed, postal mail notifications, you must contact us in writing.

We have an affirmative duty to provide some ongoing information without need for any Class B Shareholders' prior requests. These include:

» notice of any default of any underlying asset
» notice of a failure to pay a Liquidation Amount to any Class B Shareholder
» a statement of account at least once annually, or digital access to the same
» a statement of Company's unaudited financial condition and internal valuation of our portfolio, or digital access to the same
» notice of any adverse regulatory or legal notice, proceeding or decision regarding us that directly and significantly affects the Class B Shareholders' rights or values
» notice of any other event that has a significant potential to negatively affect our ability to return principal and interest to the Class B Shareholders

We also have a duty to release certain information only upon request by a Class B Shareholder.   These include:

» a statement of account value at the time of request
» a statement of Company's current financial condition at the time of request

We retain the right to not release certain information to any Class B Shareholder.  This information includes but is not limited to:

» copies of any confidential, privileged or proprietary information that does not directly involve any Class B Shareholder's interest
» any information concerning another Class B Shareholder's interest
» specific positions, investments, assets, or transactions underlying in our portfolio
» private or non-public information regarding us, any of our officers, any of our employees, or any of our strategic partners, assigns, or third party administrators

## VII
## COSTS AND APPLICATION OF PROCEEDS

The proceeds from the sale of Class B Shares will be used to begin purchasing assets identified above.  We have already sought out appropriate assets, and (if not already attained), will commence operations upon receipt of a minimum of $100,000 from Class B shareholders.  The proceeds of sales of additional Class B Shares will be used as the sales are closed.   The following are the minimum amounts that will be utilized for the indicated purposes per $25,000 of principal received (or pro rata thereof), but may be less if no compensation is earned or paid.

| Cost of Services | Minimum Per $25,000 |
|---|---|
| Principal | $23,000.00 |
| Expenditures (~8%) | $ 2,000.00 |
| *Initial Compensation (if any)* | |

**Agent Compensation**

If a Class B Shareholder is represented by a representative, agent, advisor, broker, or other professional who may legally receive compensation for referring, advising, or providing this Offering to Class B Shareholder, then the Company may pay to the order of such professional an amount of compensation that has been disclosed to the Class B Shareholder.  There are some types of compensation that must be paid by the Class B Shareholder.  In that case, the Class B Shareholder fully indemnifies Company from being responsible for those payments, as provided in Article VIII. A representative, agent, advisor, or broker may not earn compensation on principal invested by the same (i.e. as a Class B Shareholder).

**Company Advance**

The Company shall receive an advance of no less than two percent (2%) and no more than twenty percent (20%) of the initial principal of any Class B Shareholder. This amount covers agent compensation (if any), nominal administration expenses, IRA fees, other compensation, marketing costs, and the Fund Advisor fees.  Despite an advance, one hundred percent (100%) of the Class B Shareholder's principal shall be returned at the Pay Date, along with a return equal to the percentage equivalent of a Class B Shareholder's Liquidation Multiplier.

**Company Compensation**

The Company shall receive compensation of the greater of: i) the difference between the percentage equivalent of the matured positions Liquidation Multipliers, and any policy maturity's maximum return (as calculated by face minus acquisition, divided by acquisition); ii) an amount equal to ten percent (10%) of any matured policy's gross maximum return before assigning to the liquidation of Class B Shareholder positions. The Company also shall receive any assets in the portfolio once all Class B Shareholder positions have been called.

# VIII
## ADMINISTRATION STRUCTURE & FEES

The Company is managed by a Board of Managers.  However, the sole current Manager is Robert J. Mueller, Esq.  All fees are subject to reasonable changes at any time, in Company's sole discretion, without prior notice.

| | |
|---|---|
| Annual Account Fee | $0.00 |
| Annual IRA/Qualified Fee | *As billed by the Bank of Utah, or,* $400 in 2016, $450 in 2017, and $500 per year in 2018 - 2020. * |
| Call Notice and Payment | $0.00 |
| Check Fee | $0.00 |
| Overnight Fee | $50.00 |
| EFT Fee | $25.00 |
| Wire Fee | $50.00 |
| Investor Advisory Fees | *See below ** |

* For qualified positions: the Company will advance annual IRA custodian fees until all of any respective Class B Shareholder position(s) mature(s).  The Company shall deduct any or all advanced annual IRA fees from an investor's Liquidation Amount at the (or *each*) Pay Date, up to the lesser of: i) the actual advance; or ii) $500.00 per year.  After 2020, the contract between deeproot Funds and the Bank of Utah is up for renewal.  Any fees assessed thereafter will not be known until after such negotiation has taken place, and the Company notifies all Class B Shareholders with IRA accounts whether the annual fee will exceed $500.00 per year.

