# EXHIBIT A




## SETTLEMENT AGREEMENT

This settlement agreement (the "Settlement Agreement") is entered into as of ~~August~~ September 6, 2022 by and among John Patrick Lowe, Chapter 7 Trustee ("Trustee") for the jointly administered bankruptcy case of *In re deeproot Capital Management, LLC, et al*, the MB Hale Ohana Revocable Trust (the "Trust"), co-trustee Jeffrey L. Mueller ("J. Mueller"), and co-trustee Belinda Breen ("B. Breen" and, collectively with J. Mueller and the Trust, the "Trust Parties" and, collectively with Trustee, the "Settling Parties").

## RECITALS

A. On or about November 5, 2016, J. Mueller, B. Breen, and Robert J. Mueller ("R. Mueller") entered into a Trust Agreement, forming the Trust. J. Mueller, B. Breen, and R. Mueller all serve as co-trustees of the Trust.

B. The Trust has a bank account at First Hawaiian Bank ending in -6777 (the "First Hawaiian Trust Account"). The Trust Parties also have a separate bank account at Chase Bank ending in 1305, (the "Trust Parties Account") holding segregated funds from the sale of 2611 Kiahuna Plantation Dr., Apt. 7E, Koloa, Hawaii as well as monies in a personal account.

C. On August 20, 2021, the SEC initiated a civil action in the United States District Court for the Western District of Texas ("District Court"), Case No. 5:21-cv-785 (the "SEC Civil Action"), alleging violations of federal securities laws against Robert J. Mueller, deeproot Funds, LLC, and Policy Services, Inc. The SEC Civil Action also names the Trust Parties as Relief Defendants for the claims against Policy Services, Inc., alleging that Robert J. Mueller transferred $330,000.00 of investor funds from Policy Services, Inc. to or for the benefit of the Trust, which were used to purchase apartments and other real property in Hawaii (the "Trust Transfers").

D. On September 23, 2021, the District Court entered an Order Freezing Certain Assets, Ordering an Accounting, and Preliminary Injunction ("Asset Freeze Order") in the SEC Civil Action, freezing funds in the First Hawaiian Trust Account

E. On December 9, 2021 (the "Petition Date"), Policy Services, Inc., Wizard Mode Media, LLC, deeproot Pinball, LLC, deeproot Growth Runs Deep Fund, LLC, deeproot 575 Fund, LLC, deeproot 3 Year Bonus Income Debenture Fund, LLC, deeproot BonusGrowth 5 Year Debenture Fund, LLC, deeproot Tech, LLC, deeproot Funds, LLC, deeproot Studios, LLC, deeproot Capital Management, LLC (collectively the "Debtors") commenced separate bankruptcy cases under chapter 7 of title 11 of the United States Code (the "Bankruptcy Code") by filing voluntary petitions for relief in the United States Bankruptcy Court of the Western District of Texas, San Antonio Division (the "Bankruptcy Court"), which are now jointly administered as Bankruptcy Case No. 21-51523 ("Bankruptcy Case").

F. On or about January 14, 2022, the District Court entered an Order Modifying Asset Freeze ("Modified Freeze Order" and collectively with the Asset Freeze Order, the "Freeze Orders") in the SEC Civil Action, modifying the Asset Freeze Order to permit Trustee to pursue chapter 5 avoidance claims against third parties for the benefit of the Debtors' bankruptcy estates.

{00589912;1}

G.  On May 9, 2022, the Trustee filed his Notice of Intention to Take Rule 2004 Examination with Subpoena Duces Tecum, noticing the 2004 Examination of the Trust Parties, which occurred on June 2, 2022.

H.  The Settling Parties have exchanged information, negotiated with one another, and in lieu of pursuing an adversary proceeding, have agreed to resolve all matters respecting the Trust Transfers, upon the terms and conditions set forth below.

I.  Now, therefore, for good and valuable consideration, the receipt and sufficiency of which is acknowledged by the Settling Parties, it is hereby stipulated, consented to, and agreed by and among the Settling Parties as follows:

## TERMS OF AGREEMENT

1.  **Recitals.** The recitals set forth above are incorporated herein by reference.

2.  **Settlement Amount.** The Trust Parties shall pay Trustee a total of $300,000.00 USD (the "Settlement Amount") in full and complete satisfaction of the Trust's liability on the Trust Transfers.

3.  **Sequence of Payment.** Immediately following execution of this Settlement Agreement by the Settling Parties, the Trust Parties shall pay the Trustee $146,075.00 from the Trust Parties Accounts to be delivered in accordance with the instructions attached hereto as Exhibit A. Within sixty (60) days of Bankruptcy Court approval of this Settlement Agreement, the remaining $153,925.00 of the Settlement Amount located in the First Hawaiian Trust Account that is subject to the District Court Freeze Orders shall be released with the direction that those proceeds shall be paid to the Trustee, provided that the District Court dissolves the Freeze Order on that account.

