# EXHIBIT H

MOTION TO SEAL

# EXHIBIT 42

MOTION TO SEAL

From:        Concilla, Dennis J.
Date:        August 12, 2015 3:02:22 PM (-05)
To:          Robert J Mueller
Subject:     **dGRD - PPM (01529802) - v2.6.docx**

Attachments: dGRD - PPM (01529802) - v2.6.docx;

OK, I fixed it.  I defined Priority Return in I. and then changed the case throughout to be consistent.  In my mind this is now ready!



CONFIDENTIAL

MUELLER 002649



| **Mailing** | **Overnight/Physical** |
|---|---|
| PO Box 691610 | 8200 IH-10 West, Ste. 600 |
| San Antonio, TX 78269-1610 | San Antonio, TX 78230 |

Toll Free (888) 316-2935

**deeproot Growth Runs Deep Fund, LLC** (the "Company", "us", "we", or "dGRD") is a new private equity investment offering that will invest in a number of asset classes including life settlements or ownership of life insurance policies insuring the lives of persons not employed or affiliated with the Company; private placements or capital investments; and cash or cash equivalents. To capitalize the Company, we are offering a series of preferred membership interests ("shares" or "Offering") designed to meet the needs of Investors.

The Shares will be offered only to persons whom we reasonably believe are Accredited Investors as defined in Securities and Exchange Commission ("SEC") Regulation D, 17 CFR 501(a), and to the maximum legally allowable non-accredited or non-institutional investors; all of whom are known as "prospective investors." Prospective investors will be asked to complete an Application and Subscription Agreement, a Form W-9 and provide photo identification. We intend to claim an issuer's exemption from the requirement to register this offering under SEC Regulation D, Rule 506.

THE UNITED STATES SECURITIES AND EXCHANGE COMMISSION DOES NOT PASS UPON THE MERITS OF OR GIVE ITS APPROVAL TO ANY SECURITIES OFFERED OR THE TERMS OF THE OFFERING, NOR DOES IT PASS UPON THE ACCURACY OR COMPLETENESS OF ANY OFFERING DOCUMENT OR OTHER SELLING LITERATURE. THESE SECURITIES ARE OFFERED PURSUANT TO AN EXEMPTION FROM REGISTRATION WITH THE COMMISSION; HOWEVER, THE COMMISSION HAS NOT MADE AN INDEPENDENT DETERMINATION THAT THE SECURITIES OFFERED HEREUNDER ARE EXEMPT FROM REGISTRATION.

THIS OFFERING INVOLVES A HIGH DEGREE OF RISK TO INVESTORS. See "Risk Factors."

| | Principal Amount[1] | Underwriting discount and commissions[2] | Proceeds to issuer or other persons |
|---|---|---|---|
| Per unit Total | $25,000.00 | $2,000.00 | $23,000.00 |
| | | | |
| Total Minimum[3] | $300,000.00 | $24,000.00 | $276,000.00 |
| Total Maximum | $25,000,000.00 | $2,000,000.00 | $23,000,000.00 |

[1] This is the aggregate principal amount of the Offering offered through this offering document.
[2] This offering is made primarily by us. However, we may engage third parties to help us sell Shares under this offering. Any persons who may receive compensation will be registered as a broker, or an otherwise lawful finder. Compensation to such persons, if any, will vary and will be paid out of the Investors principal.
[3] All proceeds will be held in a separate account until we have received the minimum amount of $300,000 in order to start the enterprise. Thereafter, we will not place prospective investors' monies in escrow or a separate account. Certain amounts may be retained for administration or management purposes.

DATED AUGUST 3, 2015

**THIS PPM AND ENTIRE CONFIDENTIAL PACKET MUST BE RETURNED TO DEEPROOT IF YOU DO NOT INVEST.**

i

### NOTICES TO INVESTORS

THE LIMITED LIABILITY COMPANY SHARES HEREIN HAVE NOT BEEN REGISTERED UNDER THE SECURITIES ACT OF 1933, AS AMENDED, OR UNDER ANY SECURITIES LAWS OF ANY STATE.  THE SHARES CANNOT BE RESOLD UNLESS THEY ARE SUBSEQUENTLY REGISTERED OR EXEMPTIONS FROM REGISTRATION ARE AVAILABLE.  NEITHER THE SECURITIES AND EXCHANGE COMMISSION NOR ANY OTHER FEDERAL OR STATE AUTHORITY OR AGENCY HAS PASSSED ON OR ENDORSED THE MERITS OF THIS OFFERING OR THE COMPLETENESS OF THIS PRIVATE PLACEMENT MEMORANDUM.   ANY REPRESENTATION TO THE CONTRARY IS UNLAWFUL.  THERE IS NO PUBLIC MARKET FOR THE SHARES.

NO OFFERING LITERATURE, OTHER THAN THIS PRIVATE PLACEMENT MEMORANDUM, OR ADVERTISING, IN ANY FORM, WILL BE EMPLOYED IN THE OFFERING OF THESE SECURITIES.  NO PERSON HAS BEEN AUTHORIZED TO MAKE ANY REPRESENTATION OTHER THAN THOSE CONTAINED IN THIS PRIVATE PLACEMENT MEMORANDUM, AND, IF MADE, SUCH REPRESENTATIONS MUST NOT BE RELIED UPON.  THIS PRIVATE PLACEMENT MEMORANDUM IS SUBMITTED IN CONNECTION WITH THE PRIVATE PLACEMENT OF THESE SHARES AND MAY NOT BE REPRODUCED OR USED FOR ANY OTHER PURPOSE.  ANY DISTRIBUTION OF THIS PRIVATE PLACEMENT MEMORANDUM, IN WHOLE OR IN PART, OR THE DIVULGENCE OF ANY OF ITS CONTENTS, IS UNAUTHORIZED.

PROSPECTIVE INVESTORS ARE NOT TO CONSTRUE THE CONTENTS OF THIS PRIVATE PLACEMENT MEMORANDUM AS LEGAL OR TAX ADVICE.   EACH INVESTOR SHOULD SEEK HIS OWN LEGAL AND TAX ADVICE AS TO LEGAL, TAX AND RELATED MATTERS CONCERNING THIS INVESTMENT.

THE OFFEREE, BY ACCEPTANCE OF THIS PRIVATE PLACEMENT MEMORANDUM, AGREES TO RETURN THIS DOCUMENT AND ALL RELATED DOCUMENTS TO THE COMPANY IF THE OFFEREE DOES NOT DECIDE TO PURCHASE ANY OF THE SHARES OFFERED HEREBY.

