# Exhibit A-13

This **CONTINGENT PLEDGE AND SECURITY AGREEMENT** ("CPSA" or "Security Agreement"), originally executed on February 8, 2016, and re-ratified on November 20, 2020, being by and between the entities listed in Exhibit A-1 attached hereto (collectively "Borrower"), as Grantor of a security interest or Guarantor who from time to time becomes a party to this Security Agreement (each Borrower and each future Grantor or Guarantor, each individually a "Grantor" and collectively, the "Grantors"), in favor of **deeproot Funds, LLC** (together with its successor(s) thereto in such capacity, the "Administrative Agent" or "Trustee"), to act under this agreement on the behalf of **deeproot 575 Fund, LLC** and deeproot **Growth Runs Deep Fund, LLC**, as "Secured Parties".

## WITNESSETH:

WHEREAS, the Secured Parties has, have, and will convey capital to the Borrower to purchase or invest in assets, not enumerated herein; and

WHEREAS, as a condition precedent to the conveyance of capital, the Borrower is required to execute and deliver this Security Agreement and future Grantors or Guarantors may join the Borrower;

NOW, THEREFORE, for good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, each Grantor agrees, for the benefit of each Secured Party, as follows:

## ARTICLE I
## DEFINITIONS

Section 1.1 Definitions, Certain Terms. The following terms (whether or not underscored) when used in this Security Agreement, including its preamble and recitals, shall have the following meanings (such definitions to be equally applicable to the singular and plural forms thereof):

"Administrative Agent" is defined in the preamble.

"Borrower" is defined in the preamble.

"Collateral" is defined in Section 2.1.

"Control Agreement" means an authenticated records in form and substance reasonably satisfactory to the Administrative Agent, that provides for the Administrative Agent to have "control" (as defined in the UCC) over any applicable Investment Property (including Securities Accounts) or Deposit Accounts.

"Distributions" means all dividends paid on Capital Securities, liquidating dividends paid on Capital Securities, shares (or other designations) of Capital Securities resulting from (or in connection with the exercise of) stock splits, reclassifications, warrants, options, non-cash dividends, mergers, consolidations, and all other distributions (whether similar or dissimilar to the foregoing) on or with respect to any Capital Securities constituting Collateral.

"Filing Statements" is defined in Section 3.7(b).

"General Intangibles" means all "general intangibles" and all "payment intangibles", each as defined in the UCC, and shall include all interest rate or currency protection or hedging arrangements, all tax refunds, all licenses, permits, concessions and authorizations and all contracts (in each case, regardless of whether characterized as general intangibles under the UCC).

"Grantor" and "Grantors" are defined in the preamble.

"Motor Vehicles" means all motor vehicles, tractors, containers, trailers and other like property, whether or not title thereto is governed by a Certificate of Title or ownership.

"Contract Right Collateral", with respect to any Grantor, is defined in Section 3.6.

"Secured Obligations" means, collectively, the Obligations and the Cash Management Obligations.

"Securities Act" is defined in Section 6.2(a).

"Security Agreement" is defined in the preamble.

"Specified Default" means the occurrence, continuance of and failure to cure within 120 days of notice of a Default under any investment contract of the Secured Parties.

"Termination Date" means the earliest to occur of the following: (i) the trust Indenture agreement is terminated; (ii) by a lawful order of a judge or any court of law with jurisdiction over this matter; or (iii) the Administrative Agent certifies and notifies each and every Security Holder in writing that there is no further need for this Security Agreement, giving the reasons why such Administrative Agent believes the same.

"Trade Secrets Collateral" means with respect to any Grantor all of such Grantor's right, title and interest throughout the world in and to (a) all common Law and statutory trade secrets and all other confidential and proprietary information and know-how (collectively referred to as "Trade Secrets") obtained by or used in or contemplated at any time for use in the business of a Grantor, whether or not such Trade Secret has been reduced to a writing or other tangible form, including all documents and things embodying, incorporating or referring in any way to such Trade Secret, (b) all Trade Secret licenses and other agreements for the grant by or to such Grantor of any right to use any Trade Secret (each a "Trade Secret License") including the right to sue for and to enjoin and to collect damages for the actual or threatened misappropriation of any Trade Secret and for the breach or enforcement of any such Trade Secret License, and (d) all proceeds of, and rights associated with, the foregoing (including Proceeds, licenses, royalties, income, payments, claims, damage awards and proceeds of infringement suits).

