**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION**

| | |
|---|---|
| **SECURITIES AND EXCHANGE COMMISSION,**<br><br>  **Plaintiff,**<br><br>   **-against-**<br><br>**ROBERT J. MUELLER, DEEPROOT FUNDS LLC (a/k/a dprt Funds, LLC), AND POLICY SERVICES INC.,**<br><br>  **Defendants,**<br><br>   **-and-**<br><br>**DEEPROOT TECH LLC, DEEPROOT PINBALL LLC, DEEPROOT STUDIOS LLC, DEEPROOT SPORTS & ENTERTAINMENT LLC, DEEPROOT RE 12621 SILICON DR LLC, AND ROBERT J. MUELLER, JEFFREY L. MUELLER, AND BELINDA G. BREEN, AS CO-TRUSTEES OF THE MB HALE OHANA REVOCABLE TRUST,**<br><br>  **Relief Defendants.** | **Civil Action No.:  5:21-cv-785-XR** |

**DEFENDANT ROBERT MUELLER'S (1) OBJECTIONS TO EVIDENCE IN
SEC'S MOTION FOR SUMMARY JUDGMENT AND (2) MOTION TO STRIKE**

TO THE HONORABLE COURT:

Defendant Robert J. Mueller hereby files his Objections to Evidence in the Securities and Exchange Commission's Motion for Summary Judgment and Motion to Strike, and in support would respectfully show:

## I.    INTRODUCTION

In its Motion for Summary Judgement (the "Motion") (ECF No. 103), the SEC seeks summary judgment as to liability on all claims. Many exhibits attached to the Motion are not

competent summary judgment evidence. Accordingly, Mueller makes the following objections and requests that the Court sustain those objections and strike those exhibits for the reasons set forth below. Mueller also moves to strike one exhibit containing the testimony and opinions of an expert who was not disclosed.

## II.   MOTION TO STRIKE DECLARATIONS OF SACHIN VERMA (Exs. 1 and 29) AND TO EXCLUDE VERMA FROM TESTIFYING AT TRIAL.

A. <u>Background</u>

Exhibit 1 and Exhibit 29 to the Motion are declarations of Sachin Verma, who describes himself as a Certified Public Accountant and current Assistant Chief Accountant at the SEC. Ex 1, ¶1. Mr. Verma was not disclosed as an expert (or fact) witness under Rule 26(a)(2). Under Rule 37(c)(1) of the Federal Rules of Civil Procedure, his testimony must be stricken from the summary judgment record, and he must be precluded from testifying at trial.

On February 16, 2023, the Court entered the Second Amended Scheduling Order containing the following deadlines, among others:

- <u>March 17, 2023</u> – deadline for the SEC to serve testifying expert designations and reports under Rule 26(a)(2)(B)

- <u>April 6, 2023</u> – deadline for Mueller to serve testifying expert designations and reports under Rule 26(a)(2)(B)

- <u>April 21, 2023</u> – deadline for the SEC to serve rebuttal expert designations and reports under Rule 26(a)(2)(B)

- <u>April 27, 2023</u> – deadline for both parties to serve supplemental expert reports under Rule 26(a)(2)(B)

*See* ECF No. 86.

The SEC designated Bill Post as an expert on March 17, 2023, *see* ECF No. 87, and served his expert report the same day. *See* Small Dec., Ex. A-14. On April 6, 2023, Mueller served his expert designations. *See* Small Dec., Ex. A-15. Neither party served rebuttal reports, but on April 27, 2023 the SEC served a supplemental report of Mr. Post. Although the SEC had previously filed a declaration from Verma in briefing on injunctive relief, *see* ECF No. 16-1 (now Ex. 29 to its Motion), none of the SEC's expert disclosures included Verma.

Meanwhile, the SEC served initial disclosures and amended initial disclosures, neither of which disclosed Verma as a potential expert witness (or fact witness). *See* Small Dec., Ex. A-16; Small Dec., Ex. A-17. Both the initial and amended disclosures contained the following vague language:

> In addition to the foregoing disclosure of persons likely to have discoverable information that the SEC may use to support its claims in motions or at trial, the SEC gives notice that one or more SEC employees may be designated at the appropriate time and called at trial as a summary witness only, to testify concerning summary analysis of communication records, financial records, and other records obtained in the investigation or litigation of this matter. The SEC will furthermore provide an appropriate disclosure of any expert witness or witnesses it may elect to use at trial when called for by the rules or scheduling order entered by the Court.

*See id.* Although the SEC stated that "SEC employees *may be* designated at the appropriate time," such designation never occurred.

On August 18, 2023, the SEC filed its summary judgment motion and attached a thirteen-page declaration from Verma containing expert testimony and opinions.

     B.  <u>Argument & Authorities</u>

Rule 37 provides that if a party "fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to

supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1).

As shown above, the SEC did not disclose Verma prior to submitting his expert opinions. The vague "reserve the right to designate SEC employees" language in the SEC's disclosures cannot suffice to serve as an expert designation. Even assuming that Verma could be considered a non-retained expert, the SEC was still required to disclose (i) the subject matter on which he would be expected to present evidence and (ii) a summary of the facts and opinions to which the witness is expected to testify. *See* Fed. R. Civ. P. 26(a)(2)(B). That did not occur.

