# EXHIBIT 14.1

CONFIDENTIAL

```
 1            IN THE UNITED STATES DISTRICT COURT
               FOR THE WESTERN DISTRICT OF TEXAS
 2                  SAN ANTONIO DIVISION

 3   SECURITIES AND EXCHANGE          ) CONFIDENTIAL
     COMMISSION,                      )
 4                                    )
               Plaintiff,             )
 5                                    )
        -against-                     ) Civil Action No.:
 6                                    ) 5:21-cv-785-XR
     ROBERT J. MUELLER, DEEPROOT      )
 7   FUNDS LLC (a/k/a dprt Funds,     )
     LLC), AND POLICY SERVICES INC.,  )
 8                                    )
               Defendants,            )
 9                                    )
        -and-                         )
10                                    )
     DEEPROOT TECH LLC, DEEPROOT      )
11   PINBALL LLC, DEEPROOT STUDIOS LLC, )
     DEEPROOT SPORTS & ENTERTAINMENT  )
12   LLC, AND DEEPROOT RE 12621       )
     SILICON DR LLC, AND ROBERT J.    )
13   MUELLER, JEFFREY L. MUELLER, AND )
     BELINDA G. BREEN, AS CO-TRUSTEES )
14   OF THE MB HALE OHANA REVOCABLE TRUST,)
                                      )
15             Relief Defendants.     )
     _____)
16

17   ORAL AND VIDEOTAPED DEPOSITION OF ROBERT MUELLER, produced

18   as a witness at the instance of the Plaintiff and duly

19   sworn, was taken in the above styled and numbered cause on

20   Thursday, March 9, 2023, from 9:36 a.m. to 7:35 p.m.,

21   before Janalyn Elkins, CSR, in and for the State of Texas,

22   reported by computerized stenotype machine, at the offices

23   of Davis Santos, PC, 719 Flores Street, San Antonio,

24   Texas, pursuant to the Federal Rules of Civil Procedure

25   and any provisions stated on the record herein.
```

1

CONFIDENTIAL

10:39:27  1  hand to be able to answer these questions at the time I
10:39:29  2  signed and we provided it.
10:39:31  3      Q.  If you could -- I'm going to refer to you to
10:39:35  4  page 5 of the Document 28.  It's actually the Question
10:39:48  5  No. 5 and then the response.  It's page 5 on the page
10:39:53  6  number on the bottom.  I apologize.
10:39:58  7      A.  Did you want me to review it or?
10:40:08  8      Q.  Oh, so I was going to ask you -- so if you see
10:40:10  9  at the bottom of the response to Interrogatory No. 5,
10:40:14 10  you say, (Reading:)  In addition, Defendant further
10:40:16 11  responds the following individuals have draft, revise,
10:40:21 12  edit and/or provide revisions that were incorporated in
10:40:24 13  the PPM and 575 Funds.
10:40:26 14              Do you see that?
10:40:27 15      A.  I do see that.
10:40:28 16      Q.  Okay.  And there's a list of names there; is
10:40:29 17  that right?
10:40:29 18      A.  Yes.
10:40:30 19      Q.  Okay.  And then one of the names at the bottom
10:40:32 20  is a gentleman by the name of Gerald Wik at Centri
10:40:38 21  Business Consulting.
10:40:38 22              Do you see that?
10:40:39 23      A.  I see that.
10:40:40 24      Q.  Okay.  And you retained Mr. Wik in connection
10:40:43 25  with an S-1 that you were planing to file for something

                                                              46

CONFIDENTIAL

| | | |
|---|---|---|
| 10:40:47 | 1 | called The Queue Fund; is that right? |
| 10:40:48 | 2 | A.  There were several -- if I recollect, there |
| 10:40:51 | 3 | were several goals for that representation for hiring |
| 10:40:55 | 4 | them as professionals for financial documents. |
| 10:40:58 | 5 | Q.  But it was in -- but one of those roles at |
| 10:41:01 | 6 | least was in connection with an S-1 that you were |
| 10:41:04 | 7 | considering filing for something called The Queue Fund; |
| 10:41:08 | 8 | is that correct? |
| 10:41:08 | 9 | A.  Yes, to the best of my recollection. |
| 10:41:10 | 10 | Q.  Okay.  And was Mr. Wik, as your understanding, |
| 10:41:14 | 11 | retained in any way in connection with the575 Fund LLC |
| 10:41:19 | 12 | or dGRD Fund LLC? |
| 10:41:21 | 13 | MR. HULINGS:  So objection; vague as to |
| 10:41:23 | 14 | "connection." |
| 10:41:24 | 15 | THE WITNESS:  I don't recollect |
| 10:41:26 | 16 | specifically if -- I don't recollect if there was an |
| 10:41:29 | 17 | engagement letter specifically or what the engagement |
| 10:41:32 | 18 | letter said. |
| 10:41:33 | 19 | Q.  (BY MR. NASSE)  Is your recollection -- do you |
| 10:41:35 | 20 | have any recollection of Mr. Wik providing edits or |
| 10:41:38 | 21 | comments on either the575 Fund PPM or the dGRD Fund PPM? |
| 10:41:46 | 22 | A.  Yes. |
| 10:41:51 | 23 | Q.  And when was that?  Do you have a specific |
| 10:41:54 | 24 | recollection? |
| 10:41:55 | 25 | A.  Well, we started with those documents -- |

