IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>      Plaintiff,<br><br>         -against-<br><br>ROBERT J. MUELLER, DEEPROOT FUNDS LLC (a/k/a dprt Funds, LLC), AND POLICY SERVICES INC.,<br><br>      Defendants,<br><br>         -and-<br><br>DEEPROOT TECH LLC, DEEPROOT PINBALL LLC, DEEPROOT STUDIOS LLC, DEEPROOT SPORTS & ENTERTAINMENT LLC, AND DEEPROOT RE 12621 SILICON DR LLC,<br><br>      Relief Defendants. | Civil Action No.:  5:21-cv-785-XR |

PLAINTIFF SECURITIES AND EXCHANGE COMMISSION'S
RESPONSE TO DEFENDANT MUELLER'S OBJECTIONS AND
<u>MOTION TO STRIKE SUMMARY JUDGMENT EVIDENCE</u>

## <u>TABLE OF CONTENTS</u>

I. Introduction ................................................................................................................. 1

II. The Declarations of SEC Accountant Sachin Verma (Exhibits 1 and 29) are Proper Summaries Pursuant to FRE 1006 ...................................................................................... 1

 A. Courts Routinely Admit Similar Summary Evidence from SEC Accountants and Other Witnesses ............................................................................................... 1

 B. The Court Should Overrule Mueller's Other Objections to Verma's Declarations 5

III. The SEC's Remaining Exhibits Are Appropriate Summary Judgment Evidence ............. 7

 A. Mueller's Interrogatory Responses (Exhibit 9) ........................................................ 8

 B. Mueller's Email Exchange with Dennis Concilla (Exhibit 10) ............................. 9

 C. Deposition Testimony of Defendant Mueller, Scott Allen, Dennis Concilla and Andrew Federico (Exhibits 14, 23, 31 and 33) ..................................................... 10

 D. Mueller's Assertions of his Fifth Amendment Right Against Self-Incrimination (Exhibit 20) ........................................................................................................ 11

 E. Scott Allen's Resignation Memo (Exhibit 22) ..................................................... 13

 F. Expert Reports of Bill Post (Exhibits 27 and 28) ................................................ 16

 G. Investors' Declarations (Exhibits 34, 35, 36, 37, and 38) ..................................... 19

IV. Conclusion ................................................................................................................ 20

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Air Liquide Am. Corp. v. Crain Bros., Inc.*,

    11 F.Supp.2d 709 (S.D. Tex. 1997) ................................................................. 15

*BCC Merch. Sols., Inc. v. Jet Pay, LLC*,

    129 F.Supp.3d 440 (N.D. Tex. 2015) ............................................................... 8

*Buford v. Howe*,

    10 F.3d 1184 (5th Cir. 1994) ................................................................... 12, 13

*Daubert v. Merrell Dow Pharmaceuticals, Inc.*,

    509 U.S. 579 (1993) ....................................................................................... 17

*El-Bawab v. Jackson State Univ.*,

    No. 3:11CV553-DPJ-FKB, 2013 WL 3884128 (S.D. Miss. July 26, 2013)) ............... 15

*Groobert v. President and Directors of Georgetown College*,

    219 F.Supp.2d 1 (D.D.C. 2002) ................................................................. 17, 18

*Guy v. Crown Equipment Corp.*,

    394 F.3d 320 (5th Cir. 2004) ......................................................................... 17

*Kumho Tire Co., Ltd. v. Carmichael*,

    526 U.S. 137 (1999) ....................................................................................... 17

*Lee v. Offshore Logistical & Transp., L.L.C.*,

    859 F.3d 353 (5th Cir. 2017) ........................................................................... 7

*LSR Consulting, LLC v. Wells Fargo Bank, N.A.*,

    835 F.3d 530 (5th Cir. 2016) ........................................................................... 7

*Maurer v. Indep. Town*,

    870 F.3d 380 (5th Cir. 2017) ..................................................................... 7, 8

*Mendez v. Caterpillar Inc.*,

    No. SA-09-CA-978-XR, 2011 WL 6999659 (W.D. Tex. Dec. 16, 2011)................... 11

*Mendez v. Poitevent*,

    No. DR-13-CV-0065-AM-VRG, 2014 WL 12639318 (W.D. Tex. Sept. 30, 2014)10, 11

*Montes v. Phelps Dodge Indus., Inc.*,

    481 F.Supp.2d 700 (W.D. Tex. 2006) .................................................... 13, 14

*Noviello v. Holloway Funding Grp.*,

    No. 3:22-CV-52-BN, 2023 WL 128395 (N.D. Tex. Jan. 9, 2023) ........................ 13, 16

*SEC v. Am. Commodity Exch., Inc.*,

    546 F.2d 1361 (10th Cir. 1976) ..................................................................... 12

*SEC v. Carter*,

    No. 4:19-CV-100-SDJ-KPJ, 2020 WL 6379239 (E.D. Tex. Sept. 4, 2020)..... 12, 19, 20

*SEC v. Lifepay Grp., LLC*,

    No. CV H-18-1098, 2020 WL 1259328 (S.D. Tex. Feb. 26, 2020)).......................... 3, 4

*SEC v. Milles*,

    No. 1:19-CV-714-RP 2022 WL 206808 (W.D. Tex. Jan. 24, 202)............................. 12

*SEC v. Seghers,*

    298 Fed. Appx. 319 (5th Cir. 2008)) ......................................................... 3, 4

*SEC v. Voight*,

    No. CV H-15-2218, 2021 WL 5177779 (S.D. Tex. Feb. 3, 2021) ................................ 4

*Tijerina-Salazar v. Venegas*,

    No. PE:19-CV-00074-DC, 2022 WL 1927007 (W.D. Tex. June 3, 2022).................. 11

