**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION**

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, <br><br> **Plaintiff,** <br><br> -against- <br><br> **ROBERT J. MUELLER, DEEPROOT FUNDS LLC (a/k/a dprt Funds, LLC), AND POLICY SERVICES INC.,** <br><br> **Defendants,** <br><br> -and- <br><br> **DEEPROOT TECH LLC, DEEPROOT PINBALL LLC, DEEPROOT STUDIOS LLC, DEEPROOT SPORTS & ENTERTAINMENT LLC, AND DEEPROOT RE 12621 SILICON DR LLC,** <br><br> **Relief Defendants.** | **Civil Action No.:  5:21-cv-785-XR** |

**JOINT PRETRIAL ORDER**

Plaintiff, Securities and Exchange Commission ("SEC"), and Defendant Robert J. Mueller ("Mueller") respectfully submit this Joint Pretrial Order in accordance with the Court's Fifth Amended Scheduling Order, Dkt. 102, and L.R. Civ.16(f).

**I.     JURISDICTION**

This Court has jurisdiction over this action under Sections 20(d) and 22(a) of the Securities Act [15 U.S.C. § 77t(d) and 77v(a)], Sections 21(d), 21(e) and 27 of the Securities Exchange Act [15 U.S.C. § 78u(d), 78u(e) and 78(aa)], and Section 214(a) of the Advisers Act [15 U.S.C. § 808b-14(a)]. The parties do not dispute jurisdiction in this matter.

## II.  BRIEF STATEMENT OF THE CASE

This is a civil case, not a criminal case, brought by the United States Securities and Exchange Commission (the "SEC").  The SEC is an agency of the federal government responsible for enforcing the securities laws of the United States.

The SEC claims that Mr. Mueller was an investment adviser who violated federal securities law by defrauding investors in two investment funds he started.  The funds were the deeproot 575 Fund (or the "575 Fund") and the deeproot Growth Runs Deep Fund (or the "DGRD Fund").  Specifically, the SEC alleges that Mr. Mueller defrauded investors in the 575 and DGRD Funds by, among other things, deceiving investors about how investor funds would be invested or used.  In doing so, the SEC claims that Mr. Mueller violated three different securities laws: the Securities Act of 1933, the Securities and Exchange Act of 1934, and the Investment Advisers Act of 1940.

The SEC has the burden of proving its claims by a preponderance of the evidence.

Mr. Mueller denies the SEC's allegations and contends that the SEC will not be able to meet its burden to prove that he violated these securities laws.

## III.  SUMMARY OF CLAIMS AND DEFENSES

### A.  Summary of SEC's Claims

From at least September 2015 to August 2021, Robert J. Mueller, an investment adviser, defrauded two investment funds he managed and advised and nearly 300 people who invested roughly $66 million in the funds.

Mueller and his investment firm, deeproot Funds LLC ("deeproot"), were investment advisers to two pooled investment funds that Mueller created in 2014, the 575 Fund and the DGRD Fund (collectively, "the Funds").  Mueller and deeproot, directly and through third-parties, persuaded investors, many of whom were retirees, to cash out annuities and individual retirement

accounts they held with other investment companies and invest in the Funds.  Mueller and deeproot told investors that the Funds would invest the majority of funds in life insurance policies and invest a minority of the Funds' assets in deeproot-related businesses owned and/or controlled by Mueller.

Mueller and deeproot told investors that both Funds would invest at least "the simple majority of our Fund Assets" in life insurance policies.  While Mueller, through deeproot, raised more than $66 million from investors in the Funds, Mueller spent less than $12 million to purchase and pay premiums on life insurance policies.  Mueller also purported to count as assets of the Funds life insurance policies that Mueller previously purchased for other investment funds.  Further, Mueller and deeproot purchased no new insurance policies after September 2017, despite raising approximately $54.1 million for the Funds after that time.

Mueller used the vast majority of the Funds' assets–virtually all of which came from investors–like a personal piggy bank to fund Mueller's deeproot-affiliated businesses.  Indeed, Mueller directly transferred more than $21.8 million of the Funds' assets to his affiliated businesses in non-arms-length transactions whenever he determined the businesses had expenses that needed to be paid.  Mueller also spent at least another $15.6 million of the Funds' assets on behalf of his affiliated businesses.  Mueller used the Funds' assets for his affiliated businesses without any analysis as to whether such transfers constituted suitable investments for his client Funds.  Despite telling investors that the Funds would make "capital acquisitions" in these affiliated businesses, Mueller made these transfers without obtaining anything of value in return for the Funds' investment, meaning the Funds had no legally enforceable interests in any assets at all.

