# Appendix D

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**SAN ANTONIO DIVISION**

| | | |
|---|---|---|
| **SECURITIES AND EXCHANGE COMMISSION,** | § § § | |
| **Plaintiff,** | § | |
| **v.** | § § § | **Case No.:  5:21-cv-785-XR** |
| **ROBERT J. MUELLER, et al.,** | § § | |
| **Defendants.** | § § § | |

## PROPOSED JOINT JURY INSTRUCTIONS

Plaintiff Securities and Exchange Commission ("Plaintiff" or "SEC") and Defendant Robert J. Mueller ("Mueller") submit the Proposed Joint Jury Instructions set forth below.

## I.   COURT'S PRELIMINARY INSTRUCTIONS

### [Instructions for Beginning of Trial]

Members of the jury panel, if you have a cell phone, PDA, smart phone, iPhone, or any other wireless communication device with you, please take it out now and turn it off.  Do not turn it to vibrate or silent; power it down.  During jury selection, you must leave it off.

There are certain rules you must follow while participating in this trial.

First, you may not communicate with anyone about the case, including your fellow jurors, until it is time to deliberate.  I understand you may want to tell your family, close friends and other people that you have been called for jury service so that you can explain when you are required to be in court.  You should warn them not to ask you about this case, tell you anything they know or think they know about it, or discuss this case in your presence, until after I accept your verdict or excuse you as a juror.

Similarly, you must not give any information to anyone by any means about this case. For example, do not talk face-to-face or use any electronic device or media, such as the telephone, a cell or smart phone, camera, recording device, PDA, computer, the Internet, any Internet service, any text or instant messaging service, any Internet chat room, blog, or website such as Facebook, YouTube, Snapchat, Instagram, or Twitter, or any other way to communicate to anyone any information about this case until I accept your verdict or until you have been excused as a juror. This includes any information about the parties, witnesses, participants, claims, evidence, or anything else related to this case.

Second, do not speak with anyone in or around the courthouse other than your fellow jurors or court personnel. Some of the people you encounter may have some connection to the case. If you were to speak with them, that could create an appearance or raise a suspicion of impropriety.

Third, do not do any research—on the Internet, in libraries, in books, newspapers, magazines, or using any other source or method. Do not make any investigation about this case on your own. Do not visit or view any place discussed in this case and do not use Internet programs or other devices to search for or view any place discussed in the testimony. Do not in any way research any information about this case, the law, or the people involved, including the parties, the witnesses, the lawyers, or the judge, until after you have been excused as jurors. If you happen to see or hear anything touching on this case in the media, turn away and report it to me as soon as possible.

These rules protect the parties' right to have this case decided only on evidence they know about, that has been presented here in court. If you do any research, investigation or experiment that we do not know about, or gain any information through improper

communications, then your verdict may be influenced by inaccurate, incomplete or misleading information that has not been tested by the trial process, which includes the oath to tell the truth and cross-examination.  It could also be unfair to the parties' right to know what information the jurors are relying on to decide the case.  Each of the parties is entitled to a fair trial by an impartial jury, and you must conduct yourself so as to maintain the integrity of the trial process. If you decide the case based on information not presented in court, you will have denied the parties a fair trial in accordance with the rules of this country and you will have done an injustice.  It is very important that you abide by these rules.  Failure to follow these instructions could result in the case having to be retried.[1]

---

[1] FIFTH CIRCUIT PATTERN JURY INSTRUCTIONS (Civil), § 1.1 (2020).

**<u>COURT'S INSTRUCTION NO.   :</u>**

**[Preliminary Instructions]**

MEMBERS OF THE JURY:

You have now been sworn as the jury to try this case.  As the judge, I will decide all questions of law and procedure.  As the jury, you are the judges of the facts.  At the end of the trial, I will instruct you on the rules of law that you must apply to the facts as you find them.

You may take notes during the trial.  Do not allow your note-taking to distract you from listening to the testimony.  Your notes are an aid to your memory.  If your memory should later be different from your notes, you should rely on your memory.  Do not be unduly influenced by the notes of other jurors.  A juror's notes are not entitled to any greater weight than each juror's recollection of the testimony.

Until this trial is over, do not discuss this case with anyone and do not permit anyone to discuss this case in your presence.  This includes your spouse, children, relatives, friends, coworkers, and people with whom you commute to court each day.  During your jury service, you must not communicate any information about this case by any means, by conversation or with the tools of technology.  For example, do not talk face-to-face or use any electronic device or media, such as the telephone, a cell or smart phone, camera, recording device, PDA, computer, the Internet, any Internet service, any text or instant messaging service, any Internet chat room, blog, or website such as Facebook, MySpace, YouTube, Snapchat, Instagram, or Twitter, or any other way to communicate to anyone any information about this case until I accept your verdict or excuse you as a juror.

Do not even discuss the case with the other jurors until the end of the case when you retire to deliberate.  It is unfair to discuss the case before all of the evidence is in, because you

may become an advocate for one side or the other.  The parties, the witnesses, the attorneys, and persons associated with the case are not allowed to communicate with you.  And you may not speak with anyone else in or around the courthouse other than your fellow jurors or court personnel.

Do not make any independent investigation of this case.  You must rely solely on what you see and hear in this courtroom.  Do not try to learn anything about the case from any other source.  In particular, you may not use any electronic device or media, such as a telephone, cell phone, smartphone, tablet, or computer to research any issue touching on this case.  Do not go online or read any newspaper account of this trial or listen to any radio or television newscast about it.  Do not visit or view any place discussed in this case and do not use Internet programs or other devices to search for or to view any place discussed in the testimony.  In sum, you may not research any information about this case, the law, or the people involved, including the parties, the witnesses, the lawyers, or the judge, until after you have been excused as jurors.

There are some issues of law or procedure that I must decide that the attorneys and I must discuss.  These issues are not part of what you must decide and they are not properly discussed in your presence.  To avoid having you leave the courtroom and to save time, I may discuss these issues with the attorneys at the bench, out of your hearing.  When I confer with the attorneys at the bench, please do not listen to what we are discussing.  If the discussions require more time, I may have you leave the courtroom until the lawyers and I resolve the issues.  I will try to keep these interruptions as few and as brief as possible.

The trial will now begin.  Lawyers for each side will make an opening statement.  Opening statements are intended to assist you in understanding the significance of the evidence that will be presented.  The opening statements are not evidence.

After the opening statements, the plaintiff will present its case through witness testimony and documentary or other evidence.  Next, the defendants will have an opportunity to present their case.  The plaintiff may then present rebuttal evidence.  After all the evidence is introduced, I will instruct you on the law that applies to this case.  The lawyers will then make closing arguments.  Closing arguments are not evidence, but rather the attorneys' interpretations of what the evidence has shown or not shown.  Finally, you will go into the jury room to deliberate to reach a verdict.

