# Appendix E

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| SECURITIES AND EXCHANGE COMMISSION, | § § § | |
| Plaintiff, | § § | Case No.: 5:21-cv-785-XR |
| v. | § § | |
| ROBERT J. MUELLER, et al., | § § | |
| Defendants. | § § § | |

## PLAINTIFF'S PROPOSED JURY INSTRUCTIONS

Plaintiff Securities and Exchange Commission ("Plaintiff" or "SEC") respectfully asks the Court to include the following instructions in its charge to the jury, in addition to the instructions that the parties have agreed to and are submitting to the Court for its consideration. This separate submission is necessary as Defendant did not agree to these instructions.

The first proposed instruction is an explanation of the statutory purpose of the federal securities laws at issue in this case, and the second proposed instruction deals with how the jury should evaluate any evidence of a Ponzi scheme as they make a determination as to whether the SEC has proven the elements of its claims under Section 10(b) and Rule 10b-5.

\* \* \*

# JURY CHARGE

## PROPOSED ADDITIONAL INSTRUCTION:

### [Statutory Purpose of Federal Securities Laws]

The Securities Act of 1933 ("Securities Act"), the Securities Exchange Act of 1934 ("Exchange Act") and the Investment Advisers Act of 1940 ("Advisers Act") are laws designed to eliminate certain abuses in the securities industry.[1] These statutes and related rules are all anti-fraud provisions and prohibit the same general conduct, with the most relevant distinctions being to what situation or to whom they apply, as well as whether scienter is required to prove a violation. All three acts are at issue in this case.

A fundamental purpose, common to these statutes, was to replace the philosophy of *caveat emptor* ["buyer beware"] with a philosophy of full disclosure and thus to achieve a high standard of business ethics in the securities industry.[2]

---

[1] *SEC v. Capital Gains Rsch. Bureau, Inc.*, 375 U.S. 180, 186 (1963).

[2] *SEC v. Capital Gains Rsch. Bureau, Inc.*, 375 U.S. 180, 186 n. 13 (1963) (referencing H.R.Rep. No. 85, 73d Cong., 1st Sess. 2); *Kokesh v. SEC*, 137 U.S. 1635, 1639-40 n.1 (2017) ("Each of these statutes— . . . and the Investment Advisers Act of 1940, 15 U.S.C. § 80b– 1 et seq.—serves the 'fundamental purpose' of 'substitut[ing] a philosophy of full disclosure for the philosophy of caveat emptor and thus ... achiev[ing] a high standard of business ethics in the securities industry.' ") (citations omitted).

**PROPOSED ADDITION TO INSTRUCTION ON SECTION 10(b) AND Rule 10b-5:**

**[Ponzi Scheme]**

In determining whether Mueller committed a fraudulent act, you should also consider whether he engaged in a Ponzi scheme or Ponzi payments. A classic example of a Ponzi scheme is a situation where, as new investments in a business venture come in, some of that money is used to make the payments to pay earlier investors.[3] Engaging in some legitimate business operations does not counteract the existence of a Ponzi scheme because the distributions made to investors were nevertheless funded by other investor's money.[4] If you find that Mueller engaged in a Ponzi scheme, which is by definition a fraudulent scheme, then he committed a fraudulent act, and this element is satisfied.

---

[3] *United States v. Setser*, 568 F.3d 482, 486 (5th Cir. 2009); *see also Janvey v. Alguire*, 647 F.3d 585, 597 (5th Cir. 2011) (*citing* Ponzi scheme definition from *Hirsch v. Arthur Anderson & Co.*, 72 F.3d 1085, 1088 n. 3 (2d Cir. 1995).

[4] *SEC v. Helms*, 2015 WL 5010298 at *13 (W.D. Tx. 2015) ("Engaging in some legitimate business operations does not counteract the existence of a Ponzi scheme because the distributions made to investors were nevertheless funded by other investor's money.").