EXHIBIT 1

```
              IN THE UNITED STATES DISTRICT COURT
              FOR THE WESTERN DISTRICT OF TEXAS
                      SAN ANTONIO DIVISION


 SECURITIES AND EXCHANGE    )
 COMMISSION,                )
                            )
        Plaintiff,          )
                            )
            -against-       )
                            )
 ROBERT J. MUELLER,         )
 DEEPROOT FUNDS, LLC        )
 (a/k/a dprt Funds,         )
 LLC), AND POLICY           )
 SERVICES, INC.,            )
                            )
        Defendants.         )
                            )
            -and-           )    CIVIL ACTION NO.
                            )    5:21-cv-785-XR
 DEEPROOT TECH LLC,         )
 DEEPROOT PINBALL LLC,      )
 DEEPROOT STUDIOS LLC,      )
 DEEPROOT SPORTS &          )
 ENTERTAINMENT LLC,         )
 DEEPROOT RE 12621          )
 SILICON DR LLC, AND        )
 ROBERT J. MUELLER,         )
 JEFFREY L. MUELLER, AND    )
 BELINDA G. BREEN, AS       )
 CO-TRUSTEES OF THE MB      )
 HALE OHANA REVOCABLE       )
 TRUST,                     )
                            )
        Relief Defendants.  )


 ********************************************************
          REMOTE ORAL AND VIDEOTAPED DEPOSITION OF
                      CRAIG RUSHFORTH
                      JUNE 16, 2023
 ********************************************************
```

**Worldwide Court Reporters, Inc.**
**(800) 745-1101**

1  as far as soliciting money or anything about money or
2  any of that stuff, I had no conversations with any
3  investors, and I don't recall any specific -- I don't
4  remember having any actual investors that I spoke
5  with, but I -- I know that there was people coming in
6  and out, so I don't -- but I was not involved in any
7  of the -- if that makes sense.
8      Q.   Yes.  Did you review any of the materials
9  that were presented or provided to investors?
10     A.   No.
11          MR. DIVINE:  Object to the form of the
12 question.
13          THE WITNESS:  Sorry, Charlie.
14     Q.   (BY MR. HULINGS)  All right.  So let -- let me
15 kind of break this down.  So are you aware that
16 investors received materials from Deeproot prior to
17 their investments?
18          MR. DIVINE:  Object to the form of the
19 question and vague as to "investors."  I'm going to
20 keep objecting to investors because it's not clear to
21 me whether you're talking about Pinball investors or
22 other investors.
23          MR. HULINGS:  Okay.
24     Q.   (BY MR. HULINGS)  So -- all right.  When I
25 say "investors," do you understand that I'm talking

```
 1   about people that provided money to any of the
 2   Deeproot entities?
 3        A.   Yes.
 4        Q.   So that could be to the 575 Fund, Deeproot
 5   Pinball, or any other Deeproot entity.  Do you
 6   understand that?
 7        A.   Yes.
 8        Q.   All right.  And do you recall ever meeting
 9   with someone that you knew to be a potential investor
10   in the 575 Fund?
11        A.   No.
12        Q.   Do you recall reviewing/seeing -- let me
13   break that down.
14             Do you recall -- do you know whether or not
15   investors in the 575 Fund were provided materials by
16   the Deeproot companies?
17        A.   I know that there was materials.  I know that
18   things were shipped out, but I don't know specifically
19   where they -- who they were shipped to and what, but I
20   -- I do know that there was materials that were there
21   in the office.
22        Q.   So "materials" meaning documents, contracts,
23   and other written materials?
24        A.   Correct.
25        Q.   Did you have any role in reviewing, drafting,
```