** For Investor Advisory Fees: If Company is billed for and pays any investment advisory fees from an advisor or advisory firm that represents the Class B Shareholder, then such advisory fees, plus three percent (3%) compounded interest, shall be deducted from the respective Class B Shareholder's Liquidation Amount at the Pay Date.

# IX
## PRINCIPALS & ADVISORS

**Robert J. Mueller, Esq.**
**Manager, dGRD**

Robert J. Mueller is an attorney and financial advisor with over twelve years of experience in the legal and financial industries. Robert earned a B.B.A. in Finance from the University of Texas at San Antonio, while concurrently learning about the financial markets with USAA Investment Management Company. After completing his undergraduate studies, Robert attended St. Mary's Law School in San Antonio, where he graduated in December 2000.

Robert has since concentrated his legal and financial practice in the area of estate planning, insurance products and investments.  He has personally drafted, delivered, and presented hundreds of simple and complex trust and financial estate plans for his clients.   Robert is a member of the State Bar of Texas, Estate Probate & Trust Law Section of the State Bar of Texas, Texas Young Lawyers Association, San Antonio Bar Association, and is insurance licensed in Texas.

Mr. Mueller is responsible for deeproot's product design, marketing, and strategic planning areas. He is a tech enthusiast and builds/programs/designs for fun.

# X
## SUBSCRIPTION PROCEDURE

In order to subscribe for Class B Shares, a Class B Shareholder must deliver to the Company, at its offices:

1. One completed and executed copy of the dGRD Application & Subscription Agreement, per registration type;
2. A bank or certified check, or Wire, in the amount of Twenty-Five Thousand Dollars ($25,000.00) for each full Class B Share subscribed for, or fractional part thereof, payable to the order of: **deeproot Funds**; or rollover or qualified transfer paperwork for the same.

Executed copies of the documents to be completed by the Class B Shareholders are being delivered with this Confidential PPM. EACH CLASS B SHAREHOLDER IS URGED TO READ THE SUBSCRIPTION AGREEMENT AND THE ACCOMPANYING DOCUMENTS IN THEIR ENTIRETY BEFORE EXECUTING THEM.

In the event the Company rejects or revokes acceptance of a subscription, funds delivered by the subscriber to the Company in connection with the subscription will be returned without interest. Each Class B Shareholder who is solely and affirmatively responsible for keeping their contact information (and bank information for EFT payments) current with the Company.  The Company will not be responsible for any delayed, missing, or incorrect notices or payments due to Shareholder's inaction to affirmatively update such information.

Share certificates shall not be issued for any shares subscribed to herein.  Rather a certificate of ownership, in lieu of a share certificate, shall be issued to each Class B Shareholder in a closing packet, along with copies of the application and subscription agreement.

deeproot Funds, LLC handles the administrative operations for the Company. Any subscription to this Offering constitutes a perpetual acknowledgment and consent to such.

# XI
## AVAILABLE INFORMATION

The statements in this PPM as to the contents of any contract or other document are of necessity brief descriptions thereof and are not necessarily complete; each such statement is qualified in its entirety by reference to such contract or document.

Any Class B Shareholder desiring additional information about the Company should contact deeproot Funds, LLC, 12621 Silicon Dr, San Antonio, Texas 78249, telephone: (888) 316-2935.  All reasonable, permissible requests for books, records, and financial information regarding the Company shall be made available in reasonable amounts of time to the Class B Shareholder.