4.  **Effective Date of Settlement Agreement.** This Settlement Agreement shall become effective and enforceable on the last of the following dates (the "Effective Date"): (i) the Settling Parties have executed the Settlement Agreement; (ii) this Settlement Agreement is approved by order of the Bankruptcy Court and such order has become a final, unappealable order; (iii) the District Court has by Court order dissolved of the Freeze Orders with respect to the Ohana Trust Account ; (iv) the District Court dismisses the Trust Parties from the SEC Civil Action with prejudice; and (v) the date on which the Trustee has received the full Settlement Amount from the Trust Parties.

5.  **Trust Parties' Motion to Dissolve Freeze Orders.** The Trust Parties shall file a Joint Motion with the SEC requesting the District Court to dissolve the Freeze Orders with respect to the Ohana Trust Account within ten (10) days of executing this Settlement Agreement.

6.  **Dismissal by SEC.** As a condition to effectiveness of this Settlement Agreement, and after the date on which this Settlement Agreement is approved by order of the Bankruptcy Court and such order has become a final, unappealable order, the District Court must dismiss the

{00589912;1}

Trust Parties from the SEC Civil Action with prejudice.

7. **Voidability of Settlement Agreement.** This Settlement Agreement is voidable or void as described herein: (i) if the Settlement Agreement is not approved by the bankruptcy court, or if the District Court does not order the dismissal of the Trust Parties from the SEC Civil Action with prejudice, then this Settlement Agreement is void; (ii) if the District Court denies the Trust Parties' request for release of Trust account funds subject to the Freeze Orders, the Settlement Agreement is voidable at the option of the Trust Parties exercisable within ten days of the of denial by the District Court; or (iii) if the Effective Date does not occur within 90 days of execution of this Settlement Agreement, the Settlement Agreement is voidable at the option of the Trustee. In the event the Settlement Agreement becomes null and void for any of the reasons outlined herein, the Trustee will return any Settlement Amount received by the Trustee to the Trust Parties within 10 days of the event that voids this Settlement Agreement.

8. **Trust Approval.** Two of the three co-trustees of the Trust have approved this Settlement Agreement as evidenced by the signatures affixed to this Settlement Agreement. *See* Tex. Prop. Code § 113.085.

9. **Release by Trustee.** On the Settlement Effective Date, Trustee shall be deemed to have irrevocably and unconditionally, fully, finally and forever waived, released, acquitted and discharged the Trust Parties, their attorneys, accountants, financial advisors, directors, employees, officers, parents, agents, subsidiaries, and the successors and assigns of any of them (collectively, the "Releasees") from any and all claims, manner of actions, causes of action, suits, costs, debts, liabilities, obligations, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, variances trespasses, damages, judgments, executions and demands whatsoever, of whatever kind or nature, whether known or unknown, asserted or not asserted, suspected or unsuspected, in law or equity, which the Trustee has, may have had, may have or may claim to have against the Releasees solely in connection with the Trust and the Trust Transfers. This Settlement Agreement does not contemplate releasing Robert Mueller or any of his entities, employees, or agents (other than the Trust Parties) from any claims against him in the Bankruptcy Case.

10. **Release by Trust Parties.** Upon payment of the entirety of the Settlement Amount to the Trustee, the Trust Parties agree to irrevocably and unconditionally, fully, finally and forever waive, release, acquit, and discharge any claim they may have in the Bankruptcy Case. The Trust Parties agree that they will not file a proof of claim in the Bankruptcy Case or take any other action to assert a claim in the Bankruptcy Case.

11. **Tolling of Limitations.** Any statute or period of limitations, statutes of repose, or other time-based limitations or defenses, whether at law, in equity, under statute, contract, or otherwise (including, but not limited to, the doctrine of laches or waiver), which might be asserted as a time bar and/or/ limitation in connection with the Trust Transfers is hereby, and as of the date of execution of this Settlement Agreement by all parties, tolled until either the Settlement Effective Date or ten days following the date the Settlement Agreement becomes void. Nothing in this Settlement Agreement shall operate or revive or extend the time for filing any claim that is time

barred or barred by any applicable statute or period of limitations, statutes of repose, or other time-related defense as of the date this Settlement Agreement is fully executed as set forth below.

12. **Enforcement of Settlement Agreement.** If the Trust Parties breach this Settlement Agreement, the Trustee shall have the authority to initiate a proceeding in the Bankruptcy Court to enforce this Settlement Agreement. If the Trustee prevails in such litigation, the Trustee shall be entitled to recover its reasonable attorneys' fees, costs and all necessary disbursements and out-of-pocket expenses incurred in connection with such litigation.