THIS OFFERING IS PRELIMINARY AND MADE SUBJECT TO WITHDRAWAL, TERMINATION OR MATERIAL MODIFICATION BY THE COMPANY WITHOUT NOTICE.  WHETHER OR NOT WITHDRAWN OR TERMINATED, THE COMPANY RESERVES THE RIGHT TO OFFER SHARES IN THE FUTURE AT A PRICE LESS THAN, EQUAL TO OR GREATER THAN THE PRICE OF SHARES OFFERED HEREBY. THESE SECURITIES INVOLVE A HIGH DEGREE OF RISK AND ARE SUITABLE ONLY FOR PERSONS OF SUBSTANTIAL MEANS WHO HAVE NO NEED FOR LIQUIDITY IN THIS INVESTMENT.

ii

CONFIDENTIAL

MUELLER 002651

deeproot Growth Runs Deep Fund, LLC
(a Texas Limited Liability Company)

# CONFIDENTIAL PRIVATE PLACEMENT MEMORANDUM

### OFFERING DATED AUGUST 3, 2015

The information in this Private Placement Memorandum ("PPM") is furnished on a confidential basis exclusively for the use of the person named below, who, by accepting this PPM, **agrees to return it promptly to the Company**, upon request or if no investment occurs, and agrees not to reproduce or disclose to any persons (other than such person's legal, tax, accounting and other advisors) all or any part off this PPM without the express written permission of the Company.

_____

Name

Copy No.

iii

# ⧉ deeproot®

## Growth Runs Deep Fund ("dGRD")
$25,000,000
Class B Membership Shares

# CONFIDENTIAL PRIVATE PLACEMENT MEMORANDUM

**deeproot Growth Runs Deep Fund, LLC** (the "Company", "us", "we", "our", or "dGRD") is a Texas limited liability company of which deeproot Funds, LLC ("dF") is the sole member. **dF** owns all of the Class A Membership Shares ("Class A Shares") and Robert J. Mueller, the sole principal of the deeproot® family of companies is the current Manager of the Company.

The dGRD is a significant step forward in the evolution of the life settlement transaction. The Fund provides a securitized investment in a pool of life settlement policies that removes the inherent risks in relying on the maturity of a single policy, or the unknown wait for an entire pool to mature. By utilizing a First-In First-Out ("FIFO") Queue, investors are put on an equal, fair footing with each other: secured and profiting off of a 'pool' of policies, and not just a singular 'luck-of-the-draw'. Other features include: renewal bonuses, above average pre-determined returns (38% to 60%), and no anticipated future premium obligations. The Operating Agreement of the Company is attached hereto as Appendix I. The Company's principal business office is located at 8200 W Interstate 10, Suite 600, San Antonio, Texas 78230. While ground-breaking, there is no assurance that the Company's business plan will be successful.

## I
## SUMMARY OF THE OFFERING

### Structure

1. The Company is initially offering up to $25,000,000, or 1,000 Class B Membership Shares ("Class B Shares") at a price of $25,000 per Class B Share. The minimum investment per transaction is $25,000, or 1 Class B Share. Fractional shares up to four decimal places are permitted. The Company reserves the right to increase the outstanding, issued, and/or authorized amount of Class B Shares, without notice or permission, to accommodate renewals by existing Class B Shareholders.

2. Subscription payments will be held in an interest-bearing account until at least $300,000 of Class B Shares (300 Class B Shares) are sold. Once the Company attains that level of sales, the Company will commence business by purchasing the first assets. If subscriptions to purchase at least 300 Class B Shares have not been accepted by December 31, 2015, and by unanimous vote of all Class B Shareholders, all payments received will be returned *pro rata*, together with interest earned thereon (if any).

3. The Company will have a board of Managers who will be responsible for the management of the Company. Robert J. Mueller has been designated as the initial Manager. Biographies of the management team are contained herein.

4. Any commissions or discounts paid (if any) with respect to the offering of the Class B Shares shall be at the expense of the Company.

### Offering Basics

5. The offering is made up of a chronological 'Queue' of segmented 1 share ($25,000) investment positions (the "position", or "positions"). A position may be fractional (ie. less than $25,000 or 1 share).

6. Each investment position is assigned a predetermined rate (the "Liquidation Multiplier"). This is the equivalent of a lump-sum priority or preferred return ("Priority Return").

CONFIDENTIAL

MUELLER 002653

7.      The Class B Shares are subject to Mandatory Calls, and as assets mature, the Company calls and pays off the positions based on their respective order in the FIFO Queue, as further described in this PPM.

8.      Each Class B Shareholder has two options upon a Mandatory Call: i) to renew (ie. reinvest) the position(s) in return for an increased Liquidation Multiplier (ie. bonus); or ii) receive a sum equal to the position(s)' initial principal, multiplied by the Liquidation Multiplier, paid 30 days after the Call Date.  All calls are made in the sole discretion of the Company and are absolute, and without recourse.

9.      The Company is responsible for all premiums or outlays to maintain the assets in return for an advance of principal, and a share of any assets that mature.

**Other Offering Details**

10.      Class A Shareholders retain all voting rights.  The Fund Advisor or Manager(s) retain sole discretion over due diligence, purchase, and maintenance of the assets.

11.      Class B Shareholders have a right to receive certain information, as further described herein; and retain a right to consent to any substantial changes to the Offering, or to the ownership or management of the Company.

12.      Class B Shareholders are granted a contingent security interest in and to the underlying assets, pro rata, as a pool.  As such, the Company agrees to not accept future principal, if doing so would result in non-securitization of a majority of Class B Shareholder positions.

13.      If a Class B Shareholder dies, such Class B Shareholder's custodian(s), beneficiary(ies), legal representative(s), and/or assign(s) are subject to the same registration and terms upon which the Class B Shareholder would have been, had the Shareholder remained alive.  The Company retains the sole and absolute right to require adequate documentation or authentication determinative of the legal right of the requesting custodian, beneficiary, legal representative, or assign to request or receive the deceased Class B Shareholder's principal and/or return.  The Company also retains the absolute and sole discretion to reject any such request without a written order (to do so) issued by a court of proper jurisdiction.

II
**SUITABILITY STANDARDS FOR INVESTORS**

Investment in the Class B Shares of the Company offered hereby involves a high degree of risk.  The Class B Shares offered hereby are suitable only for those investors whose business and investment experience, either alone or together with their financial advisors, makes them capable of evaluating the merits or risks of their prospective investments in the Company and who can afford to bear the economic risk of their investment for an indefinite period and have no need for liquidity in this investment.  There will not be any public market for the Class B Shares.  The Class B Shares have not been registered with the Securities and Exchange Commission, nor with any state securities agency.  This is an offering made only to a limited number of investors for investment only.  Each investor will be required to execute the Subscription Agreement.  Under the Subscription Agreement, each investor will be required to represent, among other things, that he is acquiring the units for his own account, for investment, and not with any intention of making a distribution or resale thereof, either in whole or in part.  Furthermore, no resale or transfer will be permitted except in accordance with the provisions of the Federal Securities Act of 1933, as amended, the rules and regulations thereunder, the applicable state securities laws, and the terms of the Operating Agreement.