Section 1.2   UCC Definitions. When used herein the terms "Account", "Certificate of Title", "Certificated Securities", "Chattel Paper", "Commercial Tort Claim", "Commodity Account", "Commodity Contract", "Deposit Account", "Document", "Electronic Chattel Paper", "Equipment", "Goods", "Instrument", "Inventory", "Investment Property", "Letter-of-Credit Rights", "Payment Intangibles", "Proceeds", "Promissory Notes", "Securities Account", "Security Entitlement", "Supporting Obligations" and "Uncertificated Securities" have the meaning provided in Article 8 or Article 9, as applicable, of the UCC. The term "Letters of Credit" has the meaning provided in Section 5-102 of the UCC.

## ARTICLE II
## SECURITY INTEREST

Section 2.1   Grant of Security Interest by Borrower. The Borrower hereby grants to the Administrative Agent, for its benefit and the ratable benefit of each Secured Party, a contingent continuing security interest in all of such Grantor's present and after acquired personal property, including all of such Grantor's right, title and interest in and to the following property, whether now or hereafter existing, owned or acquired by such Grantor, and wherever located (collectively, the "Collateral"):

(a) Accounts Payable;

(b) Chattel Paper;

(c) Commercial Tort Claims;

(d) General Intangibles; including to the extent included in the definition of this term under UCC Article 9-106, contract rights such as ownership of insurance policies, ownership of or lenders under debt instruments and loan participation interests;

(e) Life Insurance policies or paper;

(f) Instruments; including to the extent included in the definition of this term under UCC Article 9-105(1)(i), contract rights such as ownership of insurance policies, ownership of or lenders under debt instruments and loan participation interests;

(g) Investment Property, including to the extent included in the definition of this term under the UCC and to the extent such property can be considered investments, contract rights such as ownership of insurance policies, ownership of or lenders under debt instruments and loan participation interests;

(h) Capital Securities with non-voting rights;

(i) all Proceeds of the foregoing and, to the extent not otherwise included;

**Important: It is the intention of the parties that the Borrower only grants the security interest in any and all property it owns in the foregoing categories as a formality now and as a condition precedent, but that Borrower will not be required to disclose Exhibits or Schedules or perfect any security interests herein until the first occurrence of a Specified Default which is continuing and remains uncured within the timeframe specified herein.**

Section 2.2   Grant of Security Interest by Future Grantors.

Any future Grantor shall grant to the Administrative Agent, for its benefit and the ratable benefit of each Secured Party, a continuing security interest in certain of the Grantor's present and after acquired personal property. The future Grantor's grant of a security interest shall include all of such Grantor's right, title and interest in and to the listed property, whether existing at the time of the grant of security interest or hereafter created, owned or acquired by such Grantor, and wherever located (also collectively, the "Collateral"): Such future Grantor shall also have the obligation to immediately take all necessary action to perfect the security interest granted here.

Section 2.3   Security for Secured Obligations.

This Security Agreement and the Collateral in which the Administrative Agent is granted a security interest hereunder by the Grantors secure the payment and performance of all of the Secured Obligations for the benefit of the Secured Parties.

Section 2.4.   Grantors Remain Liable. Anything herein to the contrary notwithstanding:

(a) the Grantors will remain liable under the contracts and agreements included in the Collateral to the extent set forth therein, and will perform all of their duties and obligations under such contracts and agreements to the same extent as if this Security Agreement had not been executed;

(b) the exercise by the Administrative Agent of any of its rights hereunder will not release any Grantor from any of its duties or obligations under any such contracts or agreements included in the Collateral; and

(c) Neither the Administrative Agent nor any Secured Party will have any obligation or liability under any contracts or agreements included in the Collateral by reason of this Security Agreement, nor will the Administrative Agent or any Secured Party be obligated to perform any of the obligations or duties of any Grantor thereunder or to take any action to collect or enforce any claim for payment assigned hereunder.  However, the Administrative Agent shall have obligations to all Secured Parties and shall act for the benefit of a majority of the Secured Parties as set forth in the Trust Indenture Agreement.

Section 2.5   Distributions on Pledged Shares. In the event that any Distribution with respect to any Capital Securities pledged hereunder is permitted to be paid, such Distribution or payment may be paid directly to the applicable Grantor, or an assign thereof.  If any Distribution is made in contravention of this agreement, such Grantor shall hold the same segregated and in trust for the Administrative Agent until paid to the Administrative Agent.