The issue is not whether the SEC's *sufficiently* disclosed Verma as an expert, as is commonly addressed in many published opinions. *See Sterling v. United States*, Civil Action No. 3:18-CV-0526-D, 2020 WL 2425648, at *7-8 (N.D. Tex. May 12, 2020) ("Although nonretained experts are not required to submit reports, the rule is intended to ensure that an opposing party has some notice of what the nonretained expert will testify about; therefore, the disclosure must, at the very least, state opinions, not merely topics of testimony, and contain a summary of the facts upon which the opinions are based.") (citing various cases). The issue here is much simpler—whether the SEC's total failure to identify Verma and disclose his opinions under Rule 26(a)(2)(C) prohibit the SEC from relying on his testimony at this summary judgment stage or at trial.

The exclusionary effect of Rule 37 is mandatory absent a showing of good cause. Here, the SEC cannot satisfy that showing because the reservation language in its April 2022 initial disclosures demonstrates that the SEC at least contemplated designating an SEC representative as an expert or summary witness and acknowledged its duty to supplement if

it chose to do so. *See* Small Decl., Ex. A-16.  Moreover, Verma was obviously involved in this case and underlying investigation, having submitted a declaration and participated in the recorded testimony of Mueller in 2021. *See* Small Decl., Ex. A-8 at 2:3-9, 5:18-20. Thus, there is no excuse for the SEC's failure—the SEC was aware of Verma but chose not to designate him. Mueller is entitled to rely on the SEC's disclosures and should not be forced to infer or speculate who the SEC intended or did not intend to include in their discloses. *See Musser v. Gentiva Health Services,* 356 F.3d 751, 757 (7th Cir. 2004) (rejecting the argument that "it would be a pointless formality to disclose in writing a list of names of persons already known to [the other side] through prior discovery, this time with the designation 'expert witness.'").

Verma's testimony must be excluded. *See 5 Star Tech I, LP v. Am. Guarantee & Liab. Ins. Co.,* No. EP-18-CV-00037-DCG, 2020 WL 3578328, at *7 (W.D. Tex. Apr. 28, 2020) ("If the Court were to allow the affidavit's admission, then it would render the expert report deadlines meaningless and either party can freely cure all deficiencies at any time right after the opposing party points them out.").

Because expert and discovery deadlines have passed, with pre-trial disclosures due on October 6, and with trial set for December 4, Mueller would be extremely and unfairly prejudiced by allowing Verma to testify at this late stage. Nor could a continuance cure that prejudice without causing additional prejudice. The SEC has been conducting this investigation for nearly three years and Mueller wants to bring finality to this matter and present the case to a jury on December 4 as scheduled.

Accordingly, Mueller requests that the Court grant this motion to strike, exclude Verma's testimony from the summary judgment record (ECF No. 103-2, Ex. 1; ECF No. 103-

4, Ex. 29) and preclude Verma from testifying or otherwise offering opinions or evidence at trial.

### III.   SPECIFIC OBJECTIONS TO SUMMARY JUDGEMENT EVIDENCE

The following objections are made in addition to those articulated in the Moton to Strike above, which are incorporated by reference.

### **EXHIBIT 1**

Mueller objects to Exhibit 1 on the basis that the SEC has not identified any specific page numbers or other citation references in the declaration that purports to summarize certain financial and other records.  *See* Fed. R. Civ. Proc. 56(c)(1).

Mueller further objects to Exhibit 1 on the basis that it is improper opinion testimony from a lay witness. *See* Fed. R. Evid. 701.

Mueller further objects as Exhibit 1 is an improper Summary Exhibit—it fails to identify specific source documents (instead, the declaration generally references "QuickBooks records" and "other documents" that were allegedly produced pursuant to subpoenas and document requests). Such vague and general statements are not competent Summary Judgment Evidence as they are conclusory and do not provide Mueller a specific basis to produce contradicting evidence or testimony.

Further to the extent the declarant Mr. Verma purports to give his opinions concerning the meaning of language in the PPM or other documents or any associated duties, the SEC failed to timely or properly designate Mr. Verma as an expert in any field.  No foundation has been given for any opinions of Mr. Verma. The SEC neglects to include or specifically reference source documents and so such testimony is also fatally vague, conclusory, and without an adequate evidentiary foundation.

Mueller further objects to specific statements in Exhibit 1 in the following paragraphs:

Para. 16 – **Speculation, Lack of Foundation and Misleading**. Purports to identify $2,038,959 in "income from various sources" (not investor funds) into the Deeproot Accounts in the time period Nov. 2015 – July 2021. But in the same declaration in Para. 21(r), the declarant identifies another over $3.5 Million (not investor funds) into the Deeproot Accounts during substantively the same time period (Sept. 2015 – Oct. 2021). The patent inconsistency shows a complete lack of foundation and reliability not only for the summaries but for any opinions or testimony based on such incorrect data.

Para. 18 – **Speculation, Lack of Foundation and Misleading**. Declarant "assumes" certain facts which, for reasons included in the objection to Para. 16 above, are based on incomplete and misleading data.