47

CONFIDENTIAL

| | | |
|---|---|---|
| 11:09:20 | 1 | Q.  (BY MR. NASSE)  You can flip to the next page |
| 11:09:26 | 2 | on the organizational chart 2019.  So it's page Bates |
| 11:09:37 | 3 | numbered 1299.  Similar question, so in 2019 Policy |
| 11:09:44 | 4 | Services, Inc. was the only entity that held title or |
| 11:09:47 | 5 | ownership of life policies; is that right? |
| 11:09:51 | 6 | MR. HULINGS:  Objection; vague. |
| 11:09:53 | 7 | THE WITNESS:  To the best of my |
| 11:09:55 | 8 | recollection. |
| 11:09:56 | 9 | Q.  (BY MR. NASSE)  That's correct? |
| 11:09:58 | 10 | A.  Yes. |
| 11:09:58 | 11 | Q.  Okay.  None of the other entities -- |
| 11:10:05 | 12 | A.  And I will caveat that as you've defined life |
| 11:10:09 | 13 | policies in your previous question. |
| 11:10:11 | 14 | Q.  Okay.  Tab 65.  We'll go ahead and mark as |
| 11:10:38 | 15 | Exhibit 30 -- you can keep that with you, but we're |
| 11:10:40 | 16 | going to bring in another exhibit.  So we'll mark this |
| 11:10:42 | 17 | as Exhibit 31. |
| 11:10:44 | 18 | (Exhibit 31 was marked.) |
| 11:11:13 | 19 | Q.  (BY MR. NASSE)  What I'm marking as Exhibit 65 |
| 11:11:16 | 20 | [sic], there's a cover letter, but on the second page is |
| 11:11:18 | 21 | a declaration from Robert Mueller dated 14th of |
| 11:11:24 | 22 | October 2021.  I can refer you to -- it's the second |
| 11:11:38 | 23 | page ending in Bates No. 16 and the following page |
| 11:11:42 | 24 | ending in Bates No. 17. |
| 11:11:59 | 25 | A.  I'm sorry.  Where would you like me to go? |

61

CONFIDENTIAL

| | | |
|---|---|---|
| 12:27:40 | 1 | Q.  (BY MR. NASSE)  Did you ever tell Mr. Concilla |
| 12:27:43 | 2 | that you were taking loans from any of the funds? |
| 12:27:49 | 3 | MR. HULINGS:  Objection.  Okay.  So the -- |
| 12:27:56 | 4 | is that question limited to pre-2019? |
| 12:28:01 | 5 | MR. NASSE:  Sure.  Yes. |
| 12:28:03 | 6 | MR. HULINGS:  All right.  You can answer as |
| 12:28:07 | 7 | long as it's before January 1, 2019. |
| 12:28:11 | 8 | THE WITNESS:  We had very frank and robust |
| 12:28:13 | 9 | discussions about almost everything we did with Dennis |
| 12:28:17 | 10 | and Andy.  They had an insight into almost everything |
| 12:28:20 | 11 | that we did.  I don't know what you mean by loans.  We |
| 12:28:24 | 12 | talk about payments here.  But yes, they knew that was |
| 12:28:27 | 13 | happening and it just confirmed it that I refreshed his |
| 12:28:31 | 14 | memory about it here. |
| 12:28:33 | 15 | Q.  (BY MR. NASSE)  That you understood that |
| 12:28:34 | 16 | payments were happening indirectly? |
| 12:28:37 | 17 | Okay.  Do you have any specific |
| 12:28:39 | 18 | recollection of discussing taking out loans from any of |
| 12:28:42 | 19 | the deeproot businesses? |
| 12:28:44 | 20 | MR. HULINGS:  Objection; vague and loans -- |
| 12:28:48 | 21 | vague as to loans from the deeproot businesses. |
| 12:28:52 | 22 | MR. NASSE:  Well, I'm happy to clarify. |
| 12:28:54 | 23 | MR. HULINGS:  Yeah.  Just clean the |
| 12:28:55 | 24 | question up a little bit, yeah. |
| 12:28:57 | 25 | Q.  (BY MR. NASSE)  Do you have any specific |