*United States v. Baker*,

    923 F.3d 390 (5th Cir. 2019) ....................................................................... 3

*United States v. Central Gulf Lines, Inc.*,

    747 F.2d 315 (5th Cir. 1984) ............................................................. 14, 15

*United States v. Fullerton*,

    No. 1:21-CR-216-RP, 2023 WL 6150782 (W.D. Tex. Sept. 20, 2023) ....................... 6

*United States v. Herman*,

    997 F.3d 251 (5th Cir. 2021) ....................................................................... 9

*United States v. Jennings*,

    724 F.2d 436 (5th Cir. 1984) ....................................................................... 4

*United States v. Jones*,

    663 F.2d 567 (5th Cir. 1981) ....................................................................... 9

*Webb v. Lincoln Par. Sheriffs Off.*,

    No. CV 17-1605, 2019 WL 6312896 (W.D. La. Nov. 21, 2019) ............................... 16

*Wilander v. McDermott Int'l, Inc.*,

    887 F.2d 88 (5th Cir.1989) ....................................................................... 14

**Rules**

FRCP 12....................................................................................................... 2, 3

FRCP 26........................................................................................................... 3

FRCP 37........................................................................................................... 3

FRCP 56.............................................................................................. 1, 2, 8, 10, 19

FRE 106 ....................................................................................................... 9

FRE 402 ..................................................................................................... 12

FRE 403 ..................................................................................................... 12

FRE 702 .................................................................................... 3, 16, 17, 18

FRE 703 ....................................................................................................... 3

FRE 705 ....................................................................................................... 3

FRE 801 ........................................................................................... 9, 15, 20

FRE 803 ........................................................................................... 9, 13, 14

FRE 1006 ......................................................................................... 1, 3, 4

I.      **Introduction**

        Defendant Mueller's Objections and Motion to Strike, ECF No. 109, ("Mueller's

Motion") asks the Court to strike declarations by an SEC accountant and objects to many of the

exhibits the SEC submitted to the Court in support of its Motion for Summary Judgment as to

Liability, ECF No. 103, ("Motion for Summary Judgment"). The Court should overrule

Mueller's objections and deny Mueller's motion to strike in its entirety.

        Each of the exhibits to which Mueller objected are also appropriate summary judgment

evidence. The declarations of the SEC's accountant are nothing more than summaries of

voluminous financial records, which courts consistently find admissible pursuant to Federal Rule

of Evidence 1006. As for the remaining exhibits, in many instances Mueller applied the wrong

standard when objecting—insisting that the Court rule on each and every objection Mueller's

counsel asserted during written and deposition discovery before considering the evidence.

Federal Rule of Civil Procedure 56(c)(2) is clear, at summary judgment, an objection should only

be sustained if the content of the evidence submitted could not be presented in a form that would

be admissible at trial. Mueller's form objections during discovery are not grounds to exclude

summary judgment evidence. For the reasons discussed below, Mueller's other non-form

objections, including to his own testimony, his own interrogatory responses, deeproot

documents, and declarations by deeproot's investors are also unfounded.

II.     **The Declarations of SEC Accountant Sachin Verma (Exhibits 1 and 29) are Proper
        Summaries Pursuant to FRE 1006**

        A.      **Courts Routinely Admit Similar Summary Evidence from SEC Accountants
                and Other Witnesses**

        In support of its Motion for Summary Judgment, the SEC submitted to the Court two

declarations of SEC Accountant Sachin Verma. Exhibit 29 is a declaration Verma prepared in

October 2021, in support of the SEC's Response to Mueller's Brief Regarding Use of Funds

Subject to Asset Freeze, ECF No. 16, ("SEC's Brief Regarding Asset Freeze"). In Exhibit 29,

Verma summarized voluminous records by (1) adding the total amount invested in the Funds[1]

based on the deeproot Entities' corporate bank accounts ("deeproot Accounts"); (2) adding the

total amount the deeproot Entities spent to acquire or maintain insurance policies; (3) adding the

total amount transferred from the deeproot Accounts for the benefit of the deeproot Affiliated

Companies; (4) adding the total amount transferred from the deeproot Accounts to pay personal

expenses for Mueller and his family; and (5) calculating the amount of new investor money that

was used to pay prior investors in the Funds, i.e., Ponzi-like payments. Ex. 29, ECF 103-4 at 69.

Exhibit 1 updates Verma's earlier work and expands his summary by: (1) detailing

information about PSI's most recent attempted purchases of insurance policies in April and May

2017; (2) adding the amount the deeproot Entities paid to investors in other deeproot funds using

money obtained from investors in the 575 and dGRD Funds; (3) calculating that the Funds only

spent approximately 18% of investors' money to purchase insurance policies; (4) adding the total

amount the Funds spent on operating costs and transfers to Mueller's Affiliated Companies and

comparing to the percentages disclosed in the PPMs; (5) summarizing records of the deeproot

Entities' sales of "fractionalized shares" of insurance policies; and (6) tracing the flow of funds

after PSI received proceeds from insurance policies. Ex. 1, ECF No. 103-2 at 1.

Mueller contends that Verma's declaration and the attached appendixes somehow

constitute expert testimony and that the Court should strike[2] them because the SEC did not notice

---

[1] Defined terms are the same as those used in the SEC's Motion for Summary Judgment.

[2] Moreover, Mueller's motion to strike exhibits is mischaracterized. An objection pursuant to
Rule 56(c)(2) to evidence is the appropriate form to contest summary judgment evidence.
Motions to strike, pursuant to Rule 12(f), are limited to an "insufficient defense or any

Verma as an expert pursuant to the Court's Fifth Amended Scheduling Order, ECF No. 102,

("Scheduling Order") and Federal Rule of Civil Procedure ("FRCP") 26(a)(2)(A). ECF No. 109,

Mueller's Motion at 2-6. Far from offering an expert opinion, Verma merely summarized

Mueller and the deeproot Entities' bank records using basic math.[3] The Commission is entitled to

use "a summary, chart, or calculation to prove the content of voluminous writings, recordings, or

photographs that cannot be conveniently examined in court." Fed. R. Evid. ("FRE") 1006.