Since 2015, neither the life insurance policies nor the "capital" investments in affiliated businesses have yielded significant revenue or cash flow for any of the deeproot companies or the

Funds.  Lacking any significant revenue from either life policies or his affiliated businesses, Mueller directed more than $1.8 million of Ponzi payments to earlier investors in the Funds using money raised from new investors.  Mueller also made more than $3.7 million in Ponzi payments to investors in his other investment funds using money raised from new investors in the 575 and DGRD Funds.  Mueller never disclosed any of these actions to investors.

Mueller also used more than $1 million of the Funds' assets to pay hundreds of personal expenses, including a condominium in Kauai, Hawaii, his child's private school tuition, vacations with his family, his second wedding, his second divorce, his third wedding, jewelry for both his second and third wives (including engagement rings and wedding bands for both wives), and other lifestyle spending for and by his family.  Mueller never disclosed his use of investor funds for personal expenses despite the fact that the Funds' operating agreements expressly prohibited the use of fund assets for personal expenses.

Through his activities, Mueller directly or indirectly employed a device, scheme, or artifice to defraud, made untrue statements of material fact or material omissions, and engaged in acts, practices, or courses of business which operate or would operate as a fraud or deceit, in connection with the purchase or sale of securities, and in the offer and sale of securities.  As a result, Mueller and deeproot violated Sections 17(a)(1)-(3) of the Securities Act of 1933 ("Securities Act") [15 U.S.C. § 77q(a)], Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act") [15 U.S.C. § 78j(b)] and Rules 10b-5(a)-(c) thereunder [17 C.F.R. § 240.10b-5].  Likewise, Policy Services, acting by and through Mueller, violated Sections 17(a)(1) and (3) of the Securities Act and Section 10(b) of the Exchange Act and Rules 10b-5(a) and (c) thereunder.

Mueller, as an investment adviser, directly or indirectly employed a device, scheme, or artifice to defraud clients or prospective clients; engaged in transactions, practices, or courses of

business which operated as a fraud or deceit upon clients or prospective clients; and otherwise engaged in acts, practices, or a course of business which were fraudulent, deceptive, or manipulative.  Accordingly, Mueller violated Sections 206(1), (2), and (4) of the Investment Advisers Act of 1940 ("Advisers Act") [15 U.S.C. § 80b-6] and Rule 206(4)-8 thereunder [17 C.F.R. § 275.206(4)-8].

## B.    Summary of Defendant's Defenses

Mueller is an attorney and resident of San Antonio, Texas.  Until approximately 2013, Mueller managed his own legal practice, which focused on trust, estates, and probate law.  In 2012, Mueller was hired to serve as General Counsel for Defendant Policy Services, Inc. ("**Policy Services**"), which was created to manage investments in fractional life settlements (i.e., payments on a life insurance policies purchased on the secondary market).  In 2015, Mueller assumed full ownership of Policy Services and its affiliated companies (collectively, the "**Deeproot Entities**").

After several court decisions characterized life settlements as securities, Mueller restructured the business to sell ownership interests in entities that purchased life insurance policies, among other investments.  To aid in this transition, Mueller retained experienced securities counsel based in Ohio—Carlile Patchen & Murphy ("**CPM**").  With CPM's assistance, Mueller created the two entities that are the focus of this litigation: the deeproot 575 Fund, LLC (the "**575 Fund**") and the deeproot Growth Runs Deep Fund, LLC (the "**dGRD Fund**").

From approximately January through August of 2015, Mueller worked closely with CPM to draft PPMs for the 575 Fund and the dGRD Fund.  CPM provided legal advice regarding the structure of the funds, the content of the PPMs, and other matters, which Mueller followed.  CPM eventually approved the final versions of the PPMs, which were provided to potential investors in

late 2015.  Years later, Mueller made minor revisions to the PPMs, but the terms most relevant to this litigation were unchanged from the versions approved by CPM.

As detailed in the PPMs, the dGRD fund was designed to manage investments in life insurance policies.  Returns to investors in the dGRD Fund would be paid on a first-in-first-out basis whenever a life insurance policy "matured"—i.e., when the insured died.  The 575 Fund was created to pursue a wider array of investments.  A majority of the assets of 575 Fund would be invested in the dGRD Fund, with the remainder invested in deeproot Pinball, LLC ("**Deeproot Pinball**") and other Deeproot Entities.  The 575 Fund also permitted investors to choose between repayment options, including an option with a guaranteed payment every month.

The PPMs for both funds disclosed that the funds would receive an "advance of no less than two percent (2%) and not more than twenty (20%) percent" of the funds invested, which would be used for "agent compensation (if any), nominal administration expenses, IRA fees, other compensation, marketing costs, and the Fund Advisor Fees."

From 2015 to 2021, the 575 Fund and dGRD Fund raised approximately $60 million from investors, largely using PPMs, marketing materials, and presentations that were approved in some form by CPM.  Each investor was required to acknowledge receiving, reviewing, and understanding the PPMs prior to investing.