Keep an open mind during the entire trial.  Do not decide the case until you have heard all of the evidence, the closing arguments, and my instructions.

It is now time for the opening statements.[2]

---

[2] FIFTH CIRCUIT PATTERN JURY INSTRUCTIONS (Civil), § 1.2 (2020).

**II.   INSTRUCTIONS DURING TRIAL**

**COURT'S INSTRUCTION NO.   :**

**[First Recess]**

We are about to take our first break in this trial.  Remember, until the trial is over, you are not to discuss this case with anyone, including your fellow jurors.  If anyone approaches you and tries to talk to you about the case, advise me about it immediately.  Do not read or listen to any news reports of the trial or use any technology tools to do independent research.  Remember to keep an open mind until all the evidence has been received.  Finally, do not speak with anyone in or around the courthouse other than your fellow jurors or court personnel.[3]

---

[3]  FIFTH CIRCUIT PATTERN JURY INSTRUCTIONS (Civil), § 2.1 (2020).

**COURT'S INSTRUCTION NO.    :**

**[Limiting Instruction]**

When testimony or an exhibit is admitted for a limited purpose, you may consider that testimony or exhibit only for the specific limited purpose for which it was admitted.[4]

---

[4] FIFTH CIRCUIT PATTERN JURY INSTRUCTIONS (Civil), § 2.6 (2020).

**COURT'S INSTRUCTION NO.    :**

**[Deposition Testimony][5]**

Certain testimony [will now be] [has been] presented to you through a deposition. A deposition is the sworn, recorded answers to questions a witness was asked in advance of the trial. Under some circumstances, if a witness cannot be present to testify from the witness stand, that witness's testimony may be presented, under oath, in the form of a deposition. Sometime before this trial, attorneys representing the parties in this case questioned this witness under oath. A court reporter was present and recorded the testimony. The questions and answers [will be] [have been] [read] [shown] to you today. This deposition testimony is entitled to the same consideration [and is to be judged by you as to credibility] [and weighed and otherwise considered by you in the same way] as if the witness had been present and had testified from the witness stand in court.[6]

---

[5] If necessary, based on evidentiary rulings and motions *in limine*.
[6] FIFTH CIRCUIT PATTERN JURY INSTRUCTIONS (Civil), § 2.13 (2020).

### III.    JURY CHARGE

### <u>COURT'S INSTRUCTION NO.   :</u>

#### [General Instructions for the Charge]

MEMBERS OF THE JURY:

It is my duty and responsibility to instruct you on the law you are to apply in this case. The law contained in these instructions is the only law you may follow.  It is your duty to follow what I instruct you the law is, regardless of any opinion that you might have as to what the law ought to be.

If I have given you the impression during the trial that I favor either party, you must disregard that impression.  If I have given you the impression during the trial that I have an opinion about the facts of this case, you must disregard that impression.  You are the sole judges of the facts of this case.  Other than my instructions to you on the law, you should disregard anything I may have said or done during the trial in arriving at your verdict.

You should consider all of the instructions about the law as a whole and regard each instruction in light of the others, without isolating a particular statement or paragraph.

The testimony of the witnesses and other exhibits introduced by the parties constitute the evidence.  The statements of counsel are not evidence; they are only arguments.  It is important for you to distinguish between the arguments of counsel and the evidence on which those arguments rest.  What the lawyers say or do is not evidence.  You may, however, consider their arguments in light of the evidence that has been admitted and determine whether the evidence admitted in this trial supports the arguments.  You must determine the facts from all the testimony that you have heard and the other evidence submitted.  You are the judges of the facts, but in finding those facts, you must apply the law as I instruct you.

You are required by law to decide the case in a fair, impartial, and unbiased manner, based entirely on the law and on the evidence presented to you in the courtroom. You may not be influenced by passion, prejudice, or sympathy you might have for the plaintiff or the defendants in arriving at your verdict.[7]

---

[7] Fifth Circuit Pattern Jury Instructions (Civil), § 3.1 (2020).

**COURT'S INSTRUCTION NO.     :**

### [Burden of Proof:  Preponderance of the Evidence]

Plaintiff SEC has the burden of proving its case by a preponderance of the evidence.  To establish by a preponderance of the evidence means to prove something is more likely so than not so.  If you find that the SEC has failed to prove any element of its claim by a preponderance of the evidence, then it may not prevail on that claim.[8]

---

[8]  FIFTH CIRCUIT PATTERN JURY INSTRUCTIONS (Civil), § 3.2 (2020) (modified to change the word "recover" to "prevail" to account for the SEC being the Plaintiff in this action).

**COURT'S INSTRUCTION NO.   :**

**[Evidence]**

The evidence you are to consider consists of the testimony of the witnesses, the documents and other exhibits admitted into evidence, and any fair inferences and reasonable conclusions you can draw from the facts and circumstances that have been proven.

Generally speaking, there are two types of evidence.  One is direct evidence, such as testimony of an eyewitness.  The other is indirect or circumstantial evidence.  Circumstantial evidence is evidence that proves a fact from which you can logically conclude another fact exists.  As a general rule, the law makes no distinction between direct and circumstantial evidence, but simply requires that you find the facts from a preponderance of all the evidence, both direct and circumstantial.[9]

A "stipulation" is an agreement.  When there is no dispute about certain facts, the attorneys may agree or "stipulate" to those facts.  You must accept a stipulated fact as evidence and treat that fact as having been proven here in court.[10]

You must accept as proved facts of which the court takes judicial notice.  The court has taken judicial notice that [state the facts].[11]

Certain charts and summaries have been shown to you to help explain and summarize the facts disclosed by the books, records, and other documents that are in evidence.  Unless I admitted these charts and summaries into evidence, the charts and summaries are not evidence or proof of any facts.  You should determine the facts from the evidence.[12]

---

[9]  FIFTH CIRCUIT PATTERN JURY INSTRUCTIONS (Civil), § 3.3 (2020).
[10]  FIFTH CIRCUIT PATTERN JURY INSTRUCTIONS (Civil), § 2.3 (2020).
[11]  FIFTH CIRCUIT PATTERN JURY INSTRUCTIONS (Civil), § 2.4 (2020).
[12]  FIFTH CIRCUIT PATTERN JURY INSTRUCTIONS (Civil), § 2.7 (2020) (modified to allow for possibility that some charts and summaries will be admitted into evidence).

[If demonstratives are used] Exhibit *[specify]* is an illustration. It is a party's *[description/picture/model]* used to describe something involved in this trial. If your recollection of the evidence differs from the exhibit, rely on your recollection.[13]

---

[13] FIFTH CIRCUIT PATTERN JURY INSTRUCTIONS (Civil), § 2.8 (2020).