1  or approving any of those materials?
2       A.   No.
3            **MR. HULINGS:**  Okay.  I think -- I think
4  I'm done.  Give me two minutes just quickly to review
5  my materials, and then I will -- we can go off the
6  record.
7            THE VIDEOGRAPHER:  The time is 12:40
8  p.m., and we are off the record.
9                      (Break.)
10           THE VIDEOGRAPHER:  The time is 12:41
11 p.m., and we are back on the record.
12           **MR. HULINGS:**  All right.  We are going
13 to reserve further questions for trial and pass the
14 witness.  So do you want to go off the record, and
15 maybe we can come back, depending -- unless --
16 Charlie, if you want to go right ahead, we can do it,
17 or I can send you the exhibits, and we can take a
18 break and come back in a little bit.
19           **MR. DIVINE:**  I think we can be a lot
20 more efficient if you go off the record and you send
21 me the exhibits.
22           **MR. HULINGS:**  Okay.
23           THE VIDEOGRAPHER:  Okay.  The time is
24 12:42 p.m., and we are off the record.
25                      (Break.)

1  have any experience working at a start-up business?
2     A.   No.
3     Q.   Do you know if Mr. Mueller had any -- Mueller
4  had any experience working at a start-up business?
5     A.   I don't know specifically, but Deeproot --
6  Deeproot was his own business, so I would imagine that
7  is startup.
8     Q.   Okay.  Did you have an occasion to talk to
9  Mr. Mueller about Deeproot 575 Fund?  I know
10 Mr. Hulings asked you about it.  I just wanted to get
11 your understanding of it.
12     A.   I know he had various funds and investments.
13 That's really the extent.  I know that, you know, his
14 investment stuff, but I don't know specifics on it.
15     Q.   Did he ever talk to you about -- this is
16 Mr. Mueller.  Did he ever talk to you about life
17 insurance policies?
18     A.   I -- I knew of them, yes.
19     Q.   How did you know of them?
20     A.   He -- he -- you know, those were part of the
21 things.  I knew that he had multiple, I guess, I'm
22 going to call them companies underneath that umbrella
23 that did different things.  One of them was the life
24 insurance.
25     Q.   Did he ever tell you about any problems he

```
 1      A.    There we go.
 2            MR. HULINGS:  I think we can stipulate
 3   the last presidential election was then.
 4            THE WITNESS:  I appreciate it.
 5            MR. DIVINE:  All right.
 6      A.    Kind of around there.
 7      Q.    (BY MR. DIVINE)  So the last presidential
 8   election, COVID, and then in May 2021, those were the
 9   three times you were -- salary issues?
10      A.    So, yeah, so in -- in -- yeah.  That was it.
11   So there was just those three.  I mean, I could go
12   look at my bank history, but I don't have it in front
13   of me.
14      Q.    It -- it -- it doesn't have to be precise.
15      A.    Okay.
16      Q.    Did Mr. Mueller ever discuss with you whether
17   he was having trouble finding investors in his
18   insurance policy business?
19      A.    No, not specifically. You know, it --
20   everything -- our discussions were around, you know,
21   there was investors, there was, you know, things.  So
22   there was no specific to a specific product line or
23   something.  When you talk about these plans, I'm going
24   to call those product lines because you brought them
25   up, but I didn't have knowledge like, hey, I have
```

```
 1  investors in these things.  I never got that specific
 2  with him.
 3       Q.   You talked to Mr. Hulings about investors,
 4  and there's just one thing I wanted to clarify.  To
 5  your knowledge, were there ever any investors who
 6  invested directly in Deeproot Tech?
 7       A.   I -- I don't know honestly.
 8       Q.   I'm going to show you an exhibit.  Give me
 9  one second to get it teed up.
10       A.   While you're doing that, I just wanted to
11  appreciate when you couldn't remember the exhibit
12  number as I'm trying to remember six and seven years
13  back the conversations.  I was like, good, they
14  couldn't remember something from yesterday.  I'm good
15  with this.
16       Q.   It happens to us all.  It'll probably happen
17  to me again this afternoon while we're doing this.
18  Okay.  All right.  So if I'm doing this correctly, you
19  should be able to see an e-mail on your screen.  Do
20  you see that?
21       A.   Yes.
22       Q.   Okay.
23            MR. DIVINE:  And for the record, I'm
24  going to identify it as Deposition Exhibit 32.  So
25  this was used in a previous deposition in this case.
```