# XII
## CONTINGENT SECURITY AGREEMENT

The Company agrees to immediately grant a security interest to Class B Shareholders in all assets it holds in the Company's investment portfolio (ie. underlying assets) upon a substantial default. A substantial default is defined as:

» The inability of Company to pay a liquidation amount to any Class B shareholder, if still unpaid sixty (60) days after it is due;

» Enough losses from the underlying assets that would prevent the future repayment of each Class B Shareholder's principal amount;

» Any officer or advisor convicted of a felony, that was committed in furtherance of performing such's duties under this Offering; or

» A court or regulatory order that finds Company has committed a substantial default.

The Company will immediately perfect that security interest and provide immediate security information, including the security interest(s), upon a substantial default.   Class B Shareholders must appoint a Trustee or other fiduciary who will receive, possess, hold, maintain, and dispose of any assets under the security interest.

The Company is only required to perfect a security interest in its entire investment portfolio upon the first occurrence of a substantial default, if it cannot cure within ninety (90) days of such default.

## XIII
## FREQUENTLY ASKED QUESTIONS (FAQ)

**Why are there Class A and Class B shares?**
deeproot Growth Runs Deep Fund, LLC ("dGRD") is organized as a Limited Liability Company (LLC), and not as a For-Profit Corporation.  This was done for ease of organization, lower filing and maintenance costs, tax options, etc. In order for an LLC to mirror a For-Profit Corporations issuance of Common and Preferred Stock, we use 'classes' of membership interests ('shares').  Each class is comprised of shareholders who enjoy the same rights and privileges.

**What are Class A shares?**
Class A Shares in dGRD are the equivalent to common stock in a For-Profit Corporation.  They have voting rights and the ability to receive dividends or distributions of capital from the business, subject to Class B's preferential rights.

**What are Class B shares?**
Class B Shares in dGRD are the equivalent to preferred stock in a For-Profit Corporation that includes a Mandatory Call feature.  While they do not have voting rights, they have preferential rights to receive dividends or distributions of capital from the Company, over any other class' shares.

**Am I able to find out my place in the FIFO Queue before investment?**
In short, No.  Because your position(s) in the FIFO Queue is/are not assigned until your Application and Subscription Agreement has been approved, <u>and</u> we receive part or all of your principal (in $25,000 increments), any number/position we may provide will be a complete guess and will likely be wrong.  It is normal for there to be delays in application deficiencies, or funding from qualified transfers, check holds, or other factors, which will directly affect the Company's ability to assign your position(s).

**Am I able to find out how many positions/investors are in front of me in the FIFO Queue, before investment?**
Due to the Company's commitment regarding the privacy and security of other shareholders, and because of the inherent *fairness* of the FIFO Queue design, the Company reserves the right to withhold how many positions or Class B Shareholders would come before you in the FIFO Queue, before you invest.  In fact, as with the preceding question, the actual number will likely be different by the time your position(s) are eventually assigned.

**Do Class B shares receive a Priority Return?**
No, a Preferred or Priority Return for Class B shares is the equivalent of a preferred dividend for Preferred Stock. Traditionally, a Priority Return is paid on a periodic or annual basis (ie. Company's fiscal year) based on the profits or losses of the Company.  In this Offering, the return is paid lump-sum (and not periodically or annually), at a predetermined rate, upon a Mandatory Call.

**When will a Class B Shareholder receive a Priority Return?**
While a Preferred or Priority Return is traditionally paid periodically, the dGRD does not offer periodic payments. In this offering, a full or partial return is not paid until the Company issues a Mandatory Call of a Class B Shareholder's position(s) in the FIFO Queue.  As the Company (like you) waits for the maturity of underlying assets, it cannot provide a guarantee as to when a return will be paid.  An argument could be made that the trade-off for patience are the enhanced Liquidation Multipliers and potentially higher annualized ROI.

**What does 'cumulative' mean?**
A cumulative Priority Return is the equivalent of cumulative preferred stock.  That is, if any Priority Return payments have been omitted in the past, all omitted Priority Return payments must first be paid out in-full to Class B Shareholders, before any other class' shareholders may receive distributions. In this Offering, Class A Shareholders

are only entitled to an *advance* that must be repaid to Class B Shareholders, as well as earnings on the matured assets. Because Class B Shareholders receive a lump-sum Priority Return based on a matured asset being assigned to positions in FIFO Queue order, this Offering is cumulative.