13. **Expenses.** The Settling Parties shall bear their own costs, expenses, and attorneys' fees incurred to date in connection with this Settlement Agreement.

14. **Severability.** The Settling Parties agree that if any provision of this Settlement Agreement is determined by a court of competent jurisdiction to be illegal, invalid or unenforceable, that provision shall not be a part of this Settlement Agreement. The legality, validity and enforceability of the remaining provisions shall not be affected by a provision of this Settlement Agreement that is illegal, invalid, or unenforceable.

15. **Miscellaneous.**

(a) Neither this Settlement Agreement, nor any statement made or action taken in connection with the negotiation of this Settlement Agreement, shall be offered or received in evidence or in any way referred to in any legal action or administrative proceeding among or between the Settling Parties hereto, other than as may be necessary (i) to obtain approval of and to enforce this Settlement Agreement (including the mutual releases contained herein) or (ii) to seek damages or injunctive relief in connection therewith.

(b) Each of the Settling Parties hereto shall execute and deliver any and all additional papers, documents and other assurances, and shall do any and all acts and things reasonable necessary or appropriate in conjunction with the performance of each of the Settling Parties' respective obligations hereunder.

(c) No provision of this Settlement Agreement is intended to confer any rights, benefits, remedies, obligations or liabilities hereunder upon any person other than the Settling Parties hereto and their respective successors.

(d) This Settlement Agreement shall be construed, enforced and governed under and in accordance with the laws of the State of Texas, except that any conflict of law rule of that jurisdiction that would require reference to the laws of some other jurisdiction shall be disregarded. Exclusive venue for the interpretation and/or enforcement of this Settlement Agreement shall be in the United States Bankruptcy Court for the Western District of Texas, San Antonio Division.

(e) The Bankruptcy Court shall retain jurisdiction (and the Settling Parties consent to such retention of jurisdiction) with respect to any disputes arising from or related

to, or other actions to interpret, administer or enforce the terms and provisions of, this Settlement Agreement.

(f) This Settlement Agreement may be signed in counterpart originals and delivered by facsimile or email, which, when fully executed, shall constitute a single original.

(g) Each person or entity who executes this Settlement Agreement on behalf of another person or entity represents and warrants that he, she, or it is duly authorized to execute this Settlement Agreement on behalf of such person or entity, has the requisite authority to bind such person or entity, and such person or entity has full knowledge of and has consented to this Settlement Agreement. The representations and warranties set forth in this paragraph shall survive execution of this Settlement Agreement.

(h) In executing the Settlement Agreement, each of the Settling Parties represents and warrants, for itself, that (a) it does so with full knowledge of its available rights, (b) it is not relying and has not relied upon any representations made by any person with regard to the Settlement Agreement, other than any written representations and agreements contained herein, (c) it has had available to it such information as it or its counsel considered necessary to making an informed judgment concerning the Settlement Agreement, and (d) it has conducted such investigation as it or its counsel deemed appropriate regarding the settlement and its rights and asserted rights in connection with the matters that are the subject of the Settlement Agreement.

(i) The Settling Parties acknowledge that this Settlement Agreement constitutes the entire agreement between the Settling Parties with respect to the subject matter hereof, and all prior agreements, negotiations and understanding with respect to the subject matter hereof are canceled and superseded by this Settlement Agreement.

(j) This Settlement Agreement shall not be modified, altered, amended or vacated without written consent of all parties hereto or order of the Bankruptcy Court.

(k) This Settlement Agreement shall inure to the benefit of and the binding upon the successors and assigns of the Settling Parties hereto.

(l) The headings of all sections of this Settlement Agreement are inserted solely for the convenience of reference and are not a part of and are not intended to govern, limit, or aid in the construction or interpretation of any term or provision hereof.

[SIGNATURES ON FOLLOWING PAGE]

IN WITNESS WHEREOF, the Settling Parties have caused this Settlement Agreement to be executed as of the date first above written.

SIGNED this \_\_\_ day of _____, 2022.

_____
John Patrick Lowe, Chapter 7 Trustee for the
Jointly Administered Bankruptcy Estate of
deeproot Capital Management, LLC, et al.

SIGNED this 6 day of Sept, 2022.

_____
Jeffrey L. Mueller
Co-Trustee of the
MB Hale Ohana Revocable Trust

SIGNED this 6 day of Sept, 2022.

_____
Belinda Breen
Co-Trustee of the
MB Hale Ohana Revocable Trust

SIGNED this 6 day of Sept, 2022.

_____
MB Hale Ohana Revocable Trust

By: _Belinda G Breen_
    Co-Trustee

By: _Jeffrey L Mueller_
    Co-Trustee

{00589912;1}

6