No Class B Shares will be sold to any person unless he executes and delivers to the Company a copy of the Subscription Agreement and accompanying documents, which contain representations regarding the prospective investor's net worth and certain other matters.  The Company will not accept subscriptions from any prospective investor unless such investor certifies that (1) his net income before taxes for each of the two immediately preceding years was at least $200,000 and there is a reasonable expectation of reaching the same income level in the current year, or (2) his net worth (exclusive of primary residence, furnishings and automobiles) is at least $1,000,000, or (3)

CONFIDENTIAL                                    MUELLER 002654

his financial position is otherwise suitable for the degree of risk associated with this investment. In addition, a prospective investor must have sufficient knowledge and experience in financial and business matters to enable such prospective investor to evaluate the merits and risks of an investment in the Company or must have the assistance of a person other than the Company or its affiliates, who possesses such knowledge and expertise. The Company will have the sole discretion regarding admittance of any investor into the Company.

## III
## RISK FACTORS

Participation in the Company requires a minimum investment of 1 Class B Share ($25,000), and the ability and willingness of the investor to accept substantial investment risks and lack of liquidity.

In addition to the factors set forth elsewhere in this PPM, prospective investors in the Company should carefully consider the following.

INFORMATION CONTAINED HEREIN, INCLUDING FINANCIAL FORECASTS, HAS BEEN OBTAINED FROM THE COMPANY AND THE MANAGERS AND FROM OTHER SOURCES DEEMED RELIABLE. THIS INFORMATION HAS BEEN PREPARED BASED UPON CURRENTLY AVAILABLE DATA AND NECESSARILY INCORPORATES SIGNIFICANT ASSUMPTIONS AS TO FACTUAL MATTERS. THERE IS NO ASSURANCE THAT THESE ASSUMPTIONS ARE, OR WILL PROVE, ACCURATE IN ALL MATERIAL RESPECTS, SO THAT, AMONG OTHER THINGS, THE FINANCIAL FORECASTS CONTAINED HEREIN CAN, OR WILL, BE ATTAINED.

EACH PROSPECTIVE INVESTOR IS URGED TO CONSULT HIS OWN TAX COUNSEL, ACCOUNTANT AND OTHER PERSONAL ADVISORS CONCERNING THE LEGAL, FINANCIAL AND TAX ASPECTS OF THIS INVESTMENT. PROSPECTIVE INVESTORS ARE NOT TO CONSTRUE ANY PART OF THE CONTENTS OF THIS SUMMARY AS LEGAL OR TAX ADVICE.

FURTHERMORE, INVESTORS CAN RECEIVE NO GUARANTEE WHATSOEVER THAT THEY WILL RECEIVE ANY RETURN ON THEIR CONTRIBUTIONS TO THE VENTURE. THE MANAGERS SHALL NOT HAVE ANY LIABILITY TO THE INVESTORS FOR ANY ACT OR OMISSION NOT AMOUNTING TO FRAUD, GROSS NEGLIGENCE, OR WILLFUL MISCONDUCT.

A.    Lack of Operating History.
The Company has recently commenced operations and has no evidence other than that presented herein to predict future earnings. As such, the Company will be subject to all the risks of a new business enterprise.

B.    Investors will not be able to evaluate our portfolio of Investments prior to purchasing Class B Shares.
Our Advisor or Manager(s) have broad authority and discretion to identify and invest in life policies, private placements, and cash or cash-equivalents. Consequently, Class B Shareholders must rely exclusively on our Advisor or Manager(s) to make sound investment decisions for them.

C.    Investment in the Class B Shares involves an enhanced degree of risk.
We will only be able to meet our obligations to the Class B Shareholders and achieve our own internal objectives by obtaining enhanced returns from our investment portfolio. Although our Advisor or Manager(s) will apply governing criteria and reasonable business judgment to their investment decisions, each investment will generally imply an enhanced risk than other traditional investments offered in the open market. There is the potential risk of losing part or all of any given underlying investment or of not achieving its expected return thereon.

D.    Term, duration, or length of investment is unknown.
While the advantage of the FIFO Queue feature of the dGRD is to put Class B Shareholders on an equal footing and a better chance to achieve the average anticipated hold time of the investment, the Company cannot make any guarantee or guess as to the term, duration, or length of the investment.

E.    It is possible Class B Shareholders may have to contribute additional money.

CONFIDENTIAL                                                                        MUELLER 002655

As more fully described below, when we acquire a life policy, we may be required to pay policy premiums. While it is anticipated that Class B Shareholders will never have to satisfy a future premium obligation, or other asset obligations, the Company reserves the right to request Class B Shareholders to advance additional principal if: i) the Class B Shareholders are given reasonable notice; and ii) by doing so is in the financial best interest of the Class B Shareholders.

F.      Dependence on Managers.
The success of the Company will depend, to a significant extent, on the quality of the management provided by the Managers. In the event Robert J. Mueller is incapacitated or dies, or is removed or resigns, there can be no assurance that a satisfactory replacement could be obtained or would be available on the same terms. Furthermore, the Managers will not be obligated, and are not expected, to devote full time and attention to the affairs of the Company. The Class B Shareholders will have limited right to participate in the management of the Company.

G.      Some Agreements, Including Those Involving Compensation, Not at Arms-Length.
As described herein, we and our parent entity(ies), as Class A Shareholders, will receive any returns from the pool of investments over the returns due and payable to Class B Shareholders. Our return may be potentially large and the magnitude of this return has been determined without the benefit of arms-length bargaining. However, in our opinion, the risk of loss to us and the fees and charges paid by us in connection with the investments, justifies the division of the total potential return.

deeproot Funds, LLC operates other investment funds. Those funds may, from time to time, purchase Class B Shares in the Company to hold as assets in those other funds. Should dF purchase Class B Shares, they are subject to the same identical terms as any other Class B Shareholder, and take no preference in the FIFO Queue.

H.      Lack of Liquidity.
The Class B Shareholders should be fully aware of the long-term nature of this investment. There is no market for resale of Class B Shares, nor is one likely to develop. The Shares are intended to be held indefinitely and are therefore, illiquid. As such, they are not suitable for emergency, living expenses, other income requirements, or required minimum distributions (RMD's). There are a number of restrictions on the transferability of the Class B Shares offered hereunder. In addition, Class B Shares may only be assigned subject to limitations imposed by federal and state securities laws and the necessity of avoiding adverse tax consequences. Additionally, an assignee may only become a substitute member with the consent of the Managers and upon satisfaction of the other conditions set forth in the Operating Agreement. Accordingly, Class B Shareholders may not be able to liquidate this investment, even in the event of an emergency. Additionally, the Company may decline to declare or distribute net maturity proceeds for reasons that may or may not be agreeable to Shareholders. Finally, when the Company decides to call one or more Class B Members' position(s), the specific Class B Shares to be called will be decided by such's order in the FIFO Queue. Queue jumping is not permitted.