Section 2.6   Security Interest Absolute, etc. This Security Agreement shall in all respects be a continuing, absolute, unconditional and irrevocable grant of security interest, and shall remain in full force and effect until the Termination Date.  All rights of the Secured Parties and the security interests granted to the Administrative Agent (for its benefit and the ratable benefit of each other Secured Party) hereunder, and all obligations of the Grantors hereunder, shall, in each case, be absolute, unconditional and irrevocable irrespective of:

(a) any lack of validity, legality or enforceability of any collateral agreement;

(b) the failure of the Administrative Agent (i) to assert any claim or demand or to enforce any right

or remedy against any third party, or (ii) to exercise any right or remedy against any guarantor of, or collateral securing, any Secured Obligations;

(c) any change in the time, manner or place of payment of, or in any other term of, all or any part of the Secured Obligations, or any other extension, compromise or renewal of any Secured Obligations;

(d) any reduction, limitation, impairment or termination of any Secured Obligations for any reason, including any claim of waiver, release, surrender, alteration or compromise, and shall not be subject to any defense or setoff, counterclaim, recoupment or termination whatsoever by reason of the invalidity, illegality, non-genuineness, irregularity, compromise, unenforceability of, or any other event or occurrence affecting, any Secured Obligations or otherwise;  Each Grantor hereby waives any right to or claim of the foregoing.

(e) any amendment to, rescission, waiver, or other modification of, or any consent to or departure from, any of the terms of any related agreement;

(f) any addition, exchange or release of any Collateral or of any Person that is (or will become) a Grantor of the Secured Obligations, or any surrender or non-perfection of any Collateral, or any amendment to or waiver or release or addition to, or consent to or departure from, any guaranty held by the Administrative Agent on behalf of any Secured Party securing any of the Secured Obligations; or any other circumstance which might otherwise constitute a defense available to, or a legal or equitable discharge of, any Obligor, any surety or any guarantor (other than the defense of payment in full in cash or performance in full).

## ARTICLE III
## REPRESENTATIONS AND WARRANTIES

In order to induce the Secured Parties to convey money to Borrower(s), the Grantors represent and warrant to each Secured Party as set forth below.

Section 3.1 As to Capital Securities of Subsidiaries, Investment Property.

(a) With respect to any direct Subsidiary of any Grantor that is:

   (i) a corporation, business trust, joint stock company or similar Person, all Capital Securities issued by such Subsidiary are duly authorized and validly issued, fully paid and non-assessable, and represented by a certificate; and

   (ii) a partnership or limited liability company, no Capital Securities issued by such Subsidiary (A) are dealt in or traded on securities exchanges or in securities markets, (B) expressly provides that such Capital Securities are securities governed by Article 8 of the UCC or (C) are held in a Securities Account.  However, with respect to this clause (a)(ii), Capital Securities issued by the Subsidiary may have one or more of these characteristics if they are Collateral and (1) for which the Administrative Agent is the registered owner or (2) with respect to which the issuer has agreed in an authenticated record with such Grantor and the Administrative Agent to comply with any instructions of the Administrative Agent without the consent of such Grantor if a Specified Default has occurred and is continuing.

Section 3.2 Grantor Name, Location, etc.

(a) The jurisdiction in which each Grantor is located for purposes of Sections 9-301 and 9-307 of the UCC is the State of Texas, United States of America.

(b) The Grantors do not have any trade names other than those set forth in Exhibit A-1 hereto.

(c) During the four months preceding the date hereof, no Grantor has been known by any legal name different from the one set forth on the signature page hereto, nor has such Grantor been the subject of any merger or other corporate reorganization.

(d) The federal taxpayer identification number of each Grantor is valid and available upon written

    request.

  (e) No Grantor is a party to any federal, state or local government contract.

  (f) No Grantor maintains any Deposit Accounts, Securities Accounts or Commodity Accounts with any foreign corporation or in or under any foreign jurisdiction.

  (g) No Grantor is the beneficiary of any Letters of Credit.

  (h) No Grantor has Commercial Tort Claims (1) in which a suit has been filed by or against such Grantor and (2) where the amount of damages reasonably expected to be claimed exceeds $5,000,000.

  (i) The name set forth on the signature page attached hereto is the true and correct legal name (as defined in the UCC) of each Grantor.

Section 3.3 <u>Ownership, No Liens, etc.</u> Each Grantor owns its Collateral, free and clear of any Lien, except for:

  (a) any security interest created by this Security Agreement;

  (b) any private, commercial, or governmental loan duly disclosed to all parties; and

  (c) in the case of Collateral other than Capital Securities pledged hereunder, that is a Permitted Lien or that is stated in one or more Schedules or Exhibits to this agreement which describe the Collateral.