Para. 21 f – **Speculation, Lack of Foundation, Conclusory.** The statement that over $15 million in payments "appear to be for the benefit of the Affiliated Businesses" is void of any stated evidentiary basis, pure speculation, and conclusory.

Para. 21(r) – *See* Objection to Para. 16 above, incorporated by reference.

Paras. 22, 23, 24, 25 – **Improper lay opinion** testimony and **calls for legal conclusion** as to permissible uses of funds.

Para. 27 – **Speculation, Lack of Foundation, Conclusory, Improper Summary.** The SEC refers to the "deeproot Portal" without identifying any specific documents or information in such portal. It is believed that the referenced portal contains hundreds of thousands if not more entries – without specific refences, any testimony based on such a general reference are conclusory and of no evidentiary weight.

**EXHIBIT 9**

Mueller objects to Exhibit 9 (Def.'s Objs. and Resps. First Interrogs.) to the extent that the SEC relies on any answers that included objections as the SEC has not received rulings resolving such objections.

### EXHIBIT 10 (SEALED)

Mueller objects to Exhibit 10 (E-mail dated Aug. 18, 2015) based on the rule of Optional Completeness that the exhibit does not contain the entire exchange and without such context, the Exhibit is misleading.

### EXHIBIT 14

Exhibit 14 (Excerpts from Mueller deposition testimony dated March 9, 2023) contains deposition testimony for which objections were properly and timely asserted. Thus, unless or until those objections are overruled, Mueller objects to the proffered testimony. *See Mendez v. Caterpillar Inc.*, No. SA-09-CA-978-XR, 2011 WL 6999659, at *7 (W.D. Tex. Dec. 16, 2011) (ruling on objections made during deposition in determining whether the same could be considered as part of the summary judgment record), *report and recommendation adopted*, No. SA-09-CV-978-XR, 2012 WL 90492 (W.D. Tex. Jan. 11, 2012, J., Rodriguez).

### EXHIBIT 20

Mueller objects to the following portions of Exhibit 20 (Excerpts from Mueller interview dated June 23, 2021):

> *See* Ex. 20 at 368:11-15, 371:12-15, 373:18-23, 375:21-23, 378:5-9, 378:18-23, 383:1-384:1.

Mueller invoked his rights under the Fifth Amendment of the U.S. Constitution during these questions referenced above, which was prior to this litigation and during the SEC investigation. Since that time, Mr. Mueller was deposed in this litigation and answered every question asked of him. These prior invocations of his constitutional rights that occurred before

this litigation carry no evidentiary weight and should be excluded under Fed. R. Evid. 402 and 403.

## EXHIBIT 22

Mueller objects to Exhibit 22 (Scott Allen Resignation Memo dated Oct. 7, 2020) on the basis that it is inadmissible hearsay.  *See* Fed. R. Evid. 802

Mueller further objects to Exhibit 22 and the statement that "it looks and feels like a Ponzi scheme" on the basis that it is irrelevant and any relevance is outweighed by the danger of confusion and unfair prejudice. *See* Fed. R. Evid. 403. Mueller further objects to such statement on the basis that it is an improper lay opinion, lacks foundation, and calls for a legal conclusion.

## EXHIBIT 23

Exhibit 23 (Excerpts from Scott Allen deposition testimony dated February 16, 2023) contains deposition testimony for which objections were properly and timely asserted.  Thus, unless or until those objections are overruled, Mueller objects to the proffered testimony. *See Mendez v. Caterpillar Inc.*, No. SA-09-CA-978-XR, 2011 WL 6999659, at *7 (W.D. Tex. Dec. 16, 2011) (ruling on objections made during deposition in determining whether the same could be considered as part of the summary judgment record), *report and recommendation adopted*, No. SA-09-CV-978-XR, 2012 WL 90492 (W.D. Tex. Jan. 11, 2012, J., Rodriguez).

## EXHIBITS 27 and 28 (SEALED)

Mueller objects to Exhibits 27 and 28 (Expert Reports of Bill Post) on the following grounds:

1. Some of Mr. Post's opinions are improper legal opinions that invade the province of the Court.  While Mr. Post states that his opinions "are not intended to represent

legal opinions" (See Ex. 27 at p. 4), his Report then includes several impermissible opinions about fiduciary duties of loyalty and care that cross the line.  Certainly Mr. Post may ender opinions about custom and practice, but he may not render opinions that are summary legal conclusions.  On this basis, Mueller objects to any opinions concerning his conclusion that Mueller allegedly "did not adhere to the requirements of the fiduciary duties of loyalty and care." (*See*, *e.g.,* Ex. 27 at p. 8, para. h; p. 54, Section IX).  For the same reasons (and additionally under Fed. R. Evid. 403), Mr. Post's allusions to "Ponzi Schemes" should be stricken. *See, e.g.*, Ex. 27 at p. 53, para. 100.

2.  Mr. Post also does not purport to be a CPA or otherwise qualified to render expert opinions into accounting principles. Despite this, his report contains opinions concerning the propriety of the classification of certain expenses, loans, and compensation. *See* Ex. 27 at p. 47, para 87. Thes opinions should be struck and not considered under Fed. R. Evid. 702 as unreliable and for lack of foundation.