112

CONFIDENTIAL

| | | |
|---|---|---|
| 12:28:58 | 1 | recollection of any discussions with anyone from Carlile |
| 12:29:02 | 2 | Patchen regarding you receiving or taking loans from any |
| 12:29:08 | 3 | entity owned or controlled by Policy Services, Inc.? |
| 12:29:15 | 4 | MR. HULINGS:  Provided that the answer is |
| 12:29:17 | 5 | prior to 2019, you can answer. |
| 12:29:19 | 6 | THE WITNESS:  Again, we talked about almost |
| 12:29:22 | 7 | everything.  I don't remember of the specific word loans |
| 12:29:25 | 8 | or payments or compensation was used at the time.  Here |
| 12:29:30 | 9 | it says "payments."  Probably used different terms in |
| 12:29:34 | 10 | different conversations.  But they understood that Russ |
| 12:29:38 | 11 | and I received, however you want to call it, from the |
| 12:29:44 | 12 | fund for our services.  That's where he mentions, I |
| 12:29:48 | 13 | believe, here fund management, fees for fund management |
| 12:29:53 | 14 | as an executive. |
| 12:29:54 | 15 | Q.  (BY MR. NASSE)  My -- so sitting here today, |
| 12:29:57 | 16 | you have no specific recollection of discussing taking |
| 12:30:00 | 17 | loans from Policy Services, Inc. or any of the |
| 12:30:03 | 18 | subsidiaries or affiliates? |
| 12:30:05 | 19 | MR. HULINGS:  Objection; vague as to |
| 12:30:06 | 20 | "loans." |
| 12:30:07 | 21 | THE WITNESS:  Like I said, I'm sure we did. |
| 12:30:09 | 22 | I don't recall specifically because we had very robust |
| 12:30:13 | 23 | discussions verbal and written about a lot of things. |
| 12:30:16 | 24 | And here we had already been with them for some time and |
| 12:30:22 | 25 | been through several funds that we had set up.  We were |

113

CONFIDENTIAL

| | | |
|---|---|---|
| 12:30:24 | 1 | in the process of -- in this August here as we just |
| 12:30:28 | 2 | talked about earlier, process of getting the dGRD term |
| 12:30:32 | 3 | sheet into a compliant -- securities compliant fund. |
| 12:30:36 | 4 | So, yeah, it wouldn't surprise me at all if |
| 12:30:40 | 5 | discussions around, you want the term loans or loans or |
| 12:30:44 | 6 | anything else came up during those periods. |
| 12:30:47 | 7 | Q.  (BY MR. NASSE)  Yeah.  And again, I mean, I |
| 12:30:48 | 8 | think you answered my -- I didn't ask you whether it |
| 12:30:50 | 9 | would surprise you.  I asked if there's any specific |
| 12:30:53 | 10 | recollection of any discussion regarding loans previous |
| 12:30:55 | 11 | to 2015 for Policy Services or any of its affiliated |
| 12:30:59 | 12 | businesses? |
| 12:30:59 | 13 | MR. HULINGS:  I believe it's been asked and |
| 12:31:01 | 14 | answered multiple times now. |
| 12:31:05 | 15 | THE WITNESS:  I don't recall specifically. |
| 12:31:08 | 16 | But I recall that we had conversations where that |
| 12:31:11 | 17 | conversation could have come up as I've already |
| 12:31:13 | 18 | answered. |
| 12:31:13 | 19 | Q.  (BY MR. NASSE)  Okay.  And did you recall |
| 12:31:16 | 20 | Carlile Patchen providing you any advice in terms of if |
| 12:31:19 | 21 | you were going to take loans, what would be required in |
| 12:31:21 | 22 | terms of disclosure or documentation? |
| 12:31:23 | 23 | MR. HULINGS:  Objection; vague and |
| 12:31:26 | 24 | compound. |
| 12:31:27 | 25 | But you can answer provided that it's prior |

114

**GRADILLAS COURT REPORTERS**
**(424) 239-2800**

CONFIDENTIAL

| | | |
|---|---|---|
| 01:55:29 | 1 | MR. HULINGS:  Several times and you've |
| 01:55:30 | 2 | gotten an answer several times. |
| 01:55:32 | 3 | THE WITNESS:  Without going back through |
| 01:55:34 | 4 | emails, notes, tracked versions of this and stuff like |
| 01:55:41 | 5 | that, which I would need to do to recollect better on |
| 01:55:44 | 6 | this. |
| 01:55:49 | 7 | Q.  (BY MR. NASSE)  That you don't -- what's -- you |
| 01:55:52 | 8 | didn't finish the question -- the answer. |
| 01:55:54 | 9 | A.  Yeah, I would need to go back through those |
| 01:55:57 | 10 | documents. |
| 01:55:57 | 11 | Q.  So if we look at the next -- it's page ending |
| 01:56:04 | 12 | in Bates No. 4507, you see at the top of the page it |
| 01:56:14 | 13 | talks about a capital acquisition in DP, which I guess |
| 01:56:21 | 14 | is deeproot Pinball, would consist of the purchase of DP |
| 01:56:24 | 15 | class B shares that the company will hold as further |
| 01:56:26 | 16 | outlined below. |
| 01:56:30 | 17 | Do you see that? |
| 01:56:30 | 18 | A.  Yes. |
| 01:56:30 | 19 | Q.  Did deeproot 575 LLC ever hold class B |
| 01:56:36 | 20 | membership shares in deeproot Pinball? |
| 01:56:38 | 21 | MR. HULINGS:  Objection; it calls for a |
| 01:56:40 | 22 | legal conclusion.  It's also vague as to "hold." |
| 01:56:43 | 23 | You can answer. |
| 01:56:44 | 24 | MR. NASSE:  I'm using it as the term "hold" |
| 01:56:47 | 25 | is used in the document. |