The Fifth Circuit "expressly allows summary witnesses to summarize voluminous records

in complex cases." *SEC v. Lifepay Grp., LLC*, No. CV H-18-1098, 2020 WL 1259328, at *6

(S.D. Tex. Feb. 26, 2020)  (quoting *United States v. Baker,* 923 F.3d 390, 397 (5th Cir. 2019),

*report and recommendation adopted,* 2020 WL 1308202 (S.D. Tex. Mar. 16, 2020). While

Verma possesses specialized knowledge as an accountant, and the review of the voluminous

bank records may have been tedious, it did not require his specialized expertise. *See SEC v.

Seghers*, 298 Fed. Appx. 319, 326 (5th Cir. 2008) (affirming admission of summary chart

prepared by an SEC employee comparing disclosures made to investors with data from

---

redundant, immaterial, impertinent, or scandalous matter" in a pleading. As the Committee Notes
to the 2010 amendments to Rule 56(c) state, "[t]here is no need to make a separate motion to
strike. If the case goes to trial, failure to challenge admissibility at the summary-judgment stage
does not forfeit the right to challenge admissibility at trial."

[3] FRCP 26(a)(2)(A) requires disclosure of "any witness it may use at trial to present evidence
under [FRE] 702, 703, or 705." FRCP 26(a)(1)(A)(i) requires disclosure "of each individual
likely to have discoverable information." Mr. Verma falls under neither category as he is not
providing expert testimony nor does he, as a witness summarizing financial records produced by
Mueller and others, "*have* discoverable information." He has no first-hand knowledge of the
facts at issue. Nevertheless, out of an abundance of caution, the SEC alerted Mueller, through its
Initial Disclosures that it may use a summary witness at trial and that it would disclose the
witness at the appropriate time. Mueller Motion at 3 (highlighted box). The appropriate time, as
required by the Court's Scheduling Order, is October 6, 2023, the date the Court set for the
parties to file witness lists. ECF No. 102. Accordingly, the consequences for failing to disclose a
witness, discussed in FRCP 37(c), namely that a party is not allowed to present the witness in
support of a motion or at trial "unless the failure was substantially justified," do not apply.

underlying financial records); *United States v. Jennings*, 724 F.2d 436, 443 (5th Cir. 1984)

("[W]hen a chart does not contain complicated calculations requiring the need of an expert for

accuracy, no special expertise is required in presenting the chart."); *Lifepay Grp., LLC*, 2020 WL

1259328, at*5-6  (denying motion to strike SEC accountant testimony where the witness "traced

the flow of funds through various entities and created a summary chart" and made mathematical

calculations "totaling the deposits and withdrawals related to various entities"); *SEC v. Voight*,

No. CV H-15-2218, 2021 WL 5177779, at *1 (S.D. Tex. Feb. 3, 2021) (report and

recommendation finding declaration from SEC accountant was admissible FRE 1006 evidence in

remedies hearing). A person is a summary witness, not an expert, when all they do is review

financial records and make calculations from them. *Id.* Mueller has not offered a single example

of a court striking this type of summary evidence or testimony.

Moreover, Mueller had options to challenge the SEC's summaries. Mueller could have

calculated the same figures, independent of Verma's summaries, by reviewing the underlying

routine financial records and making his own calculations. If Mueller disagreed with Verma's

summaries, he could have submitted his own summary in support of his Response to the SEC's

Motion for Summary Judgment, ECF No. 108 ("Mueller Response"). Mueller has had much of

the underlying data and line-by-line calculations since at least October 2022 when the SEC

amended its response to Mueller's Interrogatory 7, in which Mueller asked the SEC to:

> Please identify each payment, transfer, expenditure, or other disbursement of
> funds that You allege "contraven[ed] the investment allocation strategy of the
> Funds presented to investors," as alleged in Paragraph 54 of the Complaint,
> including the date, amount, payor, and recipient of each such payment, transfer,
> expenditure, or disbursement.

Ex. 50 at 14-15.[4] In response, the SEC produced an Excel spreadsheet with over 1,000 rows of data underlying the SEC's calculations at that time. Appendix and Declaration in Support ("Appendix") ¶ 4. Further, if the case proceeds to trial, Mueller is free to cross examine Verma on his calculations. The Court should therefore deny Mueller's motion to strike Exhibits 1 and 29 and deny his motion to exclude Verma from testifying at trial.

**B.     The Court Should Overrule Mueller's Other Objections to Verma's Declarations**

Mueller makes several other objections to Verma's declarations. Mueller argues that Verma failed to identify the source documents on which he relied in preparing his summaries. Motion at 6. However, attached as Appendix A-1 to both Exhibits 1 and 29 is a list of accounts that Verma reviewed and summarized in preparing his declarations. ECF No. 103-2 at 15; ECF No. 103-4 at 76. The financial records for these accounts were produced in discovery. Appendix ¶ 5. In Exhibit 1, Verma also states that he reviewed Mueller's Sworn Accounting, identified by Bates number; Life Settlement Certificates, also identified by Bates number; the deeproot Portal, identified by web address; and Quickbooks records from the deeproot Entities. *See* Ex. 1, ¶¶ 4, 26, 27, FN 8. Mueller is well versed in these deeproot Entities' records, including the Quickbooks records and the deeproot Funds Portal, which were the subject of Mueller's June 2023 subpoena to John Patrick Lowe, Bankruptcy Trustee for the deeproot Entities. Ex. 51.

Mueller also objects to what he contends is a contradiction between paragraphs 16 and 21(r) of Verma's report, which Mueller argues shows a lack of consistency. Paragraph 16 totals over $2 million in income the deeproot Accounts received from various sources and compares

---

[4] The SEC marked its Amended Responses and Objections to Mueller's First Set of Interrogatories (Exhibit 50) as "Confidential Subject to Protective Order" because it included personally identifiable information ("PII"). The SEC redacted the PII from Exhibit 50.

that amount to over $4 million the 575 Fund paid to investors, calculating a difference of $2,038,959. Footnote 6 details the source of the income.