The dGRD Fund purchased life insurance policies through late 2017.  All policies were ultimately consolidated under Policy Services.  The total "face" value of the policies—i.e., the amount paid by the policies at maturity—exceeded $30 million.

Through 2021, with funds invested through the 575 Fund, Deeproot Pinball hired engineers and other employees, designed and tested prototypes of pinball machines, and began the process of manufacturing pinball machines for sale.  By mid-2021, Deeproot Pinball had received dozens

of orders for pinball machines and anticipated millions of dollars in revenues.  However, the company was unable to complete the manufacture of the machines due to the cutoff of investor funds caused by the SEC's investigation and filing of the Complaint.

Between 2015 and 2020, Mueller received approximately $1.6 million in salary from Policy Services, or about $320,000 per year.  Mueller also benefited from certain payments made directly by Policy Services, including payments to credit cards and other personal expenses. All of these payments were disclosed to the accountants for the Deeproot Entities, who recommended that Mueller treat the payments as loans from Policy Services.  Mueller followed this advice and Policy Services identified "accounts receivable" from Mueller on its income tax returns, which the accountants prepared and filed.

Thus, the SEC's claims fail because: (1) Mueller's use of investor funds was adequately disclosed in the PPMs; (2) CPM approved the PPMs; (3) other non-attorney analysts that reviewed the PPMs and the companies' business records similarly found no problems. This advice to Mueller serves to negate the scienter element of the SEC's claims, most of which require proof of intent to defraud.

## IV.    STIPULATED FACTS

The Parties Stipulate to the following facts:

1.    Defendant Robert Mueller is a natural person who lives in San Antonio, Texas.  During all relevant times, Mueller was the principal and control person of all of the deeproot entities, including Policy Services, Inc, deeproot Funds, LLC, the 575 Fund, and the DGRD Fund.  Mueller was also the principal and control person of all of the deeproot-affiliated entities named in the Complaint, including deeproot Tech LLC, deeproot Pinball LLC, deeproot Studios LLC, deeproot Sports & Entertainment LLC, and deeproot Re 12621 Silicon Dr LLC.

2.     Robert Mueller graduated from St. Mary's Law School in 2000 and is an attorney licensed in the State of Texas.

3.     deeproot Funds LLC (a/k/a dprt Funds, LLC) is a Texas limited liability company formed by Mueller in 2013 with its principal place of business in San Antonio, Texas. Mueller is the only officer of deeproot Funds LLC and, indirectly, is the only owner of the company.

4.     Policy Services Inc. is an "S" corporation that was formed in Nevada in 2012 and re-domiciled in Texas in 2016.  Its principal place of business is in San Antonio, Texas, and Mueller is its sole shareholder.

5.     deeproot Tech LLC, a wholly-owned subsidiary of Policy Services, is a Texas limited liability company formed in March 2015, with its principal place of business in San Antonio, Texas.

6.     deeproot Pinball LLC, a wholly-owned subsidiary of deeproot Tech, is a Texas limited liability company formed in March 2015, with its principal place of business in San Antonio, Texas.

7.     deeproot Studios LLC, a wholly-owned subsidiary of Policy Services, is a Texas limited liability company formed in November 2018, with its principal place of business in San Antonio, Texas.

8.     deeproot Sports & Entertainment LLC, a wholly-owned subsidiary of Policy Services, is a Texas limited liability company formed in April 2017 with its principal place of business in San Antonio, Texas.

9.      deeproot RE 12621 Silicon Dr. LLC, a wholly-owned subsidiary of Policy Services, is a Texas limited liability company formed in February 2020 with its principal place of business in San Antonio, Texas.

10.      deeproot 575 Fund LLC (the "575 Fund") is a Texas limited liability company formed in December 2014, with its principal place of business in San Antonio, Texas. Neither the 575 Fund nor its securities have been registered with the SEC at any point in time.

11.      deeproot Growth Runs Deep Fund LLC (the "DGRD Fund") is a Texas limited liability company formed in February 2014, with its principal place of business in San Antonio, Texas.  Neither the DGRD Fund nor its securities have been registered with the SEC at any point in time.

12.      From September 2015 to August 2021, the 575 Fund received at least $53,735,824 in investments.

13.      From December 2015 to June 2020, the DGRD Fund received at least $12,614,213 in investments.

14.      Exhibit P1 was the operative Private Placement Memorandum ("PPM") for the 575 Fund from approximately May 2015 to May 2018.