**COURT'S INSTRUCTION NO.   :**

### [Witnesses]

You alone are to determine the questions of credibility or truthfulness of the witnesses. In weighing the testimony of the witnesses, you may consider the witness's manner and demeanor on the witness stand, any feelings or interest in the case, or any prejudice or bias about the case, that he or she may have, and the consistency or inconsistency of his or her testimony considered in the light of the circumstances.  Has the witness been contradicted by other credible evidence? Has he or she made statements at other times and places contrary to those made here on the witness stand? You must give the testimony of each witness the credibility that you think it deserves.

Even though a witness may be a party to the action and therefore interested in its outcome, the testimony may be accepted if it is not contradicted by direct evidence or by any inference that may be drawn from the evidence, if you believe the testimony.

You are not to decide this case by counting the number of witnesses who have testified on the opposing sides.  Witness testimony is weighed; witnesses are not counted.  The test is not the relative number of witnesses, but the relative convincing force of the evidence.   The testimony of a single witness is sufficient to prove any fact, even if a greater number of witnesses testified to the contrary, if after considering all of the other evidence, you believe that witness.[14]

In determining the weight to give to the testimony of a witness, consider whether there was evidence that at some other time the witness said or did something, or failed to say or do something, that was different from the testimony given at the trial.

A simple mistake by a witness does not necessarily mean that the witness did not tell the truth as he or she remembers it.   People may forget some things or remember other things

---

[14] FIFTH CIRCUIT PATTERN JURY INSTRUCTIONS (Civil), § 3.4 (2020).

inaccurately.   If a witness made a misstatement, consider whether that misstatement was an intentional falsehood or simply an innocent mistake.   The significance of that may depend on whether it has to do with an important fact or with only an unimportant detail.[15]

---

[15] FIFTH CIRCUIT PATTERN JURY INSTRUCTIONS (Civil), § 2.11 (2020).

**COURT'S INSTRUCTION NO.     :**

### [Court's Duty to Decide Remedies]

If you find that the SEC has met its burden on one or more of its claims against Mueller, I alone will determine the remedy or remedies to be imposed later.   In answering the questions asked of you, you should not consider what remedy, if any, I may impose.[16]

---

[16]  *See, e.g.,* TENTH CIRCUIT PATTERN JURY INSTRUCTIONS § 1.20 (2021); ELEVENTH CIRCUIT PATTERN JURY INSTRUCTIONS (Civil) §§ 6.4, 6.5, 6.7 (2020) (each including instruction that "if you find that the SEC has proved one or more of its claims against [name of defendant], I alone will determine the remedy or remedies to impose at a later date.]"); *Tull v. United States*, 481 U.S. 412, 424, 427 (1987); *SEC v. Commonwealth Chem. Secs., Inc.*, 574 F.2d 90, 95-97, 98-100 (2d Cir. 1978) (disgorgement, injunction against future violations); *SEC v. Lipson*, 278 F.3d 656, 662 (7th Cir. 2002) (reflecting that the jury determines liability, and the judge determines "what equitable relief to impose"); *SEC v. Moran*, No. 95 Civ. 4472, 1995 WL 785953 at *1 (S.D.N.Y. Oct. 31, 1995) ("It is well settled that the trier of fact must consider only the factual issue of liability without regard to any potential consequences which may befall a defendant."), citing *Shannon v. United States*, 512 U.S. 573, 579 (1994); *SEC v. Saul*, No. 90 C 2633, 1991 WL 218061 at *1 (N.D. Ill. Oct. 16, 1991) ("Speculation about the consequences [the defendants] might suffer from a jury finding against them would likely distract the jury from the allegations of the SEC's complaint and encourage deliberation based upon emotional considerations which are improper").   *See also* Section 20(d)(2)(A) of the Securities Act, 15 U.S.C. § 77t(d)(2)(A) ("The amount of the penalty shall be determined by the court in light of the facts and circumstances."); Section 21(d)(3)(B)(i) of the Exchange Act, 15 U.S.C. § 78u(d)(3)(B)(i) (same).

**COURT'S INSTRUCTION NO.      :**

### [Overview of Separate Claims at Issue]

The SEC has brought three sets of claims against Mueller for his alleged violations of the federal securities laws.  Mueller denies that he violated any of these laws.

First set of claims.  The SEC alleges that Mueller violated Section 10(b) of the Exchange Act, which I will refer simply as Section 10(b), as well as Rule 10b-5 and its subparts (a) through (c), which I will refer simply as Rule 10b-5.  Rule 10b-5 implements Section 10(b). The SEC alleges that Mueller did this by employing a device, scheme, or artifice to defraud investors, by making material misstatements or omissions, or by engaging in an act, practice or course of business which operated or would operate as a fraud or deceit, in connection with the *purchase* or *sale* of a security.

Second set of claims.  The SEC alleges that Mueller violated Section 17(a) of the Securities Act, and its subparts (1) through (3), which I will to refer simply as Section 17(a), by employing a device, scheme, or artifice to defraud investors, by obtaining money or property by means of material misstatements or omissions, or by engaging in a transaction practice, course of business which operated or would operate as a fraud or deceit upon the purchaser, in the *offer* or sale of a security.

Third set of claims.  The SEC alleges that Mueller violated Sections 206(1) and (2), as well as Section 206(4) the Advisers Act and its Rule 206(4)-8, by, while acting as an investment adviser to the 575 Fund and the dGRD Fund, by engaging in the same conduct described above for the other set of claims.

I will now instruct you on the specific elements the SEC must prove by a preponderance of the evidence to establish a violation of these three sets of federal securities laws.[17]

---

[17] This proposed instruction was largely derived from Jury Charge, Dkt. #180 at 7, *SEC v. Mapp, III*, No. 16-246 (E.D. Tx. 2017) (modified).

**COURT'S INSTRUCTION NO. ____:**

### [Section 10(b) and Rule 10b-5 – Securities Fraud]

The SEC alleges that Mueller violated Section 10(b) of the Exchange Act and Rule 10b-5.  In order to prevail on its claims, the SEC must prove each of the following elements by a preponderance of the evidence:[18]

*First*, that Mueller committed, directly or indirectly, one or more of the following acts:

(1)     Employed any device, scheme, or artifice to defraud; or

(2)     Made any untrue statement of a material fact, or omitted to state a material fact which made what was said, under the circumstances, misleading; or

(3)     Engaged in any act, practice, or course of business that operated, or would operate, as a fraud or deceit upon any person.