**Are Class B shares 'participating'?**
No.  Participating preferred shareholders would be entitled to receive profits or incur losses outside of the preferred return.  In this Offering, the Company accepts the risk of participation interests or losses.

**When will I know what my return is?**
All returns are predetermined by the Liquidation Multiplier assigned to each position created upon your investment. Since the Liquidation Multiplier is based on the aggregate or cumulative principal of each unique Class B Shareholder registration, it is not only possible for you to have multiple, different Liquidation Multipliers, but also that your Liquidation Multiplier for a new or renewed position may increase or decrease with additional principal or calls.

**What does it mean that the Company can 'call' my shares?**
**What is a Mandatory Call?**
A *call* is a right granted to the Company to buy-back Class B Shares.  The Company's right to call is absolute and without recourse.  Upon a Mandatory Call, all rights and privileges as to a Class B Shareholder's called position(s) will be terminated, and the Company will convey the respective liquidation amount(s).  In this Offering, a call is made when the Company notifies a Class B Shareholder of a Mandatory Call ("Call Date"), and the Company will issue the liquidation amount on or about thirty (30) days thereafter ("Pay Date"), unless renewed.

**What is the Company's criteria for how many positions are paid off at each asset maturity?**
Pursuant to the terms contained in this PPM, the actual net amount received from the maturity of an underlying asset is the chief determiner of how many positions will be called.  Mandatory Calls will be made for the maximum number of positions in order of the FIFO Queue permitted herein.  It is to the Company's financial advantage, as well as the best interests of the Class B Shareholders, that the <u>maximum</u> number of positions are paid off at each maturity.

**Do all Class B Shareholders get notified when an asset matures, or the FIFO Queue order changes?**
In short, Yes.  However notification to positions/Shareholders that were not subject to a Mandatory Call will only be made by: i) a Class B Shareholder affirmatively calling us and requesting their current position number(s); ii) an email notification that will be sent out when the order of the FIFO Queue positions change; or iii) accessing your account information online with our secure website.  Due to security and costs, we will not respond to such a request or convey notification by written correspondence.

**How can I get my invested principal back?**
There is no specific term period for this investment.  While it is our intent to purchase assets with a target life expectancy of four to six years, we cannot guarantee any specific maturity date.   Unless 'called', your investment will remain with the Company and may not be sold or assigned without permission or approval.  The Company understands that each Class B Shareholder will have different expectations and need for the return of such Class B Shareholder's invested principal.  The FIFO Queue was designed to ensure that the Company maintains a first-come, first serve fairness proposition for Class B Shareholders receiving their principal back in the shortest possible time. As such, the Company can make no guarantee that any Class B Shareholder will receive their invested principal back in the time period requested or expected.

**What if I don't want my principal and/or liquidation amount back at a Mandatory Call?**
When a Mandatory Call is made, each Class B Shareholder has the right to renew part or all of the liquidation amount. You must provide the Company with written notice to renew at least three (3) business days <u>before</u> the Pay Date listed in your Mandatory Call notice. If you choose to renew at least 90% of your liquidation amount, then you will receive a bonus of 0.05 added to your renewed position(s)' Base Liquidation Multiplier. Renewal bonus(es) is/are not cumulative. Any renewed positions are treated as new investments, and are placed at the end of the FIFO Queue.

**Is my principal or liquidation amount protected?**
Each Class B Shareholder's principal is backed up by the assets of the Company in a contingent security agreement, based on the performance of the assets, subject to the liabilities of the Company.  That does not guarantee that there will always be enough assets that can be disposed of to cover all sums owed to the Class B shareholders. Class B

shares have a preferential right to assets over any other shareholders (including Class A Shareholders) should the unfortunate occur and the Company is forced to wind-up due to insolvency.  The return is not backed up or guaranteed by the Company, and may only be payable, in whole or part, if enough assets exist at some future time, to pay them.

**Do I get to have a say in the Company?**
Pursuant to the Operating Agreement, Class B shares do not have a vote, or say, in the affairs of the Company.


## THIS PPM AND ENTIRE CONFIDENTIAL PACKET MUST BE RETURNED TO DEEROOT IF YOU DO NOT INVEST.


*The area below the following line is intentionally left blank.*