I.      Not Suitable for Required Minimum Distributions.
The Shares are not intended to satisfy Required Minimum Distributions (RMDs), even though a Class B Shareholder's Priority Return might be greater than the annual RMD requirement. RMD's generally are minimum amounts that a retirement plan account owner must withdraw annually starting with the year that he or she reaches 70 ½ years of age or, if later, the year in which he or she retires. As such, any RMD amount that would have been withdrawn from this Offering, must instead be withdrawn out of Shareholder's other qualified accounts.

J.      Our Ability or Inability to Employ High Quality Underwriting Standards and Adhere to them in Building the Portfolio.
Our ability to find and obtain quality investments for our portfolio is a mission-critical endeavor. While we have current readily available sources of high quality investments, there is an inherent risk that such sources could be frustrated by external forces, yield lower quality investments, or dry up entirely.

K.      Determination of Company's Profit and Loss.
Profit and loss shall be considered to have been earned over the period of the Company's fiscal year, except that profits and losses arising from the disposition of properties shall be taken into account as of the date thereof and except that if additional capital is contributed during the course of the Company's fiscal year, a separate

CONFIDENTIAL

determination of profit and loss shall be made as of the last day of the month preceding the month in which such additional capital is contributed, and the profit and loss of the Company for the period before such date shall be apportioned among the members in accordance with their respective interests on such date.

L.    Determination of Class B Shareholder's Share of Profit.
In all cases, a Class B Shareholder's maximum share, over the duration of fiscal years held, of any profit is limited to the principal invested, multiplied by the percentage equivalent of such's position(s)' Liquidation Multiplier(s), that remains unpaid by Company.

M.    No Guarantee of Fixed or Annualized Returns.
Consistent and predictable growth is ideal in Company's effort to provide the respective return. In the short-term, if overall growth in the value of our portfolio falls below our obligations to the Class B Shareholders, our excess reserves would be expected to cover the deficit. However, there is a risk that a longer term deficit will exceed our reserves, potentially lowering the return. As the actual death of an insured, maturity of any life policy, or return of capital from a private placement are unknown at the time of investment, we cannot provide in advance a fixed or annualized rate of return. Annualized return on investment calculations can only be made at a Mandatory Call.

N.    Inadequate Valuations and Their Effect on the Accounting of the Company and Class B Shares.
Low or inadequate valuations of our investment portfolio may lead to the appearance of an accounting deficit on a portion or all of the investment portfolio. Based upon the overwhelming intended allocation of investment funds to life policies and the fact that the face value of all life policies purchased for the portfolio will eventually be realized, we believe that Class B Shareholders will actually earn the amount owed upon each maturity. However, in the event of low valuations, the accounting of the investment portfolio may actually be less than when realized.

O.    Possible Classification as an Investment Company.
Because we will invest in items which may be deemed to be securities, we could be classified as an investment company under the Investment Company Act of 1940, as amended (the "Investment Company Act"). Classification as an investment company under the Investment Company Act would have a substantial adverse impact on our operations as it would require registration with the SEC and various state securities agencies. We intend to restrict investment in our securities (including the Debentures) to a maximum of 100 Class B Shareholders in order to meet an exemption from registration under the Investment Company Act. Since we do not intend to register as an investment company, Class B Shareholders will not have any of the protections that may be afforded by the Investment Company Act.

P.    Some Information may not be Provided.
Notwithstanding compliance with Section 101.502 of the Texas Business Organizations Code, Class B Shareholders may not be permitted to request or receive sensitive, non-public, privileged or confidential information about the Company, including, but not limited to: details of underlying assets, sensitive accounting or transactions, trade secrets, identifiable payroll or personnel information, non-public (internal) marketing or sales information, etc.

Q.    Federal Income Tax Risks.
WE HAVE NOT OBTAINED A LEGAL OPINION CONCERNING THE TAX IMPLICATIONS OF AN INVESTMENT IN THE OFFERING. IT IS EACH PROSEPECTIVE INVESTOR'S REPSONSIBILITY TO OBTAIN AN INDEPENDENT TAX OPINION CONCERNING THE TAX STATUS OR IMPLICATIONS OF INVESTING IN THE OFFERING. Investors are presumed to have access to needed legal and tax advice. Prospective investors are expected to consult their own tax advisors as to their own tax situation prior to investment in the Class B Shares. The cost of such consultation could, depending on the amount thereof, materially increase the cost of purchasing an interest in this Offering and may decrease any anticipated yield on the investment. A number of changes in the tax laws have been made and/or are under consideration, and such professional consultation is essential.

R.    Risk of Audit.
Our federal tax returns may be audited by the IRS. Such audit may result in the challenge and disallowance of some of the deductions or increase in the taxable income described in such returns. No assurance or warranty of

CONFIDENTIAL                                                                 MUELLER 002657

any kind can be made with respect to the deductibility or taxability of any such items on our tax return in the event of either an audit or any litigation resulting from an audit. While an audit may decrease our ability to perform, such an audit should not affect the tax treatment afforded Investors with respect to the Offering.

IV
**UNDERLYING ASSETS**

**Life Policies**

We will invest in Life Policies (aka Life Settlements), which are sales to third parties, of existing life insurance contracts held on insureds who are 65 years of age or older. The policy is purchased for more than their cash surrender value but less than the net death benefits to be paid under the policies. These Life Settlements may, but are unlikely to, include policies on the lives of terminally ill patients under the age of 65 as long as such's combined Face Value is less than five percent (5%) of the aggregate Face Value of the pool of life policies. When we acquire such a contract, we may be required to pay the policy premiums in return for the receipt of the net death benefit as the new owner and beneficiary under the policy. Investments in these contracts involve certain risks, including liquidity risk, risk of excessive premium payments beyond the insured individual's life expectancy, credit risk of the insurance company, and inaccurate estimations of life expectancy of the insured individuals. These policies are considered illiquid in that they are bought and sold in a secondary market through life settlement agencies and not on any exchange where settlement of a transaction is required in a timely manner. In the event of a bankruptcy of the insurance carrier for a policy, we may receive reduced or no benefits under the contract. Although unlikely, the Company may internally encounter losses on the investments if there is an inaccurate estimation of the life expectancies by having to pay higher-than-anticipated premium obligations.