No effective UCC financing statement or other filing similar in effect covering all or any part of such Collateral is on file in any recording office, except those filed in favor of the Administrative Agent relating to this Security Agreement, to Permitted Liens, to stated Liens or as to which a duly authorized termination statement relating to such UCC financing statement or other instrument has been delivered to the Administrative Agent.

Section 3.4 <u>Possession or Control;</u> etc.

  (a) Each Grantor has, and agrees that it will maintain, exclusive possession of its Documents, Instruments, Promissory Notes, Goods, Equipment and Inventory, other than:

    (i) such items in transit in the ordinary course of business,
    (ii) Equipment and Inventory that is in the possession or control of a warehouseman, bailee agent or other Person (other than a Person controlled by or under common control with such Grantor) that all such third parties have been notified of the security interest created in favor of the Secured Parties pursuant to this Security Agreement, and have authenticated a record acknowledging the security interest created in favor of the Secured Parties' pursuant to this Security Agreement, and
    (iii) Instruments or Promissory Notes that have been delivered to the Administrative Agent pursuant to Section 3.5.

  (b) Each Grantor is the sole entitlement holder of its Accounts and no other Person (other than the Administrative Agent pursuant to this Security Agreement or any other Person with respect to Permitted Liens or stated Liens) has control or possession of, or any other interest in, any of its Accounts or any other securities or property credited thereto.

Section 3.5 <u>Negotiable Documents, Instruments and Chattel Paper.</u> Each Grantor will have constructively delivered to the Administrative Agent possession of all originals of all Documents, Instruments, Promissory Notes, and tangible Chattel Paper owned or held by such Grantor and which comprise Collateral immediately after the date on which the Grantor has actual knowledge or receives notice of any Specified Default which is continuing and remains uncured after the timeframe specified in the Trust Indenture Agreement.

Section 3.6 <u>Contract Collateral.</u>

(a) In respect of the contract rights which any Grantor owns and is Collateral ("Contract Rights Collateral"), and immediately after the date on which the Grantor has actual knowledge or receives notice of any Specified Default which is continuing and remains uncured after the timeframe specified in the Trust Indenture Agreement, the Grantor shall:

   (i) set forth a complete and accurate list of all insurance contracts owned, their face values; any borrowings made against them by the original insured and/or owner; and obligations to pay premiums, if any, with respect to each;
   (ii) set forth a complete and accurate list all residential mortgage loans (or participation interests therein) for which a Grantor is the lender or owner; any collateral securing borrowers' obligations to a Grantor; any deeds of trust evidencing a security interest in any such residential mortgage loans; identifying notations of any UCC-1 filing made with respect to a Grantor's security interest.
   (iii) set forth a complete and accurate list of all commercial mortgage loans (or participation interests therein) for which a Grantor is the lender or owner; any collateral securing borrowers' obligations to a Grantor; any deeds of trust evidencing a security interest in any such residential mortgage loans; identifying notations of any UCC-1 filing made with respect to a Grantor's security interest.

The Borrower has an obligation from the date of this agreement forward to maintain the information required in this clause (a) and in the format required by clause (a) as it acquires any contract rights, until such time that this Agreement is terminated.

Section 3.7 <u>Validity, etc.</u>

(a) This Security Agreement creates a valid security interest in the Collateral securing the payment of the Secured Obligations.

(b) Each Grantor shall file of any or all UCC-1 financing statements in the filing office for each Grantor's jurisdiction of organization (collectively, the "<u>Filing Statements</u>") (or has authenticated and delivered to the Administrative Agent the Filing Statements suitable for filing in such offices) immediately after the date on which the Grantor has actual knowledge or receives notice of any Specified Default which is continuing and remains uncured after the timeframe specified in the Trust Indenture Agreement; and has taken all other:

   (i) actions necessary or requested by the Administrative Agent to obtain control of the Collateral as provided in Sections 9-104, 9-105, 9-106 and 9-107 of the UCC; and
   (ii) actions necessary or requested by the Administrative Agent to perfect the Administrative Agent's security interest with respect to any Collateral evidenced by a Certificate of Title

(c) Upon the filing of the Filing Statements with the appropriate agencies therefore, the security interests created under this Security Agreement shall constitute a perfected security interest in the Collateral described on such Filing Statements in favor of the Administrative Agent on behalf of the Secured Parties to the extent that a security interest therein may be perfected by filing pursuant to the relevant UCC provision, prior to all other Liens, except for Permitted Liens or stated Liens (in which case such security interest shall be second in priority of right only to the Permitted Liens or stated Liens until the obligations secured by such Permitted Liens and stated Liens have been satisfied).