**<u>EXHIBIT 29</u>**

Mueller incorporates the Motion to Strike and his objections to Exhibit 1 above.

**<u>EXHIBIT 31</u>**

Exhibit 31 (Excerpts from Concilla deposition testimony dated July 12, 2023) contains deposition testimony for which objections were properly and timely asserted.  Thus, unless or until those objections are overruled, Mueller objects to the proffered testimony. *See Mendez v. Caterpillar Inc.*, No. SA-09-CA-978-XR, 2011 WL 6999659, at *7 (W.D. Tex. Dec. 16, 2011) (ruling on objections made during deposition in determining whether the same could be

considered as part of the summary judgment record), *report and recommendation adopted*, No.

SA-09-CV-978-XR, 2012 WL 90492 (W.D. Tex. Jan. 11, 2012, J., Rodriguez).

Specifically, Mueller objects to the following portions of Exhibit 31:

Q. If you learn that the Funds did not have any assets, would that statement still be accurate?

MR. HULINGS: **Objection. Hypothetical. Calls for facts not in evidence. Calls for speculation. And it's vague. But you can answer, if you can.**

A. Yes.

Q. If you learn that the assets -- the Fund did not have any assets, that statement would still be accurate?

A. No, it would not be accurate. It would not be accurate.

Q. It would not be accurate?

A. Would not be accurate.

Q. Okay.

MR. HULINGS: **That happened a little quickly. Just give me a second to --**

THE WITNESS: Okay.

MR. HULINGS: **-- interpose the objections. All the same objections to the previous question we'll assert to the question that was just asked.**

BY MS. WARDEN: And why would it not be accurate?

MR. HULINGS: **Same objections.**

A. Because this would be -- I'm sorry. But you're saying if there were no assets, would this be accurate? It -- of course not. I mean, it -- it – it really speaks for itself. I mean, I -- Why would it not be accurate?

Q. Would it be a misrepresentation then?

MR. HULINGS: **Objection.**

A. It would not be accurate.

Q. Okay.

MR. HULINGS: **So it would call -- Vague as to "misrepresentation." Calls for a legal conclusion. Calls for speculation. Lack of foundation. Vague. You can answer.**

*See* Ex. 31 at 93:5-94:17.

Q. Okay. Did Mr. Mueller inform you that the 575 Fund never invested in or owned any life policies?

MR. HULINGS: **Objection. That assumes incorrect facts not in evidence. Calls for -- So based on -- on -- on that, we object. It's also vague**.

BY MS. WARDEN: You can answer.

A. Oh, okay. No, he did not.

Q. Did Mr. Mueller seek legal advice from you regarding whether the 575 Fund never investing in or owning any life policies was adequately disclosed in Exhibit 36?

MR. HULINGS: **So objection, based -- based on assuming facts not in evidence. Assuming false or inaccurate basis for the question. It's also -- so that makes it vague and misleading. You can answer, if you can.**

Q. Do -- do you need me to repeat the question?

MS. SANSALONE: Or you can read it right there.

A. Not -- not that I recall specifically.

*See* Ex. 31 at 102:3-23.

Q Did Mr. Mueller seek legal advice from you regarding whether the 575 Fund never investing in or owning in any life policies was adequately disclosed in a 575 PPM at any time?

MR. HULINGS: **So objection to the extent that that question refers to communications after January -- after December 2018, instruct the witness not to answer as to that time frame. Privilege grounds. It's also vague. Also calls for -- I'm sorry. It's also based on the facts not in evidence and based on an underlying assertion of facts that is not accurate.**

MS. WARDEN: And I'm going to object to Mr. Hulings' speaking objections.

MR. HULINGS: **Those are not speaking objections. But you can answer.**

A. Prior to December of 2018, I don't recall ever -- him ever informing me of that.

*See* Ex. 31 at 102:24-103:16.

Q. Did Mr. Mueller seek legal advice from you regarding whether the 575 Fund never investing in or owning any life policies was adequately disclosed in a 575 PPM at any time?

MR. HULINGS: **So we're going to object. It assumes facts not in evidence. Object that the underlying factual assertion is not accurate. Object that it's vague. You can answer.**

A. No.

Q. Did you provide Mr. Mueller with legal advice regarding whether the 575 Fund never investing in or --  or owning any life policies was adequately disclosed in Exhibit 36?

MR. HULINGS: **Same -- same objections**.

A. No.

Q. Did you provide Mr. Mueller with legal advice regarding whether the 575 Fund never investing in or owning any life policies was adequately disclosed in a 575 PPM at any time?

MR. HULINGS: **Same objections.**

A. Isn't that the same question?

Q. No. One is grounded in Exhibit 36, and one is saying at any time.

MR. HULINGS: **Asked and answered.**

A. No.

Q. Okay. Did Mr. Mueller inform you that the life policies were owned and acquired by Policy Services?

MR. HULINGS: **Objection. Vague. You can answer.**

A. We saw a previous email where he says they have interests in life settlements. Policy Services has interests in life settlements. So to the extent that in his email he told me they had interests in life settlements, the answer would be yes.

*See* Ex. 31 at 104:5-105:15.

Q. I know. So the first question is -- is asking whether he told you about whether a disclosure was adequate in Exhibit 36. And then the second question is whether he told you a disclosure was adequate at any time, like, in any subsequent PPM that you may or may not be aware.