137

CONFIDENTIAL

| | | |
|---|---|---|
| 01:56:48 | 1 | MR. HULINGS:  You can still answer.  Same |
| 01:56:50 | 2 | objection. |
| 01:56:51 | 3 | THE WITNESS:  This regards privileged |
| 01:56:53 | 4 | information outside the scope.  Can we confer? |
| 01:56:56 | 5 | MR. HULINGS:  Okay.  Just a second.  We can |
| 01:56:59 | 6 | go off the record. |
| 01:57:01 | 7 | VIDEOGRAPHER:  We're off the record at |
| 01:57:03 | 8 | 1:57 p.m. |
| 01:57:05 | 9 | (Discussion off the record.) |
| 01:59:27 | 10 | VIDEOGRAPHER:  We are back on the record at |
| 01:59:34 | 11 | 1:59 p.m. |
| 01:59:37 | 12 | MR. NASSE:  Question's still pending. |
| 01:59:39 | 13 | MR. HULINGS:  Can you repeat the question |
| 01:59:40 | 14 | or read it off? |
| 01:59:57 | 15 | (Requested question was read.) |
| 01:59:58 | 16 | THE WITNESS:  I do not recall. |
| 02:00:00 | 17 | Q.  (BY MR. NASSE)  So as the manager of the fund, |
| 02:00:06 | 18 | you have no recollection as to whether deeproot 575 ever |
| 02:00:12 | 19 | held deeproot -- shares in deeproot Pinball? |
| 02:00:16 | 20 | MR. HULINGS:  So it asks for -- calls for a |
| 02:00:19 | 21 | legal conclusion, it's vague, and asked and answered. |
| 02:00:22 | 22 | THE WITNESS:  I don't recall.  I know we |
| 02:00:26 | 23 | documented it, paper and -- and through our portal.  I |
| 02:00:34 | 24 | don't recall specific advice that Dennis and Andy |
| 02:00:39 | 25 | recommended for this.  But I just don't recall. |

138

| | | |
|---|---|---|
| 02:00:42 | 1 | Q. (BY MR. NASSE) Did you discuss with Carlile |
| 02:00:46 | 2 | Patchen whether if you -- 575 Fund did not buy any |
| 02:00:52 | 3 | class B shares whether that would have to be disclosed? |
| 02:00:55 | 4 | MR. HULINGS: You can answer that. |
| 02:00:59 | 5 | THE WITNESS: I don't recall that specific |
| 02:01:01 | 6 | conversation. |
| 02:01:03 | 7 | Q. (BY MR. NASSE) If we were to look for where we |
| 02:01:09 | 8 | could find out if deeproot 575 Fund ever purchased |
| 02:01:12 | 9 | class B shares in deeproot Pinball, where would we look, |
| 02:01:16 | 10 | where should we look? |
| 02:01:17 | 11 | A. It would be in the client files, paper client |
| 02:01:21 | 12 | files or notes and documents that I had would be in our |
| 02:01:27 | 13 | online system. And it would also be in the records that |
| 02:01:34 | 14 | we worked with Jerry Wik with Centri and Phil Forret, or |
| 02:01:41 | 15 | Forret, with Medio. Because when they came in to do the |
| 02:01:45 | 16 | S-1, we reviewed these, again, and picked them apart as |
| 02:01:50 | 17 | we were creating the DRS itself, the language for the |
| 02:01:55 | 18 | DRS. |
| 02:01:56 | 19 | Q. Do you recall whether deeproot Pinball ever |
| 02:02:00 | 20 | issued share certificates in connection with this |
| 02:02:04 | 21 | offering? |
| 02:02:05 | 22 | MR. HULINGS: Objection; legal -- calls for |
| 02:02:07 | 23 | a legal conclusion, also vague. |
| 02:02:10 | 24 | THE WITNESS: We didn't actually ever issue |
| 02:02:13 | 25 | actual certificates. I believe there was a certificate |

139

CONFIDENTIAL

02:02:16  1  of some sort that was provided to -- of the subscription

02:02:19  2  that was provided digitally and paper to investors for

02:02:24  3  investor positions.

02:02:26  4      Q.  (BY MR. NASSE)  Yeah.  I'm referring

02:02:27  5  specifically to this provision here in terms of 575's

02:02:32  6  capital acquisition as it's termed here of class B

02:02:36  7  membership shares in deeproot Pinball.

02:02:39  8      A.  I haven't looked at the deeproot Tech or

02:02:42  9  deeproot Pinball corporate book in a long time, so I

02:02:46 10  can't remember and I don't know what's in there.

02:02:49 11      Q.  If the -- if those records are not in the -- in

02:02:50 12  the corporate records, it's fair to say there were none?

02:02:53 13      A.  No, that would be very false.