Paragraph 21 explains in detail the math that underlies Verma's calculation that the deeproot Entities transferred or spent more than $50 million of the investors' money for the benefit of the Affiliated Companies or operating costs. Contrary to Mueller's assertion of inconsistency, Paragraph 21(i) explicitly incorporates the math Verma summarized in paragraph 16. Paragraph 21(r), which is the focus of Mueller's attention, adds amounts the Deeproot Accounts received from investors in the Debenture Funds and loans Mueller received from the government during COVID. For obvious reasons, money the deeproot Entities received from government COVID loans and Debenture Fund investments was not available to pay the over $4 million due to 575 Fund investors, which is the math Verma summarized in Paragraph 16. *See, e.g.*, *United States v. Fullerton*, No. 1:21-CR-216-RP, 2023 WL 6150782, at *1 (W.D. Tex. Sept. 20, 2023) ("PPP loans were designed to provide relief to small businesses during the COVID-19 pandemic by allowing businesses to continue to pay their workers."). Paragraphs 16 and 21(r) are consistent and the Court should overrule Mueller's objection to those paragraphs.

Mueller also objects to the use of the word "assume" in Paragraph 18. Motion at 7. Verma states in Paragraph 18 that he "assumes," granting Mueller the benefit of the doubt, that any income received by the Affiliated Companies was used to pay investors, thus reducing the total Ponzi-like payments. Paragraph 18 does little more than explain why Verma subtracted $2 million in income from $4 million in investor payments in Paragraph 16. If Mueller believes the two million should not have been subtracted, he was certainly free to make that argument in his Response to the SEC's Motion for Summary Judgment. The Court should overrule Mueller's objection to Verma's assumption, which if anything, benefited Mueller.

Mueller objects to Paragraph 21(f), which summarizes Verma's addition of $15 million in payments that "appear to be for the benefit of the Affiliated Businesses." *Id*. Mueller argues that Verma's statement is devoid of any evidentiary basis, speculative, and conclusory. *Id*. Mueller fails to mention that the SEC provided line by line data for nearly the same calculation when it answered Mueller's Interrogatory 7. Appendix ¶ 4, *see supra* at 4-5. If Mueller disagreed with Verma's math he could have made the argument in his Response to the SEC's Motion for Summary Judgment.

Finally, Mueller argues that in Paragraphs 22 to 25 of Exhibit 1, Verma made an improper lay opinion and provided a legal conclusion. Motion at 7. In Paragraphs 22 to 25, Verma adds the total amount spent by the Deeproot Entities for the benefit of the Affiliated Companies and operating costs and divides those amounts by the total invested in the Funds to create a percentage. Verma then compares those percentages to percentages he was "instructed" to assume: 20% for company advances; 50% for Affiliated Companies for the 575 Fund; 30% for Affiliated Companies for the dGRD Fund. Verma is not offering a legal or lay opinion, he is comparing two numbers and stating which is larger. Mueller himself does not dispute the percentages Verma was "instructed" to assume, which alone is grounds to overrule Mueller's objection to Paragraphs 22 to 25. *See* Mueller's Opposition at 22 (table).

For the reasons cited above, the Court should deny Mueller's motion to strike Verma as a trial witness and overrule his objections to Exhibits 1 and 29.

## III.   The SEC's Remaining Exhibits Are Appropriate Summary Judgment Evidence

At the summary judgment stage, "materials cited to support or dispute a fact need only be *capable* of being 'presented in a form that would be admissible in evidence.'" *Maurer v. Indep. Town*, 870 F.3d 380, 384 (5th Cir. 2017) (emphasis in original) (quoting *LSR Consulting, LLC v.*

*Wells Fargo Bank, N.A.*, 835 F.3d 530, 534 (5th Cir. 2016)); *Lee v. Offshore Logistical &*

*Transp., L.L.C.*, 859 F.3d 353, 355 (5th Cir. 2017) (quoting 11 MOORE'S FEDERAL

PRACTICE–CIVIL ¶ 56.91 (2017)) ("Although the substance or content of the evidence

submitted to support or dispute a fact on summary judgment must be admissible . . ., the material

may be presented in a form that would not, in itself, be admissible at trial.") *as revised* (July 5,

2017). As the Fifth Circuit recognized, "[t]his flexibility allows the court to consider the

evidence that would likely be admitted at trial . . . without imposing on parties the time and

expense it takes to authenticate everything in the record." *Maurer*, 870 F.3d at 384. The proper

objection under FRCP 56(c)(2) is that evidence "cannot be" admitted at trial, which is not an

objection that Mueller makes here. Motion at 6-25; *see BCC Merch. Sols., Inc. v. Jet Pay, LLC*,

129 F.Supp.3d 440, 463 n.20 (N.D. Tex. 2015) ("Importantly, defendants do not actually

question the authenticity of these documents, which BCC shows it will be able to prove at trial.

Thus, Defendants have not shown that these materials 'cannot be presented in a form that would

be admissible in evidence.'") (quoting FRCP 56(c)(3)).

Almost none of Mueller's objections are proper objections under Rule 56(c)(2), and

therefore should be summarily overruled. Even assuming that Mueller's objections are

appropriate objections, which they are not, the SEC lays out in detail, below, why each of

Mueller's objections lack merit and should be denied.

### A.   Mueller's Interrogatory Responses (Exhibit 9)

Mueller objects to the SEC's citation to his Objections and Responses to Plaintiffs' [sic]

First Set of Interrogatories ("Interrogatory Responses"), which the SEC marked as Exhibit 9.