15.      Exhibit P2 was the operative PPM for the 575 Fund from approximately May 2018 to November 2019.

16.      Exhibit P3 was the operative PPM for the 575 Fund from approximately November 2019 to August 2021.

17.      Exhibit P4 was the operative PPM for the 575 Fund from approximately January 2021 to August 2021.

18.     Exhibit P5 was the operative PPM for the DGRD Fund from approximately August 2015 to May 2018.

19.     Exhibit P6 was the operative PPM for the DGRD Fund from approximately May 2018 to October 2019.

20.     Exhibit P7 was the operative PPM for the DGRD Fund from approximately October 2019 to August 2021.

21.     Exhibit P8 was the operative Operating Agreement for the 575 Fund from approximately September 2015 to March 2018

22.     Exhibit P9 was the operative Operating Agreement for the 575 Fund from approximately March 2018 to August 2021.

23.     Exhibit P10 was the operative Operating Agreement for the DGRD Fund from approximately May 2015 to March 2018.

24.     Exhibit P11 was the operative Operating Agreement for the DGRD Fund from approximately March 2018 to August 2021.

25.     Between December 2015 and July 2021 Robert Mueller received $1,046,935.73 in salary and bonus compensation from Policy Services, Inc.

26.     All the life policies owned, purchased, or held by Policy Services, Inc, between September 2015 and August 2021 are reflected in Exhibit P365.

27.     On or about May 16, 2017, Policy Services, Inc. agreed to purchase a life insurance policy known as BASH82 with a face value of $9 million from Cycladic, a company Policy Services, Inc. contracted with to purchase multiple life insurance policies.  Policy Services, Inc. and Cycladic agreed that Policy Services would make periodic installment payments to purchase the policy.

28.     On December 9, 2021 deeproot Funds, LLC, Policy Services, Inc., deeproot Tech, LLC, deeproot Pinball, LLC, and deeproot Studios, LLC filed a Chapter 7 petition in the U.S. Bankruptcy Court for the Western District of Texas.

29.     On April 12, 2022, Michael M. Parker, the United States Bankruptcy Judge, overseeing the Chapter 7 bankruptcy petition of Policy Services, Inc., the 575 Fund, the dGRD Fund, and the other deeproot companies, found that Policy Services, Inc. was the sole and lawful owner of the insurance policies reflected in Exhibit P365.

## V.     CONTESTED FACTS

The parties contest the following facts:

Section 10b-5 Claim:

- Mueller committed, directly or indirectly, a fraudulent act, meaning that he did any one or more of the following acts:

    o   (1) Employed any device, scheme, or artifice to defraud; or

    o   (2) Made any untrue statement of a material fact, or omitted to state a material fact which made what was said, under the circumstances, misleading; or

    o   (3) Engaged in any act, practice, or course of business that operated, or would operate, as a fraud or deceit upon any person.

- At the time of the commission of the act, Mueller acted with scienter, meaning that he acted with an intent to deceive, manipulate, or defraud, or with reckless disregard for the truth; and,

- Mueller's fraudulent conduct was in connection with the purchase or sale of a security.

Section 17(a) Claim:

- Mueller, directly or indirectly, employed any device, scheme, or artifice to defraud;

- Mueller did so with scienter, meaning that he acted either with intent to defraud, or with reckless disregard for the truth; and,

- Mueller did so in connection with the offer or sale of any securities.

Section 17(a)(2) and 17(a)(3) Claim:

- In the offer or sale of securities;

- Mueller either:

  o Directly or indirectly obtained money or property by means of any untrue statement of a material fact or any omission to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading (Section 17(a)(2)); or

  o Directly or indirectly engaged in any transaction, practice, or course of business which operated or would operate as a fraud or deceit upon the purchaser (Section 17(a)(3)); and

- Mueller acted negligently.

Adviser Act Sections 206(1) and 206(2):

- Mueller was an "investment adviser."

- Mueller did at least one of the following:

  o (1) directly or indirectly employed a device, scheme, or artifice to defraud a client or prospective client (Section 206(1)); or

  o (2) directly or indirectly engaged in a transaction, practice, or course of business which operated or would operate as a fraud or deceit upon a client or prospective client (Section 206(2)).

In addition, as described in the SEC's Motion for Summary Judgment and Reply, Dkts. 103, 110, and Mueller's Response, Dkt. 108, the Parties dispute whether Mueller can assert good faith reliance on counsel and other professionals.[1]

## VI.   STIPULATED ISSUES OF LAW

The Parties stipulate to the following issues of law:

1.      The limited liability company membership interests in the 575 Fund and DGRD Fund are investment contracts, which are securities under Section 2(a)(1) of the Securities Act [15 U.S.C. § 77b] and Section 3(a)(10) of the Exchange Act [15 U.S.C. § 78c].

2.      The 575 Fund and DGRD Fund were pooled investment vehicles.

3.      Investors in the 575 Fund and the DGRD Fund used the means and instrumentalities of interstate commerce to wire their investments in the Funds.

## VII.   CONTESTED ISSUES OF LAW

The Parties refer to the above contested issues of fact and the attached proposed jury instructions.  In addition, as described in the SEC's Motion for Summary Judgment and Reply, Dkts. 103, 110, and Mueller's Response, Dkt. 108, the Parties dispute whether Mueller can assert good faith reliance on counsel and other professionals.