*Second*, that Mueller acted with scienter, meaning that he acted intending to deceive, manipulate, or defraud, or with reckless disregard for the truth;

*Third*, that Mueller's conduct was in connection with the purchase or sale of a security; and,

For elements (1), (2), and (3) above, the SEC does not need to prove that any purchaser or seller of securities actually relied or made an investment decision based on the Mueller's alleged fraud.   Finally, the SEC does not need to prove that anyone has suffered or would suffer any damages or harm as a result of the defendant's alleged fraud.   Accordingly, you should not

---

[18]   *SEC v. Gann*, 565 F.3d 932, 936 n.10 (5th Cir. 2009) (Section 10(b) and Rule 10b-5 have same scope of liability); *see SEC v. Seghers*, 298 Fed.Appx. 319, 327 (5th Cir. 2008) (setting out elements for SEC action); *cf.* FIFTH CIRCUIT PATTERN JURY INSTRUCTIONS (Civil), § 7.1 (2020) (setting out elements for *private* action).

consider reliance or harm in determining whether Mueller committed fraud under the securities laws.[19]

I will now explain each of these elements in more detail.

**First:  The Fraudulent Act Element**

To prove the fraudulent act element, the SEC must prove by a preponderance of the evidence that Mueller directly or indirectly did at least one of three things.  If you find any one of these, the SEC has established the fraudulent act element.

The *first* way the SEC may prove that Mueller committed a fraudulent act is to show that he employed a device, scheme, or artifice to defraud.  A "device, scheme, or artifice to defraud" is any conduct or plan that has the effect of conveying a false impression to another person, including any efforts to take advantage of others.[20, 21]   Such conduct takes many forms and

---

[19] *United States v. Naftalin*, 441 U.S. 768, 772, 99 S. Ct. 2077, 2081 (1979) ("The statutory language [of the federal securities laws] does not require that the victim of the fraud be an investor . . . ."); *SEC v. Gann*, 2008 WL 857633 *9 (N.D. Tex. 2008) (Lindsay, J), *aff'd* 565 F.3d 932 (5th Cir. 2009) ("Other circuits have recognized that the SEC, unlike private litigants, need not prove the elements of reliance, proximate causation, or harm in a Section 10(b) claim.") (*citing Geman v. SEC*, 334 F.3d 1183, 1191 (10th Cir. 2003); *SEC v. Hopper*, 2006 WL 778640 *9 n.15 (S.D. Tex. 2006) (Werlein, J.) ("Unlike a private litigant, the SEC is not required to allege or prove that investors relied on the defendant's misrepresentations, or that specific investors suffered actual harm as a result of the defendant's misrepresentation."); *SEC v. Czarnik*, 2010 WL 4860678 *4 (S.D.N.Y. 2010) ("[T]he fraud need not have been perpetrated on an actual or potential investor to constitute a violation of section 10(b) and Rule 10b-5."). *see also SEC v. Blavin*, 760 F.2d 706, 711 (6th Cir. 1985) (Commission not required to prove investor reliance or that any investor lost money in order to show violation of the antifraud provisions of the federal securities laws); *SEC v. Capital Gains Research Bureau, Inc.*, 375 U.S. 180, 195-196 (1963) (Advisers Act violations brought by Commission do not require showing of actual injury).

[20]  *SEC v. Dorozhko*, 574 F.3d 42, 50 (2d Cir. 2009); *Lorenzo v. SEC*, 872 F.3d 578, 588-90 (D.C. Cir. 2017) (finding that the petitioner's deceptive conduct—"knowingly sen[ding] materially misleading language from his own email account to prospective investors"—"fits comfortably within the ordinary understanding of" the terms "device," "act," and "artifice to defraud"); *see also Chadbourne & Parke LLP v. Troice*, 571 U.S. 377, 382 (2014) (acknowledging the breadth of the language used in Rule 10b-5(a) when stating that it "forbids  the use of any 'device, scheme, or artifice to defraud' (*including* the making of any 'untrue statement of material fact' or any similar 'omi[ssion]') (emphasis added)); *SEC v. Clark*, 915 F.2d 439, 448 (9th Cir. 1990) (also noting the breadth of the terms "'fraud,' 'deceit,' and 'device, scheme, or artifice'").

[21]  *United States v. Ratcliff*, 488 F.3d 639, 644-45 (5th Cir. 2007) (construing mail fraud statute) ("the words to defraud commonly refer to wronging one in his property rights by dishonest methods or schemes, and usually signify the deprivation of something of value by trick, deceit chicane, or overreaching") (quotation marks omitted); *United States v. Caldwell*, 302 F.3d 399, 414 (5th Cir. 2002) (construing "scheme to defraud" in the mail fraud statute) ("As this court has recognized, for purposes of the federal fraud statutes, the term scheme to defraud is not

encompasses all kinds of manipulative and deceptive acts.[22]   Conduct may constitute a "device, scheme, or artifice to defraud" even if it is not fraudulent on its face; the conduct need only be reasonably calculated to deceive persons of ordinary prudence and comprehension.   The SEC need not prove that Mueller personally conceived of or initiated the use of the device, scheme, or artifice to defraud.   It is sufficient that he took active steps to perpetrate a fraud against investors.[23]

The *second* way the SEC may prove that Mueller committed a fraudulent act is to show he made a materially false or misleading statement or omission of fact.[24]   A defendant "makes" a statement if he has ultimate authority over the statement, including its content and whether and how to communicate it.[25]   A defendant thus commits fraud if he makes or causes to be made a statement about a material fact that is either false or misleading.   A defendant also commits fraud if he omitted or caused to be omitted a material fact he should have disclosed, meaning that he

---

readily defined, but it includes any false or fraudulent pretenses or representations intended to deceive other in order to obtain something of value, such as money.") (citations and quotation marks omitted); *United States v. Saks*, 964 F.2d 1514, 1518 (5th Cir. 1992) (construing "scheme or artifice to defraud" in the bank fraud statute) ("The term 'scheme to defraud' is not readily defined, but it includes any false or fraudulent pretenses or representations intended to deceive others in or to obtain something of value . . ."); *SEC v. Cherif*, 933 F.2d 403, 412 (7th Cir. 1991) (affirming conviction under Section 10(b) and Rule 10b-5 because defendants "actions were fraudulent in the common understanding of the word because they deprived some person of something of value by trick deceit, chicane or overreaching") (quotation marks omitted).

[22]   4-82 Leonard Sand, et al., *Modern Federal Jury Instructions—Civil*, ¶ 82.02, Instruction 82-4 (2013); *SEC v. Koscot Interplanetary, Inc.*, 497 F.2d 473, 479 (5th Cir. 1974) (the securities statutes are remedial and "are to be broadly construed").

[23]   *Lorenzo*, 872 F.3d at 580, 595 (D.C. Cir. 2017) (affirming liability under Rule 10b-5(a) where the petitioner "played an active role in perpetrating the fraud by folding [false] statements into emails he sent directly to investors"); *SEC v. Monterosso*, 756 F.3d 1326, 1334 (11th Cir. 2014) (affirming liability under Rule 10b-5(a) based on defendants' "commission of deceptive acts as part of a scheme to generate fictitious revenue").