We will seek to minimize risk by investing in policies issued by a diverse range of highly-rated insurance carriers; and in policies that vary: by life expectancy, by net death benefits, and by annual premium payments. We intend to reduce the life expectancy risk by investing only in contracts where the life expectancy was reviewed by an experienced independent medical professional and/or actuary, as well as by diversifying the investments across insured individuals' varying ages and medical profiles.

**Target Life Settlement Portfolio Summary**

| | |
|---|---|
| Minimum target age of insured individuals | 65 |
| % of Face Value <65 years of age | < 5% of aggregate investments |
| Policy Types | Whole, UL, IUL, VUL, Convertible Term |
| Life Expectancy Range | 3 - 12 years |
| Targeted Life Expectancy | 4 - 6 years |
| Internal Life Expectancy/Premium Reserves | Life Expectancy + 1 |
| Insurance carrier [AM Best] rating | B++ or higher |
| Second to Die | < 5% of aggregate investments |

In the past, our principals have purchased life insurance policies through secondary market transactions directly from a middle source provider. The middle source provider purchased the policy directly from an owner/insured that purchased the life insurance in the primary market. Each policy considered by us will be underwritten by an independent third party medical actuarial firm who will issue a report providing a life expectancy estimate on each insured. We will base our life expectancy estimates on the estimates provided by the actuarial firm plus one year. The policies we will purchase are whole or universal life insurance policies issued by rated life insurance companies. Universal life insurance is a type of permanent life insurance in which premium payments above the cost of insurance are credited to the "cash value" of the policy. The cash value is credited each month with interest based on the terms of the insurance policy agreement. If a universal life insurance policy were to lapse, the insured or other owner of the policy would nonetheless have a right to receive the cash value of the policy. Universal life insurance is different from "term" life insurance in that "term" life insurance does not have a cash value associated with it. We may purchase convertible Term policies. Convertible term means that the term policy can be converted to a Universal Life policy under certain conditions.

MUELLER 002658

The price we will be willing to pay for a policy in the secondary market is primarily a function of: (1) the policy's face value; (2) the expected actuarial mortality of the insured; (3) the premiums expected to be paid over the life of the insured; and (4) market competition from other competitors. We seek to earn profits by purchasing policies at discounts to the face value of the insurance benefit. The discounts at which we purchase are expected to exceed the costs necessary to pay premiums, financing and servicing costs through the date of the insured's mortality. We rely on the medical/actuarial life expectancy assumptions provided to us by third-party medical actuary underwriters to estimate the expected mortality of the insured.

### Private Placements/Capital Acquisitions

A private placement is the purchase of an illiquid or restricted investment position in another enterprise which is typically privately held, with the anticipation of significant return of income or capital, if the enterprise is successful. There is an extreme risk of loss in this type of investment. We minimize this risk by limiting private placements to 30% of the asset portfolio.

A capital acquisition is a purchase of an internal or external, related investment position in another enterprise which may be public or private, wherein such enterprise is intended to enhance Company's reputability, safety, or financials through joint venture, partnership or collaboration, or minimize pool risk, lower administrative overhead or expenses, or to develop additional product lines.

V

**TERMS OF THE OFFERING**

### The FIFO Queue

Investments by Class B Shareholders are queued in 1 share ($25,000.00) increments ("position"), or a part thereof if less, by the chronological order in which investments are initially received (or renewed) in a first-in, first-out ('FIFO') basis. Queue positions are numbered in sequential order based on a *timestamp* of when the i) Class B Shareholder's Application and Subscription Agreement was approved, and ii) the minimum qualifying principal was actually received. For example: Principal received at different times or dates may receive non-sequential positions in the FIFO Queue, if other shareholder(s) *timestamp(s)* intercede.

As assets mature and positions are called: i) Class B Shareholders are paid each's Liquidation Amount on the Pay Date, in order of Mandatory Calls on each's ordered position in the FIFO queue; and ii) the uncalled or remaining positions in the FIFO Queue *advance* in the same order to *fill* the called position(s), and are re-numbered respectively. As the position in the FIFO Queue is based on the 'investment' (or a part thereof), and not the 'Class B Shareholder', a single Class B Shareholder who has made multiple, separate, non-sequential investments of principal, will, as a result, hold multiple positions in the FIFO Queue. Queue jumping is not permitted, in any form.

*For Example*: See below a *magnified* subset of positions, as well as the sequential/non-sequential nature of the



Queue.

CONFIDENTIAL

MUELLER 002659

A Class B Shareholder's position is subject to a Mandatory Call when all of the following events have occurred: i) an asset matures, or life policy matures due to the death of the insured(s); ii) the Company receives the maturity amount, or for life policies, the death benefit(s) or Face Value of the life policy from an insurance carrier; iii) the Class B Shareholder owns the next position in the FIFO queue; iv) enough net proceeds exist from the maturity, to pay the Liquidation Amount of the next Class B Shareholder's position in the FIFO queue; and v) the Company conveys written notification of a Mandatory Call, the Liquidation Amount, Pay Date, and a right to Renew to the Class B Shareholder. The "Call Date" is the date such written notification is conveyed. It is possible for a Class B Shareholder to have multiple sequential or non-sequential positions that *mature* on or about the same call date.

### Pay Date

The Pay Date is 30 days following the Call Date. On the Pay Date, the Company will mail the Liquidation Amount to the Class B Shareholder by first class mail, unless the Class B Shareholder requests a premium service (*e.g.* overnight, Wire, etc.), or renews, in writing, which must be received by the Company at least three (3) business days before the Pay Date.



### Renewals

In lieu of accepting the Liquidation Amount for any matured position, a Class B Shareholder may reinvest (or "renew", "renewal", "renewed") part or all of the Liquidation Amount. If a renewal investment is elected, having been received by the Company in writing at least three business days before the Pay Date, of at least ninety percent (90%) of the Liquidation Amount, then the Class B Shareholder shall receive a bonus of 0.05 added to their Base Liquidation Multiplier on the renewed position. A renewal bonus (or renewal bonuses) is/are not cumulative. In all cases, a Class B Shareholder's renewed investment is placed at the end of the FIFO queue, as of the Pay Date.



*For example*: A policy comes due in which the first four positions mature and are paid. All remaining positions in the queue move forward. Class B Shareholder A, reinvests $100,000 and is placed at the end of the queue.

### Liquidation Multiplier

The Liquidation Multiplier determines the future value of the Class B Shareholder's position at the Mandatory Call. It is based on the Class B Shareholder's registration type (ie. Individual, JTWROS, JT-in-Common, IRA, ROTH, Entity, Trust, etc.), and is pre-determined by the amount of aggregate/cumulative principal then invested in such Class B Shareholder's registration, at the time of investment. Non-sequential positions by the same Class B Shareholder registration can therefore have different Liquidation Multipliers. Once set by the Company at investment, the Liquidation Multiplier for each position will not change until called. The Base Liquidation Multiplier will increase by 0.05 for a qualifying renewal. The Liquidation Multiplier may never exceed 1.65 without prior written Company approval, signed by the Company's Manager(s) and the Company's Fund Advisor.