(d) Upon satisfaction of the requirements with respect to Collateral evidenced by a Certificate of Title, the security interests created under this Security Agreement shall constitute a perfected security interest in such Collateral in favor of the Administrative Agent on behalf of the Secured Parties, prior to all other Liens except Permitted Liens and stated Liens.

Section 3.8 <u>Authorization, Approval, etc.</u> Except as have been obtained or made and are in full force and effect, no authorization, approval or other action by, and no notice to or filing with, any Governmental Authority or any other third party is required either:

(a) for the grant by the Grantors of the security interest granted hereby or for the execution, delivery

      and performance of this Security Agreement by the Grantors;

(b) for the perfection or maintenance of the security interests hereunder including the priority (subject to Permitted Liens and stated Liens) nature of such security interest (except with respect to the Filing Statements; or with respect to Deposit Accounts or Investment Property, the execution of a Control Agreement; or with respect to any Letter of Credit Rights obtaining the consent of the issuer thereunder) or the exercise by the Administrative Agent of its rights and remedies hereunder; or

(c) for the exercise by the Administrative Agent of the voting or other rights provided for in this Security Agreement, except (i) with respect to any securities issued by a Subsidiary of the Grantors, except as may be required in connection with a disposition of such securities by laws affecting the offering and sale of securities generally.

## ARTICLE IV
## COVENANTS

Each Grantor covenants and agrees that, until the Termination Date, such Grantor will perform, comply with and be bound by the obligations set forth below.

Section 4.1 <u>Grantors' Use of Collateral.</u>

(a) Subject to <u>clause (b) of this Section 4.1,</u> each Grantor will, at its own expense, endeavor to collect, as and when due, all amounts due with respect to any of the Collateral, including the taking of such action with respect to such collection as the Administrative Agent may request following the occurrence of a Specified Default or, in the absence of such request, as such Grantor may deem advisable

(b) At any time following the occurrence and during the continuance of a Specified Default, whether before or after the maturity of any of the Secured Obligations, the Administrative Agent may (i) revoke any or all of the rights of each Grantor set forth in <u>clause (a) of this Section 4.1,</u> (ii) notify any parties obligated on any of the Collateral to make payment to the Administrative Agent of any amounts due or to become due thereunder and (iii) enforce collection of any of the Collateral by suit or otherwise and surrender, release, or exchange all or any part thereof, or compromise or extend or renew for any period (whether or not longer than the original period) any indebtedness thereunder or evidenced thereby.

(c) Upon the request of the Administrative Agent following the occurrence and during the continuance of a Specified Default, each Grantor will, at its own expense, notify any parties obligated on any of the Collateral to make payment to the Administrative Agent of any amounts due or to become due thereunder.

(d) At any time following the occurrence and during the continuance of a Specified Default, the Administrative Agent may endorse, in the name of such Grantor, any item, howsoever received by the Administrative Agent, representing any payment on or other Proceeds of any of the Collateral.

Section 4.2. <u>Further Assurances, etc.</u> Each Grantor agrees that, from time to time at its own expense, it will promptly execute and deliver all further instruments and documents, and take all further action, that may be necessary or that the Administrative Agent may reasonably request, in order to perfect, preserve and protect any security interest granted or purported to be granted hereby or to enable the Administrative Agent to exercise and enforce rights and remedies hereunder on behalf of the Secured Parties with respect to any Collateral

## ARTICLE V
## THE ADMINISTRATIVE AGENT

Section 5.1 <u>Administrative Agent Appointed Attorney-in-Fact.</u> Each Grantor hereby irrevocably appoints

the Administrative Agent its attorney-in-fact, with full authority in the place and stead of such Grantor and in the name of such Grantor or otherwise, from time to time in the Administrative Agent's discretion, following the occurrence and during the continuance of a Specified Default, to take any action and to execute any instrument which the Administrative Agent may deem necessary or advisable to accomplish the purposes of this Security Agreement. Each Grantor hereby acknowledges, consents and agrees that the power of attorney granted pursuant to this Section is irrevocable and coupled with an interest until the Termination Date.

Section 5.2. Administrative Agent May Perform. If any Grantor fails to perform any agreement contained herein, the Administrative Agent may, after requesting in writing that the Grantor perform such agreement, and subject to any applicable cure period, itself perform, or cause performance of, such agreement, and the reasonable out-of-pocket expenses of the Administrative Agent incurred in connection therewith shall be payable by such Grantor.