MR. HULINGS: **So to the extent there's a question there, it's vague and compound. Maybe you want to ask that one again.**

13

A. No.

*See* Ex. 31 at 106:7-16.

Q. Did Mr. Mueller inform you that Policy Services did not grant any ownership interest in the life policies to the 575 Fund?

MR. HULINGS: **So hold on. That -- that's a different version of the question. I'm objecting to facts -- assuming facts not in evidence. The factual assertion is inaccurate. And it's a vague question. You can answer.**

A. No.

Q. Did Mr. Mueller seek legal advice from you regarding whether the fact that Policy Services did not grant any ownership interest in the life policies of the 575 Fund was adequately disclosed in Exhibit 36?

MR. HULINGS: **That's the same -- the same objections. That's -- assumes facts not in evidence. It's based on a factual assertion that is false and is vague and misleading**.

A. No.

Q. Did Mr. Mueller seek legal advice from you regarding whether the fact that Policy Services did not grant any ownership interest in the life policies of the 575 Fund was adequately disclosed in a 575 PPM at any time?

MR. HULINGS: **Same objections. Asked and answered**.

A. No. It's really -- Thank you.

Q. Did you provide Mr. Mueller with legal advice regarding whether the fact that Policy Services did not grant any ownership interest in the life policies of the 575 Fund was adequately disclosed in Exhibit 36?

MR. HULINGS: **Same objections. And asked and answered.**

A. No.

Q. Did you provide Mr. Mueller with legal advice regarding whether the fact that Policy Services did not grant any ownership interest in the life policies of the 575 Fund was adequately disclosed in a 575 PPM at any time?

MR. HULINGS: **So asked and answered, which is clear in the objections. It's -- Make sure I preserve them. Assumes facts not in evidence. Based on a false factual predicate. And vague and misleading. In addition to the asked and answered.**

A. No.

14

*See* Ex. 31 at 107:2-108:20.

>   Q Did you provide legal advice to Mr. Mueller regarding whether the lack of legal relationship between 575 Fund and Policy Services prior to 2020 was adequately disclosed in a 575 -- adequately disclosed in -- in Exhibit 36?
>
>   MR. HULINGS: **Okay. So make clear. We're assuming facts not in evidence. False factual predicate. It is vague and misleading. It's argumentative. Asked and answered. And harassing. You can answer, if you can. Or unless you're withdrawing the question.**
>
>   A All right. Is the question still --
>
>   Q Yeah. Is it easier to read it?
>
>   A Yeah. No.

*See* Ex. 31 at 111:12-25.

>   Did Mr. Mueller inform you that the dGRD Fund never invested in or owned any life policies?
>
>   MR. HULINGS: **So objection to assumes facts not in evidence. It's a false factual predicate. Vague and misleading. You can answer.**
>
>   A. No.
>
>   Q. Did Mr. Mueller seek legal advice from you regarding whether the dGRD Fund never investing in or owning any life policies was adequately disclosed in Exhibit 38 (sic)?
>
>   MR. HULINGS: **So for purposes of the next several -- what I anticipate to be the next several questions, when I say "Same objections," I mean objections just asserted to the previous question.**
>
>   A. Not that I recall.
>
>   Q. Well –
>
>   MR. HULINGS: **And I assert the same objections to the previous question for clarify.**
>
>   BY MS. WARDEN: The question is did Mueller seek legal advice from you regarding whether the dGRD Fund never investing in or owning any life policies was adequately disclosed in the dGRD Fund in Tab -- in Exhibit 98?
>
>   MR. HULINGS: **Same objections.**
>
>   A. Same answer. Not that I recall. I don't ever recall having that conversation.

*See* Ex. 31 at 119:7-120:8.

> Q. Did you provide Mr. Mueller with legal advice regarding whether the dGRD Fun never investing in or owning any life policies was adequately disclosed in a dGRD PPM at any time?
>
> MR. HULINGS: **Same objections.**
>
> A. Same answer. Not that I recall.

*See* Ex. 31 at 121:2-7.

> Q Yeah. Did Mr. -- did Mr. Mueller ever tell you that the life policies that were purportedly held by the 575 and dGRD Fund were owned by Policy Services?
>
> A No.
>
> MR. HULINGS: Hold on.
>
> THE WITNESS: I'm sorry.
>
> MR. HULINGS: **Objection that that is vague and misleading. Assumes fact not in evidence. False factual predicate. Asked and answered multiple times.**

*See* Ex. 31 at 121:13-21.

> Did you advise Policy Services on Exhibit 100?
>
> MR. HULINGS: So object to the statement prior to the question. **Object to facts not in evidence. And vague and misleading.**
>
> A No.

*See* Ex. 31 at 126:7-12.

> Q. Okay. Did Mr. Mueller ever tell you at any time that neither the 575 Fund, nor Policy Services, purchased any new life insurance policies after April 2017?
>
> THE DEFENDANT [sic]: **Same objections**.
>
> A. No. But I don't -- but it -- you -- you asked

*See* Ex. 31 at 129:17-22.