02:02:56 14          MR. HULINGS:  Okay.  Hold on.  You've

02:02:58 15  already answered the question.  Remind you to give me a

02:03:02 16  second to make objections.

02:03:05 17      Q.  (BY MR. NASSE)  Where else would those

02:03:08 18  documents be?

02:03:10 19          MR. HULINGS:  Objection; vague as to "those

02:03:12 20  documents."

02:03:12 21      Q.  (BY MR. NASSE)  Documents that would document

02:03:14 22  any purchase of class B membership shares by 575 Fund,

02:03:20 23  so where would those documents be?

02:03:22 24          MR. HULINGS:  Objection; vague and calls

02:03:24 25  for legal conclusion.

140

CONFIDENTIAL

| | | |
|---|---|---|
| 02:03:25 | 1 | MR. NASSE:  Where the documents would be? |
| 02:03:26 | 2 | MR. HULINGS:  Description of the kind of |
| 02:03:28 | 3 | documents.  Does this document fit this legal |
| 02:03:31 | 4 | description you've outlined is a legal conclusion. |
| 02:03:34 | 5 | Q.  (BY MR. NASSE)  Any document that somehow |
| 02:03:36 | 6 | memorizes the capital acquisition of class B membership |
| 02:03:41 | 7 | shares. |
| 02:03:42 | 8 | A.  As I said before, they would have been in our |
| 02:03:44 | 9 | online system, digital form, digitally issued that way. |
| 02:03:48 | 10 | They would have been in paper form.  All the documents |
| 02:03:52 | 11 | and papers were left by instruction of counsel at the -- |
| 02:03:55 | 12 | MR. HULINGS:  Don't -- don't -- don't |
| 02:03:56 | 13 | reveal any instruction of counsel as to maintaining |
| 02:03:59 | 14 | those records. |
| 02:04:00 | 15 | THE WITNESS:  They were left at the |
| 02:04:02 | 16 | San Antonio facility when we were told -- well, they |
| 02:04:06 | 17 | were left at the San Antonio facility. |
| 02:04:08 | 18 | Q.  (BY MR. NASSE)  And when you refer to the |
| 02:04:09 | 19 | online platform, you're referring to, like, what's |
| 02:04:12 | 20 | sometimes referred to as the deeproot portal operated by |
| 02:04:16 | 21 | or maintained by Turner Logic? |
| 02:04:20 | 22 | A.  We had several kind of online systems that |
| 02:04:23 | 23 | Turner Logic designed and executed for us.  And it would |
| 02:04:29 | 24 | be, yeah, in those or through reports that we could |
| 02:04:35 | 25 | query that data with. |

141

CONFIDENTIAL

02:11:20   1   all our accounting with -- in a QuickBooks and had

02:11:25   2   professionals to help us with that.

02:11:27   3       Q.  (BY MR. NASSE)  So let's go through that.

02:11:29   4           Was there a written policy regarding how to

02:11:33   5   ensure you didn't exceed the 20 percent of the company

02:11:36   6   advance provision?

02:11:39   7           MR. HULINGS:  Vague as to "written policy."

02:11:42   8           THE WITNESS:  I don't believe that any of

02:11:44   9   our advisors and many that they are ever -- ever

02:11:49  10   specifically advised on that specific topic.

02:11:52  11       Q.  (BY MR. NASSE)  Yeah.  And maybe I didn't ask

02:11:53  12   you whether you had any advice.  I'm asking you, was

02:11:58  13   there a written policy governing the company advance

02:12:02  14   provision to ensure you didn't -- the Policy Services or

02:12:06  15   any of its affiliates didn't use over 20 percent?

02:12:08  16           MR. HULINGS:  Same objection.

02:12:10  17           THE WITNESS:  I don't recall specifically

02:12:11  18   and it was because we were never advised to do so by

02:12:14  19   financial advisors, by accountants, by attorneys, by

02:12:18  20   auditing anyone or even the SEC.

02:12:22  21       Q.  (BY MR. NASSE)  Yeah.  I don't recall -- strike

02:12:23  22   the SEC.

02:12:25  23       A.  It's a truthful answer --

02:12:26  24           MR. HULINGS:  Hold on.  Wait for a question

02:12:29  25   to be posed before you answer.