Motion at 7-8. Mueller argues that the Court cannot consider his Interrogatory Responses unless

the Court first overrules each objection Mueller lodged in responding to the interrogatories. *Id.* at

8. Nevertheless, Mueller himself marked the same Interrogatory Responses as an exhibit, ECF No. 108-19, in Response to the SEC's Motion for Summary Judgment, which is grounds alone to overrule his objection.

The SEC cited Exhibit 9 for the unremarkable proposition that, according to Mueller, the 575 Fund used four different versions of the 575 PPM (Exhibits 2-5), three different versions of the dGRD PPM (Exhibits 6-8), and that both Funds used two different versions of Operating Agreements (Exhibits 24-26). The SEC marked as exhibits the PPMs and Operating Agreements Mueller stated the Funds used. Mueller did not separately object to those exhibits. Quite the opposite, in his Response, Mueller quoted directly from some of the same documents. *See, e.g.*, Mueller Response at 7 (citing Exhibits 2-8).

There is little doubt that Mueller's Interrogatory Responses would qualify as a statement by a party opponent under FRE 801 and the PPMs and Operating Agreements would qualify as records of regularly conducted activity, commonly referred to as a business record, under FRE 803(6). Accordingly, the Court should overrule Mueller's objections to his own Interrogatory Responses.

### B.    Mueller's Email Exchange with Dennis Concilla (Exhibit 10)

Mueller objects to the SEC's citation to Exhibit 10, an email exchange between Mueller and Dennis Concilla, on the grounds that the exhibit is incomplete and therefore misleading. Mueller Response at 8. Mueller does not state in his brief why Exhibit 10 is incomplete or misleading.

"Federal Rule of Evidence 106, which 'partially codifies' the common law rule of completeness, 'guards against admission into evidence of truncated statements likely to present an out-of-context picture to the jury.'" *United States v. Herman*, 997 F.3d 251, 263–64 (5th Cir.

2021), *cert. denied*, 142 S. Ct. 787, (2022) (quoting *United States v. Jones*, 663 F.2d 567, 571 (5th Cir. 1981)). In this case, there is no indication from the face of the document that Exhibit 10 is incomplete. The SEC marked Exhibit 10 in the same form that it was produced by defendant Mueller in this litigation. Appendix ¶ 6. Mueller was also free, in support of either his Motion or his Response to the SEC's Summary Judgment Motion to mark any additional documents to complete or add context for Exhibit 10, which he did not. The Court should therefore overrule Mueller's objection to Exhibit 10.

      **C.**    **Deposition Testimony of Defendant Mueller, Scott Allen, Dennis Concilla and Andrew Federico (Exhibits 14, 23, 31 and 33)**

Mueller objects to the SEC's reliance on deposition testimony from Scott Allen (Exhibit 23), Dennis Concilla (Exhibit 31), Andrew Federico (Exhibit 33) and Mueller himself (Exhibit 14). Mueller argues that because his counsel asserted objections during the depositions, the Court must rule on each objection before considering the testimony. Mueller's objections during the depositions primarily consist of form objections. In his Motion to Strike, Mueller quotes thirteen pages of questions, objections, and answers. Motion at 11-24. The objections were primarily to form, i.e., lack of foundation, hypothetical, argumentative, facts not in evidence, speculation, vague, compound, legal conclusion, and asked and answered. *Id.*

As an initial matter, and discussed in detail, *supra*, Mueller's objections are insufficient under FRCP 56(c)(2), which requires an objection that "a fact cannot be presented in a form that would be admissible in evidence." Since Mueller did not argue that the SEC could not present the same evidence in an admissible form at trial, the Court should disregard Mueller's objections.

Courts faced with reviewing large swaths of summary judgment evidence to which the objecting party has failed to identify specific inadmissible facts have overruled such objections. *See, e.g.*, *Mendez v. Poitevent*, No. DR-13-CV-0065-AM-VRG, 2014 WL 12639318, at *3

(W.D. Tex. Sept. 30, 2014), *aff'd*, 823 F.3d 326 (5th Cir. 2016) ("The court is not required to review large quanta of evidence to ferret out inadmissible statements. Rather, Federal Rule of Evidence 103(a)(1) requires an objecting party to make specific objections detailing the specific evidence the party wishes to have stricken and stating the specific grounds upon which each piece of evidence should be stricken.").

In a case such as this, where a party opposing summary judgment has primarily made form objections, it is clear that even if the form objections are well founded, they could be corrected at trial by calling the witnesses who were deposed. *See Tijerina-Salazar v. Venegas*, No. PE:19-CV-00074-DC, 2022 WL 1927007, at *21 (W.D. Tex. June 3, 2022) (overruling objection to deposition testimony from another action used to support summary judgment because "Plaintiff could readily submit this evidence in an admissible form at trial by, for instance, calling [the] witnesses."). In contrast, in the *Mendez* case cited Mueller, the objecting party made hearsay objections that could not be cured at trial. *Mendez v. Caterpillar Inc.*, No. SA-09-CA-978-XR, 2011 WL 6999659, at *7 (W.D. Tex. Dec. 16, 2011), *report and recommendation adopted*, No. SA-09-CV-978-XR, 2012 WL 90492 (W.D. Tex. Jan. 11, 2012). The Court should therefore overrule Mueller's objections to deposition testimony because he has failed to articulate why the testimony would be inadmissible at trial.

### D.   Mueller's Assertions of his Fifth Amendment Right Against Self-Incrimination (Exhibit 20)

In support of its Motion for Summary Judgment, the SEC cited questions it asked about Mueller's use of investor money to purchase personal items for himself and his family. Ex. 20 at 368:8-15; 370:3-16; 371:6-15; 373:18-23; 375:21-25; 378:5-23; 383:1-384:1. The questions were asked during the investigative phase of this matter. *Id.* In response to those questions, Mueller

asserted his Fifth Amendment right against self-incrimination. *Id*. Mueller argues that the Court

should strike the SEC's questions and Mueller's answers.