## VIII.  LIST OF EXHIBITS

The Parties have met and conferred in an attempt to resolve objections to exhibits.  The Parties anticipate that they will continue to meet and confer in an attempt to resolve additional objections.

---

[1] Mueller's reliance on professionals is also the subject of motions *in limine* filed by the SEC.

1. Attached as Appendix A is an updated list of the SEC's exhibits and Mueller's objections.

2. Attached as Appendix B is an updated list of Mueller's exhibits and the SEC's objections.

## IX.   WITNESSES

### A.   Witnesses the SEC Expects to Call[2]

1. Scott Allen, 3009 Quail Hollow, McKinney, TX 75072.   The SEC anticipates that Allen will testify that he worked for deeproot in business development until October 2020, when he left over concerns regarding the deeproot business model and the Funds' ability to repay investors.   The SEC anticipates that Allen will also testify about the Funds' disclosures to investors, Mueller's management of the Funds and other deeproot businesses, and deeproot's internal controls.

2. Jeffrey Anderson, 100 F Street NE, Washington, DC 20549.   The SEC anticipates that Anderson will testify about financial records he reviewed and summaries he prepared.

3. James Donnelly, 9297 E Caribbean Lane, Scottsdale, AZ 85260-2834.   The SEC anticipates that Mr. Donnelly, an investor in the 575 Fund, will testify about his investment in the 575 Fund, the information and factors he considered, and the return on his investment.

---

[2] The SEC only intends to call Ken Abramson and George C. Williams should the Court deny the SEC's Motion *in limine* to exclude evidence or argument concerning Mueller good faith reliance on accountants.

4.      John Gray, 205 Viticole Lane, Little Rock, AR 72223.  The SEC anticipates that Mr. Gray, an investor in the 575 Fund, will testify about the information he considered in deciding to invest in the 575 Fund and the process of investing.

5.      Robert Kane, 3528 West Starr Pass Boulevard, Tucson, AZ 85745.  The SEC anticipates that Mr. Kane, an investor in the DGRD Fund, will testify about his investment in the DGRD Fund, the information and factors he considered, and the return on his investment.

6.      Brad Leon, 620 Vista View Drive, Ashville NC 28803-8572.  The SEC anticipates that Mr. Leon, an investor in the 575 Fund, will testify about his investment in the 575 Fund, the information and factors he considered, and the return on his investment.

7.      Robert Mueller.  The SEC anticipates that Mueller will testify that he was responsible for the Funds' investment decisions, the disclosures made to investors, the distribution of investors' funds, and other substantive responsibilities of the Funds.

8.      Bill Post, 50 California Street, Suite 1900, San Francisco, CA 94111.  Mr. Post is the SEC's expert and will testify consistent with the expert report he provided in this litigation.

9.      Sandra Thompson, 4396 N. Atfield Place, Tucson, AZ 85719.  The SEC anticipates that Ms. Thompson, an investor in the 575 Fund, will testify about the information she considered in deciding to invest in the 575 Fund and the process of investing.

**B.      Witnesses the SEC May Call[3]**

1.      Ken Abramson, 23901 Calabasas Road, Suite 1072, Calabasas, CA 91302. The SEC anticipates that Mr. Abramson will testify that from May 2012 to July 2016, Mr.

---

[3] The SEC intends to call Dennis Concilla, Andrew Federico, Ken Abramson, and George C. Williams should the Court deny the SEC's Motions *in limine* to exclude evidence or argument

Abramson assisted several deeproot companies in preparing their taxes, but his assistance was limited to tax matters, and that he did not audit or conduct financial analysis for the deeproot companies or Mueller.

2.      Charlotte Acker, 2313 Brittany Grace, New Braunfels, TX 78130-8937. The SEC anticipates that Ms. Acker would testify that she assisted deeproot with bookkeeping and preparing QuickBooks records, all at Mueller's direction.

3.      Lauren R. "Becca" Adams, 12019 Trewell Glen, San Antonio, TX 78249. The SEC anticipates that Ms. Adams would testify about deeproot's distribution of marketing materials and other disclosures to deeproot investors.

4.      Thomas Andrew, c/o Thomas D. Sherman, Esq., Locke Lord, LLP, Terminus 200, Suite 1200, 3333 Piedmont Road, N.E., Atlanta, GA 30305.  The SEC anticipates that Mr. Andrew would testify that his company, Cycladic, sold insurance policies to Policy Services, including a policy that Policies Services was later forced to return after failing to complete the purchase.

5.      Dennis Concilla and Andrew Federico, c/o Mathew S. Brown, Carlisle Patchen & Murphy LLP, 950 Goodale Blvd., Columbus, OH 43212.  The SEC anticipates that if allowed to testify, Mr. Concilla and Mr. Federico would testify that their firm provided legal services to the deeproot companies including reviewing and approving the first version of the PPMs used for the 575 and DGRD Funds.  The SEC also anticipates that Mr. Concilla and Mr.