[24]   Exchange Act Rule 10b-5(b), 17 C.F.R. § 240.10b-5(b).

[25]   *Janus Capital Group, Inc. v. First Derivative Traders*, 131 S. Ct. 2296, 2302 (2011).

failed to state a material fact that was necessary in order to make other statements not misleading, in light of the circumstances in which the other statements were made.[26]

A fact is material if there is a substantial likelihood that a reasonable investor would consider the information important to his or her investment decision.[27]  Stated differently, a material fact is one that is likely to be viewed by a reasonable investor as significantly altering the total mix of available information.[28]  It is up to you to decide based on all the relevant evidence whether the facts allegedly stated, or allegedly omitted, by Mueller would be material to a reasonable investor.[29]

In addition, if statements regarding material facts were made in the past, such as information that was provided to investors, Mueller had a duty to promptly correct those statements if he later learned that those statements, although correct at the time they were made, would be misleading if left unrevised.  This duty to correct arises if a reasonable person would

---

[26]  Exchange Act Rule 10b-5(b), 17 C.F.R. § 240.10b-5(b); *see SEC v. Seghers*, 298 Fed.Appx. 319, 328 (5th Cir. 2008) ("We have stated that 'the standard for misrepresentation is whether the information disclosed, understood as a whole, would mislead a reasonable potential investor'.") (quoting *Trust Co. of La. V. N.N.P. Inc.*, 104 F.3d 1478, 1490 (5th Cir. 1997)).

[27]  *SEC v. Gann*, 565 F.3d 932, 936-37 (5th Cir. 2009) ("That omission or misrepresentation must be material, that is, it must be reasonably calculated to influence the decisions of an investor . . . in its trading in securities."); *SEC v. Seghers*, 298 Fed. Appx. 319, 328 (5th Cir. 2008) ("'[A] statement or omitted fact is material if there is a substantial likelihood that a reasonable investor would consider the information important in making a decision to invest'.") (quoting *ABC Arbitrage Plaintiffs Grp. v. Tchuruk*, 291 F.3d 336, 359 (5th Cir. 2002)).

[28]  *Rosenzweig v. Azurix Corp.*, 332 F.3d 854, 865-66 (5th Cir. 2003) (a misrepresentation or omission is material when it "would have been viewed by the reasonable investor as having significantly altered the 'total mix' of information made available"); *United States v. Peterson*, 101 F.3d 375, 380 (5th Cir. 1996) ("An omitted or misrepresented fact is material in a Rule 10b-5 case if there is a substantial likelihood that a reasonable investor would have viewed it as significantly altering the mix of information available."); *SEC v. Seghers*, 298 Fed.Appx. 319, 330 (5th Cir. 2008) (affirming a jury verdict because the jury reasonably could conclude that the defendant's "statements were misleading in the light of the total mix of information available").

[29]  *United States v. Peterson*, 101 F.3d 375, 380 (5th Cir. 1996) ("Because materiality is a mixed question of law and fact, it is usually left for the jury."); *Krim v. BancTexas Grp., Inc.*, 989 F.2d 1435, 1448 (5th Cir. 1993) ("Materiality is not judged in the abstract, but in light of the surrounding circumstances); *SEC v. Fox*, 855 F.2d 247, 253 (5th Cir. 1988) ("[E]ven where the facts are sufficient to support a finding of materiality, the question of materiality is within the legitimate province of the finder of fact.") (quotation marks and ellipses omitted).

expect that investors or other market participants would likely still be relying on the earlier, incorrect statement.

The *third* way the SEC may prove the fraudulent act element is by showing that Mueller "engaged in any act, practice, or course of business that operated, or would operate, as a fraud or deceit upon any person."[30]  The word "would" in the phrase "would operate as a fraud or deceit" means that the acts, practices, or courses of business need not have actually defrauded any particular investor.[31]  Mueller violated this provision if you find that he engaged either in a single act or in repeated conduct over a period of time that did, or merely could have, succeeded in defrauding someone.[32]

### Second: The Intent to Defraud Element

The second element that the SEC must prove by a preponderance of the evidence is that Mueller acted with "scienter".  Scienter means acting with an intent to deceive, manipulate, or defraud.[33]

The SEC can prove scienter by establishing either that a defendant acted knowingly and with an intent to deceive, or that the defendant acted with severe recklessness.  It is not enough to

---

[30]  Exchange Act Rule 10b-5(c), 17 C.F.R. § 240.10b-5(c).

[31]  *SEC v. Hopper*, 2006 WL 778640 *13 (S.D. Tex. 2006) (Werlein, J.) (construing the identical language in Section 17(a)(3) and concluding that words "'*would* operate' as a fraud or deceit upon the purchaser . . . indicates that the transaction, practice, or course of business need not have actually operated as a fraud on any particular purchaser"); *see also* Jury Charge, Dkt.#112 at 36-37, *SEC v. O'Meally*, No. 06-6483 (S.D.N.Y. 2011);  Jury Charge, Dkt.#62 at 18, *SEC v. Fink*, No. 04-80841 (S.D. Fla. 2005).

[32]  *See* Webster's New Int'l Dictionary 1937 (2d ed. 1934) ((def. 1b) defining "practice" as "often, repeated, or customary action; usage; habit; custom; . . .the usual mode of doing something"); id. 610 ((def. 5) (defining "course," when used in phrases like "course of conduct," to mean "a succession of acts or practices" or a "series of motions or acts"); *Lorenzo*, 872 F.3d at 588-90, 595 (D.C. Cir. 2017) (sending false information to potential investors constituted a deceptive "act" for purposes of liability under Rule 10b-5(c)).

[33]  *SEC v. Gann*, 565 F.3d 932, 936 (5th Cir. 2009) ("To have acted with scienter, the defendant must have acted with a mental state embracing intent to deceive, manipulate, or defraud.") (quotation marks omitted).

show that Mueller acted accidentally, or merely made a mistake, or even that he was negligent.[34] To act knowingly means to act intentionally and deliberately, rather than mistakenly or inadvertently. To deceive means to cause another to believe or accept what is not the truth. Severe recklessness occurs when a defendant makes an extreme departure from the standards of ordinary care, which in turn presents so obvious a danger of misleading investors that the defendant must have been aware of the risk.[35]

The question of whether a person acted with scienter is a question of fact for you to determine, like any other fact question. It is a question involving Mueller's state of mind. Direct proof of state mind is almost never available, and it is not required, and may be established by circumstantial evidence.[36] Therefore, whether Mueller acted knowingly may be established by circumstantial evidence based on a person's words, conduct, acts, and all the surrounding circumstances and the reasonable inferences that may be drawn from them.[37] You may also consider Mueller's knowledge in general or evidence regarding business experience.