CONFIDENTIAL                                                                                    MUELLER 002660

| Initial/Renewed Cumulative Principal | Base Liquidation Multiplier |
|---|---|
| Under $100,000.00 | 1.38 |
| $100,000.00 - $199,999.99 | 1.43 |
| $200,000.00 - $399,999.99 | 1.46 |
| $400,000.00 - $699,999.99 | 1.50 |
| $700,000.00 - $999,999.99 | 1.55 |
| $1,000,000.000 + | 1.60 |

**Percentage Equivalent:**

The *percentage equivalent* is calculated by reducing the Liquidation Multiplier by '1', and then dividing by 100.

**Liquidation Amount**

Each respective Class B Shareholder will receive an amount equal to the initial (or renewed) principal in a matured position, multiplied by the Liquidation Multiplier set at the time of initial or renewed investment.

**No Liquidity**

Outside of the Pay Date following a Mandatory Call, Class B Shareholders are not permitted to request amounts of principal, preferred/Priority Return, or otherwise.

**Premiums**

The Company is responsible for paying all premiums for the life policies out of: i) an amount set aside at the purchase of each life policy that covers anticipated premium obligations through life expectancy plus one year; and ii) the Company's compensation, if any insured lives past the life expectancy plus one year guideline.  While it is anticipated that Class B Shareholders will never have to satisfy a future premium obligation, the Company reserves the right to satisfy premiums out of future Class B Shareholder proceeds if: i) the Class B Shareholders are given reasonable notice; and ii) doing so is in the financial best interest of the Class B Shareholders.

**Voting rights**

Class B Shareholders do not receive voting rights, as to the ownership, management, or administration of the Company.

## VI
## REPORTING

Class B Shareholders have certain rights to receive ongoing information about the Company, the Company's financial status, and the Class B Shareholder's position(s).  Notwithstanding compliance with Section 101.502 of the Texas Business Organizations Code, some information may be exempt from reporting.

Secure online access is available at https://secure.deeprootfunds.com.  For purposes of this Offering/PPM, all references to Company's duty (whether mandatory or permissive) to report, notify, convey, or deliver any information or document(s) shall be deemed to be reported, notified, conveyed, or delivered by online access to your secure account; whether or not you have requested such access.  For shareholders that wish to have printed, postal mail notifications, you must contact us in writing.

CONFIDENTIAL                    MUELLER 002661

We have an affirmative duty to provide some ongoing information without need for any Class B Shareholders' prior requests. These include:

» notice of any default of any underlying asset
» notice of a failure to pay a Liquidation Amount to any Class B Shareholder
» a statement of account at least once annually
» a statement of Company's unaudited financial condition and internal valuation of our portfolio
» notice of any adverse regulatory or legal notice, proceeding or decision regarding us that directly and significantly affects the Class B Shareholders' rights or values
» notice of any other event that has a significant potential to negatively affect our ability to return principal and interest to the Class B Shareholders

We also have a duty to release certain information only upon request by a Class B Shareholder. These include:

» a statement of account value at the time of request
» a statement of Company's current financial condition at the time of request

We retain the right to not release certain information to any Class B Shareholder. This information includes but is not limited to:

» copies of any confidential, privileged or proprietary information that does not directly involve any Class B Shareholder's interest
» any information concerning another Class B Shareholder's interest
» specific positions, investments, assets, or transactions underlying in our portfolio
» private or non-public information regarding us, any of our officers, any of our employees, or any of our strategic partners, assigns, or third party administrators

## VII
## COSTS AND APPLICATION OF PROCEEDS

The proceeds from the sale of Class B Shares will be used to begin purchasing assets identified above. We have already sought out appropriate assets, and (if not already attained), will commence operations upon receipt of a minimum of $300,000 from Class B shareholders. The proceeds of sales of additional Class B Shares will be used as the sales are closed. The following are the minimum amounts that will be utilized for the indicated purposes per $25,000 of principal received (or pro rata thereof), but may be less if no compensation is earned or paid.

| Cost of Services | Minimum Per $25,000 |
| --- | --- |
| Principal | $23,000.00 |
| Expenditures (~8%) | $ 2,000.00 |
| *Initial Compensation (if any)* | |

**Agent Compensation**

If a Class B Shareholder is represented by a representative, agent, advisor, broker, or other professional who may legally receive compensation for referring, advising, or providing this Offering to Class B Shareholder, then the Company may pay to the order of such professional an amount of compensation that has been disclosed to the Class B Shareholder. There are some types of compensation that must be paid by the Class B Shareholder. In that case, the Class B Shareholder fully indemnifies Company from being responsible for those payments, as provided in Article VIII. A representative, agent, advisor, or broker may not earn compensation on principal invested by the same (i.e. as a Class B Shareholder).

**Company Advance**

CONFIDENTIAL                                                                          MUELLER 002662

The Company shall receive an advance of no less than two percent (2%) and no more than twenty percent (20%) of the initial principal of any Class B Shareholder. This amount covers agent compensation (if any), nominal administration expenses, IRA fees, other compensation, marketing costs, and the Fund Advisor fees. Despite an advance, one hundred percent (100%) of the Class B Shareholder's principal shall be returned at the Pay Date, along with a return equal to the percentage equivalent of a Class B Shareholder's Liquidation Multiplier.

**Company Compensation**

The Company shall receive compensation of the greater of: i) the difference between the percentage equivalent of the matured positions Liquidation Multipliers, and any policy maturity's maximum return (as calculated by face minus acquisition, divided by acquisition); ii) an amount equal to ten percent (10%) of any matured policy's gross maximum return before assigning to the liquidation of Class B Shareholder positions. The Company also shall receive any assets in the portfolio once all Class B Shareholder positions have been called.

## VIII
## ADMINISTRATION STRUCTURE & FEES

The Company is managed by a Board of Managers. However, the sole current Manager is Robert J. Mueller, Esq. All fees are subject to reasonable changes at any time, in Company's sole discretion, without prior notice.

| | |
|---|---|
| Annual Account Fee | $0.00 |
| IRA Fee | $250.00 to $500.00 per year* |
| Call Notice and Payment | $0.00 |
| Check Fee | $0.00 |
| Overnight Fee | $50.00 |
| EFT Fee | $25.00 |
| Wire Fee | $50.00 |
| Advisory Fees | Unknown * |

* For qualified positions: the Company will advance annual IRA custodian fees until all of any respective Class B Shareholder position(s) mature(s). The Company shall deduct any or all advanced annual IRA fees from an investor's Liquidation Amount at the (or *each*) Pay Date, up to the lessor of: i) the actual advance; or ii) $500.00 per year.