Section 5.3   Administrative Agent Has No Duty. The powers conferred on the Administrative Agent hereunder are solely to protect its interest (on behalf of the Secured Parties) in the Collateral and shall not impose any duty on it to exercise any such powers. Except for reasonable care of any Collateral in its possession and the accounting for moneys actually received by it hereunder, the Administrative Agent shall have no duty as to any Collateral or responsibility for:

(a) ascertaining or taking action with respect to calls, conversions, exchanges, maturities, tenders or other matters relative to any Investment Property, whether or not the Administrative Agent has or is deemed to have knowledge of such matters, or

(b) taking any necessary steps to preserve rights against prior parties or any other rights pertaining to any Collateral.

Section 5.4   Reasonable Care. The Administrative Agent is required to exercise reasonable care in the custody and preservation of any of the Collateral in its possession; provided that the Administrative Agent shall be deemed to have exercised reasonable care in the custody and preservation of any of the Collateral, if it takes such action for that purpose as the applicable Grantor reasonably requests in writing at times other than upon the occurrence and during the continuance of any Specified Default, but failure of the Administrative Agent to comply with any such request at any time shall not in itself be deemed a failure to exercise reasonable care so long as the Administrative Agent treats such Collateral in a manner substantially similar to that which it accords its own property.

## ARTICLE VI
## REMEDIES

Section 6.1 Certain Remedies. If any Specified Default shall have occurred and be continuing:

(a) The Administrative Agent may exercise in respect of the Collateral, in addition to other rights and remedies provided for herein or otherwise available to it, all the rights and remedies of a Secured Party on default under the UCC (whether or not the UCC applies to the affected Collateral) and also may:

(i) take possession of any Collateral not already in its possession without demand and without legal process;
(ii) require each Grantor to, and each Grantor hereby agrees that it will, at its expense and upon request of the Administrative Agent forthwith, assemble all or part of the Collateral as directed by the Administrative Agent and make it available to the Administrative Agent at a place to be designated by the Administrative Agent that is reasonably convenient to both parties;
(iii) enter onto the property where any Collateral is located and take possession thereof without demand and without legal process; and
(iv) without notice except as specified below, lease, license, sell or otherwise dispose of the Collateral or any part thereof in one or more parcels at public or private sale, at any of the Administrative Agent's offices or elsewhere, for cash, on credit or for future delivery, and

upon such other terms as the Administrative Agent may deem commercially reasonable. Each Grantor agrees that, to the extent notice of sale shall be required by law, at least ten (10) days' prior notice to such Grantor of the time and place of any public sale or the time after which any private sale is to be made shall constitute reasonable notification. The Administrative Agent shall not be obligated to make any sale of Collateral regardless of notice of sale having been given. The Administrative Agent may adjourn any public or private sale from time to time by announcement at the time and place fixed therefore, and such sale may, without further notice, be made at the time and place to which it was so adjourned.

(b) All cash Proceeds received by the Administrative Agent in respect of any sale of, collection from, or other realization upon, all or any part of the Collateral shall be applied by the Administrative Agent against, all or any part of the Secured Obligations.

(c) The Administrative Agent may

  (i) transfer all or any part of the Collateral into the name of the Administrative Agent or its nominee, with or without disclosing that such Collateral is subject to the Lien hereunder;
  (ii) notify the parties obligated on any of the Collateral to make payment to the Administrative Agent of any amount due or to become due thereunder;
  (iii) withdraw, or cause or direct the withdrawal, of all funds with respect to the Collateral Account;
  (iv) enforce collection of any of the Collateral by suit or otherwise, and surrender, release or exchange all or any part thereof, or compromise or extend or renew for any period (whether or not longer than the original period) any obligations of any nature of any party with respect thereto;
  (v) endorse any checks, drafts, or other writings in any Grantor's name to allow collection of the Collateral;
  (vi) take control of any Proceeds of the Collateral;
  (vii) execute (in the name, place and stead of any Grantor) endorsements, assignments, stock powers and other instruments of conveyance or transfer with respect to all or any of the Collateral; and
  (viii) hold Collateral for a significant period of time to allow assets comprising the Collateral to mature and realize returns.

(d) Without limiting the foregoing, in respect of Contract Right Collateral:

  (i) upon the request of the Administrative Agent, each Grantor shall execute and deliver to the Administrative Agent an assignment or assignments of its Contract Right Collateral, subject to any valid and enforceable requirements to obtain consents from any third parties, and such other documents as are necessary or appropriate to carry out the intent and purposes hereof;
  (ii) each Grantor agrees that the Administrative Agent may file applications and maintain registrations for the protection of its Contract Right Collateral and/or bring suit in the name of such Grantor, the Administrative Agent or any Secured Party to enforce such Grantor's rights in the Contract Right Collateral and, upon the request of the Administrative Agent, each Grantor shall use commercially reasonable efforts to assist with such filing or enforcement (including the execution of relevant documents); and
  (iii) in the event that the Administrative Agent elects not to make any filing or bring any suit as set forth in clause (ii), each Grantor shall, upon the request of the Administrative Agent, use all commercially reasonable efforts, to protect, enforce and prevent the misappropriation, dilution, unauthorized use or other violation of its Contract Right Collateral.