> Q. Okay. Did Mr. Mueller seek legal advice from you regarding whether the fact that neither the 575 Fund, nor Policy Services, purchasing any new life insurance policies after April 2017 was adequately disclosed in Exhibit 36?

MR. HULINGS: **Objection. Same objections. Asked and answered**.

A. No.

Q. Did you provide Mr. Mueller with legal advice regarding whether the fact that neither the 575 Fund, nor Policy Services, purchasing any new life insurance policies after April 2017 was adequately disclosed in Exhibit 36?

MR. HULINGS: **Same objections. Asked and answered.**

MS. SANSALONE: And asked and answered. Yeah.

A. I -- No. I mean, again, I'm sorry. But to my

*See* Ex. 31 at 130:6-22.

Q. The last paragraph. Capital Acquisition in deeproot Tech. It says, "A capital acquisition is a purchase of an internal affiliated investment position in another enterprise, wherein such enterprise is intended to enhance Company's reputability, safety, or financials through joint venture, partnership, or collaboration, or minimize pool risk, lower administrate -- administrative overhead or expenses, or to develop additional product lines."
        Did Mr. Mueller inform you that the 575 Fund did not purchase anything from the deeproot affiliates?

MR. HULINGS: **Okay. So objection. Assumes facts not in evidence. False factual predicate. Vague and misleading. And argumentative.**

A. No.

*See* Ex. 31 at 136:11-25.

Q. My question is, Mr. Concilla, did Mr. Mueller seek legal advice from you regarding whether the 575 Fund's failure to purchase anything from the deeproot affiliates was adequately disclosed in Exhibit 36?

MR. HULINGS: **Same objections as to the previous -- as asserted to the previous question. And asked and answered.**

A. No.

Q. Okay. Did Mr. Mueller inform you that he used 575 funds to pay the deeproot affiliates' expenses?

MR. HULINGS: **So objection. Assumes facts not in evidence. It is vague and misleading. And ambiguous and argumentative. And -- and you can answer, if you can.**

A. No.

Q. Did Mr. --

A. Not that I recall.

Q. Did Mr. Mueller inform you that he used 575 Funds to provide deeproot affiliates with interest-free loans?

MR. HULINGS: **Okay. So let's -- running through the Rules of Evidence in my head so we can get them all. That assumes facts not in evidence. It's a false factual predicate. There is -- It is vague. Misleading. Argumentative. Asked and answered.**

A. No.

*See* Ex. 31 at 137:14-138:16.

Q. Did Mr. Mueller ever inform you that he did not have a methodology or documented process to accurately value life insurance policies to report to 575 and dGRD investors?

MR. HULINGS: **Okay. So assumes facts not in evidence. False factual predicate. Argumentative. It's vague. It's misleading. You can answer, if you can.**

A. I'm sorry. I don't know that I can. I mean,"...ever inform you that he did not have a methodology." The answer is no.

Q. Okay. Did Mr. Mueller ever seek legal advice from you regarding how he should calculate the percentage ownership interest that the 575 Fund had in life policies?

A. No. His objections. No.

MR. HULINGS: Yes. Yes. **Vague and ambiguous.**

THE WITNESS: Yeah.

BY MS. WARDEN: Did Mr. Mueller ever show you a methodology of how he was valuing the life insurance policies owned by the 575 and dGRD Funds?

MR. HULINGS: **Vague and ambiguous. And asked and answered**.

A. No.

*See* Ex. 31 at 142:20-143:19.

Q. Did Mr. Mueller ever inform you that there were no internal finance controls at deeproot?

MR. HULINGS: **So objection. Assumes facts not in evidence. False factual predicate. Very argumentative. Vague. Misleading. You can answer, if you can.**

A. No.

Q. And did Mr. Mueller ever seek legal advice from you regarding whether the lack of internal financial controls was adequately disclosed --

MR. HULINGS: So that's --

BY MS. WARDEN: -- in the 575 PPM?

MR. HULINGS: **So that's an extremely argumentative question, so start -- start there this time. Vague and ambiguous. Assumes facts not in evidence. And false factual predicate. Asked and answered.**

BY MS. WARDEN: Sorry. Can you answer, sir?

A. No.

BY MS. WARDEN: Did Mr. Mueller ever show you documented internal financial controls of deeproot?

MR. HULINGS: **Objection as to vague and ambiguous. Argumentative.**

THE WITNESS: And I think asked and answered.

MR. HULINGS: **Asked and answered.**

A. No.

*See* Ex. 31 at 143:20-144:23.

Q. Mr. Concilla, did Mr. Mueller inform you that he would pay his investors in earlier funds, not the 575 or dGRD Funds with 575 and dGRD investor funds?

MR. HULINGS: **All right. So vague and ambiguous and argumentative. Assumes facts not in evidence. You can answer, if you can.**

A. Money is fungible. So wherever the money is coming from, or if it's going into an account, it could be used for whatever purpose. But did we have a specific discussion about what I think you're asking; paying old investors with new investor money? We did not.

Q. Okay. I'm going to reask it because it's -- it's -- that was muddy to me. So did Mr. Mueller inform you that he would pay his inventors with earlier funds --

A. I've already --

Q. -- with 575 and dGRD investor funds?

MR. HULINGS: **Okay. So same objections as asserted to the previous question. And asked and answered.**

19

A. I'm -- I'm confused. You're saying his investors in earlier funds? Okay. I thought these were the first. I thought these were the only two funds, so I guess, no. The answer is no.