                                                                147

CONFIDENTIAL

| | | |
|---|---|---|
| 02:24:00 | 1 | Q.  You said this discussion is in an email? |
| 02:24:02 | 2 | A.  It started with an email and the discussion was |
| 02:24:04 | 3 | as we went to the Pinball PPM -- |
| 02:24:07 | 4 | Q.  Again, and my question is:  Is there discussion |
| 02:24:10 | 5 | of nominal administration expenses are used in that term |
| 02:24:12 | 6 | in an email? |
| 02:24:13 | 7 | MR. HULINGS:  Asked and answered. |
| 02:24:15 | 8 | THE WITNESS:  I can't recall if it's in an |
| 02:24:17 | 9 | email or if it was verbal.  But it happened many, many |
| 02:24:23 | 10 | times so I'm sure there's likely an email out there, I |
| 02:24:25 | 11 | just -- I don't know without going back and looking. |
| 02:24:28 | 12 | Q.  (BY MR. NASSE)  And in those discussions did |
| 02:24:31 | 13 | you ask Carlile Patchen whether the term "nominal |
| 02:24:35 | 14 | administration expenses" could cover priority return |
| 02:24:39 | 15 | payments to investors? |
| 02:24:42 | 16 | A.  My understanding in the advice I received is |
| 02:24:48 | 17 | that 575 payment -- 575 P payments due investors are |
| 02:24:52 | 18 | expenses of the fund and they would be included. |
| 02:24:55 | 19 | Q.  Okay.  So there -- so Carlile Patchen told you |
| 02:24:59 | 20 | that nominal administration expenses, that provision |
| 02:25:02 | 21 | could be used to pay prior to return payments to 575 |
| 02:25:07 | 22 | Fund investors? |
| 02:25:09 | 23 | A.  Over the multiple times we did it in one form |
| 02:25:12 | 24 | or another, yes. |
| 02:25:13 | 25 | Q.  What do you mean by "one form or another"? |

157

CONFIDENTIAL

| | | |
|---|---|---|
| 02:28:50 | 1 | that was attached to an email.  I just can't recall |
| 02:28:54 | 2 | without looking back. |
| 02:28:55 | 3 | Q.  Okay.  Did -- regardless of -- not even in the |
| 02:29:27 | 4 | context of nominal administrative expenses, did Carlile |
| 02:29:31 | 5 | Patchen ever advise you that it was permissible to pay |
| 02:29:34 | 6 | existing investors with new investor investments? |
| 02:29:41 | 7 | A.  Yes. |
| 02:29:42 | 8 | Q.  When did that occur? |
| 02:29:44 | 9 | A.  It occurred continuously throughout the |
| 02:29:48 | 10 | representation, including after the privilege waiver |
| 02:29:51 | 11 | date. |
| 02:29:52 | 12 | MR. HULINGS:  Let's not discuss anything |
| 02:29:53 | 13 | after the privilege waiver date.  You're instructed not |
| 02:29:58 | 14 | to answer anything about after the privilege waiver |
| 02:30:01 | 15 | date. |
| 02:30:01 | 16 | Q.  (BY MR. NASSE)  Not asking you anything about |
| 02:30:03 | 17 | after December 2019, when did you have conversation |
| 02:30:08 | 18 | where Carlile Patchen advised you that it was |
| 02:30:10 | 19 | permissible to pay existing investor with new investor |
| 02:30:16 | 20 | investments? |
| 02:30:17 | 21 | A.  We had many conversations about the reality of |
| 02:30:20 | 22 | being an issuer and complying with securities laws.  And |
| 02:30:28 | 23 | Dennis was very adamant during a lot of these |
| 02:30:30 | 24 | conversations including about this provision that money |
| 02:30:32 | 25 | was fungible, it's common sense as well. |

161

CONFIDENTIAL

| | | |
|---|---|---|
| 02:30:36 | 1 | And a lot of our discussions, when it came |
| 02:30:38 | 2 | into, like, disclosure of this, what the process would |
| 02:30:41 | 3 | be, what the internal controls would be, were around |
| 02:30:44 | 4 | that concept that Dennis kept coming back to as one of |
| 02:30:48 | 5 | his -- his major themes. |
| 02:30:50 | 6 | Q.  And it was permissible? |
| 02:30:51 | 7 | A.  It's an expense of the fund. |
| 02:30:54 | 8 | Q.  Did you -- did you ever ask Mr. Concilla or |
| 02:30:59 | 9 | anyone at Carlile Patchen whether doing so would be |
| 02:31:02 | 10 | Ponzi scheme? |
| 02:31:03 | 11 | MR. HULINGS:  Objection; vague, and legal |
| 02:31:05 | 12 | conclusion as to "Ponzi scheme." |
| 02:31:08 | 13 | But you can answer. |
| 02:31:09 | 14 | THE WITNESS:  I believe there's an email. |
| 02:31:10 | 15 | We might have even reviewed -- that was disclosed, we |
| 02:31:14 | 16 | might have even reviewed it already where Dennis gave a |
| 02:31:18 | 17 | brief example of a Ponzi scheme.  So no, he did not |
| 02:31:21 | 18 | consider what we were doing or any of the disclosures or |
| 02:31:27 | 19 | our internal processes or controls a Ponzi scheme. |
| 02:31:31 | 20 | Q.  (BY MR. NASSE)  Okay.  We can go back.  I |
| 02:31:32 | 21 | believe he says -- he discusses what are the hallmarks |
| 02:31:35 | 22 | of a Ponzi scheme.  Does that sound right? |
| 02:31:38 | 23 | A.  I believe he discusses in context to that email |
| 02:31:42 | 24 | a -- one of the elements of a Ponzi scheme as I |
| 02:31:47 | 25 | understand it and as it related to that specific |