Mueller offers three reasons for the Court to strike. First, Mueller argues that he testified

before the filing of this case and that he later answered all of the questions at his deposition. The

fact that Mueller later answered other questions during his deposition is immaterial. Mueller does

not argue, because he cannot, that he answered questions about his use of investors' funds for

personal expenses at his deposition. The only testimony on this point then is from Mueller's

investigative testimony. Courts routinely consider testimony taken during an SEC investigation

in support of a motion for summary judgment. *See, e.g.*, *SEC v. Carter*, No. 4:19-CV-100-SDJ-

KPJ, 2020 WL 6379239, at *5 (E.D. Tex. Sept. 4, 2020) (quoting *SEC v. Am. Commodity Exch.,

Inc.*, 546 F.2d 1361, 1369 (10th Cir. 1976)) ("Congress has chosen to authorize the SEC to

subpoena witnesses and to take question and answer statements under oath . . . .These are

equivalent to affidavits in terms of the quality of the evidence involved."), *report and

recommendation adopted*, No. 4:19-CV-100-SDJ, 2020 WL 6304889 (E.D. Tex. Oct. 28, 2020).

Second, Mueller states without giving a reason, that his prior testimony should be

excluded pursuant to FRE 402, which states "[r]elevant evidence is admissible unless" the

United States Constitution, a federal statute, the Federal Rules of Evidence, or other rules

prescribed by the Supreme Court state otherwise. As the court recognized in *Carter*, testimony

taken by the SEC during investigations is admissible in support of summary judgment. *Id.* Courts

also routinely consider a defendant's assertion of their Fifth Amendment privileges when

considering a motion for summary judgment by the SEC. *See, e.g.*, *SEC v. Milles*, 2022 WL

206808, at *5 (W.D. Tex. Jan. 24, 2022). There are no grounds to strike Mueller's investigative

testimony under FRE 402.

Third, Mueller argues that the Court should strike his assertion of his Fifth Amendment privilege against self-incrimination under FRE 403, which allows a court to "exclude relevant evidence if its probative value is substantially outweighed by . . . unfair prejudice, confusing the issues, misleading the jury," and others. A "trial judge has wide discretion in making a Rule 403 determination." *Buford v. Howe*, 10 F.3d 1184, 1189 (5th Cir. 1994) (citations omitted). "And the Court's discretion is wider here because, at the summary judgment stage, there is no danger that failing to exclude this evidence would mislead or confuse the jury." *Noviello v. Holloway Funding Grp.*, No. 3:22-CV-52-BN, 2023 WL 128395, at *5 (N.D. Tex. Jan. 9, 2023) (quotation omitted). In this instance, where the Court, not a jury, is considering Mueller's prior testimony there is little risk of undue prejudice. Accordingly, the Court should deny Mueller's objection to his own testimony in Exhibit 20.

### E.      Scott Allen's Resignation Memo (Exhibit 22)

Scott Allen resigned from deeproot in October 2020 and provided Mueller a resignation letter and memo. Ex. 23.1 239:2-4.[5] Mueller objects to the memo, Exhibit 22, and asks the Court to strike it on the grounds that it is inadmissible hearsay. In the alternative, Mueller asks the Court to strike the portion of the memo in which Allen warned Mueller that the 575 Fund, "in functional operation it looks and feels like a Ponzi scheme." Ex. 22.

Exhibit 22 is admissible as a business record of the deeproot Entities pursuant to Rule of Evidence 803(6).

> In order to be admissible under this business records exception, the statement must meet the following elements: 1) the document was made at or near the time of the matters recorded therein, 2) the document was prepared by, or from

---

[5] The SEC marked relevant portions of Allen's deposition transcript as Exhibit 23 to its Motion for Summary Judgment. Exhibit 23.1 adds the additional pages cited in this brief to the original Exhibit 23.

> information transmitted by a person with knowledge of the matters recorded, 3) the person who prepared the document was engaged in a regularly conducted business activity, 4) it was the regular practice of the business to make such documents, and 5) the document was retained and kept in the course of some regularly conducted business activity.

*Montes v. Phelps Dodge Indus., Inc.*, 481 F.Supp.2d 700, 709 (W.D. Tex. 2006) (citing *Wilander v. McDermott Int'l, Inc.*, 887 F.2d 88, 91 (5th Cir.1989)). As Allen testified, he wrote the memo once he decided to resign based on his personal knowledge of the deeproot Entities' and Mueller's business practices. Ex. 23.1 at 239:15-240:6; 242:11-15; 242:23-243:7. Allen prepared the memo himself and considered it his duty as an employee and his professional responsibility. *Id.* at 240:7-11. Allen provided a digital and hard copy to Mueller and a hard copy to Stephanie Lee, a deeproot human resources employee. *Id.* at 240:12-16. In response, Allen received a confirmation from Stephanie Lee. *Id.* at 240:18-240:21. In short, Allen prepared the memo at or near the time of his resignation, based on his personal knowledge, in fulfillment of his professional responsibilities as an employee of the deeproot Entities, and transmitted the memo to Mueller and human resources. The memo is clearly a business record of the deeproot Entities.

In the alternative, if the Court finds that Exhibit 22 fails to satisfy the elements of a business record under FRE 803(6), the Court should still consider Exhibit 22 as non-hearsay evidence of notice to Mueller. "Evidence introduced to prove merely that notice was given is not offered to prove the truth of the matter asserted therein and, therefore, is not hearsay." *United States v. Central Gulf Lines, Inc.*, 747 F.2d 315, 319 (5th Cir. 1984) (citations omitted). Notice is particularly relevant in this case because Mueller's primary defense is that he lacked the "requisite intent to defraud." Mueller Response at 2.