---

concerning Mueller good faith reliance on attorneys or other advisers.  The SEC *may* call Phillip Forret and Gerald Wik if the Court denies the SEC's Motions *in limine*.

Federico would testify that Mueller failed to disclose certain material information as discussed in the SEC's Motion for Summary Judgment.  Dkt. 103.

6.      Phillip Forret, c/o Alan A. Harley, Esq., Associate General Counsel, BDO, 135 West 50th Street, New York, NY 10020.  The SEC anticipates that Mr. Forret, a partner at BDO, would testify that deeproot retained BDO to assist with a potential public security offering, and that as part of its work BDO did not audit deeproot's financials or verify the accuracy of its investor disclosures.

7.      Patrick Lowe, c/o Randy Pulman, Pulman, Capcuccio & Pullen, LLP, 2161 NW Military Highway, Suite 400, San Antonio, TX 78213.  The SEC anticipates that Mr. Lowe, the bankruptcy Trustee for the Funds, deeproot, Policy Services, and several relief defendants, would testify about the internal controls and policies of the Funds, deeproot, and Policy Services, and the ownership of the interests of the policies and other assets of the various deeproot companies.  The SEC also anticipates that Lowe would testify that the Trustee made available to both the SEC and Mueller true and correct copies of the deeproot companies' QuickBooks records and the Portal.

8.      Nathan Spradlin, c/o Andrew R. Shedlock, Esq., Kutak Rock LLP, 60 South Sixth Street, Suite 3400, Minneapolis, MN 55402-4018.  The SEC anticipates that Spradlin would testify that he was employed by deeproot in business development, and left in July 2020.  The SEC anticipates that Mr. Spradlin would also testify about the Funds' disclosures to investors, Mueller's management of the Funds and other deeproot businesses, and deeproot's internal controls.

9.      Gerald Wik, c/o Jay A. Dubow, Esq., Troutman Pepper Hamilton Sanders LLP, 3000 Two Logan Square, Philadelphia, PA 19103.  The SEC anticipates that Wik, the Chief Operating Officer of Centri Consulting, would testify that deeproot retained Centri to assist with a

potential public security offering, and that as part of its work Centri did not audit deeproot's financials or verify the accuracy of its investor disclosures.

10.     George C. Williams, 1100 NE Interstate 410 Loop, Suite 350, San Antonio, TX 78209.  The SEC anticipates that Mr. Williams will testify that from August 2016 to September 2019 his firm provided tax preparation services to several deeproot companies and Robert Mueller, but that his firm did not audit the companies' records, review investor disclosures, or provide securities advice.

### C.     Witnesses Mr. Mueller Expects to Call

1.     Scott Allen, 3009 Quail Hollow, McKinney, TX 75072.  Mueller anticipates that Allen will testify about his role as an employee in business development for deeproot. Mueller anticipates that Allen will also testify about internal and external deeproot goals, policies, practices, and communication. Mueller anticipates that Allen will also testify as to his knowledge and belief that Mueller did not make any material misrepresentations or omissions and at all times acted in good faith.

2.     Nathan Spradlin, c/o Andrew R. Shedlock, Esq., KUTAK ROCK LLP, 60 South Sixth Street, Suite 3400, Minneapolis, MN 55402-4018.  Mueller anticipates that Spradlin will testify about his role as an employee in business development for deeproot. Mueller anticipates that Spradlin will also testify about internal and external deeproot goals, policies, practices, and communication. Mueller anticipates that Spradlin will also testify as to his knowledge and belief that Mueller did not make any material misrepresentations or omissions and at all times acted in good faith.

3.     Ken Abramson, 23901 Calabasas Road, Suite 1072, Calabasas, CA 91302. Mueller anticipates that he will testify as to facts and defenses in this Matter. Mueller anticipates

that he will also testify about Policy Services and deeproot business goals, policies, practices, and communication, both internal and external.

4.      Robert Mueller, c/o DAVIS & SANTOS, PLLC, 719 S. Flores Street, San Antonio, Texas 78204, (210) 853-5882.  Mueller anticipates that he will testify as to all claims and defenses in this matter, including that he did not make any material misrepresentations or omissions and at all times acted in good faith. Mueller anticipates that he will also testify about Policy Services and deeproot business goals, policies, practices, and communication, both internal and external.

5.      Chris Turner, c/o Pat H. Autry, BRANSCOMB LAW, 4630 N Loop 1604 W, Suite 206, San Antonio, TX  78249.  Mueller anticipates that Turner will testify about the programming, software development, and IT work performed for the Funds and Pinball; including but not limited to the deeproot online portal.  Mueller anticipates that Turner will also testify about his purchase and/or acquisition of deeproot assets from the respective bankruptcy proceedings.