---

[34] FIFTH CIRCUIT PATTERN JURY INSTRUCTIONS (Civil), § 7.1 (2020) ("the plaintiff does not satisfy the burden of proof merely by showing that the defendant acted accidentally or that the defendant made a mistake").

[35] *SEC v. Seghers*, 298 Fed. Appx. 319, 333 (5th Cir. 2008) ("Severe recklessness is limited to those highly unreasonable omissions or misrepresentations that involve not merely simple or even inexcusable negligence, but an extreme departure from the standards of ordinary care, and that present a danger of misleading buyers or sellers that the defendant must have been aware of it. Scienter may be found if a reasonable jury can conclude that the defendant knew his statements were false when made.") (citations omitted); *Meadows v. SEC*, 119 F.3d 1219, 1226 (5th Cir. 1997) (same); *SEC v. Sw. Coal & Energy Co.*, 624 F.2d 1312, 1321 n.17 (5th Cir. 1980) (same).

[36] 4-82 Leonard Sand, et al., *Modern Federal Jury Instructions—Civil*, ¶ 82.02, Instruction 82-8 (2013); *United States v. Prince*, 496 F.2d 1289, 1293 (5th Cir. 1974) (affirming Section 10(b) conviction and noting that "direct proof of the appellant's state of mind . . . is not required"); *United States v. LaPlante*, 714 F.3d 641, 644 (1st Cir. 2013) (affirming a jury charge in which the district court explained that "direct proof of intent . . . is not required; intent may be 'established by circumstantial evidence'").

[37] *Herman & MacLean v. Huddleston*, 459 U.S. 375, 390 n.30 (1983) (noting that "circumstantial evidence can be more than sufficient" to prove scienter); *Nathaenson v. Zonagen, Inc.*, 267 F.3d 400, 410 (5th Cir. 2001) ("Congress plainly contemplated that scienter could be proven by inference, thus acknowledging the role of indirect and circumstantial evidence.") (citation and quotation marks omitted).

### Third: In Connection with the Purchase or Sale of a Security Element

The third element the SEC must prove by a preponderance of the evidence is that Mueller's conduct occurred in connection with the purchase or sale of a security. The parties have already agreed that the membership interests in the 575 Fund and the DGRD Fund are securities under the Securities and Exchange Acts.

The "in connection with" element is satisfied if you find that there was some connection or relation between the allegedly fraudulent act and the purchase or sale of securities.[38] This element can be satisfied, for example, if the documents that included Mueller's alleged material misstatements or omissions were of a sort that reasonable investors would rely on when deciding whether to buy or sell securities. Thus, for example, statements made in the Private Placement Memoranda (PPMs) or other marketing materials can satisfy the "in connection with" element because investors rely on such documents. The SEC need not prove, however, that anyone actually did rely on the documents that included the allegedly material misstatements or omissions.[39]

---

[38] *SEC v. Zandford*, 535 U.S. 813, 821-22 (2002) (the in connection with requirement must be read flexibly and broadly, and "[i]t is enough that the scheme to defraud and the sale of securities coincide"); *United States v. O'Hagen*, 521 U.S. 642, 656 (1997) (the in connection with requirement was met because "the securities transaction and the breach of duty . . . coincide[d]"); *SEC v. Hopper*, 2006 WL 778640 *11 (S.D. Tex. 2006) (Werlein, J.) (the in connection with requirement is satisfied "when the defendants' deceptive conduct affects a market for securities") (citation and quotation marks omitted).

[39] *SEC v. Gann*, 2008 WL 857633 *9 (N.D. Tex. 2008) (Lindsay, J), *aff'd* 565 F.3d 932 (5th Cir. 2009) ("Other circuits have recognized that the SEC, unlike private litigants, need not prove the elements of reliance, proximate causation, or harm in a Section 10(b) claim.") (citing *Geman v. SEC*, 334 F.3d 1183, 1191 (10th Cir. 2003); *SEC v. Hopper*, 2006 WL 778640 *9 n.15 (S.D. Tex. 2006) (Werlein, J.) ("Unlike a private litigant, the SEC is not required to allege or prove that investors relied on the defendant's misrepresentations, or that specific investors suffered actual harm as a result of the defendant's misrepresentation."); *SEC v. Czarnik*, 2010 WL 4860678 *4 (S.D.N.Y. 2010) ("[T]he fraud need not have been perpetrated on an actual or potential investor to constitute a violation of section 10(b) and Rule 10b-5.").

**COURT'S INSTRUCTION NO. _____**

## [Section 17(a) – Securities Fraud]

The SEC alleges that Mueller violated Section 17(a) of the Securities Act. Section 17(a) has three subparts: (1), (2) and (3).

### *Securities Fraud under Section 17(a)(1)*

In order to prevail on its claim that Mueller violated Section 17(a)(1), the SEC must prove each of the following elements by a preponderance of the evidence:

*First*, that Mueller, directly or indirectly, employed any device, scheme, or artifice to defraud;

*Second*, that Mueller did so with scienter, meaning that he acted either with intent to defraud, or with reckless disregard for the truth;

*Third*, that Mueller did so in connection with the offer or sale of any securities; and,

As you've probably noticed, the First and Second Elements the SEC must prove by a preponderance of the evidence under Section 17(a) are substantially the same as the elements it must prove under Section 10(b) and Rule 10b-5.  For that reason, the instructions I gave you when discussing those elements for Section 10(b) and Rule 10b-5 also apply to the Section 17(a) elements.[40]  If you found, in considering the violation of Section 10(b) and Rule 10b-5, that the SEC proved those elements by a preponderance of the evidence, you also found those same elements proven for the purposes of the Section 17(a) violation.[41]

---

[40] *SEC v. Spence & Greene Chemical Co.*, 612 F.2d 896, 903 (5th Cir. 1980) ("the proscriptions of section 17(a) are substantially the same as those of section 10(b) and rule 10b-5").

[41] Jury Charge, Dkt. #187 at 150 [2439:10-15], *SEC v. O'Meally*, No. 06-6483 (S.D.N.Y. 2012) (modified).

The Third Element of Section 17(a) is different.  Section 17(a) covers fraud only in "*offers*" to sell and actual sales of a security.[42]  "Offers" include any and every attempt to offer or dispose of a security, so it includes negotiations to sell, or attempts to produce a sale by urging or persuading another to act.[43]  "Sale" also is defined broadly, and includes every contract of sale or other disposition of a security or an interest in a security for value.[44]  The SEC need not prove that any investors actually bought the securities that were offered for sale.[45]  As I previously told you, the parties have already agreed that the membership interests in the 575 Fund and the DGRD Fund are securities under the Securities and Exchange Acts.