* For Advisory Fees: If Company is billed for and pays any advisory fees from an advisor or advisory firm that referred Class B Shareholder to Company or this Offering, then such advisory fees, plus three percent (3%) compounded interest, shall be deducted from the respective Class B Shareholder's Liquidation Amount at the Pay Date.

## IX
## PRINCIPALS & ADVISORS

**Robert J. Mueller, Esq.**
**Manager, dGRD**

Robert J. Mueller is an attorney and financial advisor with over twelve years of experience in the legal and financial industries. Robert earned a B.B.A. in Finance from the University of Texas at San Antonio, while concurrently learning about the financial markets with USAA Investment Management Company. After completing his undergraduate studies, Robert attended St. Mary's Law School in San Antonio, where he graduated in December 2000.

Robert has since concentrated his legal and financial practice in the area of estate planning, insurance products and investments. He has personally drafted, delivered, and presented hundreds of simple and complex trust and financial estate plans for his clients. Robert is a member of the State Bar of Texas, Estate Probate & Trust Law

CONFIDENTIAL
MUELLER 002663

Section of the State Bar of Texas, Texas Young Lawyers Association, San Antonio Bar Association, and is insurance licensed in Texas.

Mr. Mueller is responsible for deeproot's product design, marketing, and strategic planning areas. He is a tech enthusiast and builds/programs/designs for fun.

**Aaron F. Flores, Fund Advisor for dGRD**
**Manager, deeproot Advisory Services, LLC**

Aaron F. Flores is an investment professional with over nine years experience in financial advising, wealth management servicing, and securities trading at both USAA Investment Management Company and Citigroup. Aaron is a native Texan from Northwest Texas and earned degrees from Texas Tech University in Business and Spanish. He holds a FINRA Series 65 license and has held FINRA Series 7 and 63 licenses. Aaron also holds the Accredited Asset Management Specialist AAMS® and Chartered Retirement Planning Counselor CRPC® designations from the College for Financial Planning. He is currently one-third of the way through his work towards a CFA® designation.

**Advisory Agreement & Philosophy**

The investment advisory agreement between deeproot Advisory Services, deeproot Funds and us provides that we are the Advisor's client and have given the Advisor discretionary authority to invest our funds as it sees fit in accordance with our investment objectives. For those advisory services, the Advisor will earn investment management fees equal to one-quarter of one percent (0.25%) per annum of the assets under management ('AUM'). The investment management fees will payable on a periodic basis, of at least one payment each semiannual calendar period, based on the invoice of the Advisor.

## X
## SUBSCRIPTION PROCEDURE

In order to subscribe for Class B Shares, a Class B Shareholder must deliver to the Company, at its offices:

1. One completed and executed copy of the dGRD Application & Subscription Agreement, per registration type;
2. A bank or certified check, or Wire, in the amount of Twenty-Five Thousand Dollars ($25,000.00) for each full Class B Share subscribed for, or fractional part thereof, payable to the order of: **deeproot Funds**; or rollover or qualified transfer paperwork for the same.

Executed copies of the documents to be completed by the Class B Shareholders are being delivered with this Confidential PPM. EACH CLASS B SHAREHOLDER IS URGED TO READ THE SUBSCRIPTION AGREEMENT AND THE ACCOMPANYING DOCUMENTS IN THEIR ENTIRETY BEFORE EXECUTING THEM.

In the event the Company rejects or revokes acceptance of a subscription, funds delivered by the subscriber to the Company in connection with the subscription will be returned without interest. Each Class B Shareholder who is solely and affirmatively responsible for keeping their contact information (and bank information for EFT payments) current with the Company. The Company will not be responsible for any delayed, missing, or incorrect notices or payments due to Shareholder's inaction to affirmatively update such information.

Share certificates shall not be issued for any shares subscribed to herein. Rather a certificate of ownership, in lieu of a share certificate, shall be issued to each Class B Shareholder in a closing packet, along with copies of the application and subscription agreement.

deeproot Funds, LLC handles the administrative operations for the Company. Any subscription to this Offering constitutes a perpetual acknowledgment and consent to such.

CONFIDENTIAL                                                                                    MUELLER 002664

MOTION TO SEAL

## XI
## AVAILABLE INFORMATION

The statements in this PPM as to the contents of any contract or other document are of necessity brief descriptions thereof and are not necessarily complete; each such statement is qualified in its entirety by reference to such contract or document.

Any Class B Shareholder desiring additional information about the Company should contact deeproot Funds, LLC, 8200 W Interstate 10, Suite 600, San Antonio, Texas 78230, telephone: (888) 316-2935. All reasonable, permissible requests for books, records, and financial information regarding the Company shall be made available in reasonable amounts of time to the Class B Shareholder.

## XII
## CONTINGENT SECURITY AGREEMENT

The Company agrees to immediately grant a security interest to Class B Shareholders in all assets it holds in the Company's investment portfolio (ie. underlying assets) upon a substantial default. A substantial default is defined as:

» The inability of Company to pay a liquidation amount to any Class B shareholder, if still unpaid at sixty (60) after it is due;

» Enough losses from the underlying assets that would prevent the future repayment of each Class B Shareholder's principal amount;

» Any officer or advisor convicted of a felony, that was committed in furtherance of performing such's duties under this Offering; or

» A court or regulatory order that finds Company has committed a substantial default.

The Company will immediately perfect that security interest and provide immediate security information, including the security interest(s), upon a substantial default. Class B Shareholders must appoint a Trustee or other fiduciary who will receive, possess, hold, maintain, and dispose of any assets under the security interest.

The Company is only required to perfect a security interest in its entire investment portfolio upon the first occurrence of a substantial default, if it cannot cure within ninety (90) days of such default.

## XIII
## FREQUENTLY ASKED QUESTIONS (FAQ)

**Why are there Class A and Class B shares?**
deeproot Growth Runs Deep Fund, LLC ("dGRD") is organized as a Limited Liability Company (LLC), and not as a For-Profit Corporation. This was done for ease of organization, lower filing and maintenance costs, tax options, etc. In order for an LLC to mirror a For-Profit Corporations issuance of Common and Preferred Stock, we use 'classes' of membership interests ('shares'). Each class is comprised of shareholders who enjoy the same rights and privileges.

**What are Class A shares?**
Class A Shares in dGRD are the equivalent to common stock in a For-Profit Corporation. They have voting rights and the ability to receive dividends or distributions of capital from the business, subject to Class B's preferential rights.

**What are Class B shares?**
Class B Shares in dGRD are the equivalent to preferred stock in a For-Profit Corporation that includes a Mandatory Call feature. While they do not have voting rights, they have preferential rights to receive dividends or distributions of capital from the Company, over any other class' shares.