Section 6.2 <u>Securities Laws.</u> If the Administrative Agent shall determine to exercise its right to sell all or any of the Collateral that are Capital Securities pursuant to Section 6.1, each Grantor agrees that, upon request of the Administrative Agent, each Grantor will, at its own expense:

  (a) execute and deliver, and cause (or, with respect to any issuer which is not a Subsidiary of such Grantor, use its reasonable best efforts to cause) each issuer of the Collateral contemplated to be sold and the Managers and officers thereof to execute and deliver, all such instruments and

SEC-DEEPROOT-E-0213975

documents, and do or cause to be done all such other acts and things, as may be necessary or, in the opinion of the Administrative Agent, advisable to seek exemption from registration of such Collateral under the provisions of the Securities Act of 1933, as from time to time amended (the "Securities Act"),

(b) use its reasonable best efforts to exempt the Collateral under the state securities laws and to obtain all necessary governmental approvals for the sale of the Collateral, as requested by the Administrative Agent;

(c) cause (or, with respect to any issuer that is not a Subsidiary of such Grantor, use its reasonable best efforts to cause) each such issuer to make available to its security holders, as soon as practicable, an earnings statement.; and

(d) do or cause to be done all such other acts and things as may be necessary to make such sale of the Collateral or any part thereof valid and binding and in compliance with applicable law.

Section 6.3  Compliance with Restrictions. Each Grantor agrees that in any sale of any of the Collateral whenever a Specified Default shall have occurred, be continuing and remain uncured, the Administrative Agent is hereby authorized to comply with any limitation or restriction in connection with such sale as it may be advised by counsel is necessary in order to avoid any violation of applicable law (including compliance with such procedures as may restrict the number of prospective bidders and purchasers, require that such prospective bidders and purchasers have certain qualifications, and restrict such prospective bidders and purchasers to Persons who will represent and agree that they are purchasing for their own account for investment and not with a view to the distribution or resale of such Collateral), or in order to obtain any required approval of the sale or of the purchaser by any Governmental Authority or official, and such Grantor further agrees that such compliance shall not result in such sale being considered or deemed not to have been made in a commercially reasonable manner, nor shall the Administrative Agent be liable nor accountable to such Grantor for any discount allowed by the reason of the fact that such Collateral is sold in compliance with any such limitation or restriction.

Section 6.4  Protection of Collateral. The Administrative Agent may from time to time, at its option, perform any act which any Grantor fails to perform after being requested in writing so to perform and which Grantor is required to so perform hereunder (except, with respect to Contract Right Collateral, only as such failure to perform could reasonably be expected, in Administrative Agent's discretion, to have a Material Adverse Effect) (it being understood that no such request need be given after the occurrence and during the continuance of a Specified Default) and the Administrative Agent may from time to time take any other action which the Administrative Agent deems necessary for the maintenance, preservation or protection of any of the Collateral or of its security interest therein subject to the other terms of this Security Agreement.

## ARTICLE VII
## MISCELLANEOUS PROVISIONS

Section 7.1 Binding on Successors, Transferees and Assigns; Assignment. This Security Agreement shall remain in full force and effect until the Termination Date has occurred, shall be binding upon the Grantors and their successors, transferees and assigns and shall inure to the benefit of and be enforceable by each Secured Party and its successors, transferees and assigns; provided that no Grantor may (unless otherwise permitted under the terms of this Security Agreement) assign any of its obligations hereunder without the prior written consent of the Trustee.

Section 7.2  Amendments, etc. No amendment to or waiver of any provision of this Security Agreement, nor consent to any departure by any Grantor from its obligations under this Security Agreement, shall in any event be effective unless the same shall be in writing and signed by the Administrative Agent (on behalf of the Secured Parties, as the case may be) and the Grantors and then such waiver or consent shall be effective only in the specific instance and for the specific purpose for which given.

Section 7.3  Notices. All notices and other communications provided for hereunder shall be in writing or by facsimile and addressed, delivered or transmitted to the appropriate party at the address, facsimile number or electronic address of such party or at such other address, facsimile number or electronic address as may

be designated by such party in a notice to the other party. Any notice or other communication, if mailed and properly addressed with postage prepaid or if properly addressed and sent by pre-paid courier service, shall be deemed given when received; any such notice or other communication, if transmitted by facsimile or sent via electronic mail shall be deemed given when transmitted and electronically confirmed.