Q. Did Mr. Mueller ever seek legal advice --

A. No.

Q. -- regarding that issue?

A. No.

MR. HULINGS: **Same objections as to the previous question.**

*See* Ex. 31 at 152:3-153:9.

Q. Did Mr. Mueller ever tell you that he would pay 575 or dGRD investors -- Sorry. That he would take 575 and dRG -- dGRD investor money and he would pay -- take that money and pay people who owned shares of the life settlement policies owned by Policy Services?

MR. HULINGS: **Okay. So hold on. There's a --  there's a lack of foundation. Calls for speculation. It's argumentative. It's vague and ambiguous. It's misleading. Assumes facts not -- not in evidence. You can answer, if you can.**

A. I don't think I can. So if fractionalized who were not investors in the -- in -- in the two funds?

MR. NASSE: Yes.

BY MS. WARDEN: Correct.

A. So we're paying people outside of the funds4 with that money?

MR. HULINGS: **Same objections.**

A. Yeah. No.

*See* Ex. 31 at 153:23-154:16.

Q. And also looking at Exhibit 40 again, if individuals outside of the funds owned portions of the assets listed in this document, would that be a material omission?

A. What --

MR. HULINGS: So hold on.

THE WITNESS: Yeah.

MR. HULINGS: **So it calls for speculation. Lack of foundation. Assumes facts not in evidence. Vague and ambiguous. And argumentative. I guess answer**.

A. Okay. I think you got it all. I don't know, looking at this document, whether what's listed as the face value is the total face value of the policy or only that portion of the policy that's allegedly owned by deeproot. So if -- if this is the face value of the policy –

Q. Uh-huh.

A. -- and deeproot owns something less than this amount of money, then yes, it's material and it's misleading. Is that --

*See* Ex. 31 at 160:3-23.

Q. Okay. Did Mr. Mueller inform you that the Company Advance was not being tracked to ensure that it was used for a business purpose?

MR. HULINGS: **Okay. So argumentative. Assumes facts not in evidence. False factual predicate. Vague and ambiguous. Misleading.**

A. No.

*See* Ex. 31 at 164:17-23.

Q. Did Mr. Mueller ever show you how he was tracking expenses? Show you?

MR. HULINGS: **Vague and ambiguous and asked and answered, but you can answer.**

A. No.

*See* Ex. 31 at 165:12-16.

Q. Did Mr. Mueller inform you that he would use 575 and dGRD investor funds to pay off credit card purchases for personal expenses?

MR. HULINGS: **So vague and ambiguous. Assumes facts not in evidence. Argumentative. Misleading. You can answer.**

A. No.

*See* Ex. 31 at 167:11-17.

Q. Do you see where it says, "deeproot Tech's sole project is deeproot Pinball, LLC, which is anticipated to be a multi-year project starting in6 2016 or 2017. Capital acquisition in dP would consist of the purchase of dP Class B Shares that Company will hold." Did Mr. Mueller inform you that the 575 or dGRD Funds did not purchase any Class B Shares in deeproot Pinball, LLC?

MR. HULINGS: **So objection. Assumes facts not in evidence. It's argumentative. It's vague and ambiguous. And misleading. You can answer it, if you can.**

A. No.

*See* Ex. 31 at 173:13-174:1.

Q. Yes. So -- so why would payments to existing investors only from new investor funds be improper?

MR. HULINGS: **Okay. Hold on. It calls for a legal conclusion. Lack of foundation. Calls for speculation. Vague and ambiguous. You can answer.**

A. I believe that would -- that would be kind of the hallmark of a Ponzi scheme where you're -- where you're not -- you're not investing the money in a way that's creating an investment return but, instead, you're using new money from new investors to pay old investors, so there is no enterprise.

Q. If revenue or funds from other sources is not sufficient to cover obligations or returns to existing investors, is it proper to use new investor funds to pay existing investors?

MR. HULINGS: **So it calls for a legal conclusion. It's vague and ambiguous. Argumentative.**

A. I believe it does not. I -- I think I answered that properly. I believe you could not do that under those circumstances, or that it would be improper, I guess, is -- in my mind.

*See* Ex. 31 at 179:22-180:19.

Q Within the waiver period, did you ever -- Did Mr. Mueller ever ask you the question that if revenue or funds from other sources is not sufficient to cover obligations or returns to existing investors, is it proper to use new investor funds to pay existing investors?

MR. HULINGS: **Vague and ambiguous.**

A No.

*See* Ex. 31 at 181:3-10.

## **EXHIBIT 33**

Exhibit 33 (Excerpts from Federico deposition testimony dated July 13, 2023) contains

deposition testimony for which objections were properly and timely asserted. Thus, unless or

until those objections are overruled, Mueller objects to the proffered testimony. *See Mendez v. Caterpillar Inc.*, No. SA-09-CA-978-XR, 2011 WL 6999659, at *7 (W.D. Tex. Dec. 16, 2011) (ruling on objections made during deposition in determining whether the same could be considered as part of the summary judgment record), *report and recommendation adopted*, No. SA-09-CV-978-XR, 2012 WL 90492 (W.D. Tex. Jan. 11, 2012, J., Rodriguez).