162

CONFIDENTIAL

```
02:38:09   1              MR. HULINGS:  So objection, misstating
02:38:12   2  prior testimony, and that is vague and ambiguous.
02:38:15   3              But go ahead.
02:38:16   4              THE WITNESS:  Again, we did not hide
02:38:19   5  anything from Andy or Dennis.  We -- you can smile
02:38:25   6  and be very disrespectful --
02:38:26   7              MR. HULINGS:  Hey, hey, hey, hey.
02:38:28   8     Q.  (BY MR. NASSE)  You're not answering my
02:38:30   9  question, sir.
02:38:30  10     A.  I am answering --
02:38:30  11     Q.  I asked you a simple question.
02:38:31  12     A.  I am answering and I came here today to tell
02:38:34  13  the truth.
02:38:34  14              MR. HULINGS:  Stop, stop, stop, stop.
02:38:36  15     Q.  (BY MR. NASSE)  We can -- I asked a simple
02:38:38  16  question.  I'm happy to rephrase it.
02:38:40  17              The question was:  So you said you followed
02:38:42  18  their advice.  Is that a correct statement?  Did you
02:38:44  19  testify to that?
02:38:44  20     A.  If they advised something, we followed it.
02:38:47  21     Q.  And my question was:  That included following
02:38:49  22  their advice that it was -- that you -- in following
02:38:53  23  that advice you paid existing investors with new
02:38:56  24  investor funds?
02:38:57  25              MR. HULINGS:  So that is asked and
```

168

CONFIDENTIAL

02:38:59  1  answered.  It's vague and ambiguous.  It's

02:39:02  2  argumentative.

02:39:02  3          And to the -- again, the privilege waiver

02:39:05  4  does not exceed January 1, 2019, so to the extent the

02:39:10  5  answer involves communications after that, you are

02:39:12  6  instructed not to answer.  But you can answer as to the

02:39:19  7  question relating to prior to 2019.

02:39:22  8          THE WITNESS:  As I said before, Dennis --

02:39:24  9  one of Dennis's major things was money was fungible.

02:39:28 10  Payments to investors are expenses of the funds.  That

02:39:32 11  is why they chose the language and proper disclosure

02:39:35 12  they did and we followed their advice.

02:39:38 13      Q.  (BY MR. NASSE)  And in following their

02:39:40 14  advice -- I mean, it's -- I mean, it's a nonresponsive

02:39:44 15  answer.  My question was very simple.  I understand what

02:39:47 16  you're saying their advice was.  You're saying you

02:39:49 17  followed their advice.  I'm asking:  Did that include

02:39:53 18  paying -- and I'll be more specific -- paying priority

02:39:57 19  return payments to existing 575 investors with

02:40:04 20  investments from new 575 investors?

02:40:06 21          MR. HULINGS:  So that's -- that is vague

02:40:09 22  and ambiguous, that is argumentative, and it has been

02:40:13 23  asked and answered.

02:40:17 24          You can answer again if you can follow the

02:40:22 25  question.

                                                              169

CONFIDENTIAL

| | | |
|---|---|---|
| 02:40:22 | 1 | THE WITNESS:  One of Dennis's major themes |
| 02:40:26 | 2 | was the fungibility of money.  It's also common sense, |
| 02:40:29 | 3 | which I don't know why you can't get yourself.  Because |
| 02:40:33 | 4 | it was expenses, because we were -- it's disclosed |
| 02:40:38 | 5 | according to them, proper disclosure, and our processes |
| 02:40:43 | 6 | controls that Andy and Dennis helped form and knew well |
| 02:40:46 | 7 | of, we acted upon their advice. |
| 02:40:51 | 8 | Q.  (BY MR. NASSE)  And when you say -- you said |
| 02:40:52 | 9 | because it is -- it was expenses, what is the "it" |
| 02:40:55 | 10 | you're referring to? |
| 02:40:57 | 11 | A.  You were asking about the 575 P payments as an |
| 02:41:02 | 12 | expense of the fund according to Dennis and Andy as |
| 02:41:06 | 13 | disclosed that they felt was good disclosure, those |
| 02:41:10 | 14 | expenses of the funds can be paid fungible money in the |
| 02:41:14 | 15 | fund, one dollar in is -- could be interchanged with a |
| 02:41:17 | 16 | dollar out, and that was proper according to their |
| 02:41:20 | 17 | advice and we took their advice. |
| 02:41:23 | 18 | Q.  Did you ever ask Carlile Patchen whether you |
| 02:41:27 | 19 | could disclose -- you should disclose in the PPM that |
| 02:41:30 | 20 | you were paying existing investors with new investor |
| 02:41:34 | 21 | funds? |
| 02:41:34 | 22 | MR. HULINGS:  So -- |
| 02:41:36 | 23 | MR. NASSE:  I'm talking about in the |
| 02:41:38 | 24 | context before 2019. |
| 02:41:40 | 25 | MR. HULINGS:  Okay.  I'm going to object to |