Allen's resignation memo put Mueller on notice of Allen's concerns, all of which are material to Mueller's state of mind. Not only did Allen warn Mueller that his business "looks and

feels like a Ponzi scheme" he also warned him that "as evidenced with the recent missed 575-

Periodic payments, it has become clear that your chosen strategies and methods . . . have been

relying entirely on incoming capital from new investors to be able to honor commitments to

previous investors." Ex. 22. Allen also alerted Mueller that "his explanations of 'accounting

methods' and attributing the missed payments to 'cashflow' difficulties" were not consistent with

maintaining compliance and operating legitimately. *Id.* Allen also advised Mueller to hire a

financial officer or controller to assist with planning and budgeting and that his "chosen

budgeting strategy and method [was] not working and [was] not sustainable." *Id.*

Because Allen's resignation memo may be offered to show notice to Mueller of concerns

by an employee tasked with communicating with and raising money from investors, Ex. 23.1

33:5-12, the memo is by definition, not hearsay. FRE 801(c)(2); *Central Gulf Lines*, 747 F.2d at

319; *El-Bawab v. Jackson State Univ.*, No. 3:11CV553-DPJ-FKB,  2013 WL 3884128, at *9-10

(S.D. Miss. July 26, 2013) (finding email was offered to show notice and not the truth of the

matter asserted in the email and therefore was not hearsay under FRE 801(c)(2)); *Air Liquide

Am. Corp. v. Crain Bros., Inc.*, 11 F.Supp.2d 709, 716 n. 13 (S.D. Tex. 1997) (noting that out-of-

court statements offered to show their effect on the state of mind of the listener, such as to

establish notice, intent, or knowledge are admissible non-hearsay).

Mueller also objects to Allen's statement in the memo that "it looks and feels like a Ponzi

scheme" on the basis that it is irrelevant, prejudicial, improper lay opinion, lacks foundation, and

calls for a legal conclusion. Mueller's counsel asked Allen several questions about that same

statement during Allen's deposition. Allen explained that he considered a Ponzi scheme "[a]

scheme that is reliant upon new investor money to honor promises made to previous investors."

Ex. 23.1 at 159:15-16; 166:15-23. Allen explained that he arrived at the conclusion that deeproot

looked and felt like a Ponzi scheme after listening to Mueller's explanations about cash flow,

accounting, and how the business worked, and that overtime he became concerned when the 575

Fund was not able to pay investors without raising money from new investors. Ex. 23.1 at

159:21-162:13. Allen's warning to Mueller was based on his personal knowledge and

observations and is not an improper lay opinion or legal conclusion that lacks foundation. *See,*

*Webb v. Lincoln Par. Sheriffs Off.*, No. CV 17-1605, 2019 WL 6312896, at *4 (W.D. La. Nov.

21, 2019) (holding deposition testimony "is not speculation, argument, or a legal conclusion

because it is either something [the witness] actually said or the thoughts motivating his

actions."), *appeal dismissed and remanded sub nom. Webb v. Stone*, 821 F. App'x 369 (5th Cir.

2020). Finally, there is little risk of prejudice, because as discussed above, there is no jury to

influence at the summary judgment stage. *See Noviello*, 2023 WL 128395, at *5.

## F.     Expert Reports of Bill Post (Exhibits 27 and 28)[6]

Mueller objects to the expert reports of Bill Post on three grounds. First, Mueller objects

to Post's opinions that Mueller failed to adhere to the requirements of the fiduciary duties of

loyalty and care, casting them as summary legal conclusions. Second, Mueller objects to Post's

reference to a Ponzi Scheme, also as a summary legal conclusion. Third, Mueller objects to a

single paragraph of Post's report claiming the paragraph is based on accounting principles about

---

[6] Mueller mistakenly asserts that Post's supplemental report, Exhibit 28, was filed under seal.
The SEC filed Post's supplemental report on the public docket. ECF No. 103-4 at 62. Post's
initial report, Exhibit 27, which is the subject of Mueller's objections was filed under seal. ECF
No. 104-9. The parties have conferred about whether the exhibits the SEC filed under seal
(Exhibits 10, 13, 15, 24, 27, 32, 41, and 42) and an unredacted version of the SEC's Motion for
Summary Judgment can be filed on the public docket and unfortunately the parties have not
agreed. The SEC gave Mueller notice on September 25, 2023, pursuant to the Court's
Confidentiality and Protective Order, ECF No. 54 ("Protective Order"), that it objects to
Mueller's designation of the subject documents as "confidential." Section 12 of the Protective
Order requires Mueller to move within fourteen days for an order preserving the confidential
status of the documents.

which Post is not qualified to opine. Notably, Mueller cites no authority other than FRE 702 for his objections. The Court should overrule Mueller's objections as a delinquent *Daubert* challenge under FRE 702.

The Court's Scheduling Order set "the deadline to file motions (including dispositive motions and *Daubert* motions)" as August 18, 2023. ECF No. 102. An analysis of *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993) and its progeny support two conclusions relevant here, first, Mueller's objections are *Daubert* challenges, and second, Post's report would survive a *Daubert* challenge.

A witness qualified as an expert may testify if: "(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case." FRE 702. In *Daubert*, the Court identified a non-exhaustive list of factors that trial courts should consider when evaluating the qualifications of scientific experts. *Daubert* 509 U.S. at 592-95. In *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137 (1999), the Supreme Court "clarified that the Rule 702/ *Daubert* analysis applies to *all* proposed expert testimony, including nonscientific 'technical analysis' and other 'specialized knowledge.'" *Guy v. Crown Equipment Corp.*, 394 F.3d 320, 325 (5th Cir. 2004) (quoting *Kumho Tire Co.*, 526 U.S. at 141) (emphasis in original). Nevertheless, "the factors identified in *Daubert* may or may not be pertinent in assessing reliability, depending on the nature of the issue, the expert's particular expertise, and the subject of his testimony." *Kumho Tire Co.*, 526 U.S. at 151 (quotations omitted). In some cases, personal knowledge and experience alone may be the proper method for assessing the reliability of an expert's testimony, "particularly true with

non-scientific testimony." *See Groobert v. President and Directors of Georgetown College*, 219 F.Supp.2d 1, 7 (D.D.C. 2002) (expert on stock photography).