6.      Dennis Concilla, CARLILE PATCHEN MURPHY, LLP, 950 Goodale Blvd., Suite 200, Columbus, Ohio 43212, (614) 228-6135.[4]  Mueller anticipates that Concilla will testify regarding facts and circumstances supporting Mueller's advice of counsel and good faith defenses, including that Concilla approved the PPMs at issue.

7.      Andrew Federico, CARLILE PATCHEN MURPHY, LLP, 950 Goodale Blvd., Suite 200, Columbus, Ohio 43212, (614) 228-6135.[5]  Mueller anticipates that Federico will testify

---

[4] Mr. Concilla, who lives in Ohio, has recently requested to testify remotely because travel to Texas "could present a significant health concern for him." The parties agree to Mr. Concilla appearing remotely if the Court is amenable and the technology is available.

[5] Mr. Federico has requested to testify remotely because of a pre-existing scheduled vacation. The SEC is willing to accommodate Mr. Federico's request if the Court is amenable and the technology is available.  Mr. Mueller will consent to Mr. Federico appearing remotely but only if

regarding facts and circumstances supporting Mueller's advice of counsel and good faith defenses, including that Federico approved the PPMs at issue.

8.      Eric Dandridge, 120 Rocky Path, Boerne, Texas 78006, (918) 277-1130/1132.   Mueller anticipates that Dandridge will testify about his role as an employee in business development for deeproot. Mueller anticipates that Dandridge will also testify about internal and external deeproot goals, policies, practices, and communication. Mueller anticipates that Dandridge will also testify as to his knowledge and belief that Mueller did not make any material misrepresentations or omissions and at all times acted in good faith.

9.      Craig Rushforth, 4077 Commerce Circle, Idaho Falls, Idaho 83401. Mueller anticipates that Rushforth will testify as to his role as an employee directing engineering and design for deeproot Tech and deeproot Pinball. Mueller anticipates that Rushforth will also testify about the status, effect, projections, and manufacturing of pinball in July 2021 that the SEC ultimately prohibited to manufacture investor losses. Mueller anticipates that Rushforth will also testify as to his knowledge and belief that Mueller did not make any material misrepresentations or omissions and at all times acted in good faith.

**D.      Witnesses Mr. Mueller May Call**

1.      Lauren "Becca" Adams, 12019 Treewell Glen, San Antonio, TX 78249, (843) 903-2854; (717) 818-0307.   Mueller anticipates that Adams will testify about her role as an employee/clerk for deeproot.

2.      Cary Mueller, c/o Gordon C. Young, Esq., BARR & YOUNG ATTORNEYS, 318-C Diablo Road, Danville, CA 94526, (925) 314-9999, ext. 302.   Mueller anticipates that Cary

---

Mueller is also allowed to also present designations from Mr. Federico's deposition.  The SEC does not agree that Mr. Mueller should be allowed to use designations of Mr. Federico's deposition.

Mueller will testify about his role as an employee in business development for deeproot.  Mueller anticipates that Cary Mueller will also testify about internal and external deeproot goals, policies, practices, and communication prior to his departure in early 2018.  Mueller anticipates that Cary Mueller will also testify as to his knowledge and belief that Mueller did not make any material misrepresentations or omissions and at all times acted in good faith.

3.     Charlotte Acker, 2313 Brittany Grace, New Braunfels, Texas 78130-8937; Charlotteacker54@gmail.com, (325) 388-8460; (210) 862-9622.  Mueller anticipates that Acker will testify as to record keeping (in general) and compiling and input of accounting and financial records into Quickbooks.  Mueller anticipates that Acker will also testify as to tax advice, documents, and communication with CPAs or Accounting Firms Policy Services and deeproot retained regarding accounting policies or input of accounting and financial records into Quickbooks. Mueller anticipates that Acker will also testify that Mueller acted in good faith.

4.     Chris Williams, WILLIAMS, STEINERT MASK, LLP, 1100 NE Interstate 410 Loop, Suite 350, San Antonio, Texas 78209; (210) 684-1071.  Mueller anticipates that Williams will testify as to tax advice, documents, returns, and communication during his firm's representation of Policy Services and other companies.  Mueller anticipates that Williams will also testify that Mueller acted in good faith.

5.     Phillip Forret, BDO USA, LLP, 600 N. Pearl St., Suite 1700, Dallas, Texas 75201.  Mueller anticipates that Forret will testify as to scope, advice, structure, documents, audit process and results, and communication during his representation of deeproot Funds.  Mueller anticipates that Forret will also testify that Mueller acted in good faith.

6.     Jeffrey Mueller, c/o Edward Snyder, CASTILLO SNYDER, PC, One Riverwalk Place, 700 N. St. Mary's, Suite 1560, San Antonio, Texas 78205.  Mueller anticipates

that Jeffrey Mueller will testify as to his knowledge and belief that Mueller at all times acted in good faith.