To simplify matters, if you find that Mueller violated Section 10(b) and Rule 10(b)(5), and you also find that Mueller's conduct was in connection with the *offer* or sale of a security, then it is your duty to find that he also violated Section 17(a)(1).  On the other hand, if you find that Mueller's conduct was *not* in connection with the offer or sale of a security, then it is your duty to find that he is not liable under Section 17(a)(1).

### Securities Fraud under Section 17(a)(2) and 17(a)(3)

The SEC also alleges that Mueller's conduct violated Sections 17(a)(2) and (3) of the Securities Act.  To establish that Mueller is liable under these sections, the SEC must prove:

*First*, that in the offer or sale of securities;

---

[42]  Securities Act Section 17(a), 15 U.S.C. § 77q(a).

[43]  *United States v. Naftalin*, 441 U.S. 768, 773-74 (1979) (citing the definition of "offer" in Securities Act Section 2(3) when construing "offer" in Section 17(a)); Jury Charge, Dkt. No. 433-3 at 17, *SEC v. Tourre*, No. 10-3229 (S.D.N.Y. 2013).

[44]  *United States v. Naftalin*, 441 U.S. 768, 773-74 (1979) (citing the definition of "sale" in Securities Act Section 2(3) when construing "offer" in Section 17(a)).

[45]  *United States v. Naftalin*, 441 U.S. 768, 773 (1979) ("The statutory language does not require that the victim of the fraud be an investor—only that the fraud occur "in" an offer or sale."); *see also First Nat'l Bank of Las Vegas, N.M. v. Estate of Russell*, 657 F.2d 668, 674 N.18 (5th Cir. 1981) (citing *Naftalin*) ("That the securities were not delivered does not preclude a finding that a sale occurred.").

*Second*, Mueller either:

    a.   Directly or indirectly obtained money or property by means of any untrue statement of a material fact or any omission to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading (Section 17(a)(2)); *or*

    b.   Directly or indirectly engaged in any transaction, practice, or course of business which operated or would operate as a fraud or deceit upon the purchaser (Section 17(a)(3)); and

*Third*, that Mueller acted negligently, which I will now define for you.[46]

"Negligently" means the failure to use that degree of care which an ordinary careful person would use under the same or similar circumstances.[47] Negligence may consist of either doing something that a reasonable person would not do under the circumstances, or it may consist of failing to do something that a reasonable person would do under the circumstances.[48]

---

[46] 15 U.S.C. §§ 77q(a)(2) and (3); *SEC v. Wolfson,* 539 F.3d 1249, 1256 n. 12 (10th Cir. 2008) ("The principle difference between § 17(a) and § 10(b) lies in the element of scienter, which the SEC must establish under § 17(a)(1), but not under § 17(a)(2) or § 17(a)(3) . . . ").

[47] Federal Civil Jury Instructions of the Eighth Circuit Court of Appeals, § 15.20 (2013).

[48] Jury Charge, Dkt. #180 at 13-14, *SEC v. Mapp*, No. 16-246 (E.D. Tx. 2017).

**COURT'S INSTRUCTION NO.      :**

**[Advisers Act Sections 206(1) and 206(2)]**

The SEC alleges that Mueller also violated Sections 206(1) and 206(2) of the Advisers Act.  The elements of these claims are substantially similar to the elements of claims under Section 10(b) of the Exchange Act, Rule 10b-5, and Section 17(a) of the Securities Act. Because of these similarities, you may consider claims brought under these multiple of statutes and rules together.  Specifically, the SEC has the burden of proving each of the following elements by the preponderance of the evidence:

*First*, the defendant was an "investment adviser."  The definition of an "investment adviser" includes a person who, for compensation, engages in the business of advising others, either directly or indirectly, as to the advisability of investing in securities, or who manages the assets of others.  One who effectively controls an investment advisory firm and its decision making is an investment adviser within the meaning of the Advisers Act.

*Second*, the defendant did at least one of the following:

(1) directly or indirectly employed a device, scheme, or artifice to defraud a client or prospective client (Section 206(1)); *or*

(2) directly or indirectly engaged in a transaction, practice, or course of business which operated or would operate as a fraud or deceit upon a client or prospective client (Section 206(2)).

I have already explained these concepts to you when I instructed you about Section 17(a) of the Securities Act, Section 10(b) of the Exchange Act and Rule 10b-5.

*Third*, the defendant acted with the required state of mind.  There are several ways that the SEC may satisfy the state of mind requirement.  The SEC may show that the defendant

acted "knowingly" or "recklessly," which the SEC is required to prove to establish a violation of Section 206(1).  To prove that the defendant violated Section 206(2) by engaging in a fraudulent or deceptive transaction, practice, or course of business, the SEC need only show that the defendant acted *negligently*.  If you find that Mueller acted knowingly or recklessly, you do not need to decide whether that defendant acted negligently because if Mueller acted knowingly or recklessly he also acted negligently.  I have already explained these concepts to you as well.

In particular, the SEC claims Mueller defrauded the 575 Fund LLC ("575 Fund") and the deeproot Growth Runs Deep Fund LLC ("dGRD Fund"), in violation of Sections 206(1) and 206(2) of the Advisers Act.  For these claims under the Adviser's Act, the 575 Fund and the dGRD Fund are the clients, *not* the investors in the funds.

Unlike the antifraud provisions of the Securities Act and the Exchange Act, Section 206 of the Advisers Act does not require that the activity be in the offer or sale of any security or in connection with the purchase or sale of any security.[49]

**Fiduciary Duty**

In considering whether Mueller violated Sections 206(1) and 206(2) of the Advisers Act, also keep in mind the law imposes special duties on a person who is referred to as a "fiduciary."  An investment adviser who agrees to manage, direct, or oversee the investments of a client is a fiduciary and owes duties to the client under the law, including the following:

(i)     a duty of undivided loyalty to act always in the client's best interests and for its benefit;

---

[49] Jury Charge, Dkt. #374 at 15-17, *SEC v. Bluepoint Inv. Counsel*, No. 19-809 (W.D.Wis. 2021) (modified).

(ii)   a duty to each client to exercise care in managing each client's assets; and

(iii)   a duty of candor, which means that the adviser must not only refrain from making false or misleading statements to the client but also must affirmatively provide full and fair disclosure to the client of all important information relating to the client's investments.

If you find that Mueller was an investment adviser, you do not need to find that he made an affirmative misstatement to show he committed fraud. Instead, you can find that he committed fraud by engaging in conduct that was inconsistent with his fiduciary duties as an investment adviser.[50]

---

[50] Jury Charge, Dkt. #374 at 17-18, *SEC v. Bluepoint Inv. Counsel*, No. 19-809 (W.D. Wis. 2021) (modified)

**<u>COURT'S INSTRUCTION NO.     :</u>**

### [Advisers Act Sections 206(4) and Rule 206(4)-8]

Finally, the SEC alleges that Mueller violated Section 206(4) of the Advisers Act and Rule 206(4)-8 thereunder.   These provisions apply more specifically to conduct by investment advisers regarding pooled investment vehicles, [[including funds such as the 575 Fund and dGRD Fund.]]