CONFIDENTIAL

MUELLER 002665

**Am I able to find out my place in the FIFO Queue before investment?**
In short, No.  Because your position(s) in the FIFO Queue is/are not assigned until your Application and Subscription Agreement has been approved, and we receive part or all of your principal (in $25,000 increments), any number/position we may provide will be a complete guess and will likely be wrong.  It is normal for there to be delays in application deficiencies, or funding from qualified transfers, check holds, or other factors, which will directly affect the Company's ability to assign your position(s).

**Am I able to find out how many positions/investors are in front of me in the FIFO Queue, before investment?**
Due to the Company's commitment regarding the privacy and security of other shareholders, and because of the inherent *fairness* of the FIFO Queue design, the Company reserves the right to withhold how many positions or Class B Shareholders would come before you in the FIFO Queue, before you invest.  In fact, as with the preceding question, the actual number will likely be different by the time your position(s) are eventually assigned.

**Do Class B shares receive a preferred/Priority Return?**
No, a Preferred or Priority Return for Class B shares is the equivalent of a preferred dividend for Preferred Stock.  Traditionally, a preferred/Priority Return is paid on a periodic or annual basis (ie. Company's fiscal year) based on the profits or losses of the Company.  In this Offering, the return is paid lump-sum (and not periodically or annually), at a predetermined rate, upon a Mandatory Call.

**When will a Class B Shareholder receive a preferred/Priority Return?**
While a Preferred or Priority Return is traditionally paid periodically, the dGRD does not offer periodic payments.  In this offering, a full or partial return is not paid until the Company issues a Mandatory Call of a Class B Shareholder's position(s) in the FIFO Queue.  As the Company (like you) waits for the maturity of underlying assets, it cannot provide a guarantee as to when a return will be paid.  An argument could be made that the trade-off for patience are the enhanced Liquidation Multipliers and potentially higher annualized ROI.

**What does 'cumulative' mean?**
A cumulative preferred or Priority Return is the equivalent of cumulative preferred stock.  That is, if any preferred or Priority Return payments have been omitted in the past, all omitted preferred or Priority Return payments must first be paid out in-full to Class B Shareholders, before any other class' shareholders may receive distributions.  In this Offering, Class A Shareholders are only entitled to an *advance* that must be repaid to Class B Shareholders, as well as earnings on the matured assets.  Because Class B Shareholders receive a lump-sum preferred or Priority Return based on a matured asset being assigned to positions in FIFO Queue order, this Offering is cumulative.

**Are Class B shares 'participating'?**
No.  Participating preferred shareholders would be entitled to receive profits or incur losses outside of the preferred return.  In this Offering, the Company accepts the risk of participation interests or losses.

**When will I know what my return is?**
All returns are predetermined by the Liquidation Multiplier assigned to each position created upon your investment.  Since the Liquidation Multiplier is based on the aggregate or cumulative principal of each unique Class B Shareholder registration, it is not only possible for you to have multiple, different Liquidation Multipliers, but also that your Liquidation Multiplier for the new or renewed positions may increase or decrease with additional principal or calls.

**What does it mean that the Company can 'call' my shares?**
**What is a Mandatory Call?**
A *call* is a right granted to the Company to buy-back Class B Shares.  The Company's right to call is absolute and without recourse.  Upon a Mandatory Call, all rights and privileges as to a Class B Shareholder's called position(s) will be terminated, and the Company will convey the respective liquidation amount(s).  In this Offering, a call is made when the Company notifies a Class B Shareholder of a Mandatory Call ("Call Date"), and the Company will issue the liquidation amount on or about thirty (30) days thereafter ("Pay Date"), unless renewed.

CONFIDENTIAL
MUELLER 002666

**What is the Company's criteria for how many positions are paid off at each asset maturity?**
Pursuant to the terms contained in this PPM, the actual net amount received from the maturity of an underlying asset is the chief determiner of how many positions will be called.  Mandatory Calls will be made for the maximum number of positions in order of the FIFO Queue permitted herein.  It is to the Company's financial advantage, as well as the best interests of the Class B Shareholders, that the <u>maximum</u> number of positions are paid off at each maturity.

**Do all Class B Shareholders get notified when an asset matures, or the FIFO Queue order changes?**
In short, Yes.  However notification to positions/Shareholders that were not subject to a Mandatory Call will only be made by: i) a Class B Shareholder affirmatively calling us and requesting their current position number(s); ii) an email notification that will be sent out when the order of the FIFO Queue positions change; or iii) accessing your account information online with our secure website.  Due to security and costs, we will not respond to such a request or convey notification by written correspondence.

**How can I get my invested principal back?**
There is no specific term period for this investment.  While it is our intent to purchase assets with a target life expectancy of four to six years, we cannot guarantee any specific maturity date.  Unless 'called', your investment will remain with the Company and may not be sold or assigned without permission or approval.  The Company understands that each Class B Shareholder will have different expectations and need for the return of such Class B Shareholder's invested principal.  The FIFO Queue was designed to ensure that the Company maintains a first-come, first serve fairness proposition for Class B Shareholders receiving their principal back in the shortest possible time.  As such, the Company can make no guarantee that any Class B Shareholder will receive their invested principal back in the time period requested or expected.

**What if I don't want my principal and/or liquidation amount back at a Mandatory Call?**
When a Mandatory Call is made, each Class B Shareholder has the right to renew part or all of the liquidation amount.  You must provide the Company with written notice to renew at least three (3) business days <u>before</u> the Pay Date listed in your Mandatory Call notice. If you choose to renew at least 90% of your liquidation amount, then you will receive a bonus of 0.05 added to your renewed position(s)' Base Liquidation Multiplier. Renewal bonus(es) is/are not cumulative. Any renewed positions are treated as new investments, and are placed at the end of the FIFO Queue.

**Is my principal or liquidation amount protected?**
Each Class B Shareholder's principal is backed up by the assets of the Company in a contingent security agreement, based on the performance of the assets, subject to the liabilities of the Company.  That does not guarantee that there will always be enough assets that can be disposed of to cover all sums owed to the Class B shareholders. Class B shares have a preferential right to assets over any other shareholders (including Class A Shareholders) should the unfortunate occur and the Company is forced to wind-up due to insolvency.   The return is not backed up or guaranteed by the Company, and may only be payable, in whole or part, if enough assets exist at some future time, to pay them.

**Do I get to have a say in the Company?**
Pursuant to the Operating Agreement, Class B shares do not have a vote, or say, in the affairs of the Company.


# THIS PPM AND ENTIRE CONFIDENTIAL PACKET MUST BE RETURNED TO DEEPROOT IF YOU DO NOT INVEST.


*The area below the following line is intentionally left blank.*

CONFIDENTIAL

MUELLER 002667