Section 7.4  Release of Liens. Upon (a) the Disposition of Collateral or (b) the occurrence of the Termination Date, the security interests granted herein shall automatically terminate with respect to (i) such Collateral (in the case of clause (a) of this Section 7.4) or (ii) all Collateral (in the case of clause (b) of this Section 7.4). Upon any such Disposition or termination, the Administrative Agent will, at the Grantors' sole expense, deliver to the Grantors, without any representations, warranties or recourse of any kind whatsoever, all remaining Collateral held by the Administrative Agent hereunder, and execute and deliver to the Grantors such documents as the Grantors shall reasonably request to evidence such termination.

Section 7.5  No Waiver; Remedies. In addition to, and not in limitation of Section 2.5 no failure on the part of any Secured Party to exercise, and no delay in exercising, any right hereunder shall operate as a waiver thereof, nor shall any single or partial exercise of any right hereunder preclude any other or further exercise thereof or the exercise of any other right. The remedies herein provided are cumulative and not exclusive of any remedies provided by law.

Section 7.6  Headings. The various headings of this Security Agreement are inserted for convenience only and shall not affect the meaning or interpretation of this Security Agreement or any provisions thereof.

Section 7.7  Severability. Any provision of this Security Agreement which is prohibited or unenforceable in any jurisdiction shall, as to such provision and such jurisdiction, be ineffective to the extent of such prohibition or unenforceability without invalidating the remaining provisions of this Security Agreement or affecting the validity or enforceability of such provision in any other jurisdiction.

Section 7.8. Governing Law, Entire Agreement, etc. THIS SECURITY AGREEMENT SHALL BE DEEMED TO BE A CONTRACT MADE UNDER AND GOVERNED BY THE INTERNAL LAWS OF THE STATE OF TEXAS, EXCEPT TO THE EXTENT THAT THE PERFECTION, EFFECT OF PERFECTION OR NONPERFECTION, AND PRIORITY OF THE SECURITY INTEREST HEREUNDER, OR REMEDIES HEREUNDER, IN RESPECT OF ANY PARTICULAR COLLATERAL ARE GOVERNED BY THE LAWS OF A JURISDICTION OTHER THAN THE STATE OF TEXAS. This Security Agreement constitute the entire understanding among the parties hereto with respect to the subject matter hereof and thereof and supersede any prior agreements, written or oral, with respect thereto.

Section 7.9  Counterparts. This Security Agreement may be executed by the parties hereto in several counterparts, each of which shall be deemed to be an original and all of which shall constitute together but one and the same agreement. Delivery of an executed counterpart of a signature page to this Security Agreement by facsimile (or other electronic transmission) shall be effective as delivery of a manually executed counterpart of this Security Agreement.

**IN WITNESS WHEREOF**, each of the parties hereto has caused this Security Agreement to be duly executed and delivered by its Authorized Officer as of the date the last date signed below.

Dated: November 20, 2020

By:
deeproot Funds, LLC

_____
By:  Robert J. Mueller, Manager

Dated: November 20, 2020

By:
deeproot 575 Fund, LLC

By: Robert J. Mueller, Manager

Dated: November 20, 2020

By:  
deeproot Growth Runs Deep Fund, LLC

By: Robert J. Mueller, Manager

Dated: November 20, 2020

By:  
Policy Services, Inc.

By: Robert J. Mueller, Director and VP

Dated: November 20, 2020

By:  
deeproot Tech, LLC

By: Robert J. Mueller, Manager

Dated: November 20, 2020

By:  
deeproot Studios, LLC

By: Robert J. Mueller, Manager

Dated: November 20, 2020

By:  
deeproot Sports & Entertainment, LLC

By: Robert J. Mueller, Manager

# EXHIBIT A-1
## Grantors

deeproot Tech, LLC & subsidiary deeproot Pinball, LLC
both a Texas Limited Liability Company
12621 Silicon Dr
San Antonio, TX 78249 USA

deeproot Studios, LLC
A Texas Limited Liability Company
12621 Silicon Dr
San Antonio, TX 78249 USA

deeproot Sports & Entertainment, LLC
A Texas Limited Liability Company
12621 Silicon Dr
San Antonio, TX 78249 USA

Policy Services, Inc.
A Texas For-Profit Corporation
12621 Silicon Dr
San Antonio, TX 78249 USA