Specifically, Mueller objects to the following portions of Exhibit 33:

Q. Did Mr. Mueller inform you that the 575 Fund never invested in or owned any life policies?

MR. HULINGS: **Okay. So objection. Lack of foundation. Calls for speculation. Assumes facts not in evidence. It's an argumentative question. False factual predicate. It's vague and ambiguous. And misleading. And assuming we're going to have a series of these, I will refer to that as "the previous objections."**

A. No.

Q Did Mr. Mueller inform you that the life policies were owned and acquired by Policy Services?

MR. HULINGS: **So previous -- same as the -- same previous objections**.

A. He informed us that Policy Services owned some life policies.

Q. Okay. But, Mr. Federico, my question is, did Mr. Mueller inform you that the life policies were owned and acquired by Policy Services?

MR. HULINGS: **So same -- same objections. And asked and answered.**

BY MS. WARDEN: Okay. Let me rephrase. Did Mr. Mueller inform you that the life policies purportedly held by3 the 575 Fund were owned and acquired by Policy Services?

MR. HULINGS: **Same objections. Asked and answered.**

A. No.

*See* Ex. 33 at 46:14-47:16.

Q. Okay. So based on that testimony, is it fair to say that you did not provide legal advice on any investor disclosures or marketing materials that went to dGRD investors?

MR. HULINGS: **Misstates prior testimony. But -- and vague and ambiguous. You can answer.**

A. I don't recall having done that. As I -- as I said, I prepared an S-1 for 575 Fund and dGRF.

*See* Ex. 33 at 57:13-22.

Q. Did you have any conversations with Mr. Mueller regarding what internal controls deeproot had?

A No.

MR. HULINGS: **Vague and ambiguous.**

*See* Ex. 33 at 66:19-23.

## EXHIBIT 34

Mueller objects to Exhibit 34 (Declaration of Brad Alan Leon dated Sept. 14, 2022) as follows:

Para. 5 – Statements about his investment agreement – the document speaks for itself, improper legal conclusion.

Para. 6, 7, 13 – Statements from Zabinsky are hearsay.

Para. 15 – Conclusory; inadequate foundation, assumes facts not in evidence, calls for legal conclusion, improper expert opinion.

## EXHIBIT 35

Mueller objects to Exhibit 35 (Declaration of James Donnelly dated Oct. 18, 2022) as follows:

Para. 4 – Statements about his investment agreement – the document speaks for itself, improper legal conclusion.

Para. 13 – Conclusory; inadequate foundation, assumes facts not in evidence, calls for legal conclusion, improper expert opinion.

**EXHIBIT 36**

Mueller objects to Exhibit 36 (Declaration of John Gray dated Oct. 9, 2022) as follows:

<u>Para. 5</u> – Statements about his investment agreement – the document speaks for itself, improper legal conclusion.

<u>Para. 7, 9</u> – Statements from Vallier are hearsay.

<u>Para. 16</u> – Conclusory; inadequate foundation, assumes facts not in evidence, calls for legal conclusion, improper expert opinion.

**EXHIBIT 37**

Mueller objects to Exhibit 37 (Declaration of Robert Kane dated Sept. 23, 2022) as follows:

<u>Para. 5-6</u> – Statements about his investment agreement – the document speaks for itself,  improper legal conclusion.

<u>Para. 7, 8</u> – Statements from Hopman are hearsay.

<u>Para. 15</u> – Conclusory; inadequate foundation, assumes facts not in evidence, calls for legal conclusion, improper expert opinion.

**EXHIBIT 38**

Mueller objects to Exhibit 38 (Declaration of Sandra S. Thompson dated Sept. 15, 2022) as follows:

<u>Para. 6</u> – Statements about his investment agreement – the document speaks for itself, improper legal conclusion.

<u>Para. 7</u> – Statements from Hopman are hearsay.

<u>Para. 15</u> – Conclusory; inadequate foundation, assumes facts not in evidence, calls for legal conclusion, improper expert opinion.

## IV.   PRAYER

For the forgoing reasons, Defendant Robert J. Mueller asks this Court to sustain his objections and to strike the evidence cited above, and to grant his motion to strike undisclosed expert witness Verma. Mueller requests all other relief to which he has shown himself justly entitled.

Dated:  September 18, 2023

Respectfully submitted,

**DAVIS & SANTOS, PLLC**

By: */s/ Caroline Newman Small*
Jason M. Davis
State Bar No. 00793592
Email:   *jdavis@dslawpc.com*
Caroline Newman Small
State Bar No. 24056037
Email:   *csmall@dslawpc.com*
719 S. Flores Street
San Antonio, Texas 78204
Tel: (210) 853-5882
Fax: (210) 200-8395
***Counsel for Defendant Robert J. Mueller***

## <u>CERTIFICATE OF SERVICE</u>

I certify that on September 18, 2023, the foregoing document was electronically filed with the Clerk of the Court using the CM/ECF system and all counsel of record will receive an electronic copy via the Court's CM/ECF system.

*/s/ Caroline Newman Small*
Caroline Newman Small