170

CONFIDENTIAL

| | | |
|---|---|---|
| 07:05:38 | 1 | investors in the asset portfolio? |
| 07:05:40 | 2 | MR. HULINGS:  So I'm going to object to |
| 07:05:43 | 3 | vagueness, "accurately reflect," I think that's hard to |
| 07:05:49 | 4 | follow.  So objection; vague, compound. |
| 07:05:52 | 5 | THE WITNESS:  I don't know if I'm |
| 07:05:53 | 6 | understanding your question. |
| 07:05:54 | 7 | Q.  (BY MR. NASSE)  I can rephrase, that's fine. |
| 07:05:59 | 8 | So some of the policies that were held by |
| 07:06:03 | 9 | Policy Services, Inc., you just said there are |
| 07:06:04 | 10 | fractionalized interest from -- you said people from way |
| 07:06:07 | 11 | beginning of the start of Policy Services, Inc. or -- |
| 07:06:10 | 12 | A.  Yes. |
| 07:06:10 | 13 | Q.  Okay.  And you said there are interests from |
| 07:06:14 | 14 | earlier funds? |
| 07:06:20 | 15 | A.  Yes. |
| 07:06:21 | 16 | Q.  Okay.  So not the entire face value of the |
| 07:06:28 | 17 | policy would be due to investors in the575 fund based on |
| 07:06:36 | 18 | those other fractionalized or other interests in those |
| 07:06:39 | 19 | policies? |
| 07:06:40 | 20 | MR. HULINGS:  So I'm going to -- I think |
| 07:06:42 | 21 | that calls for a legal conclusion.  That's also vague. |
| 07:06:44 | 22 | You can answer it if you can follow it. |
| 07:06:48 | 23 | THE WITNESS:  I now understand sort of the |
| 07:06:51 | 24 | direction you're going with this.  And I would say -- my |
| 07:06:57 | 25 | answer would be yes and no.  But I don't know for sure |

300

CONFIDENTIAL

```
07:06:59   1   because I don't have the underlying calculations that I
07:07:02   2   did to go in there and confirm that.
07:07:06   3       Q.  (BY MR. NASSE)  Your answer would be yes and
07:07:10   4   no.  I understood the rest of it, but I don't know what
07:07:13   5   you mean by that.  What do you mean by yes and no?
07:07:15   6       A.  I understand your question as in, yes, part of
07:07:17   7   the life policies with interests that have been assigned
07:07:21   8   to the other parties we talked about would be part of
07:07:23   9   the face value.  So yes.
07:07:25  10           And no, in that I don't know this specific
07:07:29  11   value here, how I calculated that value, without going
07:07:32  12   back and looking at how I compiled -- if I even have the
07:07:37  13   spreadsheets anymore -- how I compiled these numbers.
07:07:39  14       Q.  Did you ever speak with Carlile Patchen in
07:07:42  15   regards to when displaying the asset portfolio values
07:07:48  16   whether you had to account for the fact that there were
07:07:51  17   other fractionalized interests or other interests in the
07:07:56  18   face value of the life policies?
07:07:58  19       A.  I disagree with the way you're characterizing
07:08:01  20   it.  And I don't recall for certain.  I mean, with the
07:08:07  21   hundreds if not thousands of hours that we spent working
07:08:10  22   on these, did it come up?  Probably.  But I can't recall
07:08:14  23   specific on this specific issue.
07:08:16  24       Q.  Okay.  Turn back to what's been previously
07:09:00  25   marked as Exhibit 5, which is the 2019 575 fund.
```

301

CONFIDENTIAL

07:31:54   1   document ending in Bates No. 1080, paragraph 23.

07:32:05   2        A.   Sorry.  20 --

07:32:10   3        Q.   23.

07:32:10   4        A.   Okay.

07:32:10   5        Q.   Do you see the paragraph "Compensation"?

07:32:12   6        A.   Yes.

07:32:13   7        Q.   Okay.  Was your -- you received compensation

07:32:18   8   from Policy Services, Inc.; is that correct?

07:32:20   9        A.   I received a salary from Policy Service.

07:32:23  10        Q.   Okay.  Was your compensation Policy Services,

07:32:26  11   Inc. pursuant to the paragraph 23 of Exhibit 42?

07:32:30  12              MR. HULINGS:  Objection; calls for a legal

07:32:37  13   conclusion, vague.

07:32:39  14              THE WITNESS:  I don't know how to answer

07:32:55  15   that question, other than I took compensation from -- or

07:33:01  16   salary from Policy Services, I took it from well before

07:33:05  17   the575 occurred.  I don't remember ever invoking or

07:33:12  18   using this provision.  It doesn't mean that it doesn't

07:33:18  19   apply, but I don't know.  I'd have to -- you know, I

07:33:22  20   don't remember specific advice from CPM on this.  But I

07:33:27  21   don't see how this applies to anything that I actually

07:33:30  22   did or actually happened.

07:33:31  23        Q.   (BY MR. NASSE)  Did you -- do you recall ever

07:33:35  24   receiving a written approval of your compensation?

07:33:41  25              MR. HULINGS:  Objection; vague as to

                                                                 310