Post, in his report, identifies his personal experience and the specialized knowledge upon which he relied when forming the basis of his opinion that Mueller violated his fiduciary duties of loyalty and care. Ex. 27 ¶¶ 19(h), 23-31, 103-107. Post detailed not only the SEC's guidance regarding the fiduciary duties that investment advisors owe to clients (¶¶ 23-27), but also the Investment Advisors Association's Standard of Practice (¶ 28) and the Chartered Financial Analyst Institute's Standard of Practices (¶¶29-31). Post then evaluated Mueller's conduct in light of his experience and industry standards in arriving at his opinion that Mueller did not act consistent with his fiduciary duties. *Id.* ¶¶ 19(h), 103-107. Post's opinion is "relevant and reliable" under *Daubert* and FRE 702 and appropriate under FRE 704, which states "[a]n opinion is not objectionable just because it embraces an ultimate issue."

The Court should also overrule Mueller's objection to Paragraph 87 of Post's report. Mueller argues that because Post is not an expert on accounting principles, the Court should strike Post's discussion in Paragraph 87 regarding Mueller's transfer of $96,000 from the 575 Fund to PSI to American Express to pay Mueller's American Express card. Post found, based on a review of Quickbook records, that Deeproot booked the transfer from the 575 Fund to PSI as an "accounts receivable asset," i.e., a loan. Ex. 27 ¶87 The discussion to which Mueller objects is the unremarkable statement by Post that if the transfer of $96,000 was for business expenses, the transfer could be booked as an "expense" not a "loan." *Id.* The statement is unremarkable because Mueller himself concedes that the Funds paid his personal credit card expenses. Mueller Response at 34, FN 36. Critically, Post is not offering an opinion based on accounting principles, he is reciting examples of Mueller using investor's money for personal expenses, which underlay

his opinions about Mueller's breach of custom and practice and fiduciary duties. Ex. 27 ¶¶ 84-100.

Finally, the Court should overrule Mueller's objections to Post twice referring to Mueller's actions demonstrating characteristics of a Ponzi scheme (Ex. 27 ¶¶ 19(g), 100) for the same reasons discussed above: there is no risk of prejudicing a jury at summary judgment.

### G.    Investors' Declarations (Exhibits 34, 35, 36, 37, and 38)

Mueller objects to the Declarations of deeproot investors (Exhibits 34-38) on three grounds. First, Mueller argues that the investor's statements about their investment agreements with deeproot are improper legal conclusions and that the documents speak for themselves. Second, that statements by deeproot's finders or the investors' investment advisors are hearsay. Third, that the investors' descriptions of the impact Mueller's fraudulent scheme had on them and their plans for retirement are "conclusory," lack foundation, "assume facts not in evidence," call for a legal conclusion, and are improper expert opinion. The court should overrule each of Mueller's objections.

First, although the investment agreements may speak for themselves, they don't speak to the investors understanding of their investments, which is important foundation for the rest of their declarations. FRCP 56 states "[a]n affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." The investors, by giving their understanding of the circumstances of their investments, is classic summary judgment evidence routinely considered by Courts in securities fraud cases. *See, e.g.*, *Carter,* 2020 WL 6379239, at *5 (finding investors' declarations that "speak to their own perception of being misled" do not constitute hearsay or impermissible lay opinion).

Second, the statements made by deeproot's finders and the investors' investment advisors are not offered to prove the matter asserted. FRE 801 ("'Hearsay' means a statement that . . . a party offers in evidence to prove the truth of the matter asserted."). Quite the opposite. For example, Brad Leon's declaration states that a deeproot finder told him "Mueller had a fund (the 575 Fund) that invested in life insurance policies" and that if he invested, he "would receive an 11% annual return." Ex. 34, ¶ 6. The SEC contends that the 575 Fund did not invest in insurance policies, Motion for Summary Judgment at 5, and no one contends that Leon, who lost the $1 million he invested, received an 11% return, Ex. 34, ¶ 15. John Gray's (Ex. 36 ¶ 7), Robert Kane's (Ex. 37 ¶ 7), and Sandra Thompson's (Ex. 38, ¶ 7) declarations also state that their investment advisors told them the Funds invested in life insurance policies and were safe investments. Again, certainly not facts the SEC offers for their truth.

Third, the investors all said something similar to "[a]s a result of Mueller's fraud scheme, my retirement plans have been significantly impacted and I will have to work many more years before I am able to retire." *See, e.g.*, Ex. 34, ¶ 15. Presumably Mueller objects to the reference to his fraud scheme and not the investors' description on the impact on their lives. For the reasons discussed above, because there is no jury at this stage of the litigation, there is little chance of undue prejudice and the Court should overrule Mueller's objections.

## IV. Conclusion

For all the foregoing reasons, the Court should deny Mueller's Objections and Motion to Strike and grant the SEC such other relief as it may be entitled.

Date: October 2, 2023

Respectfully submitted,

*/s/ Charlie L. Divine*
Kristen M. Warden, Trial Counsel
Charlie Divine, Trial Counsel
David Nasse, Supervisory Trial Counsel
U.S. Securities and Exchange Commission
100 F Street NE
Washington, DC 20549
(202) 551-4661 (Warden)
(202) 551-6673 (Divine)
(202) 551-4426 (Nasse)
wardenk@sec.gov
divinec@sec.gov
nassed@sec.gov

*Counsel for Plaintiff Securities and Exchange Commission*

## <u>CERTIFICATE OF SERVICE</u>

I certify that on the 2nd day of October 2023, a true and correct copy of this Response was filed electronically through the Court's CM/ECF system, which will send copies to all counsel of record.

/s/ Charlie L. Divine
Charlie L. Divine

*Counsel for Plaintiff United States Securities and Exchange Commission*