7.      Belinda Breen, c/o Edward Snyder, CASTILLO SNYDER, PC, One Riverwalk Place, 700 N. St. Mary's, Suite 1560, San Antonio, Texas 78205. Mueller anticipates that Breen will testify as to her knowledge and belief that Mueller at all times acted in good faith.

8.      Sean Gibson, 3055 Nantucket Dr., San Antonio, TX 78230, (210) 834-1316. Mueller anticipates that Gibson will testify as to his role as a Director of Operations for deeproot Tech and deeproot Pinball.  Mueller anticipates that Gibson will also testify about the day-to-day affairs and events involving the referenced companies, including but limited to the: status, effect, projections, and manufacturing of pinball in July 2021 that the SEC ultimately prohibited to manufacture investor losses.  Mueller anticipates that Gibson will also testify that Mueller acted in good faith.

9.      James Aguilera, CPA, 9519 Gloxinia Dr., Garden Ridge, Texas 78266-2536. Mueller anticipates that Aguilera, as a former employee of WILLIAMS, CROW MASK, LLP (now Williams, Steinert, Mask, LLP) will testify as to tax advice, documents, returns, and communication during his firm's representation of Policy Services and other companies.  Mueller anticipates that Aguilera will also testify that Mueller acted in good faith.

10.     Jason Rudd, WICK PHILLIPS, 3131 McKinney Avenue, Suite 500, Dallas, Texas 75204, (214) 692-6200. Mueller anticipates that Rudd will testify regarding the condition of the company, the events leading up to bankruptcy filing, and the value of the assets at the time of the initiation of the SEC action.

11.     Steven Bowden, American Pinball, Inc., 5434 Sunlit Brk., San Antonio, Texas 78240-2453. Mueller anticipates that Bowden will testify as to his role as rules designer for

deeproot Tech and deeproot Pinball. Mueller anticipates that Bowden will also testify about the day-to-day affairs and events involving the referenced companies, including but limited to the: status, effect of pinball in July 2021 that the SEC ultimately prohibited to manufacture investor losses. Mueller anticipates that Bowden will also testify that Mueller acted in good faith.

12.     Quinn Johnson, 2503 Jackson Keller Rd., Apt 1321, San Antonio, Texas 78230-5257.  Mueller anticipates that Johnson will testify as to his role as creative director for story for deeproot Tech and deeproot Pinball.  Mueller anticipates that Johnson will also testify about the day-to-day affairs and events involving the referenced companies, including but limited to the: status, effect of pinball in July 2021 that the SEC ultimately prohibited to manufacture investor losses. Mueller anticipates that Johnson will also testify that Mueller acted in good faith.

## X.    ESTIMATED LENGTH OF TRIAL

The parties anticipate that the trial will take approximately ten court days.

## XI.    PROPOSED VOIR DIRE

Attached as Appendix C is the Parties' proposed voir dire.

## XII.    PROPOSED JURY INSTRUCTIONS

Attached as Appendix D are the Parties' joint proposed jury instructions.  Attached as Appendix E are the SEC's additional proposed jury instruction.  Attached as Appendix F are Mueller's additional proposed jury instructions.  The parties attempted to reach an agreement on a proposed verdict form but could not agree.

Date: November 15, 2023

Respectfully submitted,

*/s/ Kristen M. Warden*
Kristen M. Warden, Trial Counsel
U.S. Securities and Exchange Commission
100 F Street NE
Washington, DC 20549
(202) 551-4661
wardenk@sec.gov

*/s/ David Nasse*
David Nasse, Supervisory Trial Counsel
(202) 551-4426
nassed@sec.gov

*/s/ Fernando Campoamor*
Fernando Campoamor, Trial Counsel
(202) 551-8523
campoamorsanchezf@sec.gov

*/s/ Charlie L. Divine*
Charlie L. Divine, Trial Counsel
(202) 551-6673
divinec@sec.gov

*Counsel for Plaintiff Securities and Exchange Commission*

*/s/ Jason M. Davis*
Jason M. Davis
DAVIS & SANTOS, PLLC
719 S. Flores Street
San Antonio, Texas 78204
State Bar No. 00793592
Email: jdavis@dslawpc.com
Tel: (210) 853-5882
Fax: (210) 200-8395

*/s/ Caroline Newman Small*
Caroline Newman Small
State Bar No. 24056037

*Counsel for Defendant Robert J. Mueller*

_____
XAVIER RODRIGUEZ
UNITED STATES DISTRICT JUDGE

## <u>CERTIFICATE OF SERVICE</u>

I certify that on November 15, 2023, a true and correct copy of the foregoing document was filed electronically through the Court's CM/ECF system, which will send copies to all counsel of record.

<div style="margin-left:40%">

*/s/ Charlie Divine*
Charlie L. Divine

*Counsel for Plaintiff United States Securities and Exchange Commission*

</div>