Like with the Section 206(1) and 206(2) claims, the elements of these claims are substantially similar to the elements of claims under Section 10(b) of the Exchange Act,  Rule 10b-5, and Section 17(a) of the Securities Act.  Because of these similarities, you may again consider claims brought under multiple of these statutes and rules together.

To prove a violation of Section 206(4) of the Advisers Act and Rule 206(4)-8 thereunder, the SEC must establish the following, three elements by a preponderance of the evidence:

*First*, that Mueller was an investment adviser.  I have already instructed you on the definition of an "investment adviser."

*Second*,  that Mueller was an investment adviser to a "pooled  investment vehicle." The parties here agree that pooled investment vehicles include private funds such as the 575 Fund and the dGRD Fund.

*Third*, that Mueller, as an investment adviser to a pooled investment vehicle:

> (1) made materially misleading statements or omitted to state a material  fact necessary to make statements made, in light of the circumstances under which they were made, not misleading, to any investor or prospective investor in the pooled investment vehicle; *or*

(2) otherwise engaged in any act, practice, or course of business that is fraudulent, deceptive, or manipulative with respect to any investor or prospective investor in the pooled investment vehicle.

The definition of a device, scheme, or artifice to defraud, and the definition of engaging in an act, practice or course of business that operated, or would operate, as a fraud or deceit upon any person, are the same as previously discussed.   There can be a violation of Section 206(4) and Rule 206(4)-8 regardless of whether the pooled investment vehicle is offering, selling or redeeming securities.

In addition, violations of Section 206(4) and Rule 206(4)-8 do *not* require a showing of scienter; instead, negligence is sufficient, which I previously defined for you.

Finally, facts showing a violation of Exchange Act Section 10(b) and Rule 10b-5 or of Securities Act Section 17(a) by an investment adviser will also support a showing of a violation of Advisers Act Section 206(4) and Rule 206(4)-8.[51]

---

[51] Jury Charge, Dkt. #374 at 18-19, *SEC v. Bluepoint Inv. Counsel*, No. 19-809 (W.D. Wis. 2021) (modified).

**COURT'S INSTRUCTION NO.    :**

**[Duty to Deliberate; Notes]**

It is now your duty to deliberate and to consult with one another in an effort to reach a verdict.  Each of you must decide the case for yourself, but only after an impartial consideration of the evidence with your fellow jurors.  During your deliberations, do not hesitate to re-examine your own opinions and change your mind if you are convinced that you were wrong.  But do not give up on your honest beliefs because the other jurors think differently, or just to finish the case.

Remember at all times, you are the judges of the facts.  You have been allowed to take notes during this trial.  Any notes that you took during this trial are only aids to memory.  If your memory differs from your notes, you should rely on your memory and not on the notes.  The notes are not evidence.  If you did not take notes, rely on your independent recollection of the evidence and do not be unduly influenced by the notes of other jurors.  Notes are not entitled to greater weight than the recollection or impression of each juror about the testimony.

When you go into the jury room to deliberate, you may take with you a copy of this charge, the exhibits that I have admitted into evidence, and your notes.  You must select a jury foreperson to guide you in your deliberations and to speak for you here in the courtroom.

Your verdict must be unanimous.  After you have reached a unanimous verdict, your jury foreperson must fill out the answers to the written questions on the verdict form and sign and date it.  After you have concluded your service and I have discharged the jury, you are not required to talk with anyone about the case.

If you need to communicate with me during your deliberations, the jury foreperson should write the inquiry and give it to the court security officer.  After consulting with the attorneys, I will respond either in writing or by meeting with you in the courtroom.  Keep in

mind, however, that you must never disclose to anyone, not even to me, your numerical division on any question.

You may now proceed to the jury room to begin your deliberations.[52]

---

[52] FIFTH CIRCUIT PATTERN JURY INSTRUCTIONS (Civil), § 3.7 (2020).

**COURT'S INSTRUCTION NO.    :**


**[Civil *Allen* Charge][53]**

Please continue your deliberations in an effort to reach a verdict.  This is an important case.  The trial has been expensive in terms of time, effort, money, and emotional strain to all parties involved.  If you should fail to agree on a verdict, the case may have to be tried again.  There is no reason to believe that the case can be retried, by either side, better or more exhaustively that it has been tried before you.

Any future jury would be selected in the same manner and from the same source as you were chosen.  There is no reason to believe that those jurors would be more conscientious, more impartial, or more competent to decide the case than you are.

It is your duty to consult with one another and to deliberate with a view to reaching a verdict if you can do so, consistent with your individual judgments.  You must not surrender your honest convictions as to the weight or effect of the evidence solely because of the opinions of the other jurors or just to reach a verdict.  Each of you must decide the case for yourself, but you should do so only after consideration of the evidence with your fellow jurors.

In the course of your deliberations, you should not hesitate to reexamine your own views, and to change your opinion if you are convinced that it is wrong.  To reach a unanimous verdict, you must examine the questions submitted to you openly and frankly, with proper regard for the

---

[53]  This proposed instruction was largely derived from Kevin F. O'Malley, Jay E. Grenig, & Hon. William C. Lee, *Federal Jury Practice and Instructions* §§ 106.09, 106.10 (5th ed. 2000).

    In *Brooks v. Bay State Abrasive Prods., Inc.*, 516 F.2d 1003, 1004 (5th Cir. 1975), the United States Court of Appeals for the Fifth Circuit stated that an *Allen* charge may be used in civil cases if it makes clear to the members of the jury that: (1) they have a duty to adhere to their honest opinions; and (2) they are not doing anything improper by maintaining a good faith opinion although a mistrial may result.

    This charge should be given only after the jury has directly stated that it cannot reach a verdict, or when the amount of time spent in deliberations is excessively long, as compared with the nature of the issues and length of the trial, so that it is obvious that the jury is having difficulty reaching a verdict.

opinions of others and with a willingness to reexamine your own views.  If a substantial majority of you are for a verdict for one party, each of you who holds a different position ought to consider whether your position is reasonable.

I suggest that you now carefully reexamine and consider all the evidence in the case in light of my instructions on the law.  In your deliberations you are to consider all of the instructions I have given to you as a whole.  You should not single out any part of any instruction including this one.

You may now continue your deliberations.[54]

---

[54] FIFTH CIRCUIT PATTERN JURY INSTRUCTIONS (Civil), § 